UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA, )
      Plaintiff, )
)
vs. ) No. 17CR694 JB
)
APACHE YOUNG, )
      Defendant. )

**AMENDED MOTION IN LIMINE ON INFORMING THE JURY**

**COMES NOW** the Defendant Apache Young and, pursuant to the Fifth, Sixth and Fourteenth Amendments of the United States Constitution and Moves the Court to enter and Order permitting him to inform the jury of the consequences of a guilty verdict. As grounds, therefore, he states as follows

**Introduction**

The Defendant is charged with one count of felon in possession of a firearm contrary to 18 U.S.C. § 922 (g)(1), a regulatory offense.

Pursuant to an order of this Court, the United States Department of Probation and Parole prepared a Pre-Plea Sentencing Report (Form 13). This report examined the Defendant's criminal history and the applicable advisory sentencing provisions in the United States Sentencing Guidelines (USSG). Without debating the applications, the range afforded the Court for sentencing is between 210-262 months for a non-violent offense. Should the Court agree with the proposition set forth in the Form 13 and the Defendant is found guilty of the offense, the Defendant would receive a 15 year mandatory sentence under the Armed Career Criminal Act.

**Argument**

The Government is expected to rely upon <u>United States v. Parrish</u>, 925 F.2d 1293 (10th Cir.1991) and <u>United States v. Greer</u>, 620 F.2d 1383 (10th Cir.1980) for the

proposition that a jury can only be informed of the possible penalties if a statute requires their participation in sentencing. While the Supreme Court has not yet directly determined this exact issue, the Defendant contends that Parrish and Greer were implicitly overturned by the Supreme Court's rejection of the distinction relied upon in those rulings. See Booker, 543 U.S. 220; Blakely 542 U.S. 296; Jones, 526 U.S. 227. Since Parrish and Greer, the Supreme Court has commanded the courts to protect the right to a jury trial as it was at the time of the Founders and as it was understood by the Framers. Contrary to the current aversion to candor with the jury, the Framers not only understood and openly acknowledged the nullification role of juries, but they praised it as a vital component of the jury's role. Contrary to the outdated decisions of Parrish and Greer, the three Supreme Court decisions of Booker, Blakely, and Jones constitutionally bind this Court to apply the Framer's understanding of the jury's role and permit them to be fully informed of the consequences of their verdict. The true meaning of the Sixth Amendment, as outlined by the Supreme Court in the above-cited cases, guides that, if its sacred role within our criminal justice system is to be properly preserved, the jury must be informed as to the penalties associated with any guilty verdict.

### The Supreme Court Requires the Framers Jury Right be Maintained.

The jury has been sacred to the common law for centuries, particularly in its role of nullifying the unjust application of laws. During the 20th century, the American courts permitted a denigration of this essential power of the jury, but the Supreme Court dramatically rejected the reasoning behind that denigration and directed lower courts to once again protect the right to jury trial as it existed in the minds of the

Framers. *See* Sullivan v. Louisiana, 508 U.S. 275, 178 (1993) (the parameters of the right to jury trial and the jury's role is defined by an examination of the common law).

In three recent cases, the Supreme Court solidified this understanding of the parameters of the Sixth Amendment. In Jones, the Supreme Court demanded that the proper role of a jury in a criminal prosecution be the same as the Framers understood it to be over two centuries ago. Jones, 526 U.S. at 244. This proposition was repeated by the Supreme Court in Blakely. Blakely, 542 U.S. at 301. The Supreme Court again declared the right to jury trial has its "genesis in the ideals our constitutional tradition assimilated from the common law." Booker, 543 U.S. at 238. In other words, the Sixth Amendment encompassed the common law right to jury trial.

The Supreme Court's declarations of the parameters of the jury's role in these cases is premised upon an honest examination of the historical significance of the jury and the role the Framers foresaw it must continue to play if liberty were to be preserved. See Blakely, 542 U.S. at 306 (jury must "exercise the control that the Framers intended"). This renewed understanding of the Sixth Amendment repudiates the reasoning and rulings of earlier Tenth Circuit jurisprudence upon which the Government may rely and declares attempts to diminish the right to jury trial unconstitutional. It thus guides to only one conclusion; the jury is entitled to disclosure of probable penalties.

