**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                      No. CR 17-0694 JB

APACHE YOUNG,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Motion for Judgement of Acquittal, filed September 26, 2018 (Doc. 103)("Motion"). The primary issues are: (i) whether Plaintiff United States of America failed to establish that Defendant Apache Young had been convicted of a felony that would disqualify him from owning a firearm pursuant to 18 U.S.C. § 922(g)(1); and (ii) whether the United States was required to prove that the firearms in question were manufactured after 1898. The Court concludes that: (i) the United States established that Young had been convicted of a disqualifying felony, because the Stipulation that Young signed incorporated Young's Indictment, which referenced three qualifying felony convictions; and (ii) the United States was not required to prove that the firearms were manufactured after 1898, because the antique firearms exception is an affirmative defense that Young did not properly raise. Accordingly, the Court denies the Motion.

## PROCEDURAL BACKGROUND

On March 14, 2017, a federal grand jury returned an indictment charging Young with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). <u>See</u> Indictment at 1, filed March 14, 2017 (Doc. 2). The Indictment states, in relevant part, that,

> [o]n or about November 13, 2016, in Bernalillo County, in the District of New Mexico, the defendant, **APACHE YOUNG,** having been convicted of at least one of the following felony crimes punishable by imprisonment for a term exceeding one year: (1) receiving and transferring a stolen motor vehicle, (2) attempt to commit a felony, to wit robbery, (3) aggravated battery, knowingly possessed, in and affecting commerce, a firearm. In violation of 18 U.S.C. §§ 922(g)(l).

Indictment at 1 (emphasis in Indictment). The Court ordered the trial to commence on September 17, 2018. See Order to Continue at 2, filed September 7, 2018 (Doc. 69). Before trial, Young filed the Motion in Limine to Exclude Use of Prior Convictions. See Motion in Limine to Exclude Use of Prior Convictions at 1, filed September 11, 2018 (Doc. 78)("Convictions Motion"). The Convictions Motion states that Young "is willing to stipulate to his status of being a felon to satisfy a necessary element of the offense." Convictions Motion at 1 (citing Old Chief v. United States, 519 U.S. 172, 181 (1997)). Young remarks that his "criminal record is long and marked by violence. Amongst them are convictions for Attempted Robbery, Aggravated Battery, Robbery with a Weapon, Robbery and Assault and Battery with a Deadly Weapon." Convictions Motion at 1. Moreover, Young avers that the "nature of these prior convictions, is that they are inherently violent, and, highly prejudicial," and Young therefore requests that the Court exclude reference to Young's prior criminal record. Convictions Motion at 1. The United States responds that Young, "pursuant to Federal Rules of Evidence, Rule 609(a)(1), may be impeached by his prior felony convictions provided that the facts of the convictions and their attendant sentences are not referenced," because Young's impeachment's probative value "exceeds any derivative and collateral prejudicial effect." Response by the United States to the Defendant's Motions in Limine at 3, filed September 12, 2018 (Doc. 83). The Court held a pretrial conference and motion hearing. See Transcript of Hearing at 1:22-23 (taken

September 12, 2018)("Sep. 12 Tr.").[1]  At the hearing, the Court acknowledged that "we have two stipulations[2] . . . we have a stipulation that prior to November 13, 2016[,] that the [D]efendant had sustained a felony conviction."  Sep. 12 Tr. at 19:3-7 (Court).  The Court then instructed both parties to sign the Stipulations and to ensure that Young "knows exactly what he's been stipulated for."  Sep. 12 Tr. at 19:8-11 (Court).  Young relied that he would "take care of it." Sep. 12 Tr. at 19:12 (Knoblauch).  The parties then agreed to have the Court read the Stipulation to the jury, see Sep. 12 Tr. at 19:15-20:1 (Court, Spiers, Knoblauch), which, according to Young, gives it "a bit more authority," Sep. 12 Tr. at 19:3-7 (Knoblauch).  Young was tried on September 17, 2018.  See Clerk's Minutes for Proceedings Held Before District Judge James O. Browning: Jury Selection/Trial as to Apache Young held on 9/17/2018 and 9/18/2018 at 1, filed September 17, 2018 (Doc. 100)("Clerk's Minutes: Jury Selection/Trial").

In the United States' opening statement, the United States told the jury that the firearms in this case consist of: one Hi-Point .45 caliber semi-automatic pistol, one .30-06 rifle, and one shotgun.  See Excerpt -- Opening Statements and Closing Arguments at 9:4-7 (Spiers), filed October 3, 2018 (Doc. 110)("Statements/Arguments Tr.").  See also Excerpt -- Trial Testimony Only at 59:14-16 (Spiers), filed October 3, 2018 (Doc. 109)("Testimony Tr.")(identifying the rife as a .30-06 Remington and the shotgun as a 12-gauge Remington).  The United States further informed the jury that "you'll have two stipulations.  I may have mentioned it.  The Court will read you two stipulations: One, again, that he was a convicted felon on that date . . . .  Those . . . stipulations provide those elements for your satisfaction and your comfort."

---

[1]The Court's citations to the hearing transcript refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.
[2]The second Stipulation is that the firearms traveled in interstate commerce, see Clerk's Minutes: Jury Selection/Trial at 3, which Young does not contest in the Acquittal Motion.

Statements/Arguments Tr. at 9:21-10:6 (Spiers). In Young's opening statement, Young asserted that "[t]here are parts of this case that are cut and dry, the Government is right. Those are the parts that we have already stipulated to . . . . And that's because we don't want to waste your time with things that are very easy to decide and very straightforward." Statements/Arguments Tr. at 11:18-23 (Wernersbach).

After the parties' opening statements, the Court read to the jury the Stipulation regarding Young's felony conviction:

> Government's Exhibit one is [a] stipulation regarding prior felony convictions, . . . . [T]he part[ies] by and through their undersigned counsel stipulate and agree as follows[:] one[,] the defendant Apache Young prior to November 13, 2016[,] had been convicted of a crime punishable by imprisonment for a term exceeding one year, that is a felony offense as charged in the indictment of this case. And then[,] two[,] this stipulated fact is proved beyond a reasonable doubt and may be read to the jury at trial. This stipulation also release[e]s [the] Government [from] its burden of proof with regard t[o] t[he] defendant's status as a felon at the time relevant t[o] t[he] charge contained in the indictment. Acknowledged to agreed and stipulated. Mr. Apache Young, the defendant has signed it dated the [1]2[th] of [September] 2018 . . . Charles E [Knoblauch] counsel for the defendant signed the [unintelligible] 2018[,] and Paul H [Spiers] [A]ssistant U.S. Attorney has signed the [unintelligible] September 12, 2018.

Trial Transcript -- Day 1 at 172:6-173:2 (Court)("Trial Tr.").[3] See Clerk's Minutes: Jury Selection/Trial at 3 ("Court reads 2 stipulations, exhibit 1 and 2.").

In the United States' case in chief, the United States called Task Force Officer Timothy Hotle. See Excerpt -- Trial Testimony Only at 59:14-16 (Spiers), filed October 3, 2018 (Doc. 109)("Testimony Tr."). Hotle testified that he test fired the three firearms in this case, and that each firearm functioned as designed. See Testimony Tr. at 61:19-62:15 (Spiers). On cross-examination, Young questioned Hotle about the pistol's firing mechanism. See Testimony Tr. at

_____

[3]The Court's citations to the trial transcript refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

64:2-23 (Knoblauch).  Young stated:

> Knoblauch: Okay.  That's kind of an old system; is that right?

> Hotle:  What do you mean by "old"?

> Knoblauch:  It's not something -- semi-automatic pistols weren't invented yesterday, were they?

> Hotle: No, not yesterday.

> Knoblauch: Quite a long time ago; is that right?

> Hotle: I'm not sure when they were invented.

> Knoblauch: Is that what you would call an expensive type of gun, or --

> Hotle: Like what the value of this would be?

> Knoblauch: Yeah.

> Hotle: No, Hi[-]Points are generally cheaper firearms.

Testimony Tr. at 65:2-15 (Knoblauch, Hotle).

> Knoblauch:  Now, let me see: These other two items are made by Remington; is that right?

> Hotle: They're both Remingtons, yes.

> Knoblauch: Now, Remington is a company in New York; is that correct?

> Hotle: Yes, New York or New Jersey.

> Knoblauch: And do you know anything about the history of Remington?

> Hotle: No.

> Knoblauch: You don't know it's been around for a couple hundred years?

> Hotle: I couldn't tell you.  I don't collect guns.  I'm not like a gun enthusiast, per se.  I'm just experienced with them.

Testimony Tr. at 67:7-20 (Knoblauch, Hotle).  Young further questioned Hotle about the pistol's

firing mechanism:

Knoblauch: Pushing towards the back. That's what operates the mechanism?

Hotle: Yes.

Knoblauch: And that's -- again, it's an old system; is that right?

Hotle: I don't know when it was -- I don't know. I don't know when it came into invention. Old is -- I mean, old to you is different from what's old to me, so I don't know.

Knoblauch: I see.

Hotle: It's been around for a while. I mean, I don't know. I'm not sure what you want me to answer on this. I don't know when it was invented, and I don't know how old it is.

Testimony Tr. at 72:13-73:1 (Knoblauch, Hotle).

At the close of the United States' case, Young made an oral motion pursuant to rule 29 of the Federal Rules of Criminal Procedure. See Trial Tr. at 241:23-24 (Knoblauch). Young asserted that, "although there has been information brought before the Court and the jury that Mr. Young is a felon," the United States failed to indicate that Young's specific felony conviction deprived him of his right to own a firearm. Trial Tr. at 242:3-9 (Knoblauch). Young referenced § 921(a)(20)(A), which disqualifies felonies related to the regulation of business practices from § 922(g)(1)'s firearms' prohibition, and stated that the government offered no proof that "Young's disabling felony was not an antitrust violation or trade practices or restraint of trade." Trial Tr. at 242:10-21 (Knoblauch). Moreover, Young argued, the United States failed to prove that Young's felony "has not been set aside," pursuant to United States v. Essick, 935 F.2d 28, 31 (4th Cir. 1991), which requires the United States to prove that Young's prior felony conviction was not one that allows for the restoration of his civil right to possess a firearm. Trial Tr. at 242:22-243:4 (Knoblauch).

Young also asserted that the United States failed to establish that the firearms in this case conform to the statutory definition of a firearm, because, pursuant to 18 U.S.C. § 921(a)(20)(A),

a "firearm" does not include an antique firearm manufactured before 1898, and, according to Young, the firearms could have been manufactured before 1898. See Trial Tr. at 243:5-10 (Knoblauch). Hence, Young requested that the Court dismiss the case. See Trial Tr. at 242:3-243:13 (Knoblauch).

The United States replied that, in Young's Convictions Motion, Young cited "a roster of prior felony convictions[,] all of which qualify" for prosecution pursuant to the statute. Trial Tr. at 243:17-22 (Spiers). Young thus "acknowledged that he has sustained those convictions, and as a result he's taken the position that they are in fact . . . qualifying prior felony convictions." Trial Tr. at 243:24-244:2 (Spiers). In response to Young's antique firearms argument, the United States asserted that, based on the firearms appearance, and Hotle's ability to test fire them, "anybody . . . can make a reasonable inference by circumstantial evidence that these firearms do in fact qualify for prosecution of this case." Trial Tr. at 244:4-12 (Spiers).

Young rebutted that the United States "is way off base here as far as looking at the firearm and determining whether or not they're made after 18[]98," because each of the three firearms "uses a mechanism which was in use in . . . 189[8] . . . and before." Trial Tr. at 244:15-20 (Knoblauch). According to Young, Hotle "conceded that he could not tell the age of these firearms," which "alerted" the United States to the possibility that the firearms' manufacture predated 1898. Trial Tr. at 244:20-25 (Knoblauch).

The Court stated that it was not going to grant Young's rule 29 motion "at the present time." Trial Tr. at 245:2-3 (Court). The Court acknowledged that it had never heard, in any prior felon-in-possession case, Young's two arguments at the rule 29 stage and, therefore, needed to give the matter some thought. See Trial Tr. at 245:3-5 (Court). The Court concluded that the United States Court of Appeals for the Tenth Circuit's pattern jury instructions which discuss

antique firearms do not state a specific manufacture date. See Trial Tr. at 245:6-11 (Court). Similarly, the Court concluded that the Tenth Circuit's pattern jury instructions for disabling felonies "just gives a definition of felonies, it doesn't leave it . . . t[o] [the] jury to determine whether there is a qualifying felony or not." Trial Tr. at 245:11-14 (Court). The Court stated that it would further analyze Young's rule 29 arguments "and see whether they may require [the Court] to set aside any verdict." Trial Tr. at 245:16-18 (Court).

The United States added that "there were motion deadlines in place in this case, and if the [D]efendant felt sufficiently aggrieved by the prosecution of this case, there was ample time to file a motion to dismiss. And that motion never came." Trial Tr. at 246:13-17 (Spiers). Moreover, according to the United States, Hotle testified that the .45 caliber pistol "was basically a cheap gun, not that expensive," and, had the firearm been an antique, Hotle would have given it a higher valuation. Trial Tr. at 246:18-25 (Spiers).

Young declined to present witnesses or evidence in his defense. See Trial Tr. at 247:4-9 (Knoblauch). Thereafter, the Court instructed the jury as to the elements of Young's charge:

> Mr. Young is charged with a violation of 18 [U.S.C.] Section 922(g)(1). This law makes it a crime for any [person] tha[t] has been previously convicted in any [c]ourt of a felony to knowingly possess any firearm in or [a]ffect[ing] interstate commerce. To find Mr. Young guilty of this crime you must be convinced that the Government [has] proved each of the following beyond a reasonable doubt[:] First, Mr. Young knowing[ly] . . . possessed a firearm[;] . . . second[,] Mr. Young was convicted of a felony[,] that is a crime pun[ishable] by . . . [imprisonment] for a term exceeding one year[,] before he possessed the firearm[;] and[,] third[,] before Mr. Young possessed the firearm, the firearm moved at some time from one state to another.

Trial Tr. at 266:19-267:7 (Court). Furthermore, in reading to the jury from the Tenth Circuit's pattern jury instructions, the Court informed the jury that "[a] firearm[], however, does not include an antique firearm." Trial Tr. at 267:13-14 (Court).

In his closing argument, Young reminded the jury that the "burden is on the Government to establish every single element beyond a reasonable doubt."  Statements/Arguments Tr. at 22:10-13 (Knoblauch).  Moreover, Young "conceded that he was convicted of a felony. . . .  Lots of people are convicted of a felony.  He was convicted of a felony."  Statements/Arguments Tr. at 22:13-15 (Knoblauch).  In discussing the possession element, Young asserted that

> it does not include an antique firearm.  Every single one of these firearms here could have been an antique firearm.  They could have been made -- okay, let me read you the definition of an antique firearm.  According to federal law, antique firearm means, "Any firearm manufactured in or before 1898."

Statements/Arguments Tr. at 22:20-23:2 (Knoblauch).  The United States objected, arguing that "[t]he law comes from . . . the Court . . . [a]nd any outside reference to the law is prohibited."  Statements/Arguments Tr. at  23:3-5 (Spiers).  The Court overruled the objection, because the Court instructed the jury about the antique firearms exception.  See Statements/Arguments Tr. at 23:6-8 (Court).  Young continued:

> Every single one of those firearms has a mechanism which was invented way before 1898.  The pistol, the rifle, the shotgun, every single one of those has a very, very old type of mechanism.  Could it have been made before 1898?  Yeah.  The burden is on the Government to prove that these weapons, any single one of these things, was made after 1898.  Have they done that?  Have they brought out any testimony?  On cross-examination, I asked Officer Hotle what he knew.  He said, ["]Well, they could be old.  I don't know.["] He doesn't have enough education on this matter.  The burden is on the Government to prove that.  Have they done that?  No.

Statements/Arguments Tr. at 23:9-22 (Knoblauch).

The United States, in its closing argument, responded to Young's antiques firearms defense by instructing the jury to evaluate the firearms and reach its own conclusions:

> You can take a look at them yourselves and determine, using your common sense, whether they qualify for antiques.  Task Force Officer Hotle testified about the .45 caliber semi-automatic Hi[-]Point, that it was of de minimis value.  If it was an antique and it was advertised on the Antique's Road Show on channel 5, PBS, it would, if it was really an antique, be valued at considerably more than de minimis value.

But you can take a look at the firearms yourself, and use your common sense as to whether they were antiques or not. And then again, why would somebody, if they were using a firearm for protection, indulge in the luxury of being out on the West Mesa[4] with a firearm that was regarded as an antique, and in that sense be hopelessly compromised as if it would work effectively each time it was meant to be discharged. So I would disqualify that. I would suggest that you do as well.

Statements/Arguments Tr. at 24:18-25:11 (Spiers). Moreover, in discussing the offense elements, the United States asserted that Young "was a convicted felon. You know that. That was conceded and stipulated to." Statements/Arguments Tr. at 27:14-15 (Spiers).

After two days of deliberations, the jury failed to reach a unanimous verdict. See Clerk's Minutes: Jury Selection/Trial at 5-6. Therefore, on September 18, 2018, the Court declared a mistrial. See Clerk's Minutes: Jury Selection/Trial at 6. See also Order of Mistrial, filed September 19, 2018 (Doc. 97)("[A] Mistrial is declared as to the Indictment.").

### 1. Acquittal Motion.

In his Acquittal Motion, Young first argues that his "oral Motion for Judgement of Acquittal at the close of the Government's case on 17 September, 2018," was predicated on the United States' failure "to bring forth sufficient evidence to sustain a conviction." Acquittal Motion at 1. Young contends that, at the close of the United States' case,

the following was established without question: a. That the Defendant had been convicted of a felony prior to the 13th of November, 2016, although the nature of the felony was not brought into evidence; b. [t]hat the said firearm had been in interstate commerce; c. [t]hat all of the above occurred in the District of New Mexico on or about the 13th of November, 2016.

---

[4]The West Mesa, where law enforcement arrested Young for the offense of which he is being prosecuted, is a desolate area west of Albuquerque, New Mexico. See Transcript of Motion to Suppress Proceedings at 3:2-3 (held June 26, 2018), filed August 10, 2018 (Doc. 59). See also "West Mesa," Wikipedia, available at https://en.wikipedia.org/wiki/West_Mesa ("The West Mesa is an elevated landmass lying west of the Rio Grande stretching from south of Albuquerque northward to Bernalillo.").

Acquittal Motion at 1. Young reminds the Court that, although <u>Glasser v. United States</u>, 315 U.S. 60 (1942), requires the Court to view the evidence in a light most favorable to the United States, "if the evidence gives 'equal or nearly equal circumstantial support to [a] theory of guilt and a theory of innocence, then a reasonable jury must necessarily entertain a reasonable doubt' and the Court should enter an acquittal." Acquittal Motion at 2 (quoting <u>United States v. Glenn</u>, 312 F.3d 58, 70 (2d Cir. 2002)).

Young contends that, "[c]ontrary to popula[r] conceptions, all felony convictions do not disqualify a person from owning a firearm." Acquittal Motion at 2. According to Young, the "plain language" exempting "offenses relating to the regulation of business practices" from the phrase "crime punishable by imprisonment for a term exceeding one year" indicates that the United States bears the burden to prove that Young's prior felony conviction was not "one for which the civil right to possess a firearm has not been restored." Acquittal Motion at 2. According to Young, "the government's proof failed." Acquittal Motion at 2 (citing <u>United States v. Essick</u>, 935 F.2d 28, 31 (4th Cir. 1991)).

Young further contends that "the Government's expert witness Detective Timothy Hotle . . . conceded that the firearms in question could be old, but he was unable to state how old." Acquittal Motion at 3. According to Young, "18 U.S.C. §921 (a)(3) excepts a firearm from being an article whose possession is banned for prohibited persons if it was manufactured before 1899." Acquittal Motion at 3. Because the United States failed to establish that Young had been convicted of a disqualifying felony, and failed to establish that the firearms were manufactured after 1898, Young therefore requests that, the Court enter a judgement of acquittal. <u>See</u> Acquittal Motion at 3.

2.      **Acquittal Response.**

The United States responds.  See Response by the United States to the Defendant's Motion for Judgement of Acquittal, filed October 5, 2018 (Doc. 112)("Acquittal Response"). First, the United States asserts, according to its understanding of Young's Acquittal Motion, that Young

> claims that the United States failed to prove that the Defendant's prior felony convictions -- convictions for Attempted Robbery, Aggravated Battery, Attempted Robbery with a Deadly Weapon, Assault and Battery with a Deadly Weapon (two counts), Robbery with a Weapon and Attempted Robbery with a Firearm - felony convictions which are identified both in the Defendant's Form 13 Presentence Report (Doc. 18 ) and in the Defendant's own motion in *limine* by which he successfully avoided their damaging mention at trial (Doc. 78)[] -- were not for regulation of business practices felonies.

Acquittal Response at 1.  The United States reminds the Court that, for trial purposes, Young "stipulated that he had sustained a felony conviction prior to November 13, 2016 -- the offense date alleged in the indictment upon which he went to trial."  Acquittal Response at 2.  The United States asserts that Young never argued that his felony convictions failed to qualify him for prosecution under 18 U.S.C. § 922(g)(1).  See Acquittal Response at 2.  Moreover, according to the United States, Young's pre-trial efforts to exclude references to his prior convictions at trial indicates that Young recognized that the nature of his convictions could prejudice the jury against him.  See Acquittal Response at 2.  According to the United States, the Tenth Circuit's opinion in United States v. Flower, 29 F.3d 530 (10th Cir. 1994), is unhelpful to Young, because the Tenth Circuit in United States v. Flower states that, "if a defendant believes that one of the prior convictions that the government seeks to use as a predicate conviction under § 922(g)(1) does not meet the legal definitional requirements of § 921(a)(20), it will be up to the defendant to challenge the admissibility of such conviction."  Acquittal Response at 2 (quoting United States v. Flower, 29 F.3d at 535-36). The United States argues that, in this case, Young could have contested "the legitimacy of the predicate felony convictions" by filing a pre-trial motion "pursuant to Rule 12(B)(iii) and (v) of the

Federal Rules of Criminal Procedure," but "declined to follow the blueprint of the rule." Acquittal Response at 2-3. Instead, according to the United States, Young waited until his closing argument to advance this theory, despite stipulating to "having sustained a felony conviction, a conviction(s) which was well-understood as the relevant and operative predicate to the trial." Acquittal Response at 3. This tactic, according to the United States, evidenced Young's goal to "accomplish sanitizing damage control by way of stipulation so as to avoid specific mention of [his predicate felony convictions'] non-business, antitrust regulation nature." Acquittal Response at 3. The United States avers that rule 12(b)(3) of the Federal Rules of Criminal Procedure affirmatively requires Young "to make a pre-trial motion to state a claimed defect in the indictment for lack of specificity or for failure to state an offense," and that Young failed to abide by this mandate. Acquittal Response at 3.

Moreover, United States v. Basnett, according to the United States, is unhelpful to Young, because, in rejecting the appellant's antique firearm defense, the Tenth Circuit in United States v. Basnett noted that "every appellate court that has considered the issue, held that the antique exception for firearms in prosecution of felon in possession of a firearm cases is an affirmative defense rather than an element of the crime and an affirmative defense for which the defendant bears the burden of producing evidence." Acquittal Response at 3 (citing United States v. Basnett, 735 F.3d 1255, 1258 (10th Cir. 2013)("Every circuit court of appeals to consider the issue has treated the antique exception as affirmative defense.")). The United States cites three additional federal Courts of Appeals decisions which conclude that the antique-firearm exception is treated as an affirmative defense and not as an element of the crime. See Acquittal Response at 4 (citing Gil v. Holder, 651 F.3d 1000, 1005 n.3 (9th Cir. 2011); United States v. Lawrence, 349 F.3d 109, 122 (3rd Cir. 2003); United States v. Neal, 692 F.2d 1296, 1303-04 (10th Cir. 1982)).

The United States asserts that Young failed to provide evidence that the firearms were antique, as an affirmative defense case requires. Moreover, although the United States maintains that

it did not have the burden to establish that the firearms in question were not antique, the jury

nevertheless could infer this fact beyond a reasonable doubt, because Hotle testified that the firearms

"test-fired without issue" and that the .45 caliber firearm "was relatively inexpensive." Acquittal

Response at 4. The jury could further infer that the .45 caliber firearm is not an antique,

according to the United States, based on "its non-antique appearance." Acquittal Response at 4.

The United States, therefore, requests that, because Young did not "express these grievances by

way of a pre-trial motion . . . and to bear the burden of proving any affirmative defense that he

perceived as having merit," the Court should deny the Acquittal Motion. Acquittal Response at 4.

    **3.**     **Acquittal Reply.**

Young answers the United States' Response. See Defendant's Answer to Plaintiff's

Response to Defendant's Motion for Judgement of Acquittal, filed October 11, 2018 (Doc. 113)

("Acquittal Reply"). In the Acquittal Reply, Young first contends that the United States,

according to Young, "seems to assert that any information of evidence that possibly could have

been adduced at trial is sufficient to overcome a motion based on Rule 29." Acquittal Reply at 1.

According to Young, rule 29 "refers only to what was brought forth at trial" and that "[t]he clear

import of this Rule is that it is evidence which has been presented to the jury, not whatever

evidence that might exist anywhere in the universe." Acquittal Reply at 1. Thus, according to

Young, the Court may disregard the United States' argument that "the Court should consider

matters which were not fairly put before the jury." Acquittal Reply at 1.

Young contends that the United States' argument that the United States is not required to

prove that the firearms "were firearms as defined by Congress" cannot succeed, because the

United States "fails to recognize that the burden shifted" once Young established that the

firearms "could, indeed, be old weapons." Acquittal Reply at 1-2. Young contends that the

burden shifted when Hotle was "unable to testify as to [the firearms'] antiquity due to his lack of

expertise," which, according to Young, was sufficient to put the United States on notice of its burden "to establish that the firearms were manufactured after 1898." Acquittal Reply at 2. The United States' failure to carry its burden, Young contends, "cannot be laid on the Defendant. It is certainly not his burden to ensure he is convicted in an orderly manner." Acquittal Reply at 2.

In response to the United States' argument that the firearms were not antique, because the firearms functioned, were inexpensive, and had a non-antique appearance, Young counters that "[a]ntique firearms also function, may be cheap, and appearances are not at issue, it is proof of the date of manufacture which can be dispositive." Acquittal Reply at 2. In support of this assertion, Young directs the Court to a website that, according to Young, discusses antique firearms. Acquittal Reply at 2 (citing https://www.antiquegunlist.com/home/1870-1898/hand-guns). Young further directs the Court to two exhibits that, according to Young, describe "pre-1899 firearms with the same mechanisms as those firearms in evidence." Acquittal Reply at 2 (citing Gewehr 1888 -- Wikipedia, filed October 11, 2018 (Doc. 113-1); Model 1893 Shotguns -- Winchester Collector, filed October 11, 2018 (Doc. 113-2)).

### 4. The Hearing.

The Court held a hearing. See Transcript of Hearing at 1:22-23 (taken October 16, 2018)("Oct. 16 Tr.").[5] Young began by discussing "the nature of the felony conviction," and that, pursuant to Old Chief v. United States, Young and the United States decided to enter a stipulation that Young is a felon. See Oct. 16 Tr. at 2:20-24 (Knoblauch). Young asserted that the United States drafted the Stipulation and that Young agreed to it. See Oct. 16 Tr. at 2:24-3:1 (Knoblauch). Young argued that the United States bears responsibility for not describing Young's felony conviction with specificity, thereby "failing to adequately draft the stipulation."

---

[5]The Court's citations to the hearing transcript refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

Oct. 16 Tr. at 3:1-5 (Knoblauch). Young reminded the Court that certain felonies "do not qualify . . . for purposes of the firearms act." Oct. 16 Tr. at 3:6-9 (Knoblauch). Young argued that, pursuant to 18 U.S.C. § 921, "bank fraud any sort of things like that . . . . are not . . . the sort of thin[g] that will disqualify somebody from owning a firearm." Oct. 16 Tr. at 3:11-14 (Knoblauch). Young contends that

> basically the evidence that was presented to the Court was just that Mr. Young had been convicted of a felony on that date. Not the nature of the felony, not the type of felony. Not that the felony was a felony that would disqualify him from owning a firearm. Basically there is not sufficient evidence brought before the Court that Mr. Young was indeed disqualified from owning a firearm.

Oct. 16 Tr. at 3:15-22 (Knoblauch).

Young contended that the United States misinterprets "the standard" by asserting the self-evident nature of the fact that Young's prior convictions were disqualifying. See Oct. 16 Tr. at 3:22-4:1 (Knoblauch). Young argued that the offense element requires that evidence of a disqualifying conviction "be brought before the decider of fact . . . . Not just anything in the whole universe of facts that could be out there." Oct. 16 Tr. at 4:2-5 (Knoblauch). Young concluded by arguing that the United States failed to "bring forth any sort of evidence that [Young's conviction] was a disqualifying felony." Oct. 16 Tr. at 4:6-9 (Knoblauch).

The Court asked what language, in Young's view, the United States should have included in the Stipulation to satisfy its requirement to prove each element of Young's charge. See Oct. 16 Tr. at 4:10-14 (Court). Young responded that, after the trial, he suggested to Assistant United States Attorney Paul Spiers that any future stipulation merely state "a felony that would disqualify[] him from owning a firearm." Oct. 16 Tr. at 4:18-19 (Knoblauch). According to Young, "[j]ust putting that information in there would have been sufficient." Oct. 16 Tr. at 4:15-21 (Knoblauch). The Court asked whether the language would say: "a felony that would disqualify him." Oct. 16 Tr. at 4:22-24 (Court). Young responded in the affirmative. Oct. 16

Tr. at 4:25 (Knoblauch).

The Court stated that Young's argument gives the Court "pause," because the Tenth Circuit's standard jury instruction does not address either Young's qualifying-felony argument or his antique-firearm-exception argument. Oct. 16 Tr. at 5:2-7 (Court). Young responded that the Court's observation should not foreclose Young's arguments, because "a new issue is a new issue, and . . . could possibly cause the Tenth Circuit to redraft their instructions." Oct. 16 Tr. at 5:8-13 (Knoblauch).

The Court asked about the Stipulation's specific language. See Oct. 16 Tr. at 5:18-21 (Court). Young replied that the Stipulation's language "is that on the 13[th] of November, 2016, Mr. Young had been convicted of a felony." Oct. 16 Tr. at 5:22-25 (Knoblauch). The Court then asked whether Young's suggested stipulation language "is more prejudicial or prejudicial to Mr. Young in any way." Oct. 16 Tr. at 6:6-9 (Court). Young responded in the negative and asserted that

> until 1968 there is no general federal statute pro[hibiting] felons from [ow]ning firearms. In 1968 [Congress] passed the gun control act which redid a lot of things. Prior to that anyone who is a felon[] could still own a firearm un[der] federal law unless they are convicted of a violent felony. I don't know what the jury instructions were prior to [']68, but they could have been something along those lines.

Oct. 16 Tr. at 6:9-18 (Knoblauch).

The United States asserted that "the stipulation said a lot more than Mr. Knoblauch just said to the Court," specifically,

> [i]t says the parties by and through their undersigned counsel stipulate and agree as follows[:] [O]n[e] the defendant Apache [Y]oung prior to November 13, 2016[,] had been convicted of a crime punishable by imprisonment for a term exceeding one year. That is a felony offense as charged in the indictment of this case.

Oct. 16 Tr. at 6:23-7:8 (Houghton). The United States averred that, "by saying [']as charged in

the indictment in this case,[']" the Stipulation "incorporated" Young's prior disqualifying felonies, which the Indictment referenced with specificity.  Oct. 16 Tr. at 7:17-20 (Houghton). The United States then quoted from the Indictment, which references Young's prior convictions for receiving and transferring a stolen motor vehicle, attempted robbery, and aggravated battery. See Oct. 16 Tr. at 7:20-8:1 (Houghton).  The Court asked whether the United States was reading from the Indictment, see Oct. 16 Tr. at 8:2-3 (Court), and the United States responded in the affirmative, "because the stipulate[ion] specifically references the indictment.  The Stipulation says that Mr. Knoblauch and Mr. Young are agreeing that Mr. Young was convicted of a crime that is a felony as charged in the indictment in this case," Oct. 16 Tr. at 8:4-9 (Houghton).  The United States finished quoting from the Indictment, specifically the portion that references Young's aggravated battery conviction, and asserted that the Stipulation's Indictment incorporation "should end the matter there."  Oct. 16 Tr. at 8:12-14 (Houghton).  As further support for its position that the Stipulation incorporated the Indictment, the United States quoted from the Stipulation's second paragraph, which states that "this stipulated fact is proved beyond a reasonable doubt and may be read to the jury at trial.  This stipulation also relieves the Government of its burden of proof with regard to the defendant's status as a felon at the time relevant to the charge contained [in] the indictment."  Oct. 16 Tr. at 8:16-21 (Houghton).  The United States asserts that the Stipulation's second paragraph again references the Indictment and "again the indictment as the Court knows referenced three crimes, none of which are the crimes that Mr. Knoblauch now says are exceptions."  Oct. 16 Tr. at 8:22-25 (Houghton).  Thus, according to the United States, "that should end the matter there."  Oct. 16 Tr. at 9:1-2 (Houghton).

Young conceded that the United States made "a really good argument"; however, Young reasserted that the Stipulation's language "does not say one of the felonies charged in the indictment. It just refers to a felony in the indictment[,] not to a specific felony . . . and not to any disqualifying f[elony]." Oct. 16 Tr. at 9:14-19 (Knoblauch). The Court asked whether the Stipulation's language released the United States from its burden to prove that offense element, i.e., whether the Stipulation "took [the element] away from the jury and they didn't think about what felonies Mr. Young had committed." Oct. 16 Tr. at 9:21-10:3 (Court). Young replied that "it's a problem with the drafting of the stipulation" and that, if the United States "drafted differently[,] we wouldn't be here at all." Oct. 16 Tr. at 10:4-6 (Knoblauch). Young added that he is "willing to stipulate to something . . . pursuant to Old Chief[v. United States] that would cut any sort of advantage to Mr. Young within the ethical bounds." Oct. 16 Tr. at 10:7-10 (Knoblauch).

The Court then considered Young's antique-firearm exception arguments and asked whether Young agreed with the United States that Tenth Circuit caselaw "makes this an affirmative defense[.]" Oct. 16 Tr. at 10:17-20 (Court). Young responded that the burden shifts to the United States once the firearm's age is raised, which occurred "with every single one of these firearms on the cross-examination . . . [o]f Hotle." Oct. 16 Tr. at 10:22-11:2 (Knoblauch). Young asserted that, at trial, he mentioned that one of the firearm's manufacturers "had been in existence for a couple hundred years" and that "the witness" was unable to confirm whether that factual assertion is true. Oct. 16 Tr. at 11:3-8 (Knoblauch). The Court asked about "the fact that the firearm was introduced itself, it was visible to the jury, it was taken back to the jury room, is that not enough to let the jury look at it and determine that that's not an antique firearm?" Oct. 16 Tr. at 11:9-13 (Court). Young replied that the firearms' age is "a matter for expert

opinion at that point," because, for example, Young has provided the Court with material that references a firearm manufactured before 1899 which "uses exactly the same mechanism as the firearm that was introduced into evidence." Oct. 16 Tr. at 11:14-21 (Knoblauch). The Court stated that "[i]t may be the same mechanism, but . . . it didn't seem to be an old looking gun." Oct. 16 Tr. at 11:22-24 (Court). Young directed the Court to compare the provided reference materials with the Court's memory of the pistol that was introduced into evidence and argued that "basically it's the same thing it's got a handle[,] it's got a barrel. It's got a trigger . . . . essentially any differences are really minor." Oct. 16 Tr. at 12:3-8 (Knoblauch). Young concluded by reasserting that, once he raised the firearm age issue, the United States should have called a witness to confirm that the firearms were manufactured after 1899. Oct. 16 Tr. at 12:11-16 (Knoblauch).

The United States asserted that Young's representations confirm that the antique-firearm exception is an affirmative defense pursuant to Tenth Circuit caselaw and directed the Court to United States v. Basnett, which, according to the United States, may assist the Court in its analysis of a defendant's affirmative defense requirements. See Oct. 16 Tr. at 12:20-13:9 (Houghton). According to the United States, the Tenth Circuit in United States v. Basnett "considered this very issue" and concluded that, similar to the exclusion built into the statutory definition of "firearm" in United States v. Neal, the antique firearm provision is a statutory exception, which requires the defendant to raise it as an affirmative defense. Oct. 16 Tr. at 13:8-22 (Houghton). The Court stated that it understood Young's representations as agreeing with the United States that the antique-firearm exception is an affirmative defense, but that Young asserted that he properly raised the defense on cross examination of the United

States' firearms' expert, which shifted the burden to the United States to prove that the affirmative defense was inapplicable. See Oct. 16 Tr. at 13:23-14:5 (Court).

The United States agreed with the Court's summary of Young's argument and added that, based on its analysis of the trial transcript and contrary to Young's assertions, "Young never asked Hotle's opinion as to the firearms' age." Oct. 16 Tr. at 14:14-19 (Houghton). Instead, according to the United States, Young asked: "'[O]kay, that's kind of an old system, is that right?' And so he's talking about the system, the mechanism . . . semi-automatic pistols in general. . . . [E]ven the question itself wasn't clearly about the firearm's age." Oct. 16 Tr. at 14:18-24 (Houghton). The United States, asserted furthermore that the trial transcript contains "no mention of antique firearms. [Young] doesn't ever once say 'couldn't this be an antique firearm[?] Isn't this an antique firearm here, isn't this firearm, couldn't it have been made before 1898[?']  You will find no questions like that." Oct. 16 Tr. at 14:24-15:24 (Houghton). According to the United States, Young references the similarities between only the two firearms' firing mechanisms, which says nothing about the firearms' age in this case. See Oct. 16 Tr. at 15:5-8 (Houghton).

For further guidance on the requirements to raise an affirmative defense, the United States directed the Court to two out-of-circuit opinions: United States v. Royal, 731 F.3d 333, 333 (4th Cir. 2013), and United States v. Lawrence, 349 F.3d 109, 109 (3rd Cir. 2003). See Oct. 16 Tr. at 15:13-19 (Houghton). According to the United States, the United States Court of Appeals for the Fourth Circuit in United States v. Royal, which involved whether ammunition was made exclusively for antique firearms or whether it could be for modern use, concluded that cross-examination of a government witness could raise an affirmative defense, stating: "[I]t's not a very high burden for a defendant to meet," but "simply asking questions about where the

ammunition was located[,] in that case in an antique firearm, was not enough to raise an affirmative defense." Oct. 16 Tr. at 15:17-16:15 (Houghton). The United States quoted extensively from the Fourth Circuit's opinion in <u>United States v. Royal</u>, specifically that the Fourth Circuit determined "that the jury could reasonably have concluded that .32 caliber rounds manufactured by well-known firearms companies were designed for use in any firearm," despite the United States' failure to "present evidence specifically going to the ammunition's design," because "most people are familiar with the appearance of modern ammunition." Oct. 16 Tr. at 16:22-17:8 (Houghton)(quoting <u>United States v. Royal</u>, 731 F.3d at 339).

According to the United States, the Fourth Circuit further elaborated on the affirmative defense requirement when it stated that, "because the jury ultimately did not hear even a scintilla of evidence to suggest that the rounds were designed for use exclusively in an antique firearm, Royal was not entitled to have it consider the issue as an affirmative defense." Oct. 16 Tr. at 17:8-15 (Houghton)(quoting <u>United States v. Royal</u>, 731 F.3d at 339). The United States suggested that the <u>United States v. Royal</u> paragraph which discusses .32 caliber ammunition manufactured by Remington and Winchester speaks directly to the Court's comment in this case that the firearms were "given to the jury and had a modern look to them." Oct. 16 Tr. at 17:16-18:6 (Houghton). The United States added that the firearms have serial numbers and do not resemble the firearms in the reference materials which Young submitted to the Court. <u>See</u> Oct. 16 Tr. at 17:24-18:2 (Houghton). The United States averred that the jury could also have relied on the testimony that the .45 caliber pistol was test fired to conclude that the firearms were not antique. <u>See</u> Oct. 16 Tr. at 18:7-11 (Houghton). The United States concluded its argument by reasserting that Young's questions about the firearms' mechanical composition were insufficient

to raise an affirmative defense, as the federal appellate opinions that address this issue require. See Oct. 16 Tr. at 18:12-16 (Houghton).

The Court then asked whether Young would object to the Court reexamining the firearms and comparing them to Young's antique-firearms reference materials. See Oct. 16 Tr. at 18:18-21 (Court). Young responded in the negative. See Oct. 16 Tr. at 18:22 (Knoblauch). The Court then requested that the United States bring the firearms and photographs of the firearms to the Court for the Court's review. See Oct. 16 Tr. at 18:23-19:4 (Court). The United States responded that it would comply with the Court's request. See Oct. 16 Tr. at 19:15-17 (Houghton).

Young argued that additional segments of the trial transcript discuss the firearms' age, specifically page sixty-seven and page seventy-two, and thus "it wasn't just a one shot deal," as, according to Young, the United States seems to suggest. Oct. 16 Tr. at 19:20-20:2 (Knoblauch). In response to the United States' argument that the firearms' serial numbers could have assisted the jury in concluding that the firearms were not antique, Young asserted that the serial number requirement did not exist before 1968, although "many companies did have serial numbers." Oct. 16 Tr. at 20:3-7 (Knoblauch). Moreover, according to Young, the United States' serial number comment indicates that "the Government really doesn't know the law on this matter very well." Oct. 16 Tr. at 20:8-10 (Knoblauch).

Young argued that the question in United States v. Royal is "whether or not the ammunition that was produced would fit both an antique and . . . a modern firearm. . . . It was not the age of ammunition itself." Oct. 16 Tr. at 20:11-16 (Knoblauch). Young further critiqued the United States' argument by adding that ".45 caliber firearms have been used since the mid[-]19th century" and asking the Court to

look at the firearms . . . and make its own conclusion on that, because a slide action shot[]gun is a [slide] action shotgun . . . .  A bolt action [rif]le is a bolt action rifle and basically it's the same mechanism[,] they look pretty much the same, and certainly a semi-automatic handgun . . . is a semi[-automatic] handgun[,] and they look pretty much the same.

Oct. 16 Tr. at 20:18-21:8 (Knoblauch).

The United States argued that, contrary to Young's assertions, the questions on page sixty-seven of the trial transcript were about the age of the firearms' manufacturer and not the firearms' age.  See Oct. 16 Tr. at 21:13-17 (Houghton).  The United States contends that, even had Young raised the firearms' age question, which the United States does not concede, the United States Court of Appeals for the Third Circuit in United States v. Lawrence concluded that "the possibility that the firearm . . . in that case could have been manufactured before 1898" is "insufficient to raise the . . . affirmative [defense]."  Oct. 16 Tr. at 21:17-22:3 (Houghton).  The United States asserted that this case consists of "far less" evidence sufficient to raise an affirmative defense, because Young was unable to compel "the witness to establish that it could be possible that these firearms are manufactured before 1898."  Oct. 16 Tr. at 22:3-7 (Houghton). The United States contended that Young knew not to ask that question, "because if the answer had been [']no, of course they're not manufactured before 1898.['] . . . [H]e would have put the matter to rest."  Oct. 16 Tr. at 22:7-11 (Houghton).  The United States asserted that merely suggesting that a company or a firing mechanism may be old is insufficient to raise the affirmative defense that the antique firearms exception covers the firearms in question.  See Oct. 16 Tr. at 22:11-18 (Houghton).  "This would be no way to have a trial," concluded the United States, because Young's argument would require the United States to pursue every possible exception to the statute based on an ambiguous question supported by evidence proffered post-trial.  Oct. 16 Tr. at 22:18-25 (Houghton).

The Court expressed its skepticism of Young's arguments, but added that it wanted to study them further before ruling on the Acquittal Motion. <u>See</u> Oct. 16 Tr. at 23:5-7 (Court). The Court expressed that the Acquittal Motion is the "opportunity and the vehicle" to consider these two issues in advance of Young's next trial, and, despite the Court's steadfast skepticism at the first trial, the Court nonetheless is "not prepared to say that they don't have merit." Oct. 16 Tr. at 23:13-19 (Court).

## LAW REGARDING MOTIONS FOR JUDGMENT OF ACQUITTAL

Rule 29 of the Federal Rules of Criminal Procedure provides:

(a) Before Submission to the Jury.  After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction. The court may on its own consider whether the evidence is insufficient to sustain a conviction.  If the court denies a motion for a judgment of acquittal at the close of the government's evidence, the defendant may offer evidence without having reserved the right to do so.

(b) Reserving Decision.  The court may reserve decision on the motion, proceed with the trial (where the motion is made before the close of all the evidence), submit the case to the jury, and decide the motion either before the jury returns a verdict or after it returns a verdict of guilty or is discharged without having returned a verdict.  If the court reserves decision, it must decide the motion on the basis of the evidence at the time the ruling was reserved.

(c) After Jury Verdict or Discharge.

    (1) Time for a Motion.  A defendant may move for a judgment of acquittal, or renew such a motion, within 7 days after a guilty verdict or after the court discharges the jury, whichever is later.

    (2) Ruling on the Motion.  If the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal.  If the jury has failed to return a verdict, the court may enter a judgment of acquittal.

    (3) No Prior Motion Required.  A defendant is not required to move for a judgment of acquittal before the court submits the case to the jury as a prerequisite for making such a motion after jury discharge.

Fed. R. Crim. P. 29.  In <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979), the Supreme Court of the United States noted that the long-settled practice of allowing federal courts to enter judgments of acquittal when evidence is insufficient to sustain a conviction "only . . . highlight[s] the traditional understanding in our system that the application of the beyond-a-reasonable-doubt standard to the evidence is not irretrievably committed to jury discretion."  443 U.S at 317 n.10. A judgment of acquittal thus enables a federal district court to protect a defendant's due process rights by removing from jury consideration a charge with respect to which no rational trier of fact could find guilt beyond a reasonable doubt.  <u>See</u> 443 U.S at 317-19.

In deciding a motion for judgment of acquittal, courts are not permitted to weigh the evidence or assess witness credibility, <u>see</u> <u>Burks v. United States</u>, 437 U.S. 1, 16-17 (1978), but instead must ask "only whether taking the evidence -- both direct and circumstantial, together with the reasonable inferences to be drawn therefrom -- in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." <u>United States v. Stiger</u>, 413 F.3d 1185, 1193 (10th Cir. 2005)(quoting <u>United States v. McKissick</u>, 204 F.3d 1282, 1289 (10th Cir. 2000)), <u>cert. denied</u>, 126 S. Ct. 775 (2005).  Entry of a judgment of acquittal is thus "confined to cases where the prosecution's failure is clear." <u>Burks v. United States</u>, 437 U.S. at 17.

Courts must rely "on the jury, as the fact finder, to resolve conflicting testimony, weigh the evidence, and draw inferences from the facts presented," <u>United States v. Stiger</u>, 413 F.3d at 1194 (internal quotations omitted)(quoting <u>United States v. Radcliff</u>, 331 F.3d 1153, 1157 (10th Cir. 2003), and must "accept the jury's resolution of the evidence as long as it is within the bounds of reason," <u>United States v. Yoakam</u>, 116 F.3d 1346, 1349 (10th Cir. 1997)(citations and internal quotations omitted).  The district court's role is to determine merely whether the

evidence, if believed, would establish each element of the crime.  See United States v. Delgado-Uribe, 363 F.3d 1077, 1081 (10th Cir. 2004)(citations omitted). Moreover, "the evidence necessary to support a verdict need not conclusively exclude every other reasonable hypothesis and need not negate all possibilities except guilt." United States v. Wood, 207 F.3d 1222, 1228 (10th Cir. 2000)(internal quotations omitted)(quoting United States v. Wilson, 182 F.3d 737, 742 (10th Cir. 1999)).  A court should not overturn a jury's finding unless no reasonable juror could have reached the disputed verdict, see United States v. Carter, 130 F.3d 1432, 1439 (10th Cir. 1997)(citations omitted); however, a court should not uphold a conviction "obtained by piling inference upon inference.  An inference is reasonable only if the conclusion flows from logical and probabilistic reasoning," United States v. Valadez–Gallegos, 162 F.3d 1256, 1262 (10th Cir. 1998)(citations and internal quotations omitted).  The Tenth Circuit has stated:

> The rule that prohibits the stacking of inference upon inference merely indicates that at some point along a rational continuum, inferences may become so attenuated from underlying evidence as to cast doubt on the trier of fact's ultimate conclusion.  In other words, the chance of error or speculation increases in proportion to the width of the gap between underlying fact and ultimate conclusion where the gap is bridged by a succession of inferences, each based upon the preceding one.

United States v. Summers, 414 F.3d 1287, 1294-95 (10th Cir. 2005)(internal quotations omitted).

See United States v. Neha, No. CR 04-1677 JB, 2006 WL 1305034, at *2-3 (D.N.M. April 19, 2006)(Browning, J), aff'd, 301 F. App'x 811 (10th Cir. 2008)(unpublished).  Hence, a court must examine the record to determine whether a guilty verdict rests on inferences reasonably drawn from the evidence, rather than on "conjecture" or "speculation."  United States v. Aponte, 619 F.3d 799, 804 (8th Cir. 2010).  See United States v. Bowers, 811 F.3d 412, 424 (11th Cir. 2016)(stating that "reasonable inferences" rather than "mere speculation" must support a verdict based on circumstantial evidence); United States v. Long, 905 F.2d 1572, 1576 (D.C. Cir. 1990)(same).

## LAW REGARDING AFFIRMATIVE DEFENSES

A criminal defendant is entitled to an instruction on a theory of defense if some evidence and the law supports the theory. See United States v. Al-Rekabi, 454 F.3d 1113, 1121 (10th Cir. 2006). "A defendant is not entitled to an instruction which lacks a reasonable legal and factual basis." United States v. Black, 718 F. App'x 687, 689 (10th Cir. 2017)(unpublished)[6](quoting United States v. Al-Rekabi, 454 F.3d at 1121), cert. denied, 138 S. Ct. 1583 (2018). Although a defendant is entitled to an instruction as to his or her theory of defense if there is some evidence to support it, see United States v. Sparks, 791 F.3d 1188, 1193 (10th Cir. 2015), a court is not required to give an instruction that misstates the law, see United States v. Portillo-Vega, 478 F.3d 1194, 1197-98 (10th Cir.2007); United States v. Scott, 901 F.2d 871, 873 (10th Cir. 1990). "For the purpose of determining whether the evidence was sufficient to warrant a jury instruction, [the Tenth Circuit] accept[s] the testimony most favorable to the defendant." United States v. Sparks, 791 F.3d 1188, 1193 (citing United States v. Al-Rekabi, 454 F.3d at 1121). If a defendant's theory of defense has a reasonable basis in law and fact,

> the trial court should refer to that theory and to the testimony bearing on it and submit the issue with an instruction on the applicable law. The jury should be advised of the defendant's position so as to put the issues raised by the theory of defense squarely before it.

---

[6]United States v. Black is an unpublished opinion, but the Court can rely on an unpublished opinion for the United States Court of Appeals for the Tenth Circuit to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A) ("Unpublished opinions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated: "In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored. However, if an unpublished opinion . . . has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision." United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005). The Court concludes that United States v. Black has persuasive value with respect to material issues and will assist the Court in its disposition of this Memorandum Opinion and Order.

United States v. Haney, 318 F.3d 1161, 1163 (10th Cir. 2003)(quoting United States v. Lofton, 776 F.2d 918, 920 (10th Cir. 1985)). If an affirmative defense consists of multiple elements, however, "it is essential that the testimony given or proffered meet a minimum standard as to each element." United States v. Bailey, 444 U.S. 394, 415 (1980). See United States v. Graham, 663 F. App'x 622, 625 (10th Cir. 2016)(unpublished)("[T]here is no question that where the defendant's evidence is insufficient on even *one* element of the defense, the defendant is not permitted to proceed further."(emphasis in original)). A Court of Appeals reviews a district court's decision whether to allow a defendant to present an affirmative defense for an abuse of discretion. See United States v. Black, 718 F. App'x at 689; United States v. Al-Rekabi, 454 F.3d at 1123; United States v. Fox, 557 F. Supp. 2d 1251, 1259 (D.N.M. 2007)(Browning, J), aff'd, 573 F.3d 1050 (10th Cir. 2009).

## LAW REGARDING 18 U.S.C. § 921(a)(16)

The term "firearm" is defined in 18 U.S.C. § 921(a). As used in that section, "firearm" does not include an antique firearm. 18 U.S.C. § 921(a)(3) ("Such term does not include an antique firearm."). 18 U.S.C. § 921(a)(16) defines an "antique firearm" as:

(A) any firearm (including any firearm with a matchlock, flintlock, percussion cap, or similar type of ignition system) manufactured in or before 1898; and

(B) any replica of any firearm described in subparagraph (A) if such replica --

(i) is not designed or redesigned for using rimfire or conventional centerfire fixed ammunition, or

(ii) uses rimfire or conventional centerfire fixed ammunition which is no longer manufactured in the United States and which is not readily available in the ordinary channels of commercial trade.

18 U.S.C. § 921(a)(16). Antique firearms are thus exempt from 18 U.S.C. § 922, which prohibits an individual with a felony conviction from possessing a firearm. See United States v. Basnett, 735 F.3d at 1258. The Tenth Circuit has concluded that the antique-firearm exception is an

affirmative defense which a criminal defendant must raise.[7]  See United States v. Basnett, 735

F.3d at 1258 ("Because characterization as an antique involves an affirmative defense, the

---

[7]The Tenth Circuit reached this conclusion by analogizing to its opinion in United States v. Neal, 692 F.2d 1296 (10th Cir. 1982).  See United States v. Basnett, 735 F.3d at 1258 (citing United States v. Neal, 692 F.2d at 1303).  The issue in United States v. Neal was whether an incendiary device was a "destructive device" within a federal statute defining "firearm."  692 F.2d at 1303.  Similar to § 921's "firearm" definition, the "firearm" definition in United States v. Neal said what the term "destructive device" excluded: "[A]ny device which is neither designed nor redesigned for use as a weapon."  692 F.2d at 1303 (citing 26 U.S.C. § 5845(f)).  Because the law said what the term "destructive device" did not include -- rather than what it did include -- the defendant in United States v. Neal argued that the issue involved an "element of the offense."  692 F.2d at 1303.  The Tenth Circuit rejected this argument, treating the exclusion as an affirmative defense rather than as an element of the United States' prima facie case.  See United States v. Neal, 692 F.2d at 1303. Interestingly, the other Courts of Appeals reach the affirmative-defense conclusion by applying the Supreme Court's description of an affirmative defense in Patterson v. New York, 432 U.S. 197 (1977), which describes an affirmative defense as one that "does not serve to negative any facts of the crime."  United States v. Mayo, 705 F.2d at 75 (citing Patterson v. New York, 432 U.S. at 206-07).  In accordance with this description, one weapon could satisfy both the broad definition of firearm in 18 U.S.C. § 921(a)(3) as well as the narrow exception in § 921(a)(16).  See United States v. Mayo, 705 F.2d at 75.  In United States v. Mayo, the United States proved that the weapons involved in the § 922 counts were firearms within § 921(a)(3)'s meaning.  See United States v. Mayo, 705 F.2d at 75.  Proof establishing that these same weapons were antiques within § 921(a)(16)'s meaning would not negative any of the United States' proof.  See 705 F.2d at 75.  The United States Court of Appeals for the Third Circuit thus concluded that, by its terms, the statute creates an affirmative defense in the form of an exception.  See 705 F.2d at 75.  Moreover, the Third Circuit found no indication in the statute's language that Congress intended the United States to prove in all criminal prosecutions pursuant to § 922 that the illegal firearms transactions involved weapons that were not antiques.  The Third Circuit summarizes the legislative history that supports this conclusion:

> Title IV of the Omnibus Crime Control and Safe Streets Act of 1968 (Omnibus Act), Pub. L. No. 90-351, 82 Stat. 225, established a comprehensive federal regulatory scheme to monitor and control interstate and international movement of firearms. It reflected a deep-seated congressional concern over the "widespread traffic in firearms" that Congress considered "a significant factor in the prevalence of lawlessness and violent crime in the United States." Omnibus Act § 901(a), 82 Stat. 225.  The regulatory scheme established stringent licensing and reporting requirements governing persons who deal in firearms.  The antique firearm exception was born of congressional concern that an all-encompassing regulatory scheme could unduly burden the legitimate interests of citizens in antique firearms.  Congress did not intend

defendant bears the initial burden of producing evidence."). In concluding that the antique-firearm exception is an affirmative defense, the Tenth Circuit joins "[e]very circuit court of appeals to consider the issue." 735 F.3d at 1258 (citing Gil v. Holder, 651 F.3d 1000, 1005 n.3

---

> to place any undue or unnecessary Federal restrictions or burdens on law-abiding citizens with respect to the acquisition, possession, or use of firearms appropriate to the purpose of hunting, trapshooting, target shooting, personal protection, or any other lawful activity, and that this title is not intended to discourage or eliminate the private ownership or use of firearms by law-abiding citizens for lawful purposes, or provide for the imposition by Federal regulations of any procedures or requirements other than those reasonably necessary to implement and effectuate the [firearms laws].

Gun Control Act of 1968, § 101, Pub. L. No. 90-618, 82 Stat. 1213-14 (amending and adding to existing regulatory scheme).

United States v. Mayo, 705 F.2d at 75-76. The Third Circuit notes that Congress was not constitutionally required to exempt antique firearms from the firearms laws, but instead provided a "gratuitous defense" to safeguard the rights of persons who deal in a narrow class of weapons. 705 F.2d at 76. The Third Circuit's affirmative defense holding was thus designed to avoid thwarting "the primary thrust of the federal firearms laws and unduly stifle effective enforcement of those laws by requiring the government in all prosecutions under 18 U.S.C. § 922 to prove that the weapons involved were not antique firearms." 705 F.2d at 76. Moreover, the Third Circuit continued, "[w]hile it would not be an impossible burden for the government to bear, a legitimate antique gun dealer or collector is certainly in a better position to place the exception in issue." 705 F.2d at 76. Every Court of Appeals to consider this issue has cited to the Third Circuit's affirmative defense holding in United States v. Mayo. See United States v. Basnett, 735 F.3d at 1258 (10th Cir. 2013); Gil v. Holder, 651 F.3d at 1006 (9th Cir. 2011); United States v. Washington, 17 F.3d 230, 232 (8th Cir. 1994). United States v. Smith, 981 F.2d 887, 891-92 (6th Cir. 1992); United States v. Laroche, 723 F.2d 1541, 1543 (11th Cir. 1984). Although the Third Circuit's rationale in United States v. Mayo is not the rationale behind the Tenth Circuit's affirmative defense conclusion, the Tenth Circuit has stated that,

> writing on a clean slate, we would be inclined to follow the approach taken by these courts. Surely owners of antique guns are better equipped to prove that their guns are antiques than the government, which would otherwise bear the initial burden of producing evidence in *every* case to prove what a gun is not.

United States v. Basnett, 735 F.3d at 1258 (emphasis in original)(citing United States v. Mayo, 705 F.2d at 75-76).

(9th Cir. 2011)("[E]very other circuit of which we are aware that has considered the § 921(a)(3) 'antique firearm' exception in the criminal context, has treated it as an affirmative defense rather than an element of the crime."); United States v. Lawrence, 349 F.3d at 122 ("Every circuit court of appeals that has considered this issue has agreed that establishing that a weapon is an 'antique, firearm' for purposes of §§ 921 and 922 is an affirmative defense."). See United States v. Laroche, 723 F.2d 1541, 1543 (11th Cir. 1984)("We agree with the [United States Court of Appeals for the] Second Circuit and hold that the antique weapons exception is in essence an affirmative defense that must be raised by the defendant before the burden shifts to the government to disprove its applicability.").

When a statutory exception creates an affirmative defense, "the ultimate burden of persuasion remains with the prosecution, but the defendant has the burden of going forward with sufficient evidence to raise the exception as an issue." United States v. Laroche, 723 F.2d at 1543 (citing McKelvey v. United States, 260 U.S. 353, 357 (1922); United States v. Stout, 667 F.2d 1347, 1353 (11th Cir. 1982)("[O]nce the government has proven the elements of the offense, the burden shifts to the defendant to demonstrate qualification under an exception.")). The defendant thus bears the initial burden "to properly present the statutory exception." United States v. Laroche, 723 F.2d at 1543 (citing United States v. Oba, 448 F.2d 892, 894 (9th Cir. 1971), cert. denied, 405 U.S. 935 (1972)). In the Third Circuit, proper presentation requires "sufficient evidence to raise the exception as an issue." United States v. Laroche, 723 F.2d at 1543 (citing United States v. Washington, 17 F.3d at 232). The mere possibility that a firearm could have been manufactured in or before 1898 is insufficient to shift this burden:

> [T]he defense presented no evidence that the gun in question was an antique beyond raising the *possibility* through the government's experts.[8]  Although a fact can certainly be established though cross-examination as opposed to direct testimony, more is required than raising the specter of an ephemeral mathematical possibility to create an issue of fact.

United States v. Lawrence, 349 F.3d at 121 (emphasis in original).  In providing rationale for such an evidentiary threshold, the Third Circuit states that the United States "can not be expected to engage in the litigational equivalent of shadow boxing by jabbing and striking at shadowy inferences that may arise from the ethers of testimony."  349 F.3d at 121.  Moreover, the Third Circuit notes that every Court of Appeals to consider the antique-firearm exception agrees on a threshold evidentiary requirement sufficient "to justify shifting the burden of proof to the government." 349 F.3d at 121.  Only when a defendant crosses this threshold will the United States assume the burden of disproving the antique-firearm exception's applicability.  See United States v. Laroche, 723 F.2d at 1543.

### LAW REGARDING AN INDICTMENT'S SUFFICIENCY

The Sixth Amendment to the Constitution of the United States of America provides that, "in all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation."  U.S. Const. amend. VI. "This constitutional protection is implemented by the requirement of Rule 7(c)(1) that the indictment or information 'be a plain, concise, and definite written statement of the essential facts constituting the offense charged.'" Charles A. Wright, Federal Practice and Procedure § 125, at 542 (4th ed. 2008)(quoting Fed. R. Crim. P. 7(c)(1)).  Rule 7(c) of the Federal Rules of Criminal Procedure provides:

---

[8]On cross examination, the United States' experts testified that the bullet fragments found in a gunshot victim could have been expelled from a number of firearms, including an antique firearm.  See United States v. Lawrence, 349 F.3d at 121, 121 n.10.

**(c) Nature and Contents.**

> **(1) In General.** The indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the government. It need not contain a formal introduction or conclusion. A count may incorporate by reference an allegation made in another count. A count may allege that the means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified means. For each count, the indictment or information must give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated. For purposes of an indictment referred to in section 3282 of title 18, United States Code, for which the identity of the defendant is unknown, it shall be sufficient for the indictment to describe the defendant as an individual whose name is unknown, but who has a particular DNA profile, as that term is defined in that section 3282.

> **(2) Citation Error.** Unless the defendant was misled and thereby prejudiced, neither an error in a citation nor a citation's omission is a ground to dismiss the indictment or information or to reverse a conviction.

Fed. R. Crim. P. 7(c).

"'An indictment is sufficient if it sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy defense.'" United States v. Todd, 446 F.3d 1062, 1067 (10th Cir. 2006)(citing United States v. Dashney, 117 F.3d 1197, 1205 (10th Cir. 1997)). Further, an indictment "need not quote the statutory language to be legally sufficient." United States v. Bullock, 914 F.2d 1413, 1414 (10th Cir. 1990)(citing Hamling v. United States, 418 U.S. 87 (1974)). The Tenth Circuit also has made clear that, when "[i]nterpreting an indictment, [courts] are governed by practical rather than technical considerations." United States v. Phillips, 869 F.2d 1361, 1364 (10th Cir. 1988)(citing United States v. Martin, 783 F.2d 1449, 1452 (9th Cir. 1986)("Charging documents are tested by whether they apprise the defendant of what evidence he must be prepared to meet. . . . An indictment should be read in its entirety, construed

according to common sense and interpreted to include facts which are necessarily implied.");

United States v. Maggitt, 784 F.2d 590, 598 (5th Cir. 1986)("An indictment is to be read in light of its purpose, which is to inform the accused of the charges.")).

**LAW REGARDING STIPULATIONS**

A defendant has a right under the Fifth and Sixth Amendments to the Constitution of the United States to have a jury determine guilt beyond a reasonable doubt on every element of a charged offense. See United States v. Gaudin, 515 U.S. 506, 509-10 (1995)(concluding that the Constitution of the United States "require[s] criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt"). A criminal defendant may stipulate, however, "to elemental facts," United States v. Mason, 85 F.3d 471, 472 (10th Cir. 1996), and, thereby, contract with the United States that the stipulated fact is true, see United States v. Barnes, 602 F.3d 790, 796 (7th Cir. 2010)("A stipulation is a contract between two parties to agree that a certain fact is true.")(citing Analytical Eng'g, Inc. v. Baldwin Filters, Inc., 425 F.3d 443 (7th Cir. 2005)). Cf. Koch v. U.S. Dep't of Interior, 47 F.3d 1015, 1018 (10th Cir. 1995)("It is well-settled that a court is not bound by stipulations of the parties as to questions of law." (quoting Dimidowich v. Bell & Howell, 803 F.2d 1473, 1477 n.1 (9th Cir. 1986)). Pursuant to standard contract law principles, a stipulation "between the prosecutor and the defendant cannot bind a third party -- the district court judge -- without his consent as well." United States v. Barnes, 602 F.3d at 796. Furthermore, before accepting a stipulation, a district court judge "must determine whether *the defendant* agreed to the stipulation." United States v. DeWilliams, 28 F. App'x 913, 916 (10th Cir. 2010)(unpublished)(emphasis in original)(citing Johnson v. Cowley, 40 F.3d 341, 346 (10th Cir. 1994). Although the district court need not directly question the defendant about the stipulation, the court may only accept it "so long as the defendant does not dissent from his

attorney's decision."  Hawkins v. Hannigan, 185 F.3d 1146, 1155 (10th Cir. 1999)(upholding evidentiary stipulation against Sixth Amendment challenge because "there is no evidence that [the defendant] disagreed with or objected to his counsel's decision").  See United States v. Herndon, 982 F.2d 1411, 1418 (10th Cir. 1992)(advising -- but not requiring -- the district court to address defendant directly to ensure that the "stipulation is entered into voluntarily, that the defendant understands the stipulation, and that the stipulation has a factual basis").

As a mater of law, "[i]t is well established that 'by stipulating to elemental facts, a defendant waives his right to a jury trial on that element.'" United States v. Smith, 472 F.3d 752, 753 (10th Cir. 2006)(quoting United States v. Mason, 85 F.3d 471, 472 (10th Cir. 1996).  The United States prosecuted the criminal defendant in United States v. Mason pursuant to § 922(g), and the parties stipulated to § 922(g)'s prior felony conviction and interstate commerce elements. See United States v. Mason, 85 F.3d at 471-72.  At trial, the district court instructed the jury that, because the parties stipulated to these two § 922(g) elements, "the government need not offer proof as to these elements, and you should consider them proven by the government."  United States v. Mason, 85 F.3d at 472.  On appeal, the defendant argued that the district court erred by withholding the stipulated elements from the jury's consideration.  See 85 F.3d at 472.  Finding no error in the district court's jury instruction, the Tenth Circuit reasoned that

> the jury need not resolve the existence of an element when the parties have stipulated to the facts which establish that element . . . .  [T]he judge has not removed the consideration of an issue from the jury; the parties have.  More specifically, by stipulating to elemental facts, a defendant waives his right to a jury trial on that element.  If such a partial waiver runs afoul of the Sixth Amendment, then traditional, wholesale waivers manifest in bench trials and guilty pleas must necessarily violate the right to a jury trial.

85 F.3d at 472-73.  See United States v. Harrison, 204 F.3d 236, 240 (D.C. Cir. 2000); United States v. Meade, 175 F.3d 215, 223 (1st Cir. 1999); United States v. Melina, 101 F.3d 567, 572 (8th Cir. 1996); United States v. Keck, 773 F.2d 759, 769-70 (7th Cir. 1985); United States v.

Houston, 547 F.2d 104, 107 (9th Cir. 1976)(per curiam). Such waiver necessarily relieves the United States of its burden regarding the stipulated element:

> But the very nature of a defendant's waiver is that it frees the government from the obligation to present *any* evidence regarding the element in question. Certainly the government must inform the jury of the defendant's stipulation at some point, in order to provide jurors with the information they need to convict under the statute. Yet the stipulation is not itself evidence; it is an admission -- a waiver of the right to demand evidence.

United States v. Smith, 472 F.3d at 753 (10th Cir. 2006)(emphasis in original). Other federal Courts of Appeals to consider this issue have reached the same conclusion. See United States v. Harrison, 204 F.3d at 240 ("It is well settled that a defendant, by entering into a stipulation, waives his right to assert the government's duty to present evidence to the jury on the stipulated element."); United States v. Branch, 46 F.3d 440, 442 (5th Cir. 1995)("The government is relieved of its burden to prove the fact which has been stipulated by the parties."). Moreover, the United States' failure to offer evidence that alone would satisfy the stipulated fact does not vitiate a jury conviction's sufficiency. See United States v. Hardin, 139 F.3d at 815-16; United States v. Mason, 85 F.3d at 472. In joining the United States Court of Appeals for the Eleventh Circuit, in United States v. Hardin, and the United States Court of Appeals for the Fifth Circuit, in United States v. Branch, in concluding that a stipulation waives the defendant's right to put the United States to proof on the stipulated element, the United States Court of Appeals for the District of Columbia Circuit, in United States v. Harrison, 204 F.3d 236 (D.C. Cir. 2000), states:

> [W]e hold that when Harrison entered into the stipulations that the interstate commerce and prior conviction elements of the § 922(g) charge were present, he waived his right to challenge the sufficiency of the evidence on those elements, even though the government failed to introduce any evidence on those elements. This result retains a primary benefit of this type of stipulation: when the element is a prior conviction, the defendant is benefitted because potentially prejudicial facts about the prior conviction will not be admitted. *See Old Chief,* 519 U.S. at 185, 117 . . . ; *Hardin,* 139 F.3d at 817; [United States v. ]*Muse,* 83 F.3d [672,] 678. Furthermore, stipulations in general are helpful to both parties because they narrow the scope of the trial to the real issues in dispute.

United States v. Harrison, 204 F.3d at 242-43 (citing Zuchowicz v. United States, 140 F.3d 381, 392 (2d Cir. 1998); United States v. Gen. Motors Corp., 518 F.2d 420, 447 (D.C. Cir. 1975)).

## LAW REGARDING RULE 403

Under rule 403 of the Federal Rules of Evidence, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The trial court must weigh the proffered evidence's probative value against its potential for unfair prejudice. See United States v. Record, 873 F.2d 1363, 1375 (10th Cir. 1989). "[I]t is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter [under rule 403]." United States v. Pettigrew, 468 F.3d 626, 638 (10th Cir. 2006)(quoting United States v. Sides, 944 F.2d 1554, 1563 (10th Cir. 1991)). The Tenth Circuit has admonished district courts that they should be "mindful" that "exclusion of evidence under Rule 403 that is otherwise admissible under the other rules is an extraordinary remedy and should be used sparingly." United States v. Smalls, 605 F.3d 765, 787 (10th Cir. 2010).

The decision to admit or exclude evidence pursuant to rule 403 is within the district court's discretion, see United States v. Lugo, 170 F.3d 996, 1005 (10th Cir. 1999), and the district court's discretion to balance possible unfair prejudice against probative value is broad, see United States v. Bice-Bey, 701 F.2d 1086, 1089 (4th Cir. 1983); United States v. Masters, 622 F.2d 83, 87-88 (4th Cir. 1980). The Supreme Court has noted:

> In deference to a district court's familiarity with the details of the case and its greater experience in evidentiary matters, courts of appeals afford broad discretion to a district court's evidentiary rulings . . . . This is particularly true with respect to Rule 403 since it requires an "on-the-spot balancing of probative value and prejudice, potentially to exclude as unduly prejudicial some evidence that already has been found to be factually relevant."

Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 384 (2008)(quoting 1 Steven Alan Childress & Martha S. Davis, Fed. Standards of Review § 4.02, at 4-16 (3d ed. 1999)). See United States v. Abel, 469 U.S. 45, 54 (1984)("Assessing the probative value of [proffered evidence], and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403 . . . .").

Evidence may be unfairly prejudicial if it would likely provoke an emotional response from the jury or would otherwise tend to adversely affect the jury's attitude toward a particular matter. See United States v. Rodriguez, 192 F.3d 946, 951 (10th Cir. 1999). Evidence is not unfairly prejudicial merely because it damages a party's case. See United States v. Caraway, 534 F.3d 1290, 1301 (10th Cir. 2008); United States v. Curtis, 344 F.3d 1057, 1067 (10th Cir. 2003); United States v. Martinez, 938 F.2d 1078, 1082 (10th Cir. 1991). Rather, "[t]o be unfairly prejudicial, the evidence must have 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" United States v. Caraway, 534 F.3d at 1301 (quoting Fed. R. Evid. 403 advisory committee's note).

"The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." Old Chief v. United States, 519 U.S. at 180. "Such improper grounds certainly include . . . generalizing a defendant's earlier bad act into bad character and taking that as raising the odds that he did the later bad act now charged." Old Chief v. United States, 519 U.S. at 180-81. In light of rule 404(b)'s prohibition regarding the use of character evidence to show that a person acted in conformity with their character, "[t]here is, accordingly, no question that propensity would be an 'improper basis' for conviction and that evidence . . . is subject to analysis under Rule 403 for relative probative value and for prejudicial

misuse as propensity evidence."  Old Chief v. United States, 519 U.S. at 182.  The Supreme Court has advised lower courts to disregard the prosecution's need for "evidentiary depth to tell a continuous story" when the prosecution's evidence consists of the underlying facts of a criminal defendant's prior felony conviction, as in an action for felon in possession.  Old Chief v. United States, 519 U.S. at 189-90.  In such an action, "[t]he most the jury needs to know is that the conviction admitted by the defendant falls within the class of crimes that Congress thought should bar a convict from possessing a gun, and this point may be made readily in a defendant's admission and underscored in the court's jury instructions."  Old Chief v. United States, 519 U.S. at 191.  The Court has previously ruled that, under the Supreme Court's decision in Old Chief v. United States, the underlying facts of a defendant's prior conviction should be excluded, even if relevant to the offense.  See United States v. Williams, No. CR 12-1675 JB, 2012 WL 5476228, at *2 (D.N.M. Nov. 7, 2012)(Browning, J.); United States v. Ashley, No. CR 04-2497 JB, 2006 WL 4109679, at *3 (D.N.M. Aug. 1, 2006)(Browning, J.)("Even if relevant under rule 404(b), given the nature of the crime with which he is charged here and the similarity to these prior crimes, the danger of unfair prejudice outweighs the probative value of specifically identifying the prior crimes.").  See also United States v. Wacker, 72 F.3d 1453, 1472 (10th Cir. 1995)("Whereas the fact of a defendant's prior felony conviction is material to a felon in possession charge, the nature and underlying circumstances of a defendant's conviction are not.").

## ANALYSIS

"It is well established that 'by stipulating to elemental facts, a defendant waives his right to a jury trial on that element.'"  United States v. Smith, 472 F.3d 752, 753 (10th Cir. 2006)(quoting United States v. Mason, 85 F.3d 471, 472 (10th Cir.1996)).  The Court concludes

that the United States established that Young had been convicted of a disqualifying felony, because the Stipulation that Young signed removed § 922(g)'s disqualifying felony element from the jury's consideration and thereby relieved the United States of its burden of proof regarding that offense element. Furthermore, the Stipulation incorporates by reference Young's Indictment, which describes three predicate felony convictions. Indictment at 1. See Macias v. N.M. Dep't of Labor, 300 F.R.D. 529, 561 (D.N.M. 2014)(Browning, J.)("[M]atters incorporated by reference or annexed to a contract will be construed as a part of the contract, for the purpose and to the extent indicated." (footnotes omitted)(quoting 17A C.J.S. Contracts § 402 (2014)). The Court further concludes that the United States was not required to prove that the firearms were manufactured after 1898, because the antique firearms exception is an affirmative defense that Young did not properly raise. Accordingly, the Court denies the Acquittal Motion.

I. **THE STIPULATION SATISFIED THE UNITED STATES' BURDEN TO PROVE YOUNG'S PRIOR FELONY CONVICTION FOR § 922(g) PURPOSES.**

Young argues that the Court should enter a judgement of acquittal, because the United States failed to prove that his stipulated prior felony conviction is a sufficient predicate for prosecution pursuant to § 922(g) and is not "one for which the civil right to possess a firearm has not been restored." Acquittal Motion at 2. The United States asserts that, by stipulating "that he had sustained a felony conviction prior to November 13, 2016 -- the offense date alleged in the indictment upon which he went to trial," Young relieved the United States of its burden of proof on that element. Acquittal Response at 2. The Court agrees with the United States and concludes that the Stipulation which Young signed removed § 922(g)'s disqualifying felony element from the jury's consideration. The Court further concludes that the Stipulation incorporated by reference Young's Indictment, which mentions three qualifying felony convictions. Indictment at 1.

## A.     THE STIPULATION THAT YOUNG SIGNED REMOVED § 922(g)'s DISQUALIFYING FELONY ELEMENT FROM THE JURY'S CONSIDERATION

The Court concludes that the Stipulation which the parties signed removed § 922(g)'s prior felony element from the jury's consideration, thereby relieving the United States of its burden of proof on that element of § 922(g).  Before trial, Young and the United States signed a document stating:

> The parties, by and through their undersigned counsel, stipulate and agree as follows:
>
> 1.     The defendant, **APACHE YOUNG**, prior to November 13, 2016, had been convicted of a crime punishable by imprisonment for a term exceeding one year, that is, a felony offense, as charged in the Indictment of this case.
> 2.     This stipulated fact is proved beyond a reasonable doubt and may be read to the jury at trial.  This stipulation also relieves the government of its burden of proof with regard to the defendant's status as a felon at the time relevant to the charge contained in the Indictment.

Stipulation Regarding Prior Felony Conviction at 1 (dated September 12, 2018), admitted September 17, 2018, as Trial Exhibit 1, ("Tr. Ex. 1").  Both the United States and Young signed the Stipulation on September 12, 2017.  See Tr. Ex. 1 at 1.  Young argues, however, that the Stipulation is insufficient to relieve the United States of its burden to prove every element beyond a reasonable doubt, because

> basically the evidence that was presented to the Court was just that Mr. Young had been convicted of a felony on that date.  Not the nature of the felony, not the type of felony.  Not that the felony was a felony that would disqualify him from owning a firearm.  Basically there is not sufficient evidence brought before the Court that Mr. Young was indeed disqualified from owning a firearm.

Oct. 16 Tr. at 3:15-22 (Knoblauch).  Young adds that the United States bears the responsibility for not describing Young's felony conviction with specificity, thereby "failing to adequately draft the stipulation."  Oct. 16 Tr. at 3:1-5 (Knoblauch).  Young further asserts that the § 922(g) prior felony element requires that evidence of a disqualifying conviction must "be brought before

the decider of fact." Oct. 16 Tr. at 4:2-5 (Knoblauch). The United States argues that the Stipulation "relieves the Government of its burden of proof with regard to the defendant's status as a felon at the time relevant to the charge contained [in] the indictment." Oct. 16 Tr. at 8:16-21 (Houghton). The Court agrees with the United States that, as a matter of law, the Stipulation relieves the United States of its burden of proof with regard to § 922's prior felony element.

In <u>United States v. Smith</u>, 472 F.3d 752 (10th Cir. 2006), the Tenth Circuit, quoting from <u>United States v. Mason</u>, unequivocally states: "It is well established that 'by stipulating to elemental facts, a defendant waives his right to a jury trial on that element.'" 472 F.3d at 753 (quoting <u>United States v. Mason</u>, 85 F.3d 471, 472 (10th Cir. 1996)). The United States prosecuted the criminal defendant in <u>United States v. Mason</u> pursuant to § 922(g), and the parties stipulated to § 922(g)'s prior felony conviction and interstate commerce elements. <u>See</u> <u>United States v. Mason</u>, 85 F.3d at 471-72. At trial, the district court instructed the jury that, because the parties stipulated to these two § 922(g) elements, "the government need not offer proof as to these elements, and you should consider them proven by the government." <u>United States v. Mason</u>, 85 F.3d at 472. On appeal, the defendant argued that the district court erred by withholding the stipulated elements from the jury's consideration. <u>See</u> 85 F.3d at 472. In finding no error in the district court's jury instruction, the Tenth Circuit reasoned that

> the jury need not resolve the existence of an element when the parties have stipulated to the facts which establish that element . . . . [T]he judge has not removed the consideration of an issue from the jury; the parties have. More specifically, by stipulating to elemental facts, a defendant waives his right to a jury trial on that element. If such a partial waiver runs afoul of the Sixth Amendment, then traditional, wholesale waivers manifest in bench trials and guilty pleas must necessarily violate the right to a jury trial.

85 F.3d at 472-73. The Court therefore concludes that, by affixing his signature to the Stipulation, Young removed the prior-felony element from the jury's consideration and thereby waived his right to a jury trial on that element. <u>See</u> 85 F.3d at 472-73.

Young directs the Court to a single, out-of-circuit case, United States v. Essick, to support his proposition that the United States' burden of proof required the United States to prove that Young's felony "has not been set aside," i.e., that the United States must prove that Young's prior felony conviction is not one that allows for the restoration of his civil right to possess a firearm. See Trial Tr. at 242:22-243:4 (Knoblauch). The law relevant to United States v. Essick, however, bears little resemblance to the law that governs this case. Although Young is correct that, in United States v. Essick, the Fourth Circuit reversed the defendant's conviction pursuant to § 922(g)(1),[9] § 921(a)(20) compelled the Fourth Circuit to consider North Carolina civil rights restoration laws to determine whether such laws restored the defendant's right to possess a firearm. See 935 F.2d at 31 (citing § 921(a)(20)). The Fourth Circuit first notes that § 922(g) "makes it unlawful for anyone 'who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year . . . to possess . . . any firearm.'" 935 F.2d at 29 (quoting § 922(g)). The Fourth Circuit adds, however, that § 922(g)

> is clouded by 18 U.S.C. § 921(a)(20), which defines the term "crime punishable by imprisonment for a term exceeding one year":
>
>> What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

---

[9]As a threshold matter, however, the Court notes that, unlike Young, the defendant in United States v. Essick did not stipulate to his prior felony conviction. See 935 F.2d at 31 ("The government's sole source of proof [of § 922(g)'s prior conviction element] was a commitment order dated April 15, 1983, by which Essick was sentenced on the state marijuana charge."). The Court thus disagrees with Young's assertion that United States v. Essick is of persuasive value to this case.

> Thus, in every § 922(g)(1) prosecution, the court must refer to the laws of the jurisdiction in which such purported predicate conviction occurred. This inquiry requires an analysis of whether and to what extent the jurisdiction in which the prior conviction occurred "restores the civil rights" of ex-felons.

United States v. Essick, 935 F.2d at 29-30. In citing United States v. Essick, Young presumably suggests that § 921(a)(20) requires the United States to prove that Young has not had his civil rights restored. The proposition for which United States v. Essick stands, however, is merely that, "[i]n North Carolina, proof of the 'prior conviction' element of a § 922(g)(1) charge requires the government to go beyond the mere introduction of a commitment order if such predicate conviction occurred in the North Carolina state courts." United States v. Essick, 935 F.2d at 31. United States v. Essick is thus firmly wedded to, and can carry no weight beyond, North Carolina's borders. The Fourth Circuit further elucidated the rationale behind its decision to reverse the defendant's conviction:

> In North Carolina, the government must prove, at a minimum, that the defendant possessed a firearm within five years of release from supervision resulting from the prior North Carolina felony. Otherwise, he would as a matter of law stand in the same shoes as any other person who had not been previously convicted of a felony. In North Carolina, an ex-felon who is more than five years beyond his release date has the same civil rights regarding firearms as non-felons; for purposes of § 922(g)(1), then, his prior conviction does not exist.

United States v. Essick, 935 F.2d at 31. As a factual matter, the defendant's felony conviction in United States v. Essick did not disqualify the defendant from possessing a firearm pursuant to North Carolina law,[10] and this fact led to the Fourth Circuit's holding that "a prior 'conviction,'

---

[10]Young stands in shoes planted firmly in the State of New Mexico, ungraced by the benefits of the State of North Carolina's arguably more lenient civil rights restoration laws. New Mexico law, in contrast, states that it is unlawful for "a felon" to receive, transport or possess any firearm or destructive device for ten years after completion of sentence, including probation. See N.M. Stat. Ann. § 30-7-16(A), (C)(2) (defining "felon" as someone for whom "less than ten years have passed since the person completed serving his sentence or period of probation for the felony conviction," "who has not been pardoned for the felony conviction," and

i.e., one for which the civil right to possess a firearm has *not* been restored, is an element of a 922(g)(1) violation."  935 F.2d at 31 (emphasis in original).  The Fourth Circuit clarified its position in United States v. Clark, 993 F.2d 402 (4th Cir. 1993), when it stated that

> the lack of a restoration of civil rights and the right to possess a firearm is not an element of the offense stated in § 922(g).  It is simply a component of the definition of the element that the accused have "been convicted in any court of a crime punishable by imprisonment exceeding one year."

993 F.2d at 406 (quoting 18 U.S.C. § 922(g)).  United States v. Clark is more relevant to this case than United States v. Essick, as the parties in United States v. Clark stipulated that the defendant "has been previously convicted of a crime punishable by imprisonment for a term exceeding one year," and the defendant subsequently challenged the grounds of his conviction, "because the government failed to establish the previous conviction's continuing vitality." United States v. Clark, 993 F.2d at 405.  Specifically, the defendant in United States v. Clark argued that the stipulation "did not go far enough because it did not fulfill the government's burden of showing that with respect to the prior conviction, Clark's civil rights and right to possess a firearm had not been restored."  993 F.2d at 405.  Moreover, identical to Young's argument here, "Clark does not argue that his civil rights and right to possess a firearm were, in fact, restored for all prior felony convictions.  Rather, he relies only upon the alleged failure of the state to meet its burden of proof on this point."  993 F.2d at 405-06.  In affirming the stipulation's sufficiency, the Fourth Circuit concluded:

> In this case proof of the entire element was waived by stipulation, relieving the government of its burden.  Implicit in Clark's argument is the claim that in stipulating that he had been convicted of "a crime punishable by imprisonment for a term exceeding one year," he did not intend for this phrase to have the same

---

"who has not received a deferred sentence").  At no stage in these proceedings has Young argued that the State of New Mexico has restored his civil right to possess a firearm.

meaning as it does in the statute under which he was accused. Clark offers, however, no explanation of how he came to use the exact wording of the statute without intending the same meaning, particularly in the context of being tried under that statute.

. . . .

Clark's stipulation in the context of the trial clearly carried with it the parties' intent that the government need not prove the element of § 922(g) that Clark had been previously convicted of a crime punishable by imprisonment exceeding one year. . . . Moreover, when it came time to instruct the jury, Clark agreed to the jury instructions which the court gave, including the statement:

> Ladies and Gentlemen, the lawyers have entered into a stipulation or agreement that the defendant has previously been convicted of a crime in a court of law which was punishable by a term of imprisonment exceeding one year. *Therefore, that element has already been established and is not for your consideration.*

. . . . It is readily apparent from a reading of the record that Clark intended to waive and did waive any requirement that the government prove the element of the offense that he had been previously convicted of a crime punishable by a term of imprisonment exceeding one year. With Clark's stipulation, the government was relieved of any obligation of proving any aspect of that element, including the aspect that the defendant's civil rights had not been restored.

993 F.2d at 406. The Court agrees with the Fourth Circuit's analysis; a stipulation relieves the

United States of its burden with respect to the stipulated element. See 993 F.2d at 406.

The Court need not agree with the Fourth Circuit, however, as Tenth Circuit caselaw

compels an identical result. See United States v. Smith, 472 F.3d at 753. Regarding a

stipulation's effect, the Tenth Circuit has held that such a waiver necessarily relieves the United

States of its burden regarding the stipulated element:

> But the very nature of a defendant's waiver is that it frees the government from the obligation to present *any* evidence regarding the element in question. Certainly the government must inform the jury of the defendant's stipulation at some point, in order to provide jurors with the information they need to convict

under the statute. Yet the stipulation is not itself evidence;[11] it is an admission -- a waiver of the right to demand evidence.

United States v. Smith, 472 F.3d at 753 (emphasis in original).  Furthermore, in United States v. Flower, 29 F.3d 530 (10th Cir. 1994), the Tenth Circuit considered the same civil-rights-restoration argument that Young brings here:

Although Flower argued that the government had the burden of proving a negative -- proving that his civil rights had not been restored -- the district court treated this as a matter of an affirmative defense and imposed upon Flower the burden of proving that his civil rights had been restored.  Thus, the district court denied Flower's motion for a judgment of acquittal based upon the government's failure to prove that his prior convictions had not been expunged or set aside, that he had not been pardoned, and that his civil rights had not been restored.  The district court denied the motion and ruled that Flower bore the burden of proving the status of his prior convictions.

29 F.3d at 533.  The Tenth Circuit affirmed the district court's denial of the defendant's acquittal motion, reasoning that,

[a]s a practical matter, requiring the government to negate the possibility, in every § 922(g)(1) case, that each defendant's prior convictions had been expunged or set aside, that a pardon had been granted, or that civil rights had been restored, would impose an onerous burden.  A defendant ordinarily will be much better able to raise the issue of whether his prior convictions have been expunged or set aide, whether a pardon has been granted, or whether civil rights have been restored. Thus, if a defendant believes that one of the prior convictions that the government seeks to use as a predicate conviction under § 922(g)(1) does not meet the legal definitional requirements of § 921(a)(20), it will be up to the

_____

[11]On a clean slate, the Court would find that a stipulation is evidence.  Most trial lawyers and trial courts think that a stipulation is evidence.  Indeed, the Tenth Circuit's Criminal Pattern Jury Instructions refer to stipulations as evidence.  The Preliminary Jury Instructions Before Trial, for example, state: "The evidence in this case includes only what the witnesses said while they were testifying under oath, the exhibits that I allowed into evidence, the stipulations that the lawyers agreed to, and the facts that I have judicially noticed."  10th Cir. Pattern Jury Instr. Crim. 1.01 (2018). Moreover, the section "Evidence -- Defined" states: "Evidence will be presented from which you will have to determine the facts.  The evidence will consist of the testimony of the witnesses, documents and other things received into the record as exhibits, and any facts about which the lawyers agree or to which they stipulate."  10th Cir. Pattern Jury Instr. Crim. 1.06 (2018).  The Court is, however, a district court, so it must follow the Tenth Circuit's statement as the law of the circuit.

> defendant to challenge the admissibility of such conviction. Any such challenge
> must be made with specificity.

United States v. Flower, 29 F.3d at 535.  The Tenth Circuit thus requires that a defendant seeking to challenge the sufficiency of a prior conviction for § 922 purposes must do so with specificity. See 29 F.3d at 535.  In this case, Young has not only failed to comply with the Tenth Circuit's specificity requirement, but, by stipulating to the prior conviction element, Young has effectively and unequivocally removed this element from the jury's consideration and, thereby, relieved the United States of its burden.

**B.     THE STIPULATION INCORPORATES BY REFERENCE YOUNG'S INDICTMENT, WHICH REFERENCES SEVERAL QUALIFYING FELONY CONVICTIONS.**

The United States avers that, "by saying [']as charged in the [I]ndictment in this case,[']" the Stipulation "incorporated" Young's predicate felony convictions, which the Indictment references with specificity.  Oct. 16 Tr. at 7:17-20 (Houghton).  Young argues that the Stipulation's language "does not say one of the felonies charged in the [I]ndictment.  It just refers to a felony in the [I]ndictment[,] not to a specific felony . . . and not to any disqualifying f[elony]."  Oct. 16 Tr. at 8:16-21 (Houghton).  Although Young removed § 922(g)'s prior conviction element from the jury's consideration, and therefore the Court need not reach the question whether the Stipulation incorporated by reference Young's Indictment, see United States v. Flower, 29 F.3d at 534 (stating that, because the defendant "'stipulated to the existence of the first element,' we did not elaborate or discuss in depth what constitutes a predicate felony conviction in § 922(g)(1) cases" (quoting United States v. Shunk, 881 F.2d 917, 921 (10th Cir. 1989))), the Court nevertheless agrees with the United States and concludes that the Stipulation is sufficient to satisfy § 922(g)'s prior felony element pursuant to the common-law doctrine of incorporation by reference.

The Court adopts the United States Court of Appeals for the Seventh Circuit's proposition that "[a] stipulation is a contract between two parties to agree that a certain fact is true." United States v. Barnes, 602 F.3d at 796 (citing Analytical Eng'g, Inc. v. Baldwin Filters, Inc., 425 F.3d 443). Accordingly, the Court applies standard contract law principles to determine whether the Stipulation between the United States and Young incorporates by reference Young's Indictment. See United States v. Barnes, 602 F.3d at 796 (applying contract law principles to determine that a stipulation between the United States and a defendant cannot bind a third party, i.e., that such a stipulation requires the trial judge's consent). The Court previously considered the doctrine of "incorporation by reference" in Macias v. New Mexico Department of Labor, wherein the Court cited favorably to Corpus Juris Secundum's ("CJS") incorporation-by-reference principles:

> In the contract context,
>
>> [m]atters incorporated by reference or annexed to a contract will be construed as a part of the contract, for the purpose and to the extent indicated.
>>
>> A contract may validly include provisions of a document that is not physically part of the contract itself, including a document that is not itself a contract. Matters incorporated into a contract by reference are as much part of the agreement as if they had been set out in the contract verbatim. . . . A reference to another writing is sufficient without actual annexation of the writing. However, if a written contract refers to another writing for a particularly designated purpose, the other writing becomes a part of the contract only for the purpose specified.
>>
>> For an incorporation by reference to be effective, it must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms. A reference to another document must be clear and unequivocal, and the terms of the incorporated document must be known or easily available to the parties. . . .
>>
>> However, a mere reference to another document is not sufficient to incorporate that other document into a contract; the writing to

which reference is made must be described in such terms that its identity may be ascertained beyond reasonable doubt.

Other writings incorporated by reference as a part of a written contract may properly be considered in the construction of the contract. Where a writing expressly refers to and sufficiently describes another document, the other document, or so much of it as is incorporated, is to be interpreted as part of the writing; the two writings should be construed together.

300 F.R.D. at 561-62 (footnotes omitted)(quoting 17A C.J.S. Contracts § 402 (2014)). Although the Court in Macias v. New Mexico Department of Labor did not rely on CJS contract law principles to decide that case, several federal Courts of Appeals have adopted and affirmed such principles. See Greene v. Ablon, 794 F.3d 133, 145 (1st Cir. 2015); Northrop Grumman Info. Tech., Inc. v. United States, 535 F.3d 1339, 1345 (Fed. Cir. 2008); Standard Bent Glass Corp. v. Glassrobots Oy, 333 F.3d 440, 447 (3d Cir. 2003)("Incorporation by reference is proper where the underlying contract makes clear reference to a separate document, the identity of the separate document may be ascertained, and incorporation of the document will not result in surprise or hardship."); New Moon Shipping Co. v. MAN B & W Diesel AG, 121 F.3d 24, 30 (2d Cir. 1997)("Under general principles of contract law, a contract may incorporate another document by making clear reference to it and describing it in such terms that its identity may be ascertained beyond doubt" (citing 4 Williston on Contracts § 628, at 903-04 (3d ed. 1961)); U.S. Dep't of Labor v. Ins. Co. of N. Am., 131 F.3d 1037, 1042-43 (D.C. Cir. 1997); PaineWebber, Inc. v. Bybyk, 81 F.3d 1193, 1201 (2d Cir. 1996)(applying common-law rule that "the paper to be incorporated into a written instrument by reference must be so referred to and described in the instrument that the paper may be identified beyond all reasonable doubt."); Hertz Corp. v. Zurich Am. Ins. Co., 496 F. Supp. 2d 668, 675 (E.D. Va. 2007)(Kelley, J.)("It is axiomatic in the law of

contracts that, in order to incorporate a secondary document into a primary document, the identity of the secondary document must be readily ascertainable.").

The common law of contracts insists on explicit references and clear language of incorporation.  See Northrop Grumman Info. Tech., Inc. v. United States, 535 F.3d at 1345 ("[T]he language used in a contract to incorporate extrinsic material by reference must explicitly, or at least precisely, identify the written material being incorporated.").  In United States Department of Labor v. Insurance Company of North America, for example, the United States Court of Appeals for the District of Columbia Circuit concluded that a contract's use of the words "applicable regulations" was sufficiently unambiguous to "necessarily incorporate[]" the federal regulation that defined the liability trigger for the insurance claims at issue.  U.S. Dep't of Labor v. Ins. Co. of N. Am., 131 F.3d at 1042-43.  In Greene v. Ablon, the United States Court of Appeals for the First Circuit concluded that the language in the plaintiff's employment forms, specifically that the plaintiff agree "to abide by all such bylaws and any policies and procedures that are applicable to appointees to the [defendant-hospital's] Medical/Professional Staff," was sufficiently clear to incorporate by reference the defendant's intellectual property policy.  Greene v. Ablon, 794 F.3d at 145-46.  The First Circuit noted:

> Extrinsic materials may be incorporated into a contract by reference as long as "the language used in the contract . . . clearly communicate[s] that the purpose of the reference is to incorporate the referenced material into the contract (rather than merely to acknowledge that the referenced material is relevant to the contract, e.g., as background law or negotiating history)."

Greene v. Ablon, 794 F.3d at 145 (quoting NSTAR Elec. Co. v. Dep't of Pub. Utils., 968 N.E.2d 895, 905-06 (Mass. 2012)).  These cases indicate that, although a contract's reference to an extrinsic document must be clear and unambiguous, it need not be detailed.  See Greene v. Ablon, 794 F.3d at 145-46.  Moreover, the clear-and-unambiguous requirement "does not amount to a rule that contracting parties must use a rote phrase or a formalistic template to effect

an incorporation by reference."[12] Northrop Grumman Info. Tech., Inc. v. United States, 535 F.3d at 1345.

Rule 7 of the Federal Rules of Criminal Procedure also contemplates the doctrine of incorporation by reference, specifically by permitting incorporation of indictment allegations in one count by reference to other counts. See Fed. R. Crim. P. 7(c)(1) ("A count may incorporate by reference an allegation made in another count."). Similar to the common law of contracts, rule 7 requires an explicit reference to effect incorporation. See United States v. Hajecate, 683 F.2d 894, 901 (5th Cir. 1982)("Fed. R. Crim. P. 7(c) declares that allegations made in one count may be incorporated by reference in another count. But this court long ago held that while the specificity required in an indictment can be achieved by incorporation of another count, this incorporation must be express, not implicit."). Moreover, although the reference must be explicit, it need not be more detailed than necessary to alert the defendant to the relevant material. See United States v. Caldwell, 544 F.2d 691, 695 (4th Cir. 1976). The defendant in United States v. Caldwell argued that the words "said funds" were insufficient to incorporate by reference allegations concerning "monies, funds and credits" as set forth in his indictment. 544 F.2d at 695. The Fourth Circuit disagreed, stating that "we think that the word 'said' is the

---

[12]Although there are no "magic words" of reference or of incorporation, the United States Court of Appeals for the Federal Circuit stresses that

> parties contracting with the government may easily avoid or at least minimize the risk of having to litigate this issue by simply adopting widely-used and judicially-approved language of incorporation, such as "is hereby incorporated by reference" or "is hereby incorporated as though fully set forth herein," and by including specific and sufficient information identifying a particular document, such as the title, date, parties to, and section headings of any document to be incorporated.

Northrop Grumman Info. Tech., Inc. v. United States, 535 F.3d at 1346. Although the Court concludes that the Stipulation in this case is clear and unambiguous, the Federal Circuit's recommended incorporation language and drafting guidance is wise.

functional equivalent of 'hereinbefore set forth,' upheld as a valid incorporation by reference in Nichols v. United States." United States v. Caldwell, 544 F.2d at 695 (quoting Nichols v. United States, 48 F.2d 46, 47 (5th Cir. 1931)).

Although generally in accord with other Courts of Appeals' interpretation of rule 7, the Tenth Circuit, in at least one case, has relaxed rule 7's explicit reference requirement. See United States v. Staggs, 881 F.2d 1527, 1531 (10th Cir. 1989). In United States v. Staggs, the Tenth Circuit concluded that indictment counts alleging continuing criminal enterprise do not have to reference expressly the underlying offenses on which such counts are based. See 881 F.2d at 1531. The decision in United States v. Staggs is limited to that case's unique facts, as the Tenth Circuit notes that the incorporated counts tracked certain statutory language and that the indictment made additional references to the underlying offences. See 881 F.2d at 1531. The decision's import, however, is that the Tenth Circuit does not universally require express reference to extrinsic material to effect incorporation, despite "the proposition that 'precedent solidly precludes incorporation except by express reference,'" 881 F.2d at 1531 (quoting 881 F.2d at 1537 (Ebel, J., dissenting)). The Stipulation in this case makes a single reference, i.e., "the Indictment," and the record before the Court includes but a single indictment.

Applying the common-law contract and rule 7 analysis detailed above, the Court concludes that the Stipulation incorporates Young's Indictment. Here, the Stipulation's use of the words "a felony, as charged in the Indictment of this case," evidence the parties' express intent to incorporate Young's Indictment. Tr. Ex. 1 at 1. The reference is clear and unequivocal; the Stipulation references no other documents. Moreover, the reference is for the particularly designated purpose of satisfying § 922(g)'s prior felony element, because the Stipulation states that it "also relieves the government of its burden of proof with regard to the defendant's status

as a felon at the time relevant to the charge contained in the Indictment," Trial Ex. 1 at 1, and the Indictment became a part of the Stipulation for this purpose,  see U.S. Dep't of Labor v. Ins. Co. of N. Am., 131 F.3d at 1042  ("When a contract incorporates a regulation by reference, that regulation becomes a part of the contract for the indicated purposes as if the words of that regulation were set out in full in the contract." (citing Washington Metro. Area Transit Auth. v. Mergentime Corp., 626 F.2d 959, 962 n.3 (D.C. Cir. 1980))).

Before and during Young's trial, the Court discussed the Stipulation's terms at length with both parties and before the jury.  At the pretrial conference and motion hearing, for example, the Court acknowledged that "we have a stipulation that prior to November 13, 2016[,] that the [D]efendant had sustained a felony conviction."  Sep. 12 Tr. at 19:3-7 (Court).  The Court then instructed both parties to sign the Stipulation and to ensure that Young "knows exactly what he's been stipulated for."  Sep. 12 Tr. at 19:8-11 (Court).  Young relied that he would "take care of it."  Sep. 12 Tr. at 19:12 (Knoblauch).  The parties then agreed to have the Court read the Stipulation to the jury, see Sep. 12 Tr. at 19:15-20:1 (Court, Spiers, Knoblauch), which, according to Young, gives it "a bit more authority," Sep. 12 Tr. at 19:3-7 (Knoblauch). Moreover, after the parties' opening statements, the Court read to the jury the Stipulation in its entirety:

> Government's Exhibit one is [a] stipulation regarding prior felony
> convictions, . . . .   [T]he part[ies] by and through their undersigned counsel
> stipulate and agree as follows[:] one[,] the defendant Apache Young prior to
> November 13, 2016[,] had been convicted of a crime punishable by imprisonment
> for a term exceeding one year, that is a felony offense as charged in the
> indictment of this case.  And then[,] two[,] this stipulated fact is proved beyond a
> reasonable doubt and may be read to the jury at trial.  This stipulation also
> release[e]s [the] Government [from] its burden of proof with regard t[o] t[he]
> defendant's status as a felon at the time relevant t[o] t[he] charge contained in the
> indictment.  Acknowledged to agreed and stipulated.  Mr. Apache Young, the
> defendant has signed it dated the [1]2[th] of [September] 2018 . . . Charles E
> [Knoblauch] counsel for the defendant signed the [unintelligible] 2018[,] and Paul

H [Spiers] [A]ssistant U.S. Attorney has signed the [unintelligible] September 12, 2018.

Trial Tr. at 172:6-173:2 (Court).  See Clerk's Minutes: Jury Selection/Trial at 3 ("Court reads 2 stipulations, exhibit 1 and 2.").  Such references in open court evidence the parties' knowledge of and assent to the incorporated terms, i.e., Young's predicate felony convictions as detailed in the Indictment.  Accordingly, the Indictment's qualifying felonies were the subject of the Stipulation.  The Court therefore construes the Stipulation and the Indictment as one document sufficient to relieve the United States of its burden regarding § 922(g)'s prior felony element.

## II. THE UNITED STATES WAS NOT REQUIRED TO PROVE THAT THE FIREARMS WERE MANUFACTURED AFTER 1898, BECAUSE THE ANTIQUE FIREARMS EXCEPTION IS AN AFFIRMATIVE DEFENSE THAT YOUNG DID NOT PROPERLY RAISE.

Young argues that the Court should enter a judgment of acquittal, because "18 U.S.C. § 921 (a)(3) excepts a firearm from being an article whose possession is banned for prohibited persons if it was manufactured before 1899" and at trial the United States did not present evidence that the firearms were manufactured after that time.  Acquittal Motion at 3.  Section 921(a)(3) exempts antique firearms from the definition of the term "firearm."  18 U.S.C. § 921(a)(3) ("Such term does not include an antique firearm.").  Section 921(a)(16) defines an "antique firearm" as "any firearm (including any firearm with a matchlock, flintlock, percussion cap, or similar type of ignition system) manufactured in or before 1898 . . . ." 18 U.S.C. § 921(a)(16).  Antique firearms are thus exempt from § 922's felon-in-possession prohibition.  See United States v. Basnett, 735 F.3d at 1258.

The Tenth Circuit has held that the antique-firearm exception is an affirmative defense which a criminal defendant must raise.  See United States v. Basnett, 735 F.3d at 1258 ("Because characterization as an antique involves an affirmative defense, the defendant bears the initial burden of producing evidence.").  Moreover, in concluding that the antique-firearm exception is

an affirmative defense, the Tenth Circuit joins "[e]very circuit court of appeals to consider the issue." United States v. Basnett, 735 F.3d at 1258 (citing Gil v. Holder, 651 F.3d at 1005 n.3 ("[E]very other circuit of which we are aware that has considered the § 921(a)(3) 'antique firearm' exception in the criminal context, has treated it as an affirmative defense rather than an element of the crime."); United States v. Lawrence, 349 F.3d at 122 ("Every circuit court of appeals that has considered this issue has agreed that establishing that a weapon is an 'antique, firearm' for purposes of §§ 921 and 922 is an affirmative defense.").  Young concedes that the antique-firearm exception is an affirmative defense; however, Young asserts that he properly raised the defense on cross-examination, specifically when Hotle was "unable to testify as to [the firearms'] antiquity due to his lack of expertise," which, according to Young, was sufficient to put the United States on notice of its burden "to establish that the firearms were manufactured after 1898."  Acquittal Reply at 2.  When a statutory exception creates an affirmative defense, "the ultimate burden of persuasion remains with the prosecution, but the defendant has the burden of going forward with sufficient evidence to raise the exception as an issue."  United States v. Laroche, 723 F.2d at 1543 (citing McKelvey v. United States, 260 U.S. 353, 357 (1922); United States v. Stout, 667 F.2d 1347, 1353 (11th Cir. 1982)("[O]nce the government has proven the elements of the offense, the burden shifts to the defendant to demonstrate qualification under an exception.")).  Young thus bore the initial burden "to properly present the statutory exception."  United States v. Laroche, 723 F.2d at 1543 (citing United States v. Oba, 448 F.2d 892, 894 (9th Cir. 1971), cert. denied, 405 U.S. 935 (1972).  The Court adopts the Third Circuit's position -- one shared by every Court of Appeals to consider the antique-firearm defense, that proper presentation requires "sufficient evidence to raise the exception as an issue," United States v. Laroche, 723 F.2d at 1543 (citing United States v. Washington, 17 F.3d at 232),

and concludes that the mere possibility that a firearm could have been manufactured in or before 1898 is insufficient to shift this burden, see 349 F.3d at 121 ("[T]he defense presented no evidence that the gun in question was an antique beyond raising the *possibility* through the government's experts. . . . [M]ore is required than raising the specter of an ephemeral mathematical possibility to create an issue of fact." (emphasis in original)). Furthermore, the Court agrees with the Third Circuit's rationale for such an evidentiary threshold, specifically that the United States "can not be expected to engage in the litigational equivalent of shadow boxing by jabbing and striking at shadowy inferences that may arise from the ethers of testimony." United States v. Lawrence, 349 F.3d at 121. The Third Circuit notes that every Court of Appeals to consider the antique-firearm exception agrees on a threshold evidentiary requirement sufficient "to justify shifting the burden of proof to the government." 349 F.3d at 121. The Court therefore concludes that the United States assumes the burden of disproving the antique-firearm exception's applicability only when a defendant crosses a threshold evidentiary requirement sufficient "to justify shifting the burden of proof to the government." 349 F.3d at 121. See United States v. Laroche, 723 F.2d at 1543.

Young made only faint first steps in his approach to this evidentiary threshold, because Young's cross-examination of Hotle did not establish even the barest possibility that the firearms could have been manufactured in or before 1898. On cross-examination, Young questioned Hotle about the pistol's firing mechanism. See Testimony Tr. at 64:2-23 (Knoblauch). Young stated:

> Knoblauch: Okay. That's kind of an old system; is that right?
>
> Hotle: What do you mean by "old"?
>
> Knoblauch: It's not something -- semi-automatic pistols weren't invented yesterday, were they?

Hotle: No, not yesterday.

Knoblauch: Quite a long time ago; is that right?

Hotle: I'm not sure when they were invented.

Knoblauch: Is that what you would call an expensive type of gun, or --

Hotle: Like what the value of this would be?

Knoblauch: Yeah.

Hotle: No, Hi[-]Points are generally cheaper firearms.

Testimony Tr. at 65:2-15 (Knoblauch, Hotle). Young later asked questions related to the rifle and to the shotgun:

Knoblauch: Now, let me see: These other two items are made by Remington; is that right?

Hotle: They're both Remingtons, yes.

Knoblauch: Now, Remington is a company in New York; is that correct?

Hotle: Yes, New York or New Jersey.

Knoblauch: And do you know anything about the history of Remington?

Hotle: No.

Knoblauch: You don't know it's been around for a couple hundred years?

Hotle: I couldn't tell you. I don't collect guns. I'm not like a gun enthusiast, per se. I'm just experienced with them.

Testimony Tr. at 67:7-20 (Knoblauch, Hotle). Young asked Hotle further questions about the pistol's firing mechanism:

Knoblauch: Pushing towards the back. That's what operates the mechanism?

Hotle: Yes.

Knoblauch: And that's -- again, it's an old system; is that right?

Hotle: I don't know when it was -- I don't know. I don't know when it came into invention. Old is -- I mean, old to you is different from what's old to me, so I don't know.

Knoblauch: I see.

Hotle: It's been around for a while. I mean, I don't know. I'm not sure what you want me to answer on this. I don't know when it was invented, and I don't know how old it is.

Testimony Tr. at 72:13-73:1 (Knoblauch, Hotle). Young never asks Hotle's opinion as to the firearms' age. Young never asks Hotle whether the firearms could have been manufactured in or before 1898, or even whether the firearms merely looked old. As the United States asserted at the hearing, the relevant portions of the trial transcript contain "no mention of antique firearms." Oct. 16 Tr. at 14:24-15:24 (Houghton). Hence, Young's effort to raise the antique-firearm defense from the ethers of Hotle's testimony does not approach the "ephemeral mathematical possibility" that the Third Circuit rejected in United States v. Lawrence. 349 F.3d at 121-22. The defendant in United States v. Lawrence argued that the United States failed to prove that the weapon involved in that case was a firearm pursuant to § 922, because, after the United States' experts testified that a number of firearms, including one antique firearm, could have expelled the bullet fragments found in the victim in that case, the United States did not introduce evidence that the weapon was manufactured after 1898. See 349 F.3d at 121 n.10. This expert testimony thus compelled the Third Circuit to acknowledge that the defendant had raised the "possibility" that at least one of the firearms in that case could have been manufactured in or before 1898. 349 F.3d at 121. Here, there is no such possibility that the firearms were manufactured in or before 1898, as Young did not ask Hotle a question regarding the firearms' age, and Hotle provided no response that a reasonable factfinder could interpret as indicating that the firearms could fall within the antique-firearms exception. Young asked Hotle broad questions about the rifle and shotgun's manufacturer's age and about the pistol's firing mechanism. Even had Hotle

provided affirmative answers to Young's questions, such answers could establish only that the Remington arms manufacturer has "been around for a couple hundred years," Testimony Tr. at 67:7-20 (Knoblauch), and that a .45 caliber pistol's firing mechanism "is an old system," Testimony Tr. at 72:24 (Knoblauch). Such evidence -- which Hotle did not provide -- says nothing about the age of the firearms themselves. By failing to elicit any testimony regarding the firearm's age, Young cannot assert factual grounds sufficient to raise the antique-firearms exception as an affirmative defense. Indirect, off-topic suppositions offered on cross-examination, and only later connected in post-trial motions practice, are not enough to carry Young's burden, which requires "sufficient evidence to raise the [antique-firearms] exception as an issue." United States v. Laroche, 723 F.2d at 1543. See United States v. Washington, 17 F.3d at 232.

Although Young did not present evidence sufficient to raise the antique firearm defense, the United States further contends that a jury could infer that the .45 caliber firearm is not an antique based on "its non-antique appearance." Acquittal Response at 4. Young counters that "appearances are not at issue, it is proof of the date of manufacture which can be dispositive." Acquittal Reply at 2. In support of this assertion, Young directs the Court to a website that, according to Young, discusses antique firearms. See Acquittal Reply at 2 (citing https://www.antiquegunlist.com/home/1870-1898/hand-guns). In addition, Young directs the Court to two exhibits that, according to Young, describe "pre-1899 firearms with the same mechanisms as those firearms in evidence." Acquittal Reply at 2 (citing Gewehr 1888 -- Wikipedia, filed October 11, 2018 (Doc. 113-1); Model 1893 Shotguns -- Winchester Collector, filed October 11, 2018 (Doc. 113-2)).

At the hearing, the Court asked about "the fact that the firearm was introduced itself, it was visible to the jury, it was taken back to the jury room, is that not enough to let the jury look at it and determine that that's not an antique firearm?" Oct. 16 Tr. at 11:9-13 (Court). Young replied that the firearms' age is "a matter for expert opinion at that point," because a pre-1899 firearm discussed in the reference material that Young provided the Court "uses exactly the same mechanism as the firearm that was introduced into evidence." Oct. 16 Tr. at 11:14-21 (Knoblauch). The Court stated that "[i]t may be the same mechanism, but . . . it didn't seem to be an old looking gun." Oct. 16 Tr. at 11:22-24 (Court). Young then requested the Court to compare the provided reference materials with the Court's memory of the pistol that was introduced into evidence and argued that "basically it's the same thing[;] it's got a handle[,] it's got a barrel. It's got a trigger . . . essentially any differences are really minor." Oct. 16 Tr. at 12:3-8 (Knoblauch).

Young readily consented to the Court's request to reexamine the firearms and compare them to Young's antique-firearms reference materials, <u>see</u> Oct. 16 Tr. at 18:18-22 (Court, Knoblauch), and suggested that, because ".45 caliber firearms have been used since the mid[-]19th century," the Court should

> look at the firearms . . . and make its own conclusion on that, because a slide action shot[]gun is a [slide] action shotgun . . . . A bolt action [rif]le is a bolt action rifle and basically it's the same mechanism[,] they look pretty much the same, and certainly a semi-automatic handgun . . . is a semi[-automatic] handgun[,] and they look pretty much the same.

Oct. 16 Tr. at 20:18-21:8 (Knoblauch). The Court obtained the firearms for examination.



*Figure 1 -- Hi-Point .45 caliber semi-automatic pistol*



*Figure 2 -- Remington 12-gauge Shotgun*



*Figure 3 -- Remington 12-gauge Shotgun*



*Figure 4 -- Remington .30-06 Rifle*



*Figure 5 -- Remington .30-06 Rifle*

The Court has personally, physically, and visibly examined the firearms, and concludes that, although the rifle and shotgun bear some resemblance to the firearms in the materials that Young submitted to the Court for the Court's review, the .45 caliber pistol has a distinctly modern-looking design and appearance. Moreover, while perhaps sharing design features similar to models manufactured in the nineteenth century, the rifle and shotgun in this case do not have, as a matter of law, a 120-year-old appearance. The Court further concludes that the age of a given firearm's firing mechanism is not within § 922's subject matter and is therefore beyond the scope of the Court's analysis. Although Young's failure to raise the affirmative defense is dispositive of the antique-firearm question, the Court nevertheless agrees with the United States that the jury could reasonably infer that the .45 caliber firearm is not an antique

based on "its non-antique appearance." Acquittal Response at 4. Such inferences are squarely within the jury's province. See United States v. Royal, 731 F.3d at 339. United States v. Royal involves whether § 922(g) requires the United States to prove that ammunition was not designed for exclusive antique firearm use. See 731 F.3d at 339. In addition to holding that the defendant was not entitled to have the jury consider the issue as an affirmative defense, "because the jury ultimately did not hear even a scintilla of evidence to suggest that the rounds were designed for use exclusively in an antique firearm," the Fourth Circuit concluded that the ammunition was sufficient to satisfy § 922(g)(1)'s "designed for use in any firearm" element, given that "most people are familiar with the appearance of modern ammunition." 731 F.3d at 339. The Court concludes that most people are also familiar with the appearance of modern firearms, and such familiarity is sufficient for a reasonable jury to find, by a preponderance of the evidence, that the firearms in this case were manufactured after 1898.

**IT IS ORDERED** that the Defendant's Motion for Judgement of Acquittal, filed September 26, 2018 (Doc. 103), is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

John C. Anderson
  United States Attorney
Paul H. Spiers
Kristopher N. Houghton
Paul Edward Schied
  Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

Charles E. Knoblauch
Charles E. Knoblauch Attorney at Law
Albuquerque, New Mexico

-and-

Jennifer J. Wernersbach
Law Offices of Jennifer J. Wernersbach, P.C.
Albuquerque, New Mexico

*Attorneys for the Defendant*