# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                              No. CR 17-0694 JB

APACHE YOUNG,

       Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on: (i) the Defendant's Motion in Limine to Exclude Mention of West Mesa Burials, filed September 10, 2018 (Doc. 74)("Burials Motion"); (ii) the Defendant's Motion in Limine to Exclude Mention of Panties, filed September 10, 2018 (Doc. 75)("Panties Motion"); (iii) the Defendant's Motion in Limine to Exclude Opinion as to Source of Tattoos, filed September 10, 2018 (Doc. 76)("Tattoos Motion"); (iv) the Defendant's Motion in Limine to Exclude Mention of and Speculation Regarding Items Observed in Old Water Tank, filed September 12, 2018 (Doc. 82)("Items Motion"); (v) the United States' Notice Pursuant to Federal Rule of Evidence 609, filed November 8, 2018 (Doc. 121)("609 Notice"); (vi) the United States' Motion in Limine Requesting that Counsel be Precluded from Referencing the First Trial, from Making Arguments Unsupported by the Record, and From Asking Inappropriate Questions on Direct or Cross-examination, filed November 23, 2018 (Doc. 123)("First Trial Motion"); (vii) the United States' Motion in Limine to Allow Cross-examination of Defense Witnesses Regarding the Contents of Defendant's Red Dodge Pick-up Truck, filed November 9, 2018 (Doc. 124)("Contents Motion"); and (viii) the United States' Motion in Limine to Allow the Testimony at Trial of N.M. Probation and Parole Officer Ronald Barela, filed November 22, 2018

(Doc. 127)("Testimony Motion"). The Court held hearings on September 12, 2018, and November 28, 2018. The primary issues are: (i) whether the Court should preclude references to the West Mesa burials or murders,[1] which continue to receive considerable media coverage; (ii) whether the Court should preclude references to women's underwear found in Defendant Apache Young's pickup truck; (iii) whether the Court should preclude references to the likely source of Young's tattoos as prison tattoos; (iv) whether the Court should preclude mention of or speculation regarding the items -- feces, blood, and a purported children's water toy -- that Albuquerque Police Officer Jason Harvey observed in the water tank near Young's pickup; (v) whether the Court should, if Young elects to testify at trial, permit Plaintiff United States of America to introduce, pursuant to rule 609 of the Federal Rules of Evidence, the name of the crimes, the dates of the crimes, and the imposed sentences in Young's prior convictions; (vi) whether the Court should preclude mention of the first trial, which ended in a mistrial, at the second trial; (vii) whether the Court should permit cross-examination of Young's witnesses regarding the contents of Young's pickup truck; and (viii) whether the Court should allow the United States to call New Mexico Probation and Parole Officer Ronald Barela to testify about the terms and conditions of Young's probation, which disqualified Young from possessing firearms. The Court concludes that it will preclude, in Young's second trial on the felon in possession charge, references to: (i) the West Mesa burials or murders; (ii) the women's underwear found in Young's truck; (iii) the likely source of Young's tattoos; (iv) the items that Harvey observed in the water tank; (v) Young's prior convictions' names and sentences for impeachment purposes; (vi) Young's September 17, 2018,

---

[1]The "West Mesa Burials" refer to the remains of eleven women found buried in 2009 in Albuquerque's West Mesa desert. See West Mesa Murders, https://en.wikipedia.org/wiki/West_Mesa_murders (last visited Dec. 6, 2018). No suspects have been arrested and law enforcement believe that a serial killer is responsible. See supra.

trial; (vii) cross-examination of Young's witnesses regarding the women's underwear, brass knuckles, methamphetamine pipe, and pornography, but not reference to the ski mask, shovel, marijuana, marijuana pipe, and alcohol; and (viii) Barela's testimony about Young's probation terms and conditions, because the Court concludes that the precluded references' prejudice to Young substantially outweighs their probative value.

## PROCEDURAL BACKGROUND

On March 14, 2017, a federal grand jury returned an indictment[2] charging Young with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). See Indictment at 1, filed March 14, 2017 (Doc. 2). The Court ordered Young's trial to commence on September 17, 2018. See Order to Continue at 2, filed September 7, 2018 (Doc. 69). Before trial, Young filed the Burials Motion, the Panties Motion, the Tattoos Motion, and the Items Motion. See Burials Motion at 1; Panties Motion at 1; Tattoos Motion at 1; Items Motion at 1.

1. **The Burials Motion.**

In the Burials Motion, Young moves the Court to preclude testimony or evidence regarding or mentioning the "infamous West Mesa Burials."[3] Burial Motion at 1. Young notes that the West

---

[2]The Indictment states, in relevant part, that,

[o]n or about November 13, 2016, in Bernalillo County, in the District of New Mexico, the defendant, **APACHE YOUNG,** having been convicted of at least one of the following felony crimes punishable by imprisonment for a term exceeding one year: (1) receiving and transferring a stolen motor vehicle, (2) attempt to commit a felony, to wit robbery, (3) aggravated battery, knowingly possessed, in and affecting commerce, a firearm. In violation of 18 U.S.C. §§ [sic] 922(g)(l).

Indictment at 1 (emphasis in Indictment).

[3]The West Mesa Murders received extensive local and national media attention. See The missing                women                of                'West                Mesa,'

Mesa is the scene of an unsolved homicide investigation involving "eleven dead human bodies," Burial Motion at 1-2, and that Young's arrest in this case occurred "in an area not far distant from where the bodies were found," Burial Motion at 2. Young adds that Harvey, a United States witness, has testified that he was "heavily involved" in the West Mesa Murders investigation. Burial Motion at 2. Young asserts that evidence related to the West Mesa Murders "would not only be irrelevant to this Matter, it would be highly prejudicial and would almost inevitably lead to jury speculation that the Defendant was, in some manner, involved with the bodies." Burial Motion at 2 (citing Fed. R. Evid. 403 and 404).

2. **The Panties Motion.**

In the Panties Motion, Young moves the Court to preclude testimony about or evidence of the women's underwear found in the truck that Young was driving on November 13, 2018. See Panties Motion at 1. Young contends that the underwear is not relevant to the charge in this case. See Panties Motion at 1. Moreover, according to Young, reference to the underwear could cause the jury to speculate improperly why Young had them in the truck, which could prejudice Young. See Panties Motion at 2-3. Hence, Young concludes, rules 403 and 404 of the Federal Rules of Evidence advise against permitting the jury to hear testimony referencing the underwear. See Panties Motion at 2-3.

3. **The Tattoos Motion.**

In the Tattoos Motion, Young moves the Court to preclude testimony or evidence regarding Young's tattoos' source. See Tattoos Motion at 1. Young states that Harvey observed the numerous tattoos on Young's torso, and, at the June 26, 2018, suppression hearing, Harvey stated

---

http://www.nbcnews.com/id/40611288/ns/dateline_nbc/t/missing-women-west-mesa/ (last visited Dec. 26, 2018).

his opinion that Young received the tattoos in prison. <u>See</u> Tattoos Motion at 1. Young contends that Harvey lacks the qualifications to render an opinion regarding the tattoo's source and that the tattoos' source is irrelevant. <u>See</u> Tattoos Motion at 1. Moreover, according to Young, Harvey's opinion is prejudicial, because it would lead the jury to speculate impermissibly regarding facts surrounding Young's prior incarceration. <u>See</u> Tattoos Motion at 2. Hence, Young concludes, rules 403 and 404 weigh against permitting the jury to hear testimony referencing Young's tattoos' source. <u>See</u> Tattoos Motion at 2.

**4.      <u>The Items Motion</u>.**

In the Items Motion, Young moves the Court to preclude testimony or evidence regarding Harvey's observation of "fresh feces and blood, and an unknown object that looked like a children's water toy that also had feces and blood on it," in the water tank. Items Motion at 1-2. Young contends that Harvey found these items within the water tank that Young had exited and thereafter Harvey speculated that Young had been using the water toy to masturbate. <u>See</u> Items Motion at 2. According to Young, Harvey had already arrested Young when Harvey observed the items in the water tank, and, therefore, the items did not bolster Harvey's reasonable suspicion, as Young suspects the United States intends to argue at trial. <u>See</u> Items Motion at 2. Moreover, according to Young, the United States cannot prove that Young placed any items in the water tank. Items Motion at 2. Hence, Young concludes, because the items are both irrelevant and highly prejudicial, rules 403 and 404 strongly weigh against permitting the jury to hear Harvey's testimony regarding what he believed that Young was doing in the water tank, <u>i.e.</u>, masturbating with a child's water toy. <u>See</u> Items Motion at 3.

**5.** **The Response.**

The United States responds to the Burials Motion, the Panties Motion, the Tattoos Motion, and the Items Motion in a single document. See Response by the United States to the Defendant's Motions in Limine, filed September 12, 2018 (Doc. 83)("Response"). In its Response, the United States asserts that it does not intend to introduce evidence of the West Mesa burials. See Response at 1. The United States notes, however, that, if Young attempts to contest Harvey's legitimate presence and familiarity with the West Mesa, the United States will request the Court's permission to introduce Harvey's testimony about his work on the West Mesa murders. See Response at 2.

The United States further contends that, although the "dirt covered young women's panties . . . in close proximity to the burial of multiple young women in a dirt-covered landscape" give the United States "discomfort and pause," the United States will nonetheless refrain from mentioning the underwear. Response at 2. The United States adds, however, that it will pursue such evidence if Young "implicitly or explicitly bring[s] the evidentiary significance of this evidence to life." Response at 2.

Regarding the Tattoo Motion, the United States asserts that Harvey, based on his law enforcement experience and "rationally based perception," is qualified to provide an opinion as to the source of Young's tattoos. Response at 2. The United States notes, however, that it does not intend to develop this opinion evidence "provided that the Defendant does not make the issue relevant and material." Response at 2.

6. **The September 12, 2018, Hearing.**

The Court held a hearing.  See Transcript of Hearing at 1:22-23 (taken September 12, 2018)("Sept. 12 Tr.").[4]  At the hearing, the Court asked the United States whether it needs to mention the "west side burials."  Sept. 12 Tr. at 21:5-7 (Court).  The United States asserted that it has no intention to introduce the West Mesa murder into the case unless, at trial, Young challenges Harvey's authority to patrol that area.  See Sept. 12 Tr. at 21:10-18 (Spiers).  The Court responded that it was inclined to enter an order precluding mention of the West Mesa murders unless Young contests Harvey's jurisdiction to patrol the West Mesa and thereby opens the door to Harvey's involvement in the West Mesa murder investigation.  See Sept. 12 Tr. at 22:5-12 (Court).  Young replied that considering the West Mesa murders alongside the jurisdictional issue is "mixing apples and oranges."  Sept. 12 Tr. at 22:15-16 (Knoblauch).  The Court stated that it was inclined to agree, ordered the United States to not mention the murders in its case-in-chief, and granted the motion with the possible exception that Young may open the door to their introduction.  See Sept. 12 Tr. at 23:2-7 (Court).

Young next addressed the Panties Motion's request to exclude mention of the women's underwear that law enforcement found in Young's truck.  Sept. 12 Tr. at 23:12-13 (Knoblauch).  The Court expressed that in "a gun case it didn't seem . . . too relevant."  Sept. 12 Tr. at 23:15-16 (Court).  The United States agreed with the Court that the underwear did not seem relevant, but nonetheless wanted to revisit the issue if "something unpredictable" occurs.  Sept. 12 Tr. at 23:1-22 (Spiers).  The Court ordered the United States not to mention the underwear in its case-in-chief

---

[4]The Court's citations to the hearing transcript refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

and cautioned Young to not do anything "that would open the door" to the underwears' discussion during the trial. Sept. 12 Tr. at 23:25-24:3 (Court).

Turning to the Tattoo Motion, the Court stated that, because Young intends to stipulate to being a felon, it is disinclined to permit testimony discussing Young's tattoos' source. See Sept. 12 Tr. at 24:15-19 (Court). The United States asserted that Harvey's observations lend "some potential . . . meaningfulness" to the tattoos, Sept. 12 Tr. at 24:21-22 (Spiers), because they indicated to Harvey that Young was a "full-fledged prison inmate at one point," which then influenced how Harvey conducted the investigation, Sept. 12 Tr. at 25:3-6 (Spiers). The Court instructed the United States that, during the trial, Harvey can state that he saw Young shirtless but cannot mention the tattoos or offer his opinion as to the tattoos' source. See Sept. 12 Tr. at 25:18-20 (Court). The United States stated that it would comply with the Court's ruling. See Sept. 12 Tr. at 25:21-24 (Spiers). Young asserted that he did not mind the United States referencing Young's tattoos but objected to the United States speculating as to the tattoos' source. See Sept. 12 Tr. at 26:6-8 (Knoblauch). The Court expressed particular concern about Harvey characterizing the tattoos as prison tattoos. See Sept. 12 Tr. at 26:13-14 (Court).

The Court next considered Young's Items Motion, which seeks to preclude references to feces, blood, a child's water toy, and speculation that Young was masturbating in the water tank near where Harvey arrested Young on November 13, 2016. See Sept. 12 Tr. at 28:3-9 (Court). The Court concluded that Harvey's references to masturbation are speculative and prejudicial. See Sept. 12 Tr. at 28:9-12 (Court). The Court further concluded that Harvey's water tank investigation "doesn't go to any reasonable suspicion about the charge at hand." Sept. 12 Tr. at 28:17-19 (Court). The United States asserted that it could "not live" with excluding reference to these materials, Sept. 12 Tr. at 29:11-13 (Spiers), because these materials indicated to Harvey that "there

was something going on out there," Sept. 12 Tr. at 29:22-25 (Spiers). The Court replied that the United States had sufficient evidence to take to the jury and that, in the Court's opinion, the jury would not question why law enforcement was present on the West Mesa. See Sept. 12 Tr. at 30:16-18 (Court). The Court then ordered the United States not to mention the feces, the blood, and the children's water toy. See Sept. 12 Tr. at 30:21-23 (Court). The United States expressed concern about the Court's order not to mention the blood, see Sept. 12 Tr. at 31:11-12 (Spiers), because, according to the United States, observing the blood compelled Harvey to continue investigating the scene, see Sept. 12 Tr. at 31:17-22 (Spiers). The Court expressed that it is most concerned about Harvey's comments on the video and not the items' visual depiction in the video. See Sept. 12 Tr. at 32:4-6 (Court). The Court clarified that the United States could show the video and audio but must "take out any mention or speculation about masturbation." Sept. 12 Tr. at 32:23-24 (Court).

7.    **First Trial**.

Young was tried on September 17, 2018. See Clerk's Minutes for Proceedings Held Before District Judge James O. Browning: Jury Selection/Trial as to Apache Young held on 9/17/2018 and 9/18/2018 at 1, filed September 17, 2018 (Doc. 100)("Clerk's Minutes: Jury Selection/Trial"). After two days of deliberations, the jury failed to reach a unanimous verdict. See Clerk's Minutes: Jury Selection/Trial at 5-6. Hence, on September 18, 2018, the Court declared a mistrial. See Clerk's Minutes: Jury Selection/Trial at 6. See also Order of Mistrial, filed September 19, 2018 (Doc. 97)("[A] Mistrial is declared as to the Indictment.").

8.    **609 Notice**.

In its 609 Notice, the United States asserts its intention "to attack Defendant Apache Young's 'character for truthfulness by evidence of a criminal conviction.'" 609 Notice at 1

(quoting Fed. R. Evid. 609).  Accordingly, should Young elect to testify at trial, the United States

intends to introduce the following convictions:

1. **2005 New Mexico State Conviction**
   Attempt to Commit a Felony, to wit: Robbery (8/31/2004) (one count) -- No
   Contest Plea

   -- Sentenced to 9 months incarceration, followed by a term of probation

2. **2006 New Mexico State Convictions**
   Aggravated Battery with a Deadly Weapon or Resulting in Great Bodily Harm
   (7/25/2005) (three counts) -- No Contest Plea

   -- Sentenced to 3 years for each count for a total of 9 years, 6 years suspended,
   followed by a five-year term of probation

3. **2010 Oklahoma State Convictions**
   Attempted Robbery with a Weapon (4/18/2009) (one count) -- Guilty Plea

   Assault and Battery with a Deadly Weapon (4/18/2009) (two counts) -- Guilty
   Plea

   Robbery with a Weapon (Great Bodily Harm) (4/18/2009) (two counts) -- Guilty
   Plea

   Obstructing an Officer (4/18/2009) (one count) -- Guilty Plea

   Attempted Robbery with a Firearm (4/18/2009) (one count) -- Guilty Plea

   -- Sentenced to one year for Obstructing an Officer, sentenced to five years for
   each of the remaining counts, all sentences were run concurrent for a total
   sentence of five years.  Young was released from confinement on this matter in
   2015.  The following year he possessed a firearm as charged in the indictment.
   Accordingly, the United States need not provide notice under Rule 609(b).
   Nonetheless, the United States does so out of courtesy.

609 Notice at 1-2 (footnote omitted).

9. **609 Notice Response.**

Young filed a response to the United States' 609 Notice.  <u>See</u> Defendant's Response to the

Plaintiff's Notice Pursuant to Federal Rule of Evidence 609, filed November 23, 2018 (Doc.

128)("609 Response").  In the 609 Response, Young asserts that "[t]he use of the names of the Defendant's prior convictions would be more prejudicial than probative and, thus, prohibited under Fed. R. Evid. 403."  609 Response at 1.

10. **First Trial Motion.**

In its First Trial Motion, the United States requests that the Court prohibit counsel for both parties from speaking about the first trial either to the venire panel or to the seated jury.  See First Trial Motion at 1.  The United States asserts that, "[b]ecause the fact that a case has been previously tried is irrelevant to the disposition of the case, district courts are justified in precluding mention of a prior trial."  First Trial Motion at 2.  Moreover, according to the United States, "[s]uch reference would prejudice the United States, because it could erroneously be taken by the jury as an indication of reasonable doubt" that Young committed the charged offense.  First Trial Motion at 2.

Additionally, the United States asserts that the Court should preclude arguments that the record does not support.  Trial Motion at 2 (citing Whittenburg v. Werner Enterprises Inc., 561 F.3d 1122, 1128-29 (10th Cir. 2009)("Counsel must confine comments to evidence in the record and to reasonable inference from that evidence.")).  The United States contends that Young's defense in the first trial included several unsupported arguments "which may have contributed to that jury's failure to reach a verdict."  First Trial Motion at 2.  According to the United States, examples of such arguments include Young's improper assertion that the United States did not prove that the firearm in question was not an antique firearm.  See First Trial Motion at 3.  "This argument was presented despite the fact that the Defendant did not raise the issue during cross examination."  First Trial Motion at 3.  The United States further requests that the Court preclude Young from making arguments that encourage jury nullification.  See First Trial Motion at 3 (citing

United States v. Gonzalez, 596 F.3d 1228, 1237 (10th Cir. 2010)("[W]e disapprove of the encouragement of jury nullification.")). Moreover, at the first trial, avers the United States, Young impermissibly argued that Harvey stereotyped Young because of his tattoos, "despite no evidence that Officer Harvey engaged in stereotyping," and then inferred "that there should be some consequence for such misbehavior." First Trial Motion at 4. The United States contends that the Court, in its order denying Young's motion to suppress, determined that Harvey's conduct was not improper, and, therefore, "the Court should preclude the Defendant from repeating the argument at the second trial." First Trial Motion at 4.

The United States requests that the Court preclude questions that call for conclusions regarding evidence that the Court disallowed based on its prejudicial nature, "such as the 16 pairs of panties in various sizes and states of decomposition," because such questions, for example, when Young asked Harvey whether the truck's contents were "consistent with perhaps camping or being outdoors recently," present "a disciplined witness with an improper choice: characterize the evidence correctly by venturing into prejudicial territory or agree to the Defendant's half-true mischaracterization." First Trial Motion at 6. The United States asks the Court to allow the United States to introduce the truck's complete contents if Young "opens the door" by asking witnesses to draw impermissible conclusions. First Trial Motion at 6.

Finally, the United States asks the Court to preclude questions that call for legal conclusions, see First Trial Motion at 6 (citing Van Winkle v. Crowell, 146 U.S. 42, 29 (1982)), because "the law must come only from the Court," First Trial Motion at 6 (citing United States v. Kingston, 971 F.2d 481, 486 (10th Cir. 1992)("[L]ay witnesses and even expert witnesses are not permitted to give opinions as to what the law is.")). According to the United States, Young elicited such conclusions when he asked Harvey: "And a person does have a right to refuse consent to

search his personal items; correct?"  First Trial Motion at 6 (citing Excerpt -- Trial Testimony Only at 46:7-8 (Knoblauch), filed October 3, 2018 (Doc. 109)).  According to the United States, this line of questioning "serves no relevant purpose," "is likely to confuse the jury," and "ventures into the realm of jury nullification," because it "implies a violation of the Defendant's rights," given that Harvey ultimately searched Young's vehicle.  First Trial Motion at 7.

11.    <u>**First Trial Response.**</u>

Young filed a response to the United States' First Trial Motion.  <u>See</u> Defendant's Response to the United States Motion in Limine Requesting that Counsel be Precluded From Referencing the First Trial, From Making Arguments Unsupported by the Record, and From Asking Inappropriate Questions on Direct or Cross-examination, filed November 23, 2018, (Doc. 130)("First Trial Response").  Young opposes referring to the first trial as a "prior hearing," because, according to Young, jurors "tend to place a greater weight on the solemnity of trial testimony than that of a simple hearing."  First Trial Response at 1.  Young further contends that the First Trial Motion not only asks jurors to disregard their "common sense," but also implies that Young may raise an affirmative defense only through his own witnesses.  First Trial Response at 2.  Moreover, according to Young, the United States' witness' "low level of expertise . . . created the [firearms' age] issue."  First Trial Response at 2.  Young adds that the jury has a right to consider nullification, all the more so when the charged offense is nonviolent.  <u>See</u> First Trial Response at 2.  Young concludes by asserting that the Sixth Amendment to the Constitution of the

United States of America guarantees Young the right to cross examine Harvey's "less than ideal" conduct[5] in the way that Young deems most effective.  First Trial Response at 2.

        11.    **Contents Motion.**

        In its Contents Motion, the United States requests that the Court allow the United States to cross-examine Young's mother, Annie Baca, and Young's cousin, Frank Gaona, regarding the firearm's stolen nature and the pickup truck's contents, to include "the 16 pairs of panties, the ski mask, the brass knuckles, the shovel, the pornographic magazines, the cooler full of beer and liquor, the marijuana pipe, and the meth pipe," provided either Baca or Gaona say that they own the truck or any of the items found within it.  Contents Motion at 1.

        The United States asserts that it believes that Baca will testify that she owned the red Dodge truck that Young drove on November 13, 2016, and "may even go so far as to testify that she was responsible for the items in the truck."  Contents Motion at 2.  The United States bases its belief on Young's jail calls, Young's statements after his November 13, 2016, arrests, and the truck's registration documents.  See Contents Motion at 2-3.  The United States believes that Gaona will testify that he owned one or more of the firearms that law enforcement discovered in the truck. See Contents Motion at 3.  The United States bases this belief on Young's jail calls and Young's November 13, 2016, post-arrest statements, see Contents Motion at 3; for example, according to the United States, in one jail call, Young tells his mother: "And like I was telling you, that pistol

_____

        [5]Young likely is referring to allegations set forth in the Defendant's Motion to Suppress the Fruits of Illegal Arrest and Supporting Brief, filed May 10, 2018 (Doc. 43)("Motion").  In his Motion, Young argues that Harvey made a de facto arrest on Young when he took Young's pocketknife and told him not to leave.  See Motion at 5-6.  Young also contends that Harvey arrested him without probable cause and violated Young's rights under the Fourth Amendment to the Constitution of the United States of America.  See Motion at 7-8. The Court denied the Motion. See United States v. Young, No. CR 17-0694 JB, 2018 WL 4188452, at *33 (D.N.M. Aug. 31, 2018)(Browning, J.).

belongs to Reyes' fuckin' uh, baby-mom.  Crystal's brother's girl. . . .  And then the shotgun, that was Bambu's (phonetic spelling) . . . . Bambu had the gun for nine years, mom," Contents Motion at 3.  Moreover, contends the United States, Young told Harvey that "there were two more rifles in the vehicle and that they belonged to his unnamed cousin."  Contents Motion at 3.

The United States insists that, because its theory of the case is that Young knowingly and intentionally possessed all of the items in the truck on November 13, 2016, "the United States should be allowed the opportunity to impeach the witnesses about the stolen nature of the firearms and *all* of the items found inside, including the incriminating ones.  Anything less would deprive the jury of its ability to judge the witnesses' credibility."  Contents Motion at 5 (emphasis in Contents Motion).  The United States specifically requests the Court's permission to inquire about the firearms' origin and whether Young's witnesses knew that the firearms were stolen, which "is relevant to credibility."  Contents Motion at 5.  The United States further asserts that cross-examination is necessary to test the witnesses' veracity, as, for example, "it defies common experience to believe a 69-year old woman would carry in her vehicle brass knuckles; pornography magazines depicting nude females; and 16-pairs of varying sizes of modern cut panties."  Contents Motion at 6.  According to the United States, if the jury finds such facts unbelievable, it would extend its disbelief to any testimony that Baca controlled the truck or the firearms.  See Contents Motion at 6.  Moreover, contends the United States, regarding the drugs and drug paraphernalia, the jury has a right to know whether it is considering testimony from habitual drug users.  See Contents Motion at 6 (citing United States v. Smith, 692 F.2d 658, 661 (10th Cir. 1982)("[N]ormally the trial court runs a substantial risk of causing prejudice to a fair trial when it fails to instruct the jury concerning the inherent unreliability of an addict's testimony.")).  Alternatively, the United States avers, "should the witnesses deny knowledge or ownership of the

drugs and paraphernalia, then their assertion of ownership over other items is rightly impugned." Contents Motion at 6.

13.     **Contents Motion Response.**

Young filed a response to the Contents Motion.  See Defendant's Response to the United States' Motion in Limine to Allow Cross Examination of Defense Witnesses Regarding the Contents of Defendant's Red Dodge Pick-up Truck at 1, filed November 23, 2018 (Doc. 131)("Contents Motion Response").  In the Contents Motion Response, Young contends that he is "a bit at sea," because, after stipulating to Baca being the pickup truck's owner, "[t]he United States now changes tack" in asserting that Young is the truck's owner.  Contents Motion Response at 2.  Moreover, according to Young, the "mere fact" that Young told Harvey who owned the firearms "has no bearing on whether they were his."  Contents Motion Response at 2.  Hence, Young "rightfully demand[s] some form of explanation for why the United States believe[s]," according to Young, that Baca "might not have been the owner of certain items in the truck." Contents Motion Response at 2.

14.     **Testimony Motion.**

In its Testimony Motion, the United States requests that the Court allow Barela to testify that, in 2008, he advised Young that, pursuant to state and federal law, Young could no longer possess a firearm.  See Testimony Motion at 1.  According to the United States, Young signed a document affirming that he reviewed the New Mexico Corrections Department Parole Division Offender Orientation Handbook, which evidences that Young "was aware that he was not allowed to possess firearms."  Testimony Motion at 2.  Young's awareness of his action's criminality, the United States asserts,

provides a clear explanation for his behavior on November 13, 2016 including: why Young was so quick to separate himself from the firearms as law enforcement officers approached, why he attempted to send officers to another vehicle, why he initially lied about the firearms' presence in the vehicle, and why he correctly predicted that officers would find two additional guns in the truck when they executed the search warrant.

Testimony Motion at 3-4. The United States further asserts that any evidence which increases the likelihood that Young knowingly possessed a firearm is "especially important for the next jury to consider" and that Barela's testimony can therefore strengthen the United States' case. Testimony Motion at 4. The United States contends that Young's behavior following his arrest makes it difficult for Young to argue that he did not knowingly possess the firearms, which Barela's testimony would "bolster." Testimony Motion at 5. The United States distinguishes its request in this case from the United States' request in United States v. Griffin, 389 F.3d 1100, 1103 (10th Cir. 2004), wherein the Tenth Circuit concluded that evidence of the defendant's probation terms was irrelevant, because § 922(g) does not require felons to know that firearm-possession is unlawful. See Testimony Motion at 5 (citing United States v. Griffin, 389 F.3d at 1103). Unlike the proposed evidence in United States v. Griffin, avers the United States, the United States intends to use Barela's testimony "for a relevant and important purpose: to explain Young's deceptive behavior," which increases the likelihood that Young knowingly possessed a firearm. Testimony Motion at 5.

The United States further contends that, pursuant to rule 403, Barela's testimony is substantially more probative than it is prejudicial, because the United States' burden to prove that Young is a felon diminishes any prejudice that could result from the jury learning that Young was once on probation. Testimony Motion at 5. "After all, the jury who learns that Young is a convicted felon will not be surprised to learn he was once on probation." See Testimony Motion

at 5.  Moreover, asserts the United States, the Court can instruct the jury not to infer guilt based on Young's prior probation term.  Testimony Motion at 5.  The United States insists that rule 404(b) does not foreclose Barela's testimony, because Young's probation is not itself a crime, is not being introduced to prove Young's character, and is otherwise admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Testimony Motion at 6 (citing Fed. R. Evid. 404(b)(2)).

      **15.**      **Testimony Motion Response.**

      Young filed a response to the Testimony Motion.  <u>See</u> Response to United States' Motion in Limine to Allow Testimony at Trial by Probation and Parole Officer Barela at 1, filed November 28, 2018, (Doc. 145)("Testimony Motion Response").  In the Testimony Motion Response, Young requests that the Court preclude the United States from eliciting Barela's testimony, because, according to Young, Barela's testimony is irrelevant, given that knowledge whether a felon can possess a firearm is not an offense element, and because Young does not dispute that he cannot possess a firearm lawfully.  <u>See</u> Testimony Motion Response at 1.  Moreover, contends Young, Barela's testimony is prejudicial and "holds no probative value."  Testimony Motion Response at 2.  Young further contends that the United States admits that Barela's testimony is "nothing more than bolstering" and, thus, unnecessary to explain Young's behavior to the jury.  Testimony Motion Response at 2.

      **16.**      **The November 28, 2018, Hearing.**

      The Court held a hearing.  <u>See</u> Transcript of Hearing at 1:22-23 (taken November 28, 2018)("Nov. 28 Tr.").[6]  In addressing the First Trial Motion, the Court stated its position that "the

---

[6]The Court's citations to the hearing transcript refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

jury doesn't need to be influenced by the fact that there was a first trial" and that the parties "should just refer to it as a hearing before the Court." Nov. 28 Tr. at 3:5-17 (Court). Young responded that, unlike hearings, which, according to Young, are often "quite informal," "jurors get a much greater feeling of the importance of prior testimony when it's trial [testimony]." Nov. 28 Tr. at 4:5-8 (Knoblauch). Young expressed further concern that merely saying "prior hearing" is insufficiently descriptive. Nov. 28 Tr. at 4:15-16 (Knoblauch). The Court stated that Young could say "prior hearing in this case before this judge[]." Nov. 28 Tr. at 5:17-18. The Court provided further rationale for its order:

> One of the reasons I'm doing it . . . I don't want that jury to think there was some jurors that thought Mr. Young was guilty, and I think that would be the inference they would draw and I want them to be on a clean slate. I don't want them to be thinking about what some other jury did or didn't do so it's partly for protection of Mr. Young.

Nov. 28 Tr. at 4:24-5:5 (Court).

The United States asserted that it is seeking an order to prevent Young from arguing issues not properly raised, such as occurred during the first trial with Young's antique firearm defense.[7] See Nov. 28 Tr. at 5:24-6:7 (Schied). The Court suggested that the United States listen to Young's trial examinations and then, before closing arguments, request the Court to preclude Young's antique firearms defense based on whether Young sufficiently raised the exception. See Nov. 28 Tr. at 6:19-7:5 (Court). The United States concurred with the Court's suggestion. See Nov. 28

---

[7]The United States likely is referring to arguments made during the first trial and in the Defendant's Motion for Judgement of Acquittal, filed September 26, 2018 (Doc. 103)("Acquittal Motion"), wherein Young argued that the United States was required to prove that the firearms in question were manufactured after 1898. See Acquittal Motion at 3. The Court denied the Acquittal Motion, in part, because the Court concluded that the antique firearms exception is an affirmative defense that Young did not properly raise at trial. See United States v. Young, No. CR 17-0694 JB, 2018 WL 6204601, at *29 (D.N.M. Nov. 28, 2018)(Browning, J.).

Tr. at 6:6 (Schied). The United States added that it is also seeking to prevent Young from arguing jury nullification. See Nov. 28 Tr. at 7:17 (Schied). The Court asked Young whether Young had read the Court's opinions on jury nullification. See Nov. 28 Tr. at 7:19-20 (Court). Young responded in the affirmative and added that he found them "wonderful." Nov. 28 Tr. at 7:21-22 (Knoblauch). The Court stated that, although sympathetic, the best it can do is to provide Young with an opinion that Young can argue before the Tenth Circuit. See Nov. 28 Tr. at 7:24-8:2 (Court). Young volunteered that he did not intend to raise the antique firearm exception at the second trial; "that horse has left the barn." Nov. 28 Tr. at 8:12-14 (Knoblauch).

The Court then turned to the United States request that "questions ask[ing] for conclusions regarding evidence that has been precluded should themselves be precluded." Nov. 28 Tr. at 9:20-22 (Court). The United States expressed particular concern about Young "asking witnesses to draw conclusion[s] based on the items in the truck." Nov. 28 Tr. at 10:10-12 (Schied). The United States asserted that at the first trial Young asked questions which indicated that he was using the truck for innocuous purposes, despite the precluded items not supporting that narrative. See Nov. 28 Tr. at 10:13-24 (Schied). Young replied that his questions focused on what "could be seen in plain view," i.e. the bed of the truck, and deliberately did not discuss the truck's cab, because those items were what he did not want brought before the jury. Nov. 28 Tr. at 11:3-13 (Knoblauch). The United States replied that "clearly the inference that the defense is driving at through this line of questioning is that the use of the truck was for innocuous noncriminal purposes," which, the United Stated averred, the Court could not mitigate by limiting Young's questions to "just the bed of the truck," Nov. 28 Tr. at 11:23 (Schied), because law enforcement found potentially prejudicial items in the truck bed as well as the truck cab, see Nov. 28 Tr. at 11:24-12:2 (Schied). The Court

responded that it would give the matter more thought, but that it was inclined not to restrict Young's cross examination regarding the truck items. See Nov. 28 Tr. at 12:13-20 (Court).

The United States asked the Court to preclude both parties from asking witnesses questions that call for legal conclusions. See Nov. 28 Tr. at 13:5-7 (Schied). Young asserted his opinion that the United States is specifically referring to questions "dealing with [whether] the search [of] the truck was legitimate." Nov. 28 Tr. at 13:12-14 (Knoblauch). The Court asked whether Young is willing to forego this line of questioning. See Nov. 28 Tr. at 13:16-17 (Court). Young responded that the United States took its question out of context, because, by asking Harvey whether people have a right not to consent to a search, Young was attempting to demonstrate that "there is more than one reason why he might have refused consent to search the truck." Nov. 28 Tr. at 14:4-18 (Wernersbach). The United States responded that it is satisfied with Young's explanation and is concerned only with Young asking irrelevant questions. See Nov. 28 Tr. at 14:19-20 (Schied). The Court stated that it is not inclined to preclude Young from asking such questions to "a police officer on the stand, they know the rules of consent and search and things like that." Nov. 28 Tr. at 14:22-15:1 (Court).

Turning to the Contents Motion, the Court stated that it did not see how the pickup truck's contents, aside from the firearms, are relevant to this case. See Nov. 28 Tr. at 15:9-12 (Court). The United States insisted that it has no intention to introduce the truck's contents but rather, because Young has not provided the United States with discovery, the Contents Motion seeks to anticipate the testimony that Young intends to elicit from his witnesses. See Nov. 28 Tr. at 15:16-21 (Houghton). The Court agreed with the United States' arguments in the Contents Motion, specifically that Baca, as a "fairly elderly" women, is unlikely to keep firearms in her truck, and

accordingly, the Court is "a little more receptive to" permitting the United States to question her regarding the truck contents. Nov. 28 Tr. at 15:23-16:11 (Court).

The United States asserted that it does not believe that Baca is involved in the charged offense and would therefore seek to cross-examine her on the truck items only if Young claims that the firearms' presence in the truck was an accident or a mistake. See Nov. 28 Tr. at 16:15-24. In that event, the United States intends to use the "meth pipe, the marijuana, the marijuana pipe, the liquor and alcohol, the pornographic magazines . . . to impeach her testimony." Nov. 28 Tr. at 17:1-4 (Houghton). The Court asked the United States whether the United States could make its point "with something less than all those things." Nov. 28 Tr. at 17:10-12 (Court). The United States replied that it wants to introduce the items merely to impeach Baca. See Nov. 28 Tr. at 17:16-20 (Houghton). The Court asked the United States what items it would seek to introduce, knowing that the Court will not permit the United States to introduce all the items. See Nov. 28 Tr. at 18:21-23 (Court). The United States responded that it would introduce the innocuous items that are inconsistent with Baca's use, such as the shovel, the ski mask, and the hat. See Nov. 28 Tr. at 17:24-18:4 (Houghton). The United States asserted that the prejudicial items -- the drugs and drug paraphernalia, the pornographic magazines, and the women's underwear -- also indicate that someone other than Baca was using the truck. See Nov. 28 Tr. at 18:5-11 (Houghton). The Court expressed its inclination to limit the United States to the ski mask, shovel, and cooler of beer and liquor. See Nov. 28 Tr. at 18:15-17 (Court). The United States responded that the drugs and drug paraphernalia are important, because they are inconsistent with Baca's use of the truck and because, if Baca intends to claim all the truck items, then the jury has a right to know if Baca is a methamphetamine or marijuana user. See Nov. 28 Tr. at 18:18-24. The Court expressed its inclination to allow the United States to ask Baca about the ski mask, the shovel, the beer and

liquor cooler, and the marijuana and marijuana pipe; "nobody gets too worked up anymore about marijuana." Nov. 28 Tr. at 19:15-19 (Court). Young stated that he would not object to cross examination on those items, as they "are innocuous enough." Nov. 28 Tr. at 20:3-4 (Knoblauch).

The United States expressed concern about eliciting incriminating information from an unrepresented witness, should Baca allege that she owns the stolen firearms. See Nov. 28 Tr. at 20:12-15 (Houghton). The Court stated that it would get Baca an attorney and, if she states that she owns the firearms, permit the United States to ask her about the items -- the ski mask, the shovel, the beer and liquor cooler, and the marijuana and marijuana pipe -- in the truck. See Nov. 28 Tr. at 22:16-20 (Court).

Regarding Gaona's proposed testimony, the United States asserted its belief that Gaona is the cousin that Young referenced as the firearms' owner after Young realized that Harvey intended to search the truck cab. See Nov. 28 Tr. at 23:6-12 (Houghton). Young replied that Gaona will state that he owns the .30-06 rifle but not the stolen weapons, i.e., the shotgun and the pistol. See Nov. 28 Tr. at 24:1-2. Because Gaona will not state that he owns the stolen firearms, the Court concluded that Gaona does not need an attorney. See Nov. 28 Tr. at 24:13-14 (Court). The Court next turned to the Testimony Motion and asked whether Young intended to stipulate to § 922(g)'s predicate felony conviction. See Nov. 28 Tr. at 25:19-25 (Court). Young replied in the affirmative. See Nov. 28 Tr. at 26:3 (Knoblauch). The Court then asked the United States why it needs a probation officer once it has a stipulation. See Nov. 28 Tr. at 26:4-7 (Court). The United States replied that Barela's testimony does not speak to Young's prior convictions but rather to § 922(g)'s scienter element, i.e., whether Young knowingly possessed a firearm, which the United States argued is "very difficult to prove." Nov. 28 Tr. at 26:12-22 (Houghton). The United States asserted that Barela's testimony, that in 2008 Barela reviewed with Young a document which

stated that Young cannot possess a firearm, enables the United States to argue that Young's furtive behavior before his arrest evidences his knowledge that he cannot lawfully possess a firearm. <u>See</u> Nov. 28 Tr. at 27:4-28:7 (Houghton). The Court inquired as to the United States' thoughts regarding the Tenth Circuit's opinion in <u>United States v. Griffin</u>. The United States responded that the Tenth Circuit in <u>United States v. Griffin</u> was concerned about "drawing a direct in[]ference from you knew it was illegal to possess a firearm, therefore you're guilty of possession . . . of a firearm." Nov. 28 Tr. at 28:12-15 (Houghton). The United States asserted that, unlike the testimony that <u>United States v. Griffin</u> precludes, Barela's testimony informs Young's behavior and does not provide the "ultimate conclusion." Nov. 28 Tr. at 28:21-24 (Houghton). The Court responded that the United States' <u>United States v. Griffin</u> analysis does not make sense to the Court, and asked United States' counsel whether he would ever make that argument. <u>See</u> Nov. 28 Tr. at 29:5-13 (Court). The United States agreed with the Court that the prosecutor in <u>United States v. Griffin</u> likely did not make the argument that the United States described, although the prosecutor likely read § 922(g) as a specific intent crime; "[i]t's a general intent crime[,] you just have to know you possessed the firearm you don't have to know it's illegal to do it." Nov. 28 Tr. at 29:14-21 (Houghton). The Court detailed its concern:

> [W]hatever your intent is in this trial to bring in the probation officer, that's the same, it's the same action, I mean, you may have a different intent than the prosecutor in <u>Griffin</u>, but as far as what that jury is going to see and the Tenth Circuit is going to se[e] it's identical. . . . I'm like you I'm kind of struggling to figure out what they're telling district judges not to do, but it seems to me that for just a marginal benefit to you[,] you run [the] risk introducing error in the case or I do if I let you do it. . . . What the prosecutor did in <u>Griffin</u> is identical to what you would do here, regardless of whether you have a different intent.

Nov. 28 Tr. at 30:2-16 (Court). The United States did not share the Court's concern, <u>see</u> Nov. 28 Tr. at 30:18-19 (Houghton), and asserted that "the way the argument would come across to the

jury is that he does all those things for a specific purpose, and that's . . . because he knows it's illegal, so that informs his behavior. His behavior is what infers that he knows the guns are there," Nov. 28 Tr. at 30:25-31:5 (Houghton). The United States added that, without Barela's testimony, the United States would struggle to make this argument, because Young's suspicious behavior could also be because of the methamphetamine pipe, marijuana, or marijuana pipe. See Nov. 28 Tr. at 31:6-10 (Houghton). The Court stated that, based on the United States' representations, the United States seems to think that the jury in the first trial failed to reach a verdict because several jurors concluded that Young did not know that the firearms were in the truck; however, the Court believes that the more likely explanation is that Harvey testified that the firearm was in plain view yet Harvey's lapel camera does not show the firearm. Hence, the Court is "concerned about tackling a phantom issue and potentially introducing error into the case." Nov. 28 Tr. at 32:2-4 (Court). The Court added that,

> on the 403 side, you know, we do a stipulation to try to get the jury to quit thinking about he's a felon over there. They know he's got to be a felon and then we bring a probation officer that just emphasizes it again, because jurors don't have probation officers so they go, oh, this guy has got a probation officer and then they start thinking about that, and we don't really want them to think about that.

Nov. 28 Tr. at 32:11-19 (Court). In response to the Court's concerns, the United States asserted that the Tenth Circuit in United States v. Griffin said that a defendant being on probation is not prejudicial. See Nov. 28 Tr. at 32:21-24 (Houghton). The United States agreed with the Court's analysis of the problem in the first trial, because the United States in the first trial advanced an actual possession theory, and added that, in the second trial, it would be arguing the theory that Young constructively possessed the two rifles later found in the truck cab, a theory that Barela's testimony would support. See Nov. 28 Tr. at 32:24-33:15 (Houghton). The Court remained

unpersuaded that the United States needs Barela's testimony to make its case: "it's . . . a felon in possess[ion], everybody knows that felons can't have firearms." Nov. 28 Tr. at 33:23-34:1 (Court).

Young asserted that he was on probation for only a brief time period and that his familiarity with the probation handbook is too attenuated to support the United States' theory. See Nov. 28 Tr. at 34:19-23 (Wernersbach). Young added that the United States can advance its constructive possession theory without Barela's testimony, as deceptive-behavior-indicates-knowledge-of-wrongdoing arguments are "a clear part of the case in every case. They don't need extra testimony that does invite error . . . just to make an argument they can already make." Nov. 28 Tr. at 34:24-35:8 (Wernersbach). The Court concluded that it is inclined to deny the Testimony Motion and thereby preclude the Untied States from eliciting Barela's testimony during the second trial. See Nov. 28 Tr. at 35:18-20 (Court).

Turning to the United States' 609 Notice, the Court noted that it involves "a 403 issue" and asked whether the United States is saying that, if Young takes the stands, he puts his credibility at issue, and, in that event, the United States can use Young's prior convictions to impeach him. Nov. 28 Tr. at 37:8-13 (Court). The United States responded in the affirmative. See Nov. 28 Tr. at 37:14 (Houghton). The Court stated its belief that "what you're allowed to do is put in cert[i]fied copies of the conviction and all that can be said is that there was a conviction and what the conviction was for and not any of the circumstances." Nov. 28 Tr. at 37:16-20 (Court). The Court added that, if Young is on the stand, then the United States can ask him those questions regarding his conviction if the United States does not want to introduce certified copies. See Nov. 28 Tr. at 37:23-38:1 (Court). Young asserted that, pursuant to rule 403, the Court should order the United States to redact the convictions, "specifically the metion [sic] of deadly weapon . . . because a

couple of these things involve deadly weapons." Nov. 28 Tr. at 38:4-10 (Knoblauch). The United

States contended that it wants to introduce the full, unredacted conviction heading, because

> either way you're going to give the jury a []cura[]tive instruction that they can't
> simply because he's been convicted of other crimes doesn't mean he's guilty of this
> crime, whether or not its robbery or robbery with a deadly weapon or assault but
> we're talking about pretty serious crimes I don't think with a deadly weapon is any
> great leap of prejudice here.

Nov. 28 Tr. at 38:13-22 (Houghton). Young reasserted that it is asking the Court to order the

United States to remove the phrase "deadly weapon," Nov. 28 Tr. at 39:2-3 (Knoblauch), but

would prefer to "keep everything out," Nov. 28 Tr. at 39:6-7 (Knoblauch). The Court responded

that, although it would consider Young's request,

> for the present time let's plan on it coming in with this phrase . . . because I think
> that they're entitled under Tenth Circuit law to do that. I'm trying to think whether
> I specifically have had this issue in a felon in possession case, and I don't recall
> having this precise issue so I'll give it a little bit more thought, but let's plan on the
> moment that i[f] he takes the stand you can impeach him with the heading that [has]
> the name of the crime.

Nov. 28 Tr. at 39:8-19 (Court).

## **RELEVANT LAW REGARDING ADMISSIBLE EVIDENCE**

The threshold issue in determining the admissibility of evidence is relevance. "The rules

of evidence contemplate the admission of relevant evidence, and the exclusion of irrelevant and

potentially prejudicial evidence." Train v. City of Albuquerque, 629 F. Supp. 2d 1243, 1247

(D.N.M. 2009)(Browning, J.)(citing Fed. R. Evid. 401, 402, & 403). As a baseline, under the

Federal Rules of Evidence, all evidence that is relevant is admissible -- unless another law or rule

excludes the evidence -- and any evidence that is not relevant is not admissible. See Fed. R. Evid.

402. The standard for relevance is liberal. See United States v. Leonard, 439 F.3d 648, 651 (10th

Cir. 2006)("Rule 401 is a liberal standard." (citing United States v. McVeigh, 153 F.3d 1166, 1190

(10th Cir. 1998))). The evidence need only have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. See United States v. Leonard, 439 F.3d at 651. See United States v. Gutierrez-Castro, No. CR 10-2072 JB, 2011 WL 3503321, at *3 (D.N.M. Aug. 6, 2011)(Browning, J.)(citing Fed. R. Evid. 401). "[A] fact is 'of consequence' when its existence would provide the fact-finder with a basis for making some inference, or chain of inferences, about an issue that is necessary to a verdict," but it only needs to have "any tendency" to do so. United States v. Jordan, 485 F.3d 1214, 1218 (10th Cir. 2007). See United States v. Leonard, 439 F.3d at 651; United States v. McVeigh, 153 F.3d at 1190. "The standard for relevancy is particularly loose under rule 401, because '[a]ny more stringent requirement is unworkable and unrealistic.'" United States v. Ganadonegro, 854 F. Supp. 2d 1088, 1127 (D.N.M. 2012)(Browning, J.)(quoting Fed. R. Evid. 401 advisory committee's note). Although the threshold burden is low, the rules do "not sanction the carte blanche admission of whatever evidence a defendant would like. The trial judge is the gatekeeper under the Rules of Evidence." United States v. Jordan, 485 F.3d at 1218. Irrelevant evidence, or that evidence which does not make a fact of consequence more or less probable, however, is inadmissible. See Fed. R. Evid. 402 ("Irrelevant evidence is not admissible."); SFF-TIR, LLC v. Stephenson, 250 F. Supp. 3d 856, 1006 (N.D. Okla.), reconsideration denied, 264 F. Supp. 3d 1148 (N.D. Okla. 2017)(Browning, J.).

## RELEVANT LAW REGARDING RULE 403

Rule 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative

evidence." Fed. R. Evid. 403. Under rule 403, the trial court must weigh the proffered evidence's probative value against its potential for unfair prejudice. See United States v. Record, 873 F.2d 1363, 1375 (10th Cir. 1989). "[I]t is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter [under rule 403]." United States v. Pettigrew, 468 F.3d 626, 638 (10th Cir. 2006)(quoting United States v. Sides, 944 F.2d 1554, 1563 (10th Cir. 1991)). The Tenth Circuit has reminded district courts that they should be "mindful" that "exclusion of evidence under Rule 403 that is otherwise admissible under the other rules is an extraordinary remedy and should be used sparingly." United States v. Smalls, 605 F.3d 765, 787 (10th Cir. 2010).

The decision to admit or exclude evidence pursuant to rule 403 is within the trial court's discretion, see United States v. Lugo, 170 F.3d 996, 1005 (10th Cir. 1999), and the trial court's discretion to balance possible unfair prejudice against probative value is broad, see United States v. Bice-Bey, 701 F.2d 1086, 1089 (4th Cir. 1983); United States v. Masters, 622 F.2d 83, 87-88 (4th Cir. 1980). As the Supreme Court of the United States has noted:

> In deference to a district court's familiarity with the details of the case and its greater experience in evidentiary matters, courts of appeals afford broad discretion to a district court's evidentiary rulings. . . . This is particularly true with respect to Rule 403 since it requires an "on-the-spot balancing of probative value and prejudice, potentially to exclude as unduly prejudicial some evidence that already has been found to be factually relevant.

Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 384 (2008)(quoting 1 Steven Alan Childress & Martha S. Davis, Fed. Standards of Review § 4.02, at 4-16 (3d ed. 1999)). See United States v. Abel, 469 U.S. 45, 54 (1984)("Assessing the probative value of [proffered evidence], and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403 . . . . ").

Evidence may be unfairly prejudicial if it would likely provoke the jury's emotional response or would otherwise tend to adversely affect the jury's attitude toward a particular matter. See United States v. Rodriguez, 192 F.3d 946, 951 (10th Cir. 1999). Evidence is not unfairly prejudicial merely because it damages a party's case. See United States v. Caraway, 534 F.3d 1290, 1301 (10th Cir. 2008); United States v. Curtis, 344 F.3d 1057, 1067 (10th Cir. 2003); United States v. Martinez, 938 F.2d 1078, 1082 (10th Cir. 1991). Rather, "[t]o be unfairly prejudicial, the evidence must have 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" United States v. Caraway, 534 F.3d at 1301 (quoting Fed. R. Evid. 403 advisory committee's note).

"The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." Old Chief v. United States, 519 U.S. at 180. "Such improper grounds certainly include . . . generalizing a defendant's earlier bad act into bad character and taking that as raising the odds that he did the later bad act now charged." Old Chief v. United States, 519 U.S. at 180-81. In light of rule 404(b)'s prohibition regarding the use of character evidence to show that a person acted in conformity with their character, "[t]here is, accordingly, no question that propensity would be an 'improper basis' for conviction and that evidence . . . is subject to analysis under Rule 403 for relative probative value and for prejudicial misuse as propensity evidence." Old Chief v. United States, 519 U.S. at 182. The Supreme Court has advised lower courts to disregard the prosecution's need for "evidentiary depth to tell a continuous story" when the prosecution's evidence consists of the underlying facts of a criminal defendant's prior felony conviction, as in an action for felon in possession. Old Chief v. United States, 519 U.S. at 189-90. In such an action, "[t]he most the jury needs to know is that the conviction admitted

by the defendant falls within the class of crimes that Congress thought should bar a convict from possessing a gun, and this point may be made readily in a defendant's admission and underscored in the court's jury instructions." Old Chief v. United States, 519 U.S. at 191. The Court has previously ruled that, under the Supreme Court's decision in Old Chief v. United States, the underlying facts of a defendant's prior conviction should be excluded, even if relevant to the offense. See United States v. Williams, No. CR 12-1675 JB, 2012 WL 5476228, at *2 (D.N.M. Nov. 7, 2012)(Browning, J.); United States v. Ashley, No. CR 04-2497 JB, 2006 WL 4109679, at *3 (D.N.M. Aug. 1, 2006)(Browning, J.)("Even if relevant under rule 404(b), given the nature of the crime with which he is charged here and the similarity to these prior crimes, the danger of unfair prejudice outweighs the probative value of specifically identifying the prior crimes."). See also United States v. Wacker, 72 F.3d 1453, 1472 (10th Cir. 1995)("Whereas the fact of a defendant's prior felony conviction is material to a felon in possession charge, the nature and underlying circumstances of a defendant's conviction are not.").

## LAW REGARDING RULE 404(b)

Under rule 404(b), evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person to show action in conformity therewith. See Fed. R. Evid. 404(b). Rule 404(b) provides:

> **(b) Other Crimes, Wrongs, or Acts.** -- Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Fed. R. Evid. 404(b). In other words, one cannot present evidence the relevance of which is based on the forbidden inference: the person did X in the past, therefore he probably has a propensity for doing X, and therefore he probably did X this time, too. The rule, however, has a number of "exceptions" -- purposes for which such evidence will be admissible. Those purposes include proving motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. See Fed. R. Evid. 404(b). The Supreme Court of the United States has enunciated a four-part process to determine whether evidence is admissible under rule 404(b). See Huddleston v. United States, 485 U.S. 681, 691-92 (1988). The United States Court of Appeals for the Tenth Circuit has consistently applied that test.

> To determine whether Rule 404(b) evidence was properly admitted we look to [a] four-part test . . . : (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to Fed. R. Evid. 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it was admitted.

United States v. Zamora, 222 F.3d 756, 762 (10th Cir. 2000)(citing United States v. Roberts, 185 F.3d 1125 (10th Cir.1999)). See United States v. Higgins, 282 F.3d 1261, 1274 (10th Cir. 2002); United States v. Hardwell, 80 F.3d 1471, 1488 (10th Cir. 1996)(citing Huddleston v. United States, 485 U.S. at 691-92).

Rule 404(b)'s prohibition finds its source in the common-law protection of the criminal defendant from risking conviction on the basis of evidence of his character. See United States v. Dudek, 560 F.2d 1288, 1295-96 (6th Cir. 1977); 22 C. Wright & K. Graham, Federal Practice and Procedure: Evidence § 5239, at 428, 436-37 & 439 (1991). In United States v. Phillips, 599 F.2d 134 (6th Cir. 1979), the United States Court of Appeals for the Sixth Circuit noted, in addressing rule 404(b)'s precepts, that the rule addresses two main policy concerns:

(1) that the jury may convict a "bad man" who deserves to be punished not because he is guilty of the crime charged but because of his prior or subsequent misdeeds; and (2) that the jury will infer that because the accused committed other crimes he probably committed the crime charged.

United States v. Phillips, 599 F.2d at 136.

When bad act evidence is both relevant and admissible for a proper purpose, "the proponent must clearly articulate how that evidence fits into a chain of logical inferences, no link of which may be the inference that the defendant has the propensity to commit the bad act." United States v. Morley, 199 F.3d 129, 133 (3d Cir. 1999)(alterations omitted). The Tenth Circuit has also stated that district courts must "identify specifically the permissible purpose for which such evidence is offered and the inferences to be drawn therefrom." United States v. Youts, 229 F.3d 1312, 1317 (10th Cir. 2000)(citing United States v. Kendall, 766 F.2d 1426, 1436 (10th Cir. 1985)). "[A] broad statement merely invoking or restating Rule 404(b) will not suffice." United States v. Youts, 229 F.3d at 1317.

The Tenth Circuit has recognized the probative value of uncharged, unrelated acts to show motive, intent and knowledge, whether the acts involved previous conduct or conduct subsequent to the charged offense if the uncharged acts are similar to the charged crime and sufficiently close in time. See United States v. Olivo, 80 F.3d 1466, 1468-69 (10th Cir. 1996)(finding the district court did not abuse its discretion when it admitted evidence about an event over one year after a defendant's arrest); United States v. Bonnett, 877 F.2d 1450, 1461 (10th Cir. 1989)(holding that evidence about events over a year after the charged conduct was not "too remote in time and unrelated to the transactions with which he was charged"). This similarity may be shown through "physical similarity of the acts or through the 'defendant's indulging himself in the same state of mind in the perpetration of both the extrinsic offense and charged offenses.'" United States v.

Queen, 132 F.3d 991, 996 (4th Cir. 1997)(quoting United States v. Beechum, 582 F.2d 898, 911 (5th Cir. 1978)). See United States v. Bonnett, 877 F.2d at 1461 ("The closeness in time and the similarity in conduct [are] matters left to the trial court, and [its] decision will not be reversed absent a showing of abuse of discretion."). The more similar the act or state of mind, the more relevant the evidence becomes. See United States v. Queen, 132 F.3d at 996. Moreover, when establishing identity, although the uncharged crime must be similar to the charged offense if it is unrelated to the charged offense, it need not be identical. See United States v. Gutierrez, 696 F.2d 753, 755 (10th Cir. 1982); United States v. Ganadonegro, No. CR 09-0312 JB, 2011 WL 3957549, at *1-3 (D.N.M. Aug. 30, 2011)(Browning, J.).

## LAW REGARDING RULE 609

"At common law a person who had been convicted of a felony was not competent to testify as a witness." Green v. Bock Laundry Mach. Co., 490 U.S. 504, 511 (1989). "[T]he disqualification arose as part of the punishment for the crime, only later being rationalized on the basis that such a person was unworthy of belief." 3 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 609[02], at 609-58 (1988)(citing 2 J. Wigmore, Evidence § 519 (3d ed. 1940)). "As the law evolved, this absolute bar gradually was replaced by a rule that allowed such witnesses to testify in both civil and criminal cases, but also to be impeached by evidence of a prior felony conviction or a *crimen falsi* misdemeanor conviction." Green v. Bock Laundry Mach. Co., 490 U.S. at 511 (footnotes omitted). However, "[i]n the face of scholarly criticism of automatic admission of such impeaching evidence, some courts moved toward a more flexible approach." Green v. Bock Laundry Mach. Co., 490 U.S. at 511 (footnotes omitted).

> As a means of impeachment, evidence of conviction of crime is significant only because it stands as proof of the commission of the underlying criminal act. There is little dissent from the general proposition that at least some crimes are relevant

to credibility but much disagreement among the cases and commentators about which crimes are usable for this purpose. The weight of traditional authority has been to allow use of felonies generally, without regard to the nature of the particular offense, and of *crimen falsi* without regard to the grade of the offense.

Fed. R. Evid. 609 advisory committee's notes (citations omitted).

### 1.    Rule 609(a)(1).

Rule 609(a)(1) of the Federal Rules of Evidence provides:

(a)    **In General.** The following rules apply to attacking a witness's character for truthfulness by evidence of a criminal conviction:

  (1)    for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year, the evidence:

  (A)    must be admitted, subject to Rule 403, in a civil case or in a criminal case in which the witness is not a defendant; and

  (B)    must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant . . . .

Fed. R. Evid. 609(a)(1). On whether to admit the nature of the underlying offense, the Tenth Circuit has held that, "[o]rdinarily, evidence of a witness's felony conviction shall include information about the nature of that conviction unless, after Rule 403 balancing, the probative value of such evidence is outweighed by its prejudicial effect." United States v. Lopez-Medina, 596 F.3d 716, 737 (10th Cir. 2010)(quoting United States v. Howell, 285 F.3d 1263, 1267-68 (10th Cir. 2002)). The Tenth Circuit discussed the different standards which apply to prior convictions offered against an accused as opposed to against a "simple witness":

The Rule provides that evidence of a prior conviction of a witness shall be admitted unless, pursuant to Rule 403, its probative value is substantially outweighed by its prejudicial effect. In contrast, evidence of a prior conviction of the accused shall be admitted unless its probative value is merely outweighed by its prejudicial effect.

> See 28 Charles Alan Wright & Victor James Gold, <u>Federal Practice & Procedure</u> § 6134, at 230 (1993) ("Rule 609(a)(1) is intended to make it harder to admit conviction evidence when offered against an accused than it is when offered against another witness.").

<u>United States v. Howell</u>, 285 F.3d at 1267 n.1. "Rule 609(a)(1) requires a district court to admit evidence of the nature and number of a non-defendant witness' prior felony convictions." <u>United States v. Howell</u>, 285 F.3d at 1268 (quoting <u>United States v. Burston</u>, 159 F.3d 1328, 1336 (11th Cir. 1998)). The Tenth Circuit adopted the reasoning of a United States Court of Appeals for the Eleventh Circuit decision, which explained that "information about the nature of a witness's felony conviction is relevant [because] [t]he implicit assumption of Rule 609 is that prior felony convictions have probative value. Their probative value, however, necessarily varies with their nature and number." <u>United States v. Howell</u>, 285 F.3d at 1268 (quoting <u>United States v. Burston</u>, 159 F.3d at 1335). The Tenth Circuit also noted, however, that "the impeaching party is generally limited to establishing the bare facts of the conviction: usually the name of the offense, the date of the conviction, and the sentence." <u>United States v. Howell</u>, 285 F.3d at 1268 (quoting 4 J.B. Weinstein & M.A. Berger, <u>Weinstein's Federal Evidence</u> § 609.20[2] at 609-57 to 60). A "defendant [i]s entitled to the protection of the rule that only the prior conviction, its general nature, and punishment of felony range [a]re fair game for testing the defendant's credibility . . . . [F]urther damaging details . . . [a]re not." <u>United States v. Commanche</u>, 577 F.3d 1261, 1270-71 (10th Cir. 2009)(quoting <u>United States v. Wolf</u>, 561 F.2d 1376, 1381 (10th Cir. 1977))("That Commanche was twice convicted of aggravated battery was properly admissible. That the crimes involved cutting instruments consistent with the box cutter used in the present case was not."). "A district court must conduct 'a Rule 403 balancing before determining to exclude all evidence of [a witness's] prior convictions other than the fact and date of such convictions.'"

United States v. Lopez-Medina, 596 F.3d at 737 (quoting United States v. Howell, 285 F.3d at 1269). "Care should be taken to protect the accused as far as possible from being convicted because of past conduct and not the crime for which he is being tried." United States v. Commanche, 577 F.3d at 1270-71 (quoting United States v. Wolf, 561 F.2d at 1381).

The Tenth Circuit has emphasized the "mandatory nature of Rule 403 balancing," and held that "the court must conduct a Rule 403 balancing before determining what information about a witness's prior felony conviction, including its nature, should be admitted or excluded." United States v. Howell, 285 F.3d at 1269-70. In its original proposed form, rule 609(a) did not include a provision for balancing prejudicial effect against probative value. See Fed. R. Evid. 609 advisory committee's notes (stating that evidence that a witness "has been convicted of a crime is admissible" to attack a witness' credibility if "he has been convicted of a crime but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted or (2) involved dishonesty or false statement regardless of the punishment"). Before enactment in 1974, the House of Representatives and the Senate disagreed whether to allow only convictions involving dishonesty or false statement to be used to impeach defendants, or whether to allow all felonies. See Fed. R. Evid. 609 advisory committee's notes. The drafting committee adopted the Senate's version, adding a balancing provision if the crime does not involve dishonesty or a false statement:

> The House bill provides that the credibility of a witness can be attacked by proof of prior conviction of a crime only if the crime involves dishonesty or false statement. The Senate amendment provides that a witness' credibility may be attacked if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted or (2) involves dishonesty or false statement, regardless of the punishment.

> The Conference adopts the Senate amendment with an amendment. The Conference amendment provides that the credibility of a witness, whether a

defendant or someone else, may be attacked by proof of a prior conviction but only if the crime: (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted and the court determines that the probative value of the conviction outweighs its prejudicial effect to the defendant; or (2) involved dishonesty or false statement regardless of the punishment.

. . . .

     With regard to the discretionary standard established by paragraph (1) of Rule 609(a), the Conference determined that the prejudicial effect to be weighed against the probative value of the conviction is specifically the prejudicial effect to the defendant. The danger of prejudice to a witness other than the defendant (such as injury to the witness' reputation in his community) was considered and rejected by the Conference as an element to be weighed in determining admissibility. It was the judgment of the Conference that the danger of prejudice to a nondefendant witness is outweighed by the need for the trier of fact to have as much relevant evidence on the issue of credibility as possible. Such evidence should only be excluded where it presents a danger of improperly influencing the outcome of the trial by persuading the trier of fact to convict the defendant on the basis of his prior criminal record.

Fed. R. Evid. 609 advisory committee's notes.

### 2.     <u>Rule 609(a)(2)</u>.

Rule 609(a)(2) states:

**(a)**     **In General.** The following rules apply to attacking a witness's character for truthfulness by evidence of a criminal conviction:

> **(2)**     for any crime regardless of the punishment, the evidence must be admitted if the court can readily determine that establishing the elements of the crime required proving -- or the witness's admitting -- a dishonest act or false statement.

Fed. R. Evid. 609(a)(2). "Crimes qualifying for admission under Rule 609(a)(2) are not subject to Rule 403 balancing and must be admitted." <u>United States v. Harper</u>, 527 F.3d 396, 408 (5th Cir. 2008). <u>See</u> <u>United States v. Guardia</u>, 135 F.3d 1326, 1330 (10th Cir. 1998)(stating that rule 609(a)(2) is a "rare instance" where rule 403 does not apply).

The only difference between [rule 609(a)(1) and 609(a)(2)] is that evidence of convictions for crimes involving "dishonesty or false statement," whether felonies

or misdemeanors, *must* be admitted under Rule 609(a)(2) as being *per se* probative of credibility, while district courts, under Rule 609(a)(1), may admit evidence of a witness's felony convictions that do not constitute *crimen falsi*, subject to balancing pursuant to Rule 403.

United States v. Estrada, 430 F.3d 606, 615-16 (2d Cir. 2005)(emphasis in original)(citation omitted). See Fed. R. Evid. 609 advisory committee's notes ("The admission of prior convictions involving dishonesty and false statement is not within the discretion of the court. Such convictions are peculiarly probative of credibility and, under this rule, are always to be admitted.").

### 3. **Rule 609(b).**

Rule 609(b) states:

**(b)** **Limit on Using the Evidence After 10 Years.** This subdivision (b) applies if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later. Evidence of the conviction is admissible only if:

**(1)** its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and

**(2)** the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use.

Fed. R. Evid. 609(b).

"[C]onvictions over ten years old generally do not have much probative value," but "there may be exceptional circumstances under which the conviction substantially bears on the credibility of the witness." Fed. R. Evid. 609 advisory committee's notes. Convictions over ten years old should "be admitted very rarely and in exceptional circumstances," and a district court must make "specific findings on the record as to particular specific facts and circumstances it has considered in determining that the probative value of the conviction substantially outweighs its prejudicial impact." Fed. R. Evid. 609 advisory committee's.

"The Tenth Circuit has not expressly adopted the view that exceptional circumstances must be found . . . ." United States v. Logsdon, No. CR 12-298-D TD, 2013 WL 5963012, at *2 (W.D. Okla. Nov. 7, 2013)(DeGiusti, J.).  Instead, the Tenth Circuit has given district courts discretion whether to admit convictions that are over ten years old as long as the court applies the rule 609 balancing test.  See United States v. Begay, 144 F.3d 1336, 1338 (10th Cir. 1998)("We review decisions to admit or exclude evidence of prior convictions for abuse of discretion and afford substantial deference when the district court has engaged in the balancing required by Federal Rule of Evidence 609."  (citation omitted)(citing United States v. Halbert, 668 F.2d 489, 495 (10th Cir. 1991)); United States v. Rodriguez-Garcia, 983 F.2d 1563, 1571 (10th Cir. 1993)("[T]he district court has discretion to permit the introduction of convictions which fall outside of the ten year period if 'the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect.'" (quoting Fed. R. Evid. 609(b)).

A prior conviction's probative value is its relevance to the testifying witness' credibility. See United States v. Begay, 144 F.3d at 1338 (affirming district court's exclusion of prior drug possession conviction, because the conviction "did not relate to dishonesty" and was, thus, "not necessarily relevant to credibility" (citing Wilson v. Union Pac. R.R. Co., 56 F.3d 1226, 1231 (10th Cir. 1995)); United States v. Jefferson, 925 F.2d 1242, 1256 (10th Cir. 1991)(affirming district court's inclusion of prior conviction for aggravated robbery when the district court concluded that the conviction was a substantial crime and might affect the witness' credibility); United States v. Halbert, 668 F.2d at 492, 495 (affirming district court's inclusion of  prior convictions of false pretense, mail fraud, and aggravated robbery, because the "the convictions were not unrelated to truthfulness").  In the rule 609(b) context, the Tenth Circuit has indicated

that the prejudicial effect with which it is concerned is that the conviction may arouse "sentiment against the witness." United States v. Begay, 144 F.3d at 1338. In the rule 403 context, the Tenth Circuit determines the prejudicial effect of evidence by examining whether it "'provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant apart from its judgment as to his guilt or innocence of the crime charged.'" United States v. Smith, 534 F.3d 1211, 1219 (10th Cir. 2008)(quoting United States v. Portillo-Quezada, 469 F.3d 1345, 1354 (10th Cir. 2006)). At least one district court within the Tenth Circuit has applied the definition of prejudicial effect from rule 403 to the rule 609(b) analysis. See United States v. Logsdon, 2013 WL 5963012, at *4 n.3. Compare Fed. R. Evid. 403 (permitting exclusion of evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice"), with Fed. R. Evid. 609(b) (permitting inclusion of conviction if "its probative value . . . substantially outweighs its prejudicial effect").

"The Tenth Circuit has not identified specific factors to be considered by the Court in performing the Rule 609(b)(1) balancing [test]." United States v. Logsdon, 2013 WL 5963012, at *3. The Honorable Timothy D. DeGiusti, United States District Judge for the Western District of Oklahoma, identified four factors that other Courts of Appeals use in assessing the probative value of prior convictions. See United States v. Logsdon, 2013 WL 5963012, at *3. These factors include: (i) "whether the [witness'] credibility is a crucial issue"; (ii) "whether the impeachment value of the prior conviction is high"; (iii) "whether the prior crime of conviction and the charged crime are so similar as to invite improper inferences"; and (iv) "whether the age of the prior conviction and the [witness'] subsequent history suggest his rehabilitation." United States v. Logsdon, 2013 WL 5963012, at *3 (citing United States v. Gilbert, 668 F.2d 94, 97 (2d Cir. 1981)).

## ANALYSIS

The Court concludes that it will preclude references to: (i) the West Mesa murders; (ii) the women's underwear found in the red dodge truck; (iii) Young's tattoos' source; (iv) the items that Harvey observed in the water tank; (v) the names and sentences for Young's prior convictions; (vi) Young's September 17, 2018, trial; (vii) cross-examination of Young's witnesses regarding the women's underwear, brass knuckles, methamphetamine pipe, and pornography, but not the ski mask, shovel, marijuana, marijuana pipe, and alcohol, and (viii) Barela's testimony. The Court concludes that the precluded references' probative value, if any, do not substantially outweigh their prejudice to Young.

## I.    REFERENCES TO THE WEST MESA MURDERS ARE IRRELEVANT AND PRESENT SUBSTANTIAL DANGER OF UNFAIR PREJUDICE.

The Court will preclude mention of the West Mesa murders in the United States' case-in-chief, because discussion of the murders is irrelevant to this case's resolution and is likely to prejudice Young. Young notes that the West Mesa is the scene of an unsolved homicide investigation involving "eleven dead human bodies," Burial Motion at 1-2, and that Young's arrest in this case occurred "in an area not far distant from where the bodies were found," Burial Motion at 2. Young adds that Harvey, a United States' witness, has testified at the suppression hearing that he was "heavily involved" in the unsolved West Mesa murder investigation, Burial Motion at 2, and asserts that evidence related to the West Mesa murders "would not only be irrelevant to this Matter, it would be highly prejudicial and would almost inevitably lead to jury speculation that the Defendant was, in some manner, involved with the bodies," Burial Motion at 2. The United States asserts that, if Young attempts to contest Harvey's legitimate presence in and familiarity with the West Mesa, the United States will request the Court's permission to introduce

Harvey's testimony about his work on the West Mesa burials. See Response at 2; Sept. 12 Tr. at 21:10-18 (Spiers).

The Court agrees that testimony related to the West Mesa murders has no bearing on whether Young committed the charged offense of felon in possession of a firearm. The United States has not charged Young with an offense related to these murders and has presented no evidence tending to link Young to these murders. Such evidence has no tendency to make the fact whether Young possessed a firearm on the West Mesa more or less probable. It neither relates to nor sheds light on the issue in dispute. The evidence is thus irrelevant. Moreover, the evidence is prejudicial to Young. The Court therefore precludes mention of the West Mesa murders unless Young contests Harvey's jurisdiction to patrol the West Mesa and thereby opens the door to Harvey's involvement in the West Mesa murder investigation as grounds for Harvey's continued focus on West Mesa law enforcement.

## II.    REFERENCES TO THE WOMEN'S UNDERWEAR FOUND IN THE RED DODGE TRUCK ARE IRRELEVANT AND PRESENT SUBSTANTIAL DANGER OF UNFAIR PREJUDICE.

The Court will preclude testimony or evidence of the women's underwear found in the truck that Young was driving on November 13, 2016, in the United States' case-in-chief, because discussion of the underwear is irrelevant to this case's resolution and is likely to prejudice Young. Young contends that the underwear is not relevant to the charge in this case. Panties Motion at 1. Moreover, according to Young, reference to the underwear could cause the jury to speculate improperly why Young had them in the truck, which could prejudice Young. See Panties Motion at 2-3. The United States contends that, although the "dirt covered young women's panties . . . in close proximity to the burial of multiple young women in a dirt-covered landscape" give the United States "discomfort and pause," the United States will nonetheless refrain from mentioning the

underwear. Response at 2. The United States adds, however, that it will pursue such evidence if Young "implicitly or explicitly bring[s] the evidentiary significance of this evidence to life." Response at 2. The Court concludes that the women's underwear is irrelevant and orders the United States not to mention the underwear in its case-in-chief. The Court will not preclude cross-examination regarding the underwear, however, should Young open the door to the underwear's discussion during the trial.

### III. THE COURT WILL PRECLUDE MENTION OF THE SOURCE OF YOUNG'S TATTOOS, BECAUSE THE DANGER OF UNFAIR PREJUDICE THAT THE SOURCE OF YOUNG'S TATTOOS PRESENTS SUBSTANTIALLY OUTWEIGHS THE EVIDENCE'S PROBATIVE VALUE.

The Court will preclude testimony or evidence of the source of Young's tattoos, because the tattoo source's discussion, although relevant to Harvey's interest in Young as a potential felon, is likely to prejudice Young before the jury. Young states that Harvey observed the numerous tattoos on Young's torso and, at the June 26, 2018, suppression hearing, Harvey stated his opinion that Young received the tattoos in prison. See Tattoos Motion at 1. Young contends that Harvey lacks the qualifications to render an opinion regarding the tattoo's source and that the tattoos' source is irrelevant. See Tattoos Motion at 1. Moreover, according to Young, Harvey's opinion is prejudicial, because it would lead the jury to speculate impermissibly regarding facts surrounding Young's prior incarceration. See Tattoos Motion at 2; Response at 2. The United States asserted that Harvey's observations lend "some potential . . . meaningfulness" to the tattoos, Sept. 12 Tr. at 24:21-22 (Spiers), because they indicated to Harvey that Young was a "full-fledged prison inmate at one point," which then influenced how Harvey conducted the investigation, Sept. 12 Tr. at 25:3-6 (Spiers).

The Court concludes that, because Young intends to stipulate to being a felon, it will preclude testimony discussing Young's tattoos' source. Young has effectively conceded his convicted felon status, thus rendering the testimony of minimal probative value. Moreover, the prejudicial impression that discussing the tattoos' source could leave on the jury, specifically that prison tattoos' signify violent gang affiliation, substantially outweighs the marginal probative value that the jury may derive from learning why Harvey sought to further investigate Young's activities. While the United States always wants to tell a complete story with great detail why the police were investigating a defendant, that issue is irrelevant and often imparts prejudice to the defendant.[8] The Court has in the past recognized the danger of unfair prejudice that testimony about tattoos presents. See United States v. Aranda-Daiz, No. CR 12-2686 JB, 2014 WL 60120, at *5 (D.N.M. Jan. 7, 2014)(Browning, J.)("The Court recognizes that admitting the photograph to allow the jury to see Aranda-Diaz' 'Oso' and bear-claw tattoos may incidentally show the jury Aranda-Diaz' other tattoos, which might suggest to the jury that he is affiliated with a gang."). See also United States v. Brown, 200 F.3d 700 (10th Cir. 1999)(concluding that the district court should not have admitted gang affiliation evidence in a carjacking case, because such evidence is inherently and unfairly prejudicial). The Court instructs the United States that, during the trial, Harvey may state only that he saw Young shirtless; Harvey may not mention Young's tattoos or offer his opinion as to the tattoos' source.

---

[8]The United States concern is not totally without merit. There are jurors that are guardians of civil liberties that sometimes get hung up on whether there were Miranda warnings, reasonable suspicion, whether there was a warrant, and whether a warrantless search was reasonable. The Court can tell jurors to let go of such expectations, but there are jurors who have a hard time doing that and hold the lack of a complete story against the United States. Nevertheless, the Court cannot allow truly irrelevant information to come into the trial that would prejudice the defendant.

## IV. THE COURT WILL PRECLUDE REFERENCES TO THE WATER TANK ITEMS, BECAUSE SUCH REFERENCES ARE IRRELEVANT AND PRESENT SUBSTANTIAL RISK OF UNFAIR PREJUDICE TO YOUNG.

The Court will preclude mention of the feces, blood, the unidentified object that resembled a children's water toy, and speculation regarding masturbation with the unidentified object, because discussion of these items is irrelevant to this case's resolution and is likely to prejudice Young. Young contends that Harvey found these items within the water tank that Harvey observed Young exit and that Harvey thereafter speculated that Young had been using the purported water toy to masturbate. See Items Motion at 2. The United States asserts that the items are relevant, because they indicated to Harvey that "there was something going on out there." Sept. 12 Tr. at 29:22-25 (Spiers). The United States adds that observing the blood compelled Harvey to further investigate the scene. See Sept. 12 Tr. at 31:17-22 (Spiers). According to Young, Harvey had already arrested Young when Harvey observed the water tank items, and, thus, the items could not have bolstered Harvey's reasonable suspicion to effect Young's arrest. See Items Motion at 2.

The Court concludes that, even given their greatest maximum reasonable value, the water tank items are not probative of any material issue in this case, and that the danger of unfair prejudice which references to feces, blood, a child's water toy, and masturbation present to Young, even given their minimum reasonable prejudice, is substantial. Speculation regarding deviant sexual behavior is the testimony that rule 403 and others evidence rules were designed to exclude, as such testimony will evoke an emotional response from the jury, and presents a danger that the jury will convict Young based solely upon Harvey's speculation regarding uncharged behavior that departs from usual or accepted social norms. Cf. United States v. Rodriguez, 192 F.3d 946, 951 ("Evidence is unfairly prejudicial if it makes a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the

defendant wholly apart from its judgment as to his guilt or innocence of the crime charged."
(quoting United States v. Roberts, 88 F.3d 872, 880 (10th Cir. 1996))).

The Court further concludes that Harvey's water tank investigation does not speak to any reasonable suspicion about the charge at hand. Again, the United States always wants to tell the jury in detail why it is investigating a defendant, but such detail often involves speculation and prejudicial evidence. For the rest, that background is often irrelevant to the charged offense. In the Court's opinion, the United States has sufficient evidence to take to the jury, and the jury will not question why Harvey was present on the West Mesa or why Harvey was further investigating Young, whose furtive behavior Harvey believed was indicative of wrongdoing. Hence, the Court orders the United States not to mention or elicit testimony regarding the feces, the blood, or the children's water toy that Harvey observed, and to redact references to masturbation in any exhibits that the United States intends to introduce in its case-in-chief.

## V. THE UNITED STATES MAY NOT INTRODUCE THE NAMES OR SENTENCES FOR YOUNG'S PRIOR CONVICTIONS FOR IMPEACHMENT PURPOSES, BECAUSE THE PREJUDICIAL EFFECT TO YOUNG OUTWEIGHS THE PROBATIVE VALUE OF ADMITTING SUCH EVIDENCE.

The Court will preclude the United States from mentioning the name and sentence associated with Young's prior convictions, should Young stipulate to his prior felony convictions. The United States asserts its intention to use Young's prior criminal convictions to attack his character for truthfulness. See 609 Notice at 1 (citing Fed. R. Evid. 609). Young contends that "[t]he use of the names of the Defendant's prior convictions would be more prejudicial than probative and, thus, prohibited under Fed. R. Evid. 403," 609 Response at 1, and that the Court therefore should order the United States to redact the convictions, "specifically the me[n]tion of deadly weapon . . . because a couple of these things involve deadly weapons," Nov. 28 Tr. at 38:4-

10 (Knoblauch). The United States contends that it wants to introduce the full, unredacted conviction heading, because "either way you're going to give the jury a []cura[]tive instruction that . . . because he's been convicted of other crimes doesn't mean he's guilty of this crime, whether or not its robbery or robbery with a deadly weapon or assault." Nov. 28 Tr. at 38:13-22 (Houghton). Young is asking the Court to order the United States to remove the phrase "deadly weapon," Nov. 28 Tr. at 39:2-3 (Knoblauch), but would prefer to "keep everything out," Nov. 28 Tr. at 39:6-7 (Knoblauch).

A defendant's prior conviction for "a crime punishable by imprisonment for a term exceeding one year" is an element of a felon-in-possession charge. 18 U.S.C. § 922(g)(1). Evidence of a defendant's predicate conviction is therefore relevant in a felon-in-possession case. See Old Chief v. United States, 519 U.S. at 186. Under rule 403, however, in cases where the defendant stipulates to his felon status for § 922(g)(1) purposes, the United States may not refer to the specific name or nature of the defendant's prior convictions in its case-in-chief. See Old Chief v. United States, 519 U.S. at 186-87. In Old Chief v. United States, the Supreme Court considered whether it was proper to admit the defendant's prior conviction record for the sole purpose of allowing the prosecution to prove § 922(g)(1)'s "prior felony" element, even though the defendant offered to stipulate to a prior felony conviction. See Old Chief v. United States, 519 U.S. at 186-87. The Supreme Court determined that the principal issue in resolving this question is "the scope of a trial judge's discretion under Rule 403, which authorizes the exclusion of relevant evidence when its 'probative value is substantially outweighed by the danger of unfair prejudice.'" 519 U.S. at 180 (quoting Fed. R. Evid. 403). The Supreme Court held that, because the prior conviction was relevant to prove only an element of § 922(g)(1) and because the defendant had offered to stipulate to the prior conviction, "the only reasonable conclusion was that the risk of unfair

prejudice did substantially outweigh the discounted probative value of the record of conviction, and it was an abuse of discretion to admit the record when an admission was available." 519 U.S. at 191.

In this case, similar to the defendant in <u>Old Chief v. United States</u>, the United States has charged Young with being a felon in possession of a firearm in violation of § 922(g)(1), and Young has offered to stipulate to a predicate conviction. Like the defendant in <u>Old Chief v. United States</u>, Young is not attempting to keep from the jury his prior felony record or to preclude the jury from deciding § 922(g)(1)'s prior conviction element. Rather, as with the defendant in <u>Old Chief v. United States</u>, Young has offered to stipulate to his prior conviction solely to limit the prejudice that would result from the jury being informed that he has previously been convicted on unrelated charges. This case is distinct from <u>Old Chief v. United States</u>, however, because here the United States has offered Young's prior conviction evidence for a second, independent purpose under rule 609. The Court therefore must analyze that purpose. <u>See</u> <u>Old Chief v. United States</u>, 519 U.S. at 190 (guaranteeing the opportunity to seek evidence admission "if, indeed, there were a justification for receiving evidence of the nature of prior acts on some issue other than status"); <u>United States v. Wacker</u>, 72 F.3d 1453, 1473 (10th Cir. 1995), <u>modified</u> (Mar. 11, 1996)("[N]othing in today's opinion should be read as limiting the prosecutor's ability to present a full picture of a prior crime when it has relevance independent of simply proving prior-felony status for section 922(g)(1).").

Rule 609 indicates that <u>Old Chief v. United States</u>' protection can recede when a defendant chooses to testify at trial. When a defendant elects to testify, it is possible -- though not certain -- that the defendant can "be cross-examined about his prior convictions for the limited purpose of impeaching his testimony." <u>United States v. Perry</u>, 512 F.2d 805, 806 (6th Cir. 1975). Rule 609(a)(1), which states that "[f]or the purpose of attacking the character for truthfulness of a

witness . . . evidence that an accused has been convicted of [a felony] shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused," governs whether the defendant can be so impeached.[9]  Fed. R. Evid. 609.  Rule 609(a)(2) provides:

> For the purpose of attacking the character for truthfulness of a witness, . . . evidence that any witness has been convicted of a crime shall be admitted regardless of the punishment, if it readily can be determined that establishing the elements of the crime required proof or admission of an act of dishonesty or false statement by the witness.

Fed. R. Evid. 609(a)(2).  Young's felony convictions are for robbery with a weapon, attempted robbery with a weapon, attempted robbery with a firearm, aggravated battery with a deadly weapon, assault and battery with a deadly weapon, and obstructing an officer.  See 609 Notice at 2.  None of these crimes are crimes that can "readily . . . be determined" on the record before the Court to involve "dishonesty or false statement."  Fed. R. Evid. 609(a)(2).  See United States v. Glenn, 667 F.2d 1269, 1273 (10th Cir. 1982)("A conviction for burglary or theft may nevertheless be admissible under rule 609(a)(2) if the crime was actually committed by fraudulent or deceitful means."  (citations omitted)).  The record contains little information about the nature of Young's convictions.  Accordingly, the issue "is whether [the crimes are] per se . . . crime[s] of 'dishonesty' under Rule 609, regardless of the means by which [they are] perpetrated."  United States v. Glenn, 667 F.2d at 1273 (quoting Fed. R. Evid. 609).

---

[9]The United States asserts that it provides rule 609 notice "out of courtesy," thereby implying that the timing of Young's prior convictions tips the balance in favor of their probative value.  609 Notice at 2.  It is undisputed that the 2010 Oklahoma convictions fall within the time limit that rule 609(b) specifies, but that time qualification merely allows the Court to conduct the probative value and prejudicial effect balancing that rule 609(a)(1) specifies; it does not mean that the balancing, once conducted, favors admission.  The two provisions' requirements are distinct, and that rule 609(b)'s time limit is met should not mean, perforce, that rule 609(a)(1)'s balancing requirement is met as well.

Generally, the courts which have had occasion to consider the question have agreed upon the class of crimes that are included within the term "dishonesty and false statement" as used in Rule 609(a)(2). Of course, robbery, burglary and theft are ordinarily considered to be dishonest, but the term as used in Rule 609(a)(2) is more restricted. We think the legislative history of this provision shows that Congress intended to limit the term to prior convictions involving some element of deceit, untruthfulness or falsification which would tend to show that an accused would be likely to testify untruthfully.

United States v. Seamster, 568 F.2d 188, 190 (10th Cir. 1978). "Because the crime of larceny or theft is . . . no[t] encompassed by the strict meaning of the term 'crimen falsi,' an inference arises that Congress intended the term 'dishonesty' in Rule 609(a)(2) to mean something more than a man's propensity to steal what does not belong to him." United States v. Seamster, 568 F.2d at 191 (quoting Fed. R. Evid. 609). Similarly, obstructing an officer does not appear to require falsehood or avarice. Nor do assault and battery require deception or concealment. The United States does not try to show that these are felonies involving false statement or deception. Accordingly, Young's convictions are not per se admissible under rule 609(a)(2), and nothing in the record indicates that the crimes actually involved false statements or dishonesty. Consequently, the Court will not admit Young's criminal history pursuant to rule 609(a)(2).

The Court is thus left to ask under 609(a)(1) what impeachment value, exactly, is gained by having the jury know not only that Young is a felon simpliciter -- which they will know by way of stipulation -- but that he is a particular kind of felon. Young's prior felony convictions are probative of Young's character for truthfulness;[10] however, the Court concludes that it is too

---

[10]Were the Court writing on a clean slate, it would be hesitant to say that prior felony convictions are probative of a witness' "character for truthfulness." Fed. R. Evid. 609(a)(1). "There is little dissent from the general proposition that at least some crimes are relevant to credibility but much disagreement among the cases and commentators about which crimes are usable for this purpose." Fed. R. Evid. 609 advisory committee's notes. While a witness' criminal history may be probative of his or her character for lawlessness, not all lawlessness involves

prejudicial for the jury to know the convictions' names and sentences. While the Court cannot say that the specific crimes at issue have no probative value, the additional probative value does not substantially outweigh the prejudice to Young. The names and sentences of Young's prior convictions, for example, are not highly probative of Young's character for truthfulness beyond the general character concerns attendant to any felony conviction. As discussed above, the convictions do not reference dishonest acts or false statements, which might compel their admission pursuant to rule 609(a)(2). See Fed. R. Evid. 609(a)(2). The United States does not point to anything that additional conviction information provides that the information's exclusion would otherwise foreclose. See Fed. R. Evid. 609 advisory committee's notes (stating that rule 609(a)(1) "requires that the government show that the probative value of convictions as impeachment evidence outweighs their prejudicial effect"). Moreover, the prejudicial effect of the convictions' names is significant. "[T]here can be no question that evidence of the name or nature of the prior offense generally carries a risk of unfair prejudice to the defendant." Old Chief v.

---

deception. A man that commits a robust, in-your-face strong arm robbery does not conceal, trick, or prevaricate; his lawlessness is open and plain. A woman that distributes methamphetamine may be honest with her customers, forthright and fair in her illegal enterprise. There may be honor among thieves. On the other hand, implicit in the commission of crime is an attempt to conceal: a criminal generally must presume that he can get away with it. Moreover, an individual's willingness to commit a felony may relate to her willingness to commit perjury. At the same time, however, fundamental to American jurisprudence is that a defendant must stand or fall by the evidence that is relevant to the crime with which the defendant is charged, and not because the defendant is a bad person or has committed other misdeeds. Much of the Federal Rules of Evidence is based on keeping irrelevant information from the jury, lest they convict for reasons other than the defendant's guilt of the crime charged. Allowing the jury to learn of a defendant's criminal history risks unfairly prejudicing the jury, because "other crimes evidence is strong medicine for juries." United States v. Commanche, 577 F.3d 1261, 1269 (10th Cir. 2009)(citations omitted). The Court does not, however, write on a clean slate. Congress debated the issue, and it came up with the current compromise. That compromise is perfectly honorable, and the Court should respect it in making its decisions.

<u>United States</u>, 519 U.S. at 185. The names of Young's convictions -- involving as they do violent offenses committed with deadly weapons, including at least one offense committed with a firearm -- are heavy with prejudice. The prior conviction evidence tends to portray Young as a dangerous criminal perhaps always armed with a firearm. The risk that the jury would convict Young, not on the merits of this case but on the merits of his past cases, is substantial. Hence, although rule 609 recognizes the admission of prior crimes evidence to show character for truthfulness, the Court is not convinced that Young's prior convictions' names and sentences have sufficient probative value to overcome their prejudice to Young. The conviction names and sentences, however, are highly prejudicial to Young. The Court will therefore allow the United States, if Young testifies, to cross-examine Young about his seven felony convictions for the limited purpose of impeaching Young's character for truthfulness; however, the Court will permit the United States to introduce only that Young has seven felony convictions; it may not introduce the name, sentences, or details of the crimes.[11] <u>See</u> <u>United States v. Commanche</u>, 577 F.3d 1261, 1270-71 (10th Cir. 2009)("Care should be taken to protect the accused as far as possible from being convicted because of past conduct and not the crime for which he is being tried." (quoting <u>United States v. Wolf</u>, 561 F.2d 1376, 1381 (10th Cir. 1977)).[12]

---

[11]Young should prepare and submit a limiting instruction if he would like the Court to give it. Young may also introduce evidence of the felonies' names and sentences if he decides, in his opinion and for his own strategic reasons, that it is better for the jury to know these details than for it to guess or speculate about the details. <u>See</u> <u>Vasquez v. Jones</u>, 496 F.3d 564, 573 n.6 (6th Cir. 2007)("The rules of evidence generally require that if past crimes are used to impeach a witness's credibility, the witness must be given an opportunity to explain his past crimes, show he has been rehabilitated, and convince the jury he should be believed.").

[12]As a procedural matter, because of this ruling, Young's counsel may elect, if they put Young on the stand, to elicit all the testimony about the seven felonies during Young's direct examination, rather than wait for the United States to elicit the information during cross-examination.

## VI. THE COURT WILL PRECLUDE MENTION OF THE FIRST TRIAL, BECAUSE THE RISK THAT THE JURORS WILL CONVICT YOUNG BASED ON THE PRIOR JURY'S INDECISION OUTWEIGHS THE PROBATIVE VALUE OF REFERRING TO THAT PROCEEDING AS A "TRIAL."

The Court precludes both parties from mentioning Young's first trial, because the risk that jurors will prejudge Young guilty based on the first jury's indecision outweighs the probative value attendant to knowing that Young's first trial resulted in a mistrial. The United States requests that the Court prohibit counsel for both parties from speaking about the first trial either to the venire panel or to the seated jury. See First Trial Motion at 1. The United States asserts that, "[b]ecause the fact that a case has been previously tried is irrelevant to the disposition of the case, district courts are justified in precluding mention of a prior trial." First Trial Motion at 2. Moreover, according to the United States, "[s]uch reference would prejudice the United States, because it could erroneously be taken by the jury as an indication of reasonable doubt" that Young committed the charged offense. First Trial Motion at 2. Young opposes referring to the first trial as a "prior hearing," because, according to Young, jurors "tend to place a greater weight on the solemnity of trial testimony than that of a simple hearing." First Trial Response at 1. Young argues that, unlike hearings, which, according to Young, are often "quite informal," "jurors get a much greater feeling of the importance of prior testimony when it's trial [testimony]." Nov. 28 Tr. at 4:5-8 (Knoblauch). Young expressed further concern that merely saying "prior hearing" is insufficiently descriptive. Nov. 28 Tr. at 4:15-16 (Knoblauch).

The Court will not permit the jury to learn that Young is being tried a second time. The Court is concerned that informing the jury that Young is being tried for the second time would lead jurors in this trial to adopt the first trial's jurors' belief in Young's guilt. Instead, the Court seeks to ensure that the jurors in this trial decide Young's fate on a clean slate, not on what another

jury did or did not think regarding Young's guilt or innocence.  The Court notes that this order is for Young's benefit, and, with Young's benefit in mind, the Court orders that the parties will refer to the first trial as a "hearing" or, if the parties prefer, a "hearing before this Court," or "before Judge Browning."

## VII.  THE COURT WILL PRECLUDE MENTION OF THE TRUCK ITEMS MOST LIKELY TO EVOKE AN EMOTIONAL REACTION, BECAUSE SUCH DISCUSSION IS LIKELY TO PREJUDICE THE JURY AGAINST YOUNG.

The Court concludes that it will preclude cross-examination of Young's witnesses regarding the women's underwear, brass knuckles, methamphetamine pipe, and pornography, but permit cross-examination regarding the ski mask, shovel, marijuana, marijuana pipe, and alcohol. The United States requests that, should Young elicit testimony from Baca and Gaona, the Court allow Baca and Gaona's cross-examination regarding the firearm's stolen nature and the pickup truck's contents, to include "the 16 pairs of panties, the ski mask, the brass knuckles, the shovel, the pornographic magazines, the cooler full of beer and liquor, the marijuana pipe, and the meth pipe," provided either Baca or Gaona alleges that one of them owns the truck or any of the items found within it.  Contents Motion at 1.  The United States insists that, because its theory of the case is that Young knowingly and intentionally possessed all truck items on November 13, 2016, "the United States should be allowed the opportunity to impeach the witnesses about the stolen nature of the firearms and *all* of the items found inside, including the incriminating ones." Contents Motion at 5 (emphasis in Contents Motion).  The United States specifically requests the Court's permission to inquire about the firearms' origin and whether Young's witnesses knew that the firearms were stolen, which "is relevant to credibility."  Contents Motion at 5.  According to the United States, if the jury finds such testimony unbelievable, it would extend its disbelief to any testimony that Baca controlled the truck or the firearms.  See Contents Motion at 6.  Moreover,

contends the United States, regarding the drugs and drug paraphernalia, the jury has a right to know whether it is considering testimony from habitual drug users. See Contents Motion at 6 (citing United States v. Smith, 692 F.2d 658, 661 (10th Cir. 1982)("[N]ormally the trial court runs a substantial risk of causing prejudice to a fair trial when it fails to instruct the jury concerning the inherent unreliability of an addict's testimony.")). Young "demand[s] some form of explanation for why the United States believe[s]," according to Young, that Baca "might not have been the owner of certain items in the truck." Contents Motion Response at 2. Young represents that Gaona will state that he owns the .30-06 rifle found in the truck's cab but not the stolen weapons, i.e., the shotgun and the pistol, see Nov. 28 Tr. at 24:1-2 (Knoblauch).

The Court agrees with the United States that Baca, as an elderly woman, is unlikely to keep firearms in her truck, and, accordingly, the Court will permit the United States to question her regarding the truck's contents; however, because the Court does not believe that Baca is involved in the charged offense, it will permit Baca's cross-examination on the truck items only if Young suggests that the firearms' presence in the truck was an accident or a mistake. See Fed. R. Evid. 404. The Court will permit the United States to introduce only innocuous items that are inconsistent with Baca's use, i.e., the ski mask, the shovel, the beer and liquor cooler, the marijuana, and the marijuana pipe. These items are sufficiently inconsistent with Baca's use of the truck for the United States to argue that Young, not Baca, is the truck's primary user. Accordingly, the Court will not permit the United States to discuss the inflammatory items, specifically the methamphetamine paraphernalia, the pornographic magazines, and the women's underwear, because the Court concludes that such items are likely to evoke an emotional response from the jury that could result in substantial prejudice to Young. See United States v. Rodriguez, 192 F.3d at 951.

**VIII. THE COURT WILL PRECLUDE BARELA'S TESTIMONY AT TRIAL, BECAUSE THE UNITED STATES HAS NOT ESTABLISHED PROPER PURPOSES FOR ITS ADMISSION UNDER 404(B), BECAUSE IT IS IRRELEVANT, AND BECAUSE THE RISK OF POTENTIAL UNFAIR PREJUDICE TO YOUNG SUBSTANTIALLY OUTWEIGHS ITS PROBATIVE VALUE.**

The Court will preclude Barela's testimony, because the United States has not established proper purposes for its admission under 404(b), because the testimony is irrelevant, and because the risk of potential unfair prejudice to Young substantially outweighs the testimony's probative value. The crime with which Young is charged requires that he acted "knowingly," United States v. Ledford, 443 F.3d 702, 705 (10th Cir. 2005)(setting forth felon-in-possession elements), and as with every element of a crime, the United States is required to prove this element beyond a reasonable doubt, see Patterson v. United States, 432 U.S. 197, 210 (1977)("[T]he Due Process Clause requires the prosecution to prove beyond a reasonable doubt all of the elements included in the definition of the offense of which the defendant is charged."); United States v. Ledford, 443 F.3d at 705)("To obtain a conviction for felon in possession, the government must prove: '(1) the defendant was previously convicted of a felony; (2) the defendant thereafter knowingly possessed a firearm; and (3) the possession was in or affecting interstate commerce.'"). Knowingly, in the § 922(g) context, "means that the act was done voluntarily and intentionally, not because of mistake or accident." United States v. Moran, 503 F.3d 1135, 1146 (10th Cir. 2007). Also, there is a knowledge requirement in the felon in possession jury instructions: "To find the defendant guilty of this crime you must be convinced that the government has proved each of the following beyond a reasonable doubt: First: the defendant knowingly possessed a firearm . . . ." 10th Cir. Pattern Jury Instr. Crim. 2.44 (2018). The United States' proffered purpose for introducing Barela's testimony does not go towards proving the element of knowledge in the elements of the

crime of felon in possession or the knowledge requirement built into the possession requirement,

i.e., specific, like that of constructive possession that the United States is advancing.

In an attempt to meet its burden that Young knowingly possessed a firearm, the United

States has represented to the Court that Barela's testimony -- that, in 2008, he advised Young that,

pursuant to state and federal law, Young could no longer possess a firearm -- proves that Young

was aware that he was not allowed to possess firearms, and that such awareness

> provides a clear explanation for his behavior on November 13, 2016 including: why Young was so quick to separate himself from the firearms as law enforcement officers approached, why he attempted to send officers to another vehicle, why he initially lied about the firearms' presence in the vehicle, and why he correctly predicted that officers would find two additional guns in the truck when they executed the search warrant.[13]

Testimony Motion at 3-4. Thus, according to the United States, Barela's testimony in conjunction

with Young's behavior when confronted by law enforcement proves that Young did not

accidentally or mistakenly possess the firearms. See Testimony Motion at 6 (citing Fed. R. Evid.

404(b)(2)). Young requests that the Court preclude the United States from eliciting Barela's

testimony, because, according to Young, Barela's testimony is irrelevant, and because Young does

not dispute that he cannot possess a firearm lawfully. See Testimony Motion Response at 1.

The Court concludes that Barela's proffered testimony is largely irrelevant and unfairly

prejudicial, and that the potential of unfair prejudice substantially outweighs any probative value

of the testimony. See United States v. Zamora, 222 F.3d at 762. Almost all 404(b) evidence is

prejudicial, see United States v. Rodella, No. CR 14-2783 JB, 2014 WL 6911573, at *18 (D.N.M.

Sept. 21, 2014)(Browning, J.), though prejudice, by itself, does not automatically lead to exclusion,

---

[13]Although the United States cannot introduce evidence of the methamphetamine pipe, if Young wants to introduce that evidence to suggest that he was avoiding the truck because he knew that there was methamphetamine paraphernalia in it, he may.

see <u>United States v. Archuleta</u>, 737 F.3d 1287, 1293 (10th Cir. 2013)("Virtually all relevant evidence is prejudicial to one side or the other."). To warrant exclusion, the evidence's unfair prejudice must substantially outweigh its probative value.[14] <u>See</u> Fed. R. Evid. 403; <u>United States v. Pettigrew</u>, 468 F.3d at 638.

---

[14]The Court is always hesitant to admit into evidence at trial so-called 404(b) evidence, especially in a criminal trial against the defendant. <u>See</u> <u>United States v. Griffin</u>, 389 F.3d 1100, 1103 (10th Cir. 2004)("Accordingly, trial courts should exercise caution in their admission of such testimony."). The genius of the Anglo-American criminal justice system is that a defendant is tried only for the crime with which the defendant is charged, and not for past crimes, uncharged criminal conduct, or bad acts. <u>See</u> <u>United States v. Vigil</u>, No. CR 05-2051 JB, 2006 WL 4061154, at *7 (D.N.M. Sept. 1, 2006)(Browning, J.)("[T]he genius of our criminal justice system is that we only try a defendant for the crime with which he or she is charged, not for other wrongs."). In other words, criminal defendants are tried only for the crime charged and not for being a bad person. <u>See</u> <u>Montoya v. Sheldon</u>, 898 F.Supp.2d 1259, 1271 (D.N.M. 2012)(Browning, J.)(citing <u>United States v. Phillips</u>, 599 F.2d at 126). Rule 404(b) is often in tension with this fundamental notion, and the Court must guard zealously against the use of 404(b) evidence that undermines the fundamental notion that defendants are tried only for the crime charged.

Nevertheless, the Federal Rules of Evidence make clear that rule 404(b) evidence is admissible, and the Tenth Circuit has expansively interpreted that admissibility, even reversing district courts that exclude the government's 404(b) evidence. <u>See</u> <u>United States v. Tan</u>, 254 F.3d 1204, 1213-14 (10th Cir. 2001). In fact, there are cases where the admission of rule 404(b) is very appropriate in criminal cases -- where a defendant accused of killing a baby defended by arguing the baby died of Sudden Infant Death Syndrome, but he has had some other children die under similar circumstances, <u>see</u> <u>Clark v. State</u>, No. 12-12-287-CR, 2013 WL 5966464 (Tex. App. Nov. 6, 2013)(unpublished)(reversing and rendering acquittal on other grounds); a defendant accused of killing his wife defended by saying she accidently drowned in the bathtub, but he had a prior wife who died in the same manner, <u>see</u> <u>Commonwealth v. Boczkowski</u>, 846 A.2d 75, 89 (Pa. 2004); and where a defendant is caught driving a truck loaded with marijuana, denies that he knew drugs were in the vehicle, but he previously had been caught driving a truck filled with marijuana, <u>see</u> <u>United States v. Wallen</u>, 376 F. Supp. 2d 1184, 1190-91 (D.N.M. 2005)(Browning, J.). In these situations, the Court is comfortable letting in the 404(b) evidence to show lack of accident, knowledge, and other proper purposes.

Where the Court gets most concerned about 404(b) evidence becoming propensity evidence is where the United States wants to use bad acts to prove intent in the crime charged. While 404(b) evidence may have an element of propensity even when offered for a proper purpose, <u>see</u> <u>United States v. Moran</u>, 503 F.3d at 1145; <u>United States v. Romero</u>, 2011 WL 1103862, at *12, the Court must guard against the United States bringing in reference to any bad conduct, and saying that the seminal conduct proves motive, intent, plan, absence of mistake, and lack of accident in this case. The Court's concern is that this fuzzy link between the 404(b) evidence and

The United States is tasked with the burden of proving knowledge, see United States v. Ledford, 443 F.3d at 705; however, Barela's testimony is not probative to proving knowledge, or to showing absence of mistake and lack of accident. Barela advised Young some eight years before Young's arrest on the West Mesa, and the information that he shared with Young is not only not a requirement of the offense, see United States v. Griffin, 389 F.3d 1104 ("Conviction under § 922(g)(1) . . . does not require proof that a defendant knew that he was prohibited from possessing a firearm."), but also is not probative whether Young could have accidentally or mistakenly operated a vehicle containing three firearms on November 13, 2016. Young, for example, could have known that he could not possess firearms lawfully and still borrowed the truck with insufficient knowledge to satisfy § 922(g). Moreover, Young does not contest that he cannot possess a firearm lawfully. See Testimony Motion Response at 1. Barela's testimony is therefore irrelevant or, at a minimum, has very low probative value.

Even if the United States could proffer a proper purpose for admitting Barela's testimony, the jury learning that Young was on probation highlights Young's criminal history, and thereby increases significantly the potential for unfair prejudice and undercuts what the Supreme Court is trying to achieve in Old Chief. See United States v. Griffin, 389 F.3d 1100, 1103 (10th Cir. 2004)(citing United States v. Robertson, 19 F.3d 1318, 1324 (10th Cir. 1994)). "[I]n the ordinary course of most criminal trials revelations of the defendant's parole status might provoke a mistrial

the issue in the case is just a way for the United States to get in prohibited propensity evidence against the defendant.

This case presents a proffer that calls the Court to move cautiously. The Court is mindful of the burden that the United States must prove that Young knowingly possessed a firearm; however, testimony from a probation officer who some eight years before Young's arrest in this case advised Young that Young cannot lawfully possess a firearm is too attenuated to qualify for admission pursuant to rule 404(b).

because it would inform the jury that the defendant had a prior criminal history." United States v. Hines, 943 F.2d 348, 353 (4th Cir. 1991)(per curiam)(internal citations omitted). Although the Fourth Circuit in United States v. Hines stated that the defendant's parole status "was little more than incidental information" when "the government was *required* to prove that the defendant had a prior criminal history as an element of the offense charged," United States v. Hines, 943 F.2d 353 (emphasis in original), Young's stipulation removes any requirement that the United States discuss Young's criminal history. Indeed, considering Young's stipulation, the Court has precluded the United States from discussing Young's criminal history beyond convictions received and dates imposed, even if Young takes the stand; the United States may not introduce the convictions' names or sentences. See supra at 47-53. The Court is not willing now to inform the jury of Young's probation status, terms, and conditions, especially when the United States has not articulated a proper purpose for introducing such information. To do so would, right in the middle of the trial, when the Court and Young have gone to great lengths to try to minimize the jury talking about Young's felony status, remind the jury that Young is a felon.

The United States asserts that, without Barela's testimony, the United States would struggle to make the argument that Young's "behavior is what infers that he knows the guns are there," because Young's suspicious behavior could also be the result of the methamphetamine pipe, marijuana, or marijuana pipe. Nov. 28 Tr. at 31:6-10 (Houghton). The United States seems to think that the jury in the first trial failed to reach a verdict because several jurors concluded that Young did not know that the firearms were in the truck; however, neither of the Assistant United States Attorneys now on the case were at the first trial, and the Court believes that the more likely explanation for the jury's indecision is that Harvey testified that the firearm was in plain view yet Harvey's lapel camera does not show the firearm. The Court is therefore concerned about the

United States introducing error into the case for the sake of a phantom issue.  The stipulation exists to deemphasize Young's felon statues and to limit the possibility that the jury will convict Young based on his prior crimes, i.e., because he is a bad person.  Testimony regarding conditions that resulted from Young's criminal conduct leans heavily towards propensity evidence; its probative value decreases when the jury will not interpret the evidence for a purpose other than propensity, and the prejudicial effect is substantial, thus, warranting exclusion.  See United States v. Morley, 199 F.3d at 133.  The United States contends that the Court can instruct the jury not to infer guilt based on Young's prior probation term, see Testimony Motion at 5; however, no curative instruction can assuage, to the Court's satisfaction, concerns of unfair prejudice when confronted with evidence too attenuated to assist the jury materially in considering the charged conduct.  The United States can satisfy its burden without Barela's testimony, which is unnecessary to argue that Young's deceptive behavior evidences knowledge of wrongdoing.  Hence, the Court will preclude the United States from eliciting Barela's testimony during the second trial.

**IT IS ORDERED** that:  (i) the Defendant's Motion in Limine to Exclude Mention of West Mesa Burials, filed September 10, 2018 (Doc. 74), is granted; (ii) the Defendant's Motion in Limine to Exclude Mention of Panties, filed September 10, 2018 (Doc. 75), is granted; (iii) the Defendant's Motion in Limine to Exclude Opinion as to Source of Tattoos, filed September 10, 2018 (Doc. 76), is granted; (iv) the Defendant's Motion in Limine to Exclude Mention of and Speculation Regarding Items Observed in Old Water Tank, filed September 12, 2018 (Doc. 82), is granted; (v) Plaintiff United States of America's request to introduce the name and sentence associated with Young's prior convictions, should Young stipulate to his prior felony convictions, in the United States' Notice Pursuant to Federal Rule of Evidence 609, filed November 8, 2018 (Doc. 121), is denied; (vi) the United States' Motion in Limine Requesting that Counsel be

Precluded from Referencing the First Trial, from Making Arguments Unsupported by the Record, and from Asking Inappropriate Questions on Direct or Cross-examination, filed November 23, 2018 (Doc. 123), is granted; (vii) the United States' request to cross-examine Young's witnesses regarding the women's underwear, brass knuckles, methamphetamine pipe, and pornography in the United States' Motion in Limine to Allow Cross-examination of Defense Witnesses Regarding the Contents of Defendant's Red Dodge Pick-up Truck, filed November 9, 2018 (Doc. 124), is denied; and (viii) the United States' Motion in Limine to Allow the Testimony at Trial of N.M. Probation and Parole Officer Ronald Barela, filed November 22, 2018 (Doc. 127), is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

John C. Anderson
   United States Attorney
Paul H. Spiers
Kristopher N. Houghton
Paul Edward Schied
   Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

   *Attorneys for the Plaintiff*

Jennifer J. Wernersbach
Law Offices of Jennifer J. Wernersbach, P.C.
Albuquerque, New Mexico

-and-

Charles E. Knoblauch
Charles E. Knoblauch Attorney at Law
Albuquerque, New Mexico

*Attorneys for the Defendant*