### The Framers Intent for Juries and Jury Nullification.

*The vitality of the right to jury trial.*

The Supreme Court often reminds us that the right to jury trial is essential to liberty. "The guarantees of a jury trial in the Federal and State Constitutions reflect

a profound judgment about the way in which law should be enforced and justice administered," Duncan v. Louisiana, 391 U.S. 145, 155 (1968), and there is no doubt that the jury trial is "fundamental to the American scheme of justice." Sullivan v. Louisiana, 508 U.S. 275, 277 (1993)(quoting Duncan, 391 U.S. at 149). Thus, this right was not incidentally included in our Constitution. Rather, "[t]hose who wrote our constitutions knew from history and experience that it was necessary to protect against unfounded criminal charges brought to eliminate enemies and against judges too responsive to the voice of higher authority." Duncan, 391 U.S. at 156. It "is no mere procedural formality, but a fundamental reservation of power in our constitutional structure. Just as suffrage ensures the people's ultimate control in the legislative and executive branches, jury trial is meant to ensure their control in the judiciary." Blakely, 542 U.S. at 306 (citing John Adams and Thomas Jefferson). "The very reason the Framers put a jury-trial guarantee in the Constitution is that they were unwilling to trust government to mark out the role of the jury." Id., 542 U.S. at 307. Yet the current lack of candor with the jury is precisely that; the Government delineating the role of the jury.

*The Framers understanding of the jury's role acknowledged that there be nullification of overly harsh sentencing.*

While the Government may insist the jury be removed from any determination of law, the Framers understood the opposite and would abhor attempts to limit its role in this way. The Framers saw the jury as a community body "to guard against a spirit of oppression and tyranny on the part of rules" and to act "as the great bulwark of our civil and political liberties." Booker, 543 U.S. at 239. The history they lived taught them that "other liberties would remain secure only so long as this palladium remains

4

sacred and inviolate, not only from all open attacks, (which none will be so hardy as to make) *but also from all secret machinations, which may sap and undermine it.*" Jones, 526 U.S. at 246 (emphasis added). A lack of candor with the jury concerning sentencing ramifications is just such a "secret machination" which will "sap and undermine" the sacred role of the jury.

The Framers would have labeled a system involving such jury ignorance as an affront to liberty because they distrusted the Government to outline the jury's role:

> Fear of unchecked power, so typical of our State and Federal Governments in other respects, found expression in the criminal law in this insistence upon community participation in determination of guilt or innocence.

Duncan, 391 U.S. at 156. The very "purpose of a jury is to guard against the exercise of arbitrary power-to make available the commonsense judgment of the community as a hedge against the overzealous or mistaken prosecutor and in preference to the professional or perhaps overconditioned or biased response of a judge." Taylor v. Louisiana, 419 U.S. 522, 531 (1975).

As the conscience of the community, traditionally, and particularly at the time of the Framers, the jury openly and honestly exercised nullification, primarily due to severe sentencing laws. Jones, 526 U.S. at 245 ("The potential or inevitable severity of sentences was indirectly checked by juries' assertions of a mitigating power when the circumstances...endowed a criminal conviction with particularly sanguinary consequences"). This historical role is once again of vital importance due to sentencing schemes of ever-increasing harshness in the modern age. It is this role,

defined by history, which the Supreme Court commands we not shy away from even if that has been established current practice.

*The words of the Framers praise an expanded jury role.*

In 1803, Alexander Hamilton recognized that juries necessarily decide law and fact in all criminal cases because "in criminal cases, the law and fact being always blended, the jury, for reasons of a political and peculiar nature, *for the security of life and liberty, is entrusted with the power of deciding both law and fact*." Sparf v. United States, 156 U.S. 51, 147 (1895)(Gray, J., dissenting)(quoting Alexander Hamilton)(emphasis added).

Another Framer, John Adams, stated the same in 1771, when he recognized the importance of jury nullification over the centuries and candidly admitted that juries decided law as well as fact through the general verdict power:

> Whenever a general verdict is found, it assuredly determines both the fact and the law. It as never yet disputed or doubted that a general verdict, given under the direction of the court in point of law, was a legal determination of the issue. Therefore, the jury have a power of deciding an issue upon a general verdict. And, if they have, is it not an absurdity to suppose that the law would oblige them to find a verdict according to the direction of the court, against their own opinion, judgment, and conscience?

Id., 156 U.S. at 143 (Gray, J., dissenting)(quoting John Adams).

Mr. Young submits that it would be unconstitutional to ignore the Framers' intent for the Sixth Amendment and to avoid candor with the jury in a manner which serves no purpose but to prevent their true understanding of the essence of the case before them. After all, the Framers would have demanded the opposite:

> By withdrawing from the jury the consideration of the essence of the charge, they render their function nugatory and contemptible.

> Those opinions [which devalue the role of the jury in determining law and fact and utilizing nullification] are repugnant to the more ancient authorities, which had given the jury the power, and with it the right, to judge of the law and fact, when they were blended by the issue, and which rendered their decisions in criminal cases final and conclusive.

Id., 156 U.S. at 149 (Gray, J., dissenting)(quoting Hamilton); see also Alexander Hamilton, *The Federalist No. 83*, 139 (Jacob E. Cooke ed., 1961) ("even if the jury has no right to set a general sentence, it must retain the power to veto a sentence in a particular case if its oversight function is to be fulfilled") and Sparf, 156 U.S. at 144 (Gray, J., dissenting) ("It is not only [the juror's] right, but his duty, in that case, to find the verdict according to his own best understanding, judgment, and conscience, *though in direct opposition to the direction of the court*")(quoting Adams)(emphasis added). Under the Framers understanding of the jury's role as defined by the Sixth Amendment, the current lack of candor would be seen as a dangerous step towards tyranny:

> The Founding Fathers knew that, absent jury nullification, judicial tyranny not only was a possibility, but was a reality in the colonial experience.
> Although we may view ourselves as living in more civilized times, there is obviously no reason to believe the need for this protection has been eliminated. Judicial and prosecutorial excesses still occur, and Congress is not yet an infallible body incapable of making tyrannical laws.

United States v. Datcher, 830 F.Supp. 411, 413 (M.D.Tenn.1993)*(*overruling implicitly recognized in United States v. Chesney, 86 F.3d 564, 574 (6th Cir.1995)).

As the Framers saw it, "nullification can and should serve an important function in the criminal process" because it uniquely "permits the jury to bring to bear on the criminal process a sense of fairness and particularized justice." United

7

States v. Dougherty, 473 F.2d 113, 1142 (D.C.Cir.1972) (Brazelon, J., concurring in part and dissenting in part). "When a jury refused to convict on the basis of what it thinks is an unjust law as applied, a misconceived prosecution, *or an excessive penalty*, it is performing exactly its role imposed by the Sixth Amendment."United States v. Polouizzi, 549 F.Supp.2d 308, 405 (E.D.N.Y.2008)(emphasis added), *overruled by* United States v. Polouizzi, 564 F.3d 142 (2nd Cir.2009).

The Jury Must Know the Harshness of the Sentence to Perform Its Constitutional Duty.

Historically, the common law jury, which became the basis for the Framers understanding of the Sixth Amendment, knew the consequences of its verdict, and often adjusted a verdict accordingly. See Sparf, 156 U.S. at 110-183 (Gray, J. dissenting); Dougherty, 473 F.2d at 1138-1144 (Bazelon, J., concurring in part and dissenting in part); Polouizzi, 549 F.Supp.2d at 402-450; Datcher, 830 F.Supp 411. This was largely based upon harsh mandatory sentences for certain offenses that were commonly known; felonies received death and all knew this. However, over time the criminal law became much more complex and the jury pool expanded in such a manner that jurors can no longer be expected to understand the consequences of their verdicts. Thus, under today's system, jurors lack the full understanding of the essence of the charges at issue in matters they are asked to decide. Continually depriving them of this information so denigrates their role that they become "no more than menial factfinders rather than spokespersons for the community, as *Gilliam* and the Sixth Amendment ruled they must be." Polouizzi, 549 F.Supp. 2d at 440. To deny the jury

8

this information "is to deny a defendant the full protection to be afforded by jury trial." Datcher, 830 F.Supp. at 415.

At the same time, the return of harsh sentences brings with it a return of the importance of jurors properly exercising their historical oversight role:

> …federal juries today again face-albeit often unknowingly-'either-or' choices similar to those facing the British and colonial juries of 1791. To fully exercise their historical function, juries today must understand the two eithers; they cannot rely on the court to mitigate because it is bound by the statutory minimum term of imprisonment.

Polouizzi, 549 F.Supp.2d at 420. The Jury must be permitted to exercise the control it did at the time the nation was founded, Blakely, 542 U.S. at 306, and to do so requires this information. Thus, keeping the jury ignorant on this matter is unconstitutional.

### *The Framers Trusted the Jury, and So Must We*

The current practice relies upon a simple proposition; that the jury cannot be trusted with information that might lead to nullification. This position "evinces a fear that the jury might actually serve its primary purpose, that is, it evinces a fear that the community might in fact think a law unjust." Datcher, 830 F.Supp. at 415.

Such a fear has no role in criminal proceedings as "the government, whose duty it is to seek justice and not merely conviction, should not shy away from having a jury know the full facts and law of a case." Id. "Trust in the jury is, after all, one of the cornerstones of our entire criminal jurisprudence, and if that trust is without foundation we must re-examine a great deal more than just the nullification doctrine." Dougherty, 473 F.2d at 1143 (Bazelon, J., concurring in part and dissenting in part).

As the Supreme Court recounted, the Framers were well aware of the path that tyranny could take even in America and they understood the true nature of the role of the jury as the communities last and best stand against it:

> The first object of any tyrant in [Washington] would be to make [Congress] utterly subservient to his will; and the next to overthrow or diminish trial by jury, for no tyrant could afford to leave a subject's freedom in the hands of twelve of his countrymen. So that trial by jury is more than an instrument of justice and more than one wheel of the constitution: it is the lamp that shows that freedom lives.

Duncan, 391 U.S. at 156, n. 23 (quoting P. Devlin, *Trial by Jury*, 164 (1956)). Any practice which maintains that jurors must remain sheltered from the sentencing consequences of the cases they determine is a dangerous step towards tyranny in this regard. The Framers would have scoffed at the notion that the jury has no role in protecting the people from unjust sentencing as a result of conviction, and this Court is bound by the Supreme Court to follow the Framers above all else.

It is important to recall that it was but a century before the adoption of the Constitution that a jury exercised its rights and determined that the charges against William Penn were inappropriate, although, by all accounts, the prosecution had proven all the necessary elements. *See* The King v. Penn and Mead, 1670. 22 Charles II. 6 How. 951. and Bushel's Case 1670. 22 Charles II. 6 How. 999. There is no question that the Framers were quite aware of these cases and their import when the Constitution was adopted.

> One of the seminal works on the development of the jury system opens with:
> *"For more than six hundred years - that is, since Magna Carta, in 1215 - there has been no clearer principle of English or American constitutional law, than that, in criminal cases, it is not only the right and duty of juries to judge what*

10

*are the facts, what is the law, and what was the moral intent of the accused; but that it is also their right, and their primary and paramount duty, to judge of the justice of the law, and to hold all laws invalid, that are, in their opinion, unjust or oppressive, and all persons guiltless in violating, or resisting the execution of, such laws.*

*Unless such be the right and duty of jurors, it is plain that, instead of juries being a "palladium of liberty" - a barrier against the tyranny and oppression of the government - they are really mere tools in its hands, for carrying into execution any injustice and oppression it may desire to have executed."*

LYSANDER SPOONER, AN ESSAY ON THE TRIAL BY JURY p. 5 (Boston, Jewett 1852)

If this was the understanding of the jury's role within the living memory of those whose efforts caused the adoption of the Constitution, how can it be said that it is now somehow necessary the jurors be held ignorant of the consequences of their decision?

**WHEREFORE**, the Defendant moves the Court for an Order permitting the jury to be informed of the potential consequences of its decision.

| | |
|---|---|
| This will certify that a copy of the foregoing was sent to all counsel of record on the _26th__ day of November_, 2018.<br>*Electronically Signed*<br>Counsel for Defendant | Respectfully Submitted,<br>*Electronically Signed*<br>Charles E. Knoblauch<br>1412 Lomas NW<br>Albuquerque, NM 87104<br>Phone: (505) 842-0392 |