**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

       Plaintiff,

vs.                                           No. CR 17-0694 JB

APACHE YOUNG,

       Defendant.

<u>**MEMORANDUM OPINION AND ORDER**</u>

**THIS MATTER** comes before the Court on: (i) the Defendant's Objections and Corrections to the Presentence Report, filed February 27, 2020 (Doc. 183)("Objections I"); (ii) the Defendant's Objections to the Presentencing Report, filed June 21, 2019 (Doc. 204)("Objections II"); and (iii) the Defendant's Memorandum, Opinion, and Request for Sentence Relief, filed November 16, 2020 (Doc. 247)("Objections III"). The primary issues are: (i) whether, when Defendant Apache Young's arresting officer, Albuquerque Police Department ("APD") Officer Harvey asked Young if he had any weapons on him, Young denied having any; (ii) whether Young's offense level calculation should increase by 2 levels under United States Sentencing Guidelines ("U.S.S.G") § 2K2.1(b)(4), because the offense involves a stolen firearm, where Young maintains that he did not know that the firearm was stolen; (iii) whether Young received notice regarding which of his prior convictions qualify him as an Armed Career Criminal; (iv) whether Young should receive credit for acceptance of responsibility under U.S.S.G. § 3E1.1, because he conceded at trial that he possessed the firearms at issue in the offense; (v) whether Young was arrested for driving under the influence, resisting arrest, and evading a police officer on December 5, 2000, where Arrest Reports list Young's name, but court records were filed under the name Daniel Padilla; (vi) whether Young is an Armed Career Criminal; (vii) whether Young's

September 7, 2004, attempted robbery offense qualifies as a violent felony under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)("ACCA"), where Young's attempted robbery offense does not receive criminal history points in the Presentence Report ("PSR"); (viii) whether the convictions associated with Young's May 4, 2009, robbery spree in Tulsa, Oklahoma, should be counted as different violent felonies under the ACCA; (ix) whether Young cannot be classified as an armed career criminal under Rehaif v. United States, 139 S. Ct. 2191 (2019)("Rehaif"), because Young maintains that he was not aware that his previous felony convictions would be considered violent felonies under the ACCA; (x) whether the Court should reconsider its ruling, United States v. Young, 347 F. Supp. 3d 747 (D.N.M. 2018)(Browning, J.), on Young's Motion to Suppress, filed May 10, 2018 (Doc. 43)("Motion to Suppress"); (xi) whether Young's conviction at trial for the present offense is invalid because the Court did not advise Young that, if Young chose to testify, his prior nolo contendere pleas would be inadmissible at trial; (xii) whether the United States engaged in selective prosecution and prosecutorial misconduct as to Young; (xiii) whether Young should receive a new trial based on ineffective assistance of counsel; (xiv) whether the admission of Young's jail calls qualifies as entrapment; and (xv) whether Young's sentence is procedurally unreasonable.  The Court concludes that: (i) because both the United States Probation Office ("USPO") and Young agree that Young informed Officer Harvey that he had no weapons on him, the PSR need not be changed; (ii) Young is subject to a 2-level offense enhancement under U.S.S.G. § 2K2.1(b)(4), regardless whether he knew the firearm was stolen, because U.S.S.G. § 2K2.1(b)(4) does not contain a scienter requirement, as Application Note 8 affirms; (iii) the USPO provided Young with notice regarding which convictions qualify him as an Armed Career Criminal; (iv) Young does not receive credit for acceptance of responsibility under U.S.S.G. § 3E1.1, because he has not demonstrated that he accepted responsibility for possessing firearms

at trial, and his prison telephone calls indicate that Young believes that he did nothing wrong; (v) the preponderance of the evidence indicates that Young was not arrested on December 5, 2000, because of inconsistencies in his Arrest Reports, missing information, and Young's recurring confusion with Daniel Padilla; (vi) Young is an Armed Career Criminal because, before the present offense, he committed five violent felonies under the ACCA; (vii) attempted robbery in New Mexico is a violent felony, because it involves the use of force, and is an enumerated offense under the ACCA's violent felony definition; (viii) the convictions associated with Young's May 4, 2009, robbery spree in Tulsa, Oklahoma, are separate offenses, because they were committed on separate occasions and occurred in different places at different times and involved different individuals; (ix) Rehaif does not prohibit Young's classification as an Armed Career Criminal, because the ACCA sentencing enhancement contains no mens rea requirement; (x) Young presents no new case law or evidence demonstrating that the Court should reconsider its previous ruling, United States v. Young, 347 F. Supp. 3d 747, denying Young's Motion to Suppress, and, even when the Court reconsiders its previous ruling, it confirms the ruling; (xi) Young's conviction is valid, because the Court had no duty to advise Young that his prior nolo contendere pleas would not be admissible at trial, and Young never indicated to the Court that he was interested in testifying at trial; (xii) there is no evidence that the United States engaged in prosecutorial misconduct or selective prosecution, and Young's filings on this matter are procedurally deficient and extremely tardy; (xiii) Young's claims regarding ineffective assistance of counsel are not timely under rule 33(b)(2) of the Federal Rules of Criminal Procedure; (xiv) Young's monitored jail telephone calls are admissible evidence and do not constitute entrapment because the recordings took place after the events at issue, and Young consented to the recordings by proceeding with his phone calls after a warning that they were subject to recording; (xv) Young's argument that his sentence is

procedurally unreasonable is premature, because the Court has not imposed yet a sentence; and (xii).  Consequently, the Court overrules all of Young's objections except the one relating to Young's December 5, 2000, arrest, and it sustains one objection.

## FACTUAL BACKGROUND

The Court takes its facts from the third Presentence Investigation Report.  See Presentence Investigation Report as to Apache Young, filed December 10, 2020 (Doc. 258)("PSR").

### 1.      The Criminal History.

Young was convicted of his first crime as an adult[1] on July 25, 2002, in Truth or Consequences, New Mexico.  See PSR ¶ 29, at 6-7.  Young shoplifted from a store and subsequently fled from police while intoxicated, without a driver's license, and while driving a stolen vehicle.  See PSR ¶ 29, at 6-7.  Young also hid his true name from the police and encouraged another individual to violate his terms of probation.  See PSR ¶ 29, at 10-11.

Young received a fine for his second conviction in Henderson, Nevada, on June 15, 2004. See PSR ¶ 30, at 11.  Young was intoxicated and refused to obey officers' commands, and the officers ultimately had to tackle Young in order to restrain him.  See PSR ¶ 30, at 11.

Young's third conviction occurred on April 18, 2005.  See PSR ¶ 31, at 11-12.  Young attempted to rob a motel on August 21, 2004, but "the clerk could not get the cash register to open," and Young "got upset and slammed the cash register down on the counter."  PSR ¶ 31, at 11-12. Further, Young's plea agreement relating to this conviction "included a stipulation that the State would not renew charges against the defendant stemming from the shooting of Louis Martinez on or about August 12, 2004.  No additional information is known about the shooting incident."  PSR

---

[1]Young was also convicted of two offenses as a juvenile, which merit no criminal history points.  See PSR ¶¶ 27-28, at 9-10.

¶ 31, at 12.

Young's fourth conviction took place on December 2, 2005.  See PSR ¶ 32, at 12.  Young fired a gun at a residence containing a baby, the baby's mother, and two adults.  See PSR ¶ 32, at 12.  All of the residence's occupants were "transported to the hospital for treatment of their injuries."  PSR ¶ 32, at 12.  Young was convicted of three counts of aggravated battery.  See PSR ¶ 32, at 12.  Young again obstructed a peace officer in Henderson, Nevada, on April 15, 2006.  See PSR ¶ 33, at 13.

Young's sixth conviction happened on March 11, 2010, as a result of a string of robberies in Tulsa, Oklahoma.  See PSR ¶ 34, at 13-14.  On April 18, 2009,

> [a]t 7:30 pm, the defendant, who was wearing a bandana on his face and carrying a knife, and Garcia, who was wearing a gorilla mask and carrying a sawed-off shotgun with a pistol grip, entered Cy's Bar.  The defendant stabbed one of the witnesses in the leg as the two men demanded property from the customers.  They got away with a wallet, a watch, cash, and an identification card.
>
> At 7:40 pm, the defendant, who was still masked with a bandana and armed with the knife, and Garcia, who was now wearing a devil mask and still armed with the sawed-off shotgun, encountered the victim in the parking lot at Buccaneer Bar and demanded his property.  They got away with the victim's keys and $112 in cash.
>
> At 8:00 pm, the defendant, who was still masked but now armed with the sawed-off shotgun, and Garcia, who was also still masked but now armed with two knives, entered Par T Lounge, which was being patronized by 12 customers.  The defendant racked the shotgun's slide and demanded the patrons' property.  When two patrons jumped on the defendant, Garcia intervened.  During the struggle, the shotgun went off, and two patrons were injured.  The shotgun, a shotgun shell, Garcia's mask, and other items were recovered as evidence.

PSR ¶ 34, at 13-14.

Young's seventh, eighth, and ninth convictions all resulted from Young driving while intoxicated.  See PSR ¶¶ 35-37, at 14-15.  These offenses occurred on November 7, 2015, January 2, 2016, and June 19, 2016.  See PSR ¶¶ 35-37, at 14-15.

Young also has had extensive encounters with law enforcement that did not result in convictions.  See PSR ¶¶ 41-51, at 16-18.  In January, 2002, a police officer stopped Young for a traffic violation, and encountered a "shotgun, which had a barrel that was cut off to less than 18 inches and did not have a serial number."  PSR ¶ 41, at 16.  On August 27, 2016, an APD officer saw Young, carrying a shotgun, on private property with posted no trespassing signs.  See PSR ¶ 43, at 16.  Young was involved in a confrontation with correctional officers on October 15, 2019, where he "rushed at a correctional officer and struck him with a closed fist repeatedly."  PSR ¶ 46, at 16-17.  Young was also involved in an "inmate-on-inmate fight" on January 3, 2020.  PSR ¶ 47, at 17.

### 2.    **The Offense Conduct.**

On November 13, 2016, Albuquerque Police Department ("APD") officers saw Young carrying a firearm.  See PSR ¶ 6, at 4.  The officers asked Young whether he had any additional weapons, and he told them that he did not.  See PSR ¶ 6, at 4.  When the officers approached Young's vehicle, they saw a "HI-Point, semiautomatic pistol, model JHP, .45 ACP caliber inside the vehicle" "in plain view . . . ."  PSR ¶ 6, at 4.  The officers confirmed that Young had a prior felony conviction.  See PSR ¶ 7, at 4.  Thereafter, the officers arrested Young for Felon in Possession of a Firearm, seized the firearm, and determined that the firearm was stolen.  See PSR ¶ 7, at 4; id. ¶ 11, at 5.  The APD later searched the vehicle, and discovered a rifle, a stolen shotgun, a ski mask, a shovel, and women's underwear.  See PSR ¶ 8, at 4.  A Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") agent identified the three weapons as:  (i) "HI-Point, semiautomatic pistol, model JHP, .45 ACP caliber"; (ii) "a Remington, bolt action rifle, model 721, 30-06 caliber"; and (iii) "a Remington, pump action shotgun, model 870."  PSR ¶ 9, at 4-5. The ATF agent also identified ammunition of various calibers in the vehicle.  See PSR ¶ 10, at 5.

## PROCEDURAL BACKGROUND

The USPO filed three PSRs.  See Presentence Investigation Report, filed January 29, 2019 (Doc. 242)("PSR I"); Second Presentence Investigation Report, filed September 24, 2020 (Doc. 242)("PSR II"); PSR at 1.  On March 7, 2019, the USPO filed an Addendum to Presentencing Investigation Report.  See Addendum to Presentencing Investigation Report at 1, filed March 7, 2019 (Doc. 187)("PSR Addendum I").  On October 7, 2019, the USPO filed a Second Addendum to the Presentencing Investigation Report.  See Addendum to Presentencing Investigation Report at 1, filed October 7, 2019 (Doc. 223)("PSR Addendum II").[2]  On September 15, 2020, the USPO filed a Third Addendum to Presentencing Investigation Report.  See Addendum to Presentencing Investigation Report at 1, filed September 15, 2020 (Doc. 241)("PSR Addendum III").  Young filed three sets of objections.  See Objections I; Objections II; Objections III.

### 1.    The Objections.

Young first objects to the PSR's assertion that Young told APD officers that he was not carrying any weapons.  See Objections I ¶ 2, at 1.  Young insists that the officer "asked Mr. Young if he had any weapons on him and Mr. Young truthfully answered he had one" and that the officer and Young "were at some distance from the location the weapons were stored."  Objections I ¶ 2, at 1.  Next, Young argues that the rifle found in his vehicle was not stolen, but belonged to his cousin, although Young acknowledges that the shotgun was stolen.  See Objections I ¶ 3, at 1-2.

Next, Young contends that "Paragraph 19 of the PSR mistakenly increases the calculation by 2 levels under [United States Sentencing Guidelines Manual ('U.S.S.G.') §] 2K2.1(b)(4) as a stolen firearm," because Young did not know that the firearm was stolen.  Objections I ¶ 4, at 2

---

[2]The PSR Addendum II summarizes Young's pro se filings before October 7, 2019.  See PSR Addendum II at 1.

(citing United States v. Jordan, 740 F. Supp. 2d 1013 (E.D. Wis. 2010)(Adelman, J.)).  Young also

argues that the PSR is incorrect in classifying him as an Armed Career Criminal under 18 U.S.C.

§ 924(e).  See Objections I ¶ 5, at 2.  Young also avers that he should receive "credit for acceptance

of responsibility subtracting 2 levels" because he conceded at trial that he possessed firearms.

Objections I ¶ 6, at 2 (citing United States v. McKittrick, 142 F.3d 1170 (9th Cir. 1998).  Finally,

Young argues that he was never arrested for a DUI in Las Vegas, Nevada on June 19, 2000.  See

Objections I ¶ 7, at 3.

### 2.   The First Addendum.

The USPO responds to Young's first objection and insists that "when officers asked if the

defendant had any weapons, he denied having any."  PSR Addendum I at 1.  Next, the USPO

agrees with Young's contention that the rifle was not stolen.  See PSR Addendum I at 1.  The

USPO maintains its position that Young's sentencing calculation should "increase by two levels,"

under U.S.S.G. § 2K2.1(b)(4), because Young need not have known that the gun was stolen.  PSR

Addendum I at 1.  With respect to the USPO's classification of Young as an Armed Career

Criminal, the USPO notes that Young had notice of this classification and the underlying offenses,

and "is an Armed Career Criminal based on three prior violent felony convictions."   PSR

Addendum I at 2.  Next, the USPO insists that because Young "proceeded to trial" he "is not

entitled to any acceptance of responsibility reduction."  PSR Addendum I at 2.  Finally, the USPO

notes that, with respect to the DUI offense, "the PSR will remain unchanged."  PSR Addendum I

at 2.

### 3.   The United States Sentencing Memorandum.

In their Sentencing Memorandum, the United States recommends that the Court accept the

findings and calculations in the PSR, and sentence Young at the high end of the Guidelines'

recommended range.  See United States' Sentencing Memorandum at 1, filed March 12, 2019 (Doc. 188)("U.S. Sentencing Memo.").  The United States contends that aggravating factors, including Young's criminal history and his promises to pose a future danger to specific individuals and the public, warrant a high-end sentence.  See U.S. Sentencing Memo at 1.  The United States notes that Young "has made apparent his lack of respect for the law through his repeated conduct and statements," and that "a high-end sentence would promote deterrence and respect for the law." U.S. Sentencing Memo at 1.

The United States then addresses factual disputes Young asserts in his Objections.  See U.S. Sentencing Memo at 2.  The United States asserts that Young omits relevant parts of the transcript of the encounter between Young and Harvey when Young argues that the PSR ¶ 6, at 4, is incorrect.  See U.S. Sentencing Memo at 2 (citing Objections I ¶ 2, at 1).  Instead, the United States maintains that the PSR correctly indicates that Young lied about the presence of firearms. See U.S. Sentencing Memo at 2-3.  The United States then agrees with Young's assertion that PSR ¶ 3, at 4, misidentifies whether it was the rifle or the shotgun which was stolen, but contends that "the salience of the difference is unclear."  U.S. Sentencing Memo at 3 (citing Objections I ¶ 3, at 1-2).

Next, the United States contends that the Court should consider Young's statements made in an interview with homicide detectives in light of the 18 U.S.C. § 3553(a) factors.  See U.S. Sentencing Memo at 3.  The United States argues that Young's statements regarding his 2005 conviction for three counts of aggravated battery demonstrate the importance of imposing a sentence that will protect the public from further crimes of the defendant.  See U.S. Sentencing Memo at 4 (citing 18 U.S.C. § 3553(a)(2)(c)).  The United States maintains that the PSR indicates that Young has committed violent crimes in the past, and that Young's statement to the homicide

detective that he was "playing for blood"[3] when he committed aggravated battery on July 25, 2005, shows that at least one of Young's past crimes was an instance of retaliation for a wrong.  U.S. Sentencing Memo at 4.  The United States alleges that "Young's description of the retaliatory shooting that led to his 2005 conviction for aggravated battery raises serious concerns in light of other statements Young made on recorded jail calls."  U.S. Sentencing Memo at 5.

Next, the United States discusses Young's recorded jail calls.  See U.S. Sentencing Memo at 5.  The United States' asserts that Young made threats and other troubling comments because of his perception that he had been treated unfairly.  See U.S. Sentencing Memo at 5 (citing Apache Young Interview Segments (no date), filed March 15, 2019 (Doc. 190-3)).  The United States argues that Young suggested that citizens should shoot and kill police officers in a September 6, 2018, call with his mother where Young stated, "'smoking more of their asses is what needs to go down,'" when discussing recent police shootings.  U.S. Sentencing Memo at 6.  The United States then addresses a telephone call from September 27, 2018, where "Young references his own violent history and notes how his current experiences are leading him to consider a return to his old ways, with members of the criminal justice system as the implied targets of wrath."  U.S. Sentencing Memo at 6.

The United States contends that threatening statements are a "common refrain" during Young's jail calls.  United States' Sentencing Memo at 6.   For example, the United States describes a  September 27, 2018, telephone call where Young issues a threat apparently directed at the Court or United States counsel, and an October 16, 2018, telephone call where Young states, "I'll make 'em suffer," and "I'm gonna traumatize these people."  U.S. Sentencing Memo at 7.

---

[3]"Play for blood" is a phrase made popular by the American Western film, Tombstone (Hollywood Pictures 1993), meaning to play a deadly game.

The United States then emphasizes that, even after receiving a specific warning that the United States planned to use his jail calls at trial, Young continued to make additional damaging statements.  U.S. Sentencing Memo at 7-8.  The United State contends that Young does not allege any misconduct by the Court or by the United States on the jail calls, and that Young's feeling of being wronged is a result of his own misunderstandings of and lack of respect for the law.  See U.S. Sentencing Memo at 8.

Next, the United States explains that, even though Young has previously acknowledged his guilt, he mentions in multiple telephone calls that he faces a stiff penalty even though he "did nothing wrong."  See U.S. Sentencing Memo at 8.  The United States argues that, given Young's acknowledgement of guilt, these comments show "that Young views possessing a firearm as a felon as 'nothing,' because it does not involve the type of serious violence he has committed in the past."  U.S. Sentencing Memo at 8.  The United States emphasizes Young's habitual violations of 18 U.S.C § 922(g)(1), including: (i) Young discussed casually going on a hunting trip during his interview with the homicide detective;  (ii) trial testimony establishing a customized shotgun sling embroidered with the name APACHE belonged to Young;  and (iii) an APD officer observing Young holding a shotgun in August, 2016.  See U.S. Sentencing Memo at 9.  The United States concludes that Young "clearly demonstrates, by his repeated flaunting of the law, his own words, and by the outrage he feels for being convicted and sentenced according to the law, that he has no respect for the law."  U.S. Sentencing Memo at 9.

Finally, the United States admits it is possible to interpret Young's jail calls in a benign way, acknowledging that Young could have been blustering, because he was upset, and the statements made are empty threats to express his frustration.  See U.S. Sentencing Memo at 10. The United States maintains, however, that Young receives a warning at the beginning of each call

informing him that his statements are being recorded and, therefore, Young is on notice that the United States is listening to the calls, yet Young made continuously threatening statements.  <u>See</u> U.S. Sentencing Memo at 10.  The United States argues that, because of the comments ongoing nature, "the Court would be wholly justified in interpreting [Young's] statements as legitimate threats, either that Young intends to harm the public generally or Government and Court personnel specifically if given the opportunity."  U.S. Sentencing Memo at 10.

Next, the United States addresses Young's objections to PSR ¶ 19, at 6, and PSR ¶ 24-25, at 6, regarding his offense level under the Guidelines.  <u>See</u> U.S. Sentencing Memo at 10.  First, Young objects to the PSR's statement that two of the three firearms that Young possessed are stolen.  <u>See</u> U.S. Sentencing Memo at 11.  The United States counters that nothing in the Guidelines suggest that Young must have knowledge of the guns' stolen status for the enhancement to apply.  <u>See</u> U.S. Sentencing Memo at 11.  Additionally, the United States notes that Young cites to <u>United States v. Jordan</u> 740 F. Supp. 2d 1013 (E.D. Wis. 2010)(Adelman, J.), in his Objection, a case that notes specifically that "the Commission dispensed with a mens rea requirement for this enhancement." 740 F. Supp 2d at 1016.  <u>See</u> U.S. Sentencing Memo at 11. The United States insists that <u>United States v. Jordan</u> relies on U.S.S.G. § 2K2.1 n.8, which states: "Subsection (b)(4) applies regardless of whether the defendant knew or had reason to believe that the firearm was stolen or had an altered or obliterated serial number."  U.S.S.G. § 2K2.1 n.8.  <u>See</u> U.S. Sentencing Memo at 11.  The United States addresses Young's reference to the Court's opinion in <u>United States v. Ulibarri</u>, 115 F. Supp. 1308 (D.N.M. 2015)(Browning, J.).  <u>See</u> United States' Sentencing Memo at 11.  The United States presumes that Young references the case

because he believes it holds that an enhancement under § 2J1.2(b)(1)(B)[4] did not apply because of a lack of evidence of mens rea. See U.S. Sentencing Memo at 11. The United States argues that U.S.S.G. § 2J1.2(b)(1)(B), unlike § 2K2.1(b)(4), requires a specific mens rea; thus, the United States insists that United States v. Ulibarri does not prevent the Court from applying the § 2K2.1(b)(4) stolen firearms enhancement to Young. See U.S. Sentencing Memo at 12.

Next, the United States responds to Young's argument that he should be awarded credit for accepting responsibility, because he did not deny that he was in possession of the firearms when addressing the Court. See U.S. Sentencing Memo at 13 (citing Objections I ¶ 6, at 2). The United States explains that Young avers that he did not contest his factual culpability, and he "cites to United States v. McKittrick, 142 F.3d 1170 (9th Cir. 1998) in an attempt to escape responsibility for his failure to accept responsibility." U.S. Sentencing Memo at 13 (citing Objections I ¶ 6, at 2). The United States counters that, by contesting intent, Young contested an element of the crime and, additionally, United States v. McKittrick, 142 F.3d 1170 (9th Cir. 1998), is out of the Tenth Circuit and, therefore, is inapplicable to Young's case. See U.S. Sentencing Memo at 14. Furthermore, the United States asserts that Young's jail calls demonstrate that Young has not accepted responsibility. See U.S. Sentencing Memo at 14. The United States concludes that the USPO correctly calculates Young's offense level in the PSR. See U.S. Sentencing Memo at 14. The United States argues that, because of Young's status as an Armed Career Criminal, Young's final offense level is 33. See U.S. Sentencing Memo at 14. Additionally, the United States asserts that, because of Young's criminal history category of VI, the resulting Guidelines range is 235 to

---

[4]"If the offense involved causing or threatening to cause physical injury to a person, or property damage, in order to obstruct the administration of justice, increase by 8 levels." U.S.S.G § 2J1.2(b)(1)(B).

293 months.  See U.S. Sentencing Memo at 14.

The United States argues that a sentence at the high end of the Guidelines range of 235 to 293 months would "adequately account for Young's history and characteristic, the need to afford deterrence and promote respect for the law, and the need to protect the public from future crimes of the defendant."  U.S. Sentencing Memo at 16. The United States concludes that "Young can identify no viable basis for a departure from the Guidelines nor grounds for a variance under the factors listed in 18 U.S.C. § 3553(a)" and that "the 18 U.S.C § 3553(a) factors place upward pressure on the sentence, and could justify an upward variance"; thus, the United Sates recommends that the Court "sentence Young to a term of imprisonment at the high end of the Guidelines range."  U.S. Sentencing Memo at 17.

### 4.    Young's April 4, 2019 Letter.

In his letter, Young raises two issues: (i) that Young's legal counsel is unfit to further represent him; and (ii) because a lack of legal access or assistance, Young requests a continuance of his sentencing.  See Letter from Apache Young to the Court at 1 (no date), filed April 5, 2019 (Doc. 152)("April 4 Letter").  First, Young addresses problems he has with the way his legal counsel, Charles Knoblauch, has handled his PSR.  See April 4 Letter at 1.  Young alleges that Mr. Knoblauch "has failed to object and argue certain issues that to him seem minor but to me are very serious."  April 4 Letter at 1.  Young states that Mr. Knoblauch ignores case law that Young researches which is relevant to his sentencing and that Young "feel[s] he has given up on me." April 4 Letter at 1.  Young also alleges that he has been unable to get in touch with Mr. Knoblauch, and states that he is concerned that his objections to his PSR will not be filed timely and, as a result, will not be part of the record for appellate review.  See April 4 Letter at 2.  Young suggests that Mr. Knoblauch is overwhelmed and unfit to further represent him going forward.  See April

4 Letter at 2.

Next, Young states that, because of a lack of legal access or assistance, he requires a continuance of his sentencing.  See April 4 Letter at 2.  Young requests a continuance to May or June, 2019,  to prepare and file his own arguments and motions against his PSR.  See April 4 Letter at 2.  Additionally, Young requests an appeals lawyer "that will ensure me all I ask regardless of how small will be filed within proper timelines and will not neglect contact with me."  April 4 Letter at 3.

**5.      The May 13, 2019, Status Conference.**

The Court held a status conference on May 13, 2019.  See Clerk's Minutes, filed May 13, 2019 (Doc. 196).  The Court explained it called the status conference because of the April 4, 2019 Letter, filed with the Court on April 5, 2019.  See Transcript of Hearing at 1:11-15 (taken May 13, 2019)(Court)("Tr.").[5]  The Court noted that, in the letter, Young expressed dissatisfaction with his attorney, Mr. Knoblauch, and the Court wanted to "see if everything is okay" prior to setting a sentencing date.  See Tr. at 1:18-21 (Court).  The Court then asked if Young wants to continue to work with Mr. Knoblauch as the case heads towards sentencing.  See Tr. at 7:17-19 (Court).  Young answered in the affirmative, stating that he would proceed with Mr. Knoblauch as his legal counsel.  See Tr. at 7:20-8:4 (Young). The Court concluded the hearing by setting sentencing for June 10, 2019.  See Tr. at 15:18-19 (Court).

**6.      Young's July 18, 2019, Letter.**

In a letter filed on July 18, 2019, Young asks the Court to "overlook the last letter I

---

[5]The Court's citations to the transcript of the hearing in this Memorandum Opinion and Order refer to the court reporter's original, unedited versions.  Any final transcripts may contain slightly different page and/or line numbers.

wrote . . . concerning me and Mr. Knoblauch."  Letter from Apache Young to the Court at 1 (no

date), filed July 18, 2019 (Doc. 206)("July 18 Letter").  Young states that he is frustrated with the

difficulties that he is having "corresponding and staying in contact" with his legal counsel, Charles

Knoblauch.  See July 18 Letter at 1.  Young alleges that "since the prosecutors are so into keeping

tabs with all my calls somehow they are interfering with my legal ones."  July 18 Letter at 1.

Young concludes by asking the Court to "disregard my last letter and understand I'm just frustrated

and concerned about how I'm being treated."  July 18 Letter at 1.

      **7.**     **The Objections II.**

In the Objections III, Young first argues that he should not be classified as an Armed Career

Criminal, because he "has two prior cases of violence, not three."  Objections II at 1.  Young

continues that a "base offense level of 24 cannot apply because his previous conviction of

attempted robbery did not receive criminal history points in the PSR, nor does it qualify as a crime

of violence under the Sentencing Guidelines."  Objections II at 2.  He contends that, in New

Mexico, robbery is not a crime of violence under U.S.S.G. § 4B1.2.  See Objections II at 3.  Young

insists that a defendant must use force before or during a taking to commit robbery.  See Objections

II at 3 (citing United States v. Garcia-Caraveo, 586 F.3d 1230, 1235 (10th Cir. 2009)).  Young

observes that this is "a relic of the strict common law to which only five states, including New

Mexico, still adhere."  Objections II at 4.  Specifically, Young notes that, in New Mexico, "armed

robbery requires the use of a deadly weapon."  Objections II at 4 (citing N.M.S.A. §  30-16-2;

State v. Curley, 1997-NMCA-038, ¶ 8, 939 P.2d 1103, 1105.

Young insists that, in his 2005 attempted robbery conviction, there was no proof that he

was armed with a deadly weapon during the attempted robbery.  See Objections II at 7.  In New

Mexico, Young continues, robbery requires "strong physical force" "a substan[t]ial degree of

force, violent force that is."  Objections II at 9.  Young argues that "bumping a person, jolting the arm and shoulder of the person, and spitting in the person's face" does not satisfy the physical force requirement.  Objections II at 9-10 (citing United States v. Dominguez-Maroyoqui, 748 F.3d 918, 921 (9th Cir. 2014); United States v. Hollins, 514 F. App'x 264, 267-68 (3d Cir. 2013)).

Next, Young contends that third-degree robbery in New Mexico is not "generic robbery" under U.S.S.G § 4B1.2(A).  See Objections II at 10.  Young argues that "the proper definition of generic robbery should mirror the model penal code's definition . . . and include a requirement that there be an infliction of serious bodily injury on another."  Objections II at 10.  Consequently, he insists that the Court should find that third-degree robbery in New Mexico is not a crime of violence  under  U.S.S.G § 4B1.2(A) because it "omits the requirement of serious bodily injury . . . ."  Objections II at 11.

Young also avers that the robbery and armed robbery are not predicate offenses under U.S.S.G § 2K2.1.  See Objections II at 11.  He notes that two of the PSR's proposed predicate offenses are attempted robbery and attempted armed robbery, and insists that "New Mexico attempt does not qualify as generic attempt under the sentencing guidelines."  See Objections II at 12.  He contends that New Mexico defines attempt more broadly than "the federal generic definition of intent."  Objections II at 13.  Young concludes that, therefore, he is not an Armed Career Criminal.  See Objections II at 13.   Young also suggests that he committed his three prior offenses as a "single continuous spree," rather than "on separate occasions."  Objections II at 14. He also argues that 18 U.S.C. § 924(e)(1)'s definition of "occasions" is "unconstitutionally vague." Objections II at 16; id. at 27.  Next, Young contends that, under a modified categorical approach, the Court should not determine that Young's prior offenses involved the use of force.  See Objections II at 16.  Young notes that "the simultaneous robbery of multiple patrons is to be

counted as a single occasion." Objections II at 18. He also insists that the United States "bears the burden of proving that prior offenses occurred on different occasions." Objections II at 19 (citing Shepard v. United States, 544 U.S. 13 (2005)). Young also notes that, in his case, "some of the robberies may have been committed less than minutes apart." Objections II at 19.

8.     **The Third Addendum to the PSR.**

The USPO responds to the Objections II. See PSR Addendum III at 2. First, listing Young's convictions, the USPO notes that it "enhanced the base offense level pursuant to U.S.S.G. § 2K2.1(a)(2) due to the fact the defendant has the . . . crimes of violence convictions that received criminal history points pursuant to U.S.S.G. § 4A1.1." PSR Addendum III at 2.

Relatedly, the USPO maintains that Young qualifies as an Armed Career Criminal because of his three prior violent felony convictions. See PSR Addendum III at 2. The USPO also notes that Young's violent felonies "all happened on separate occasions and have different case numbers." PSR Addendum III at 2. The convictions at issue occurred in 2004, 2005, and 2009. See PSR Addendum III at 2.

The USPO also explains that a violent felony is any felony that "'(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.'" PSR Addendum III at 2 (quoting 18 U.S.C. § 924(e)(2)(B)). Next, the USPO addresses each of Young's violent felonies in turn. See PSR Addendum III at 2. First, the USPO notes that Young was convicted of attempted robbery in New Mexico in 2004, and that "robbery in New Mexico consists of 'the theft of anything of value . . . by use or threatened use of force or violence.'" PSR Addendum III at 2 (no citation for quotation). Second, the USPO states that Young was convicted for three counts of aggravated

- 18 -

battery, and that "Aggravated Battery in New Mexico consists of 'the unlawful touching or application of force to the person of another with intent to injure that person or another.'"  PSR Addendum III at 2 (no citation for quotation).  Third, the USPO asserts that Young was convicted for six counts "for various violent felonies" in Oklahoma in 2009.  PSR Addendum III at 2.  One of the counts, "Robbery with a Weapon, consists of 'using firearms or any other dangerous weapons . . . attempt[ing] to rob or rob[bing] any person.'"  PSR Addendum III at 2 (no citation for quotation).  The USPO concludes, therefore, that Young has been convicted of violent felonies on three separate occasions, and thus qualifies as an Armed Career Criminal under 18 U.S.C. § 924(e)(1).  See PSR Addendum III at 2.

Next, the USPO addresses Young's assessed criminal history points pursuant to U.S.S.G. § 4A1.1, which states: "Add 3 points for each prior sentence of imprisonment exceeding one year and one month."  U.S.S.G. § 4A1.1.  See PSR Addendum III at 3.  USPO does not change the PSR based upon Young's objection, because it insists that it "correctly calculated the criminal history points associated in paragraphs 31 and 34."  PSR Addendum III at 3.

### 9.    **The Second PSR.**

The USPO explains that the criminal history calculations in the PSR I were "incorrectly assessed," pursuant to U.S.S.G. § 4A1.1(e), resulting in a reduction of three criminal history points.  See USPO's Changes to the Presentence Report Memorandum at 1, dated September 24, 2020 ("USPO PSR Memo")(citing PSR I ¶ 34-36, at 9-11).  USPO states that, "with the reduction of the three criminal history points, the criminal history score is 12, resulting in a criminal history category of V instead of VI."  USPO PSR Memo at 1.  USPO concludes that, "based upon a total offense level of 33 . . . the guideline imprisonment range is 210 to 262 months."  USPO PSR Memo at 1 (citing Second PSR ¶ 75, at 18).

Next, the USPO corrects information relating to the shotgun belonging to Young's cousin, which Young requests in the Objections I. <u>See</u> USPO PSR Memo at 2 (citing PSR I ¶ 8, at 3). The USPO, in response to Young's objection, also clarifies which crime of violence convictions it used to assess his base offense level. <u>See</u> USPO PSR Memo at 2 (citing PSR I ¶ 10, at 4). USPO then updates the PSR to include information addressing Young's version of his possession of firearms. <u>See</u> USPO PSR Memo at 2 (citing PSR I ¶ 12, at 4). Next, the USPO states that it has obtained "additional information including other arrest conduct gleaned from police reports and conduct on supervision," and updated Young's criminal history section accordingly. USPO PSR Memo at 2 (citing PSR I ¶ 28-34, 37-40, 42-45, 49-50, at 6-14). Additionally, the USPO removes a case description from the Other Arrest section of the PSR and placed it under the Other Criminal Conduct section, <u>see</u> Second PSR ¶ 42, at 12, "to clarify [Young] was wrongly arrested under the name Daniel Padilla." USPO PSR Memo at 2. Next, the USPO updates Young's gang affiliation, <u>see</u> Second PSR ¶ 57, at 15, per Young's request for the correction in USPO's First Addendum to the original PSR, <u>see</u> USPO PSR Memo at 2. Last, the USPO updates the estimated cost of prosecution based on recently disclosed adjustments provided by the Administrative Office of the Courts. <u>See</u> USPO PSR Memo at 2 (citing Second PSR ¶ 85, at 18).

      **10.**      <u>**Young's April 13, 2020, Letter**</u>**.**

In a letter dated April 13, 2020, Young asks the Court to postpone his April 27, 2020 sentencing date. <u>See</u> Letter from Apache Young to the Court at 1 (dated April 13, 2020), filed September 1, 2020 (Doc. 240)("April 13 Letter"). Young explains that he would like his sentencing date postponed "till I'm able and also my loved ones are able to be present." April 13 Letter at 1. Additionally, Young states that he is "really concerned about being sentenced on a TV with this modern day technology being unreliable to get all that's happening or being said." April

13 Letter at 1.  Young emphasizes that he has "many important issues" he needs to place on the record, and that he would like his mother present "as she would also like to address your humble court."  April 13 Letter at 1.  Last, Young states that he is willing to wait, "no matter how long it takes to be able to be in person along with my loved ones also to be present."  April 13 Letter at 1.

    **11.**    **The United States' Response to Defendant's Pro Se Objections to the PSR.**

On November 11, 2020, the United States filed The United States' Response to Defendant's Pro Se Objections to the Pre-Sentence Report.  <u>See</u> United States' Response to Defendant's Pro Se Objections to the Pre-Sentence Report, filed November 11, 2020 (Doc. 245-1)("Response II").  In the Response II, the United States addresses the Objections II.  <u>See</u> Response II at 1.

First, the United States argues that "all of Young's objections relate to his criminal history."  Response II at 2.  Specifically, Young (i) "objects to his designation as an Armed Career Criminal under 18 U.S.C. § 924(e)"; (ii) "to the application of U.S.S.G. § 4B1.4" based on the ACCA; and (iii) "his criminal history points as calculated under U.S.S.G. § 4B1.4."  Response II at 2.  The United States avers that "[a]ll ten of Young's relevant convictions qualify as violent felonies and crimes of violence."  Response II at 2.  Accordingly, the United States explains the definitions of "violent felony" and "crime of violence," pursuant to 18 U.S.C. § 924(e) and U.S.S.G. § 4B1.2(a), respectively.  The United States continues that "the same interpretive approach applies for the Guidelines as for ACCA: courts must determine if the state offense, in the *Taylor* Court's words, 'corresponds in substance to the generic meaning,' of the enumerated offense."  Response II at 4 (quoting <u>Taylor v. United States</u>, 495 U.S. 575, 602 (1990)).

The United States insists that Young's August 21, 2004, attempted robbery conviction is a crime of violence because "New Mexico robbery require[s] force capable of causing pain or injury,

and . . . ' such force categorically matches the definition of physical force the Supreme Court assigned in *Johnson I*.'"  Response II at 5 (quoting <u>United States v. Garcia</u>, 877 F.3d 944, 956 (10th Cir. 2017)).  The United States also notes that, in <u>Stokeling v. United States</u>, 139 S. Ct. 544, 548 (2019), the Supreme Court held that a Florida robbery statute qualified as an ACCA predicate offense.  <u>See</u> Response II at 5-6. The United States insists that the Tenth Circuit has explained that <u>Stokeling v. United States</u> supports its ruling in <u>United States v. Garcia</u>.  <u>See</u> Response II at 6.  The United States emphasizes that "[t]he Tenth Circuit has not hesitated to reverse a district court's ruling that a violation of the New Mexico robbery statute is not a violent felony."  Response II at 6 (citing <u>United States v. Velasquez</u>, 810 F. App'x 655 (10th Cir. 2020)).   The United States continues that the Tenth Circuit treats "attempts as the same as completed offenses for purposes of violent felony classification under the ACCA."  Response II at 6 (citing <u>United States v. Dean</u>, 724 F. App'x 681, 682 (10th Cir. 2018)).  Consequently, the United States contends that Young's August 21, 2004, attempted robbery conviction qualifies as a violent felony under the ACCA and as a crime of violence under the Guidelines.  <u>See</u> Response II at 7.

The United States then discusses Young's September 22, 2005, aggravated battery convictions.  <u>See</u> Response II at 7-8.  The United States argues that, like attempted robbery, "New Mexico aggravated battery qualifies as a violent felony under the ACCA's elements clause." Response II at 8.  The United States explains that the Tenth Circuit has held that aggravated battery against a household member is a violent felony and that aggravated battery against a household member "consists of the same elements as aggravated battery, except that it specifies that the victim of the application of force is a household member."  Objections II at 8.  Relatedly, the United States maintains that the Court "has held on multiple occasions that 'New Mexico aggravated battery categorically fits within § 4B1.2's elements clause.'"  Objections II at 8

(quoting United States v. Folse, 301 F. Supp. 3d 1037, 1066 (D.N.M. 2017)(Browning, J.)).

Next, the United States addresses Young's May 4, 2009, convictions in Tulsa, Oklahoma. See Response II at 9. The United States contends that these convictions "included at least three separate occurrences." Response II at 9. The United States insists that each of the three occurrences include convictions that qualify as violent felonies and crimes of violence. See Response II at 9. The United States acknowledges that Young argues that "the Oklahoma convictions should not be considered separate occurrences," but notes that Young "does not actually dispute the facts of the PSR." Response II at 10. The United States disagrees with Young's argument, because "separate convictions are considered to have occurred on separate occasions if they are distinct in time, even if they occur at the same location with the same individuals." Response II at 10 (citing United States v. Delossantos, 680 F.3d at 1220, and United States v. Michel, 446 F.3d 1122, 1133-34 (10th Cir. 2006)). The United States asserts that, here, Young "committed his offenses at Cy's Bar, Buccaneer Bar, and Par-T-Lounge in three successive criminal incidents . . . ." Response II at 11. The United States argues that Young "was not being pursued during robberies, but nonetheless decided to travel to different locations to cause additional mayhem." Response II at 11-12. The United States avers that both Oklahoma convictions for robbery with a weapon, and for assault and battery with a deadly weapon, are violent felonies under the ACCA. See Response II at 12 (citing United States v. Gilbert, 25 F.3d 1058 (10th Cir. 1994)). Accordingly, the United States concludes:

> The (at least) three Oklahoma episodes bring the tally of violent felonies occurring on different occasions under the ACCA to five. Because this exceeds the three violent felonies necessary to expose Young to a fifteen year minimum sentence under the ACCA, the Court need not analyze whether the Oklahoma convictions (or the 2005 New Mexico convictions) could be divided into additional separate and distinct criminal episodes. The number of crimes of violence under the Guidelines is less relevant, because Guidelines § 4B1.4(a) automatically defines an individual that is an armed career criminal under the ACCA as an armed career

criminal under the Guidelines.  Young is subject to a base offense level of 24 under
§ 2K2.1(a)(2) because he has been previously convicted of at least two felony
convictions of crimes of violence (all told, Young has been previously convicted of
ten crimes of violence), but this offense level is supplanted by the offense level of
33 that he receives under § 4B1.4(b)(3)(B) by virtue of his armed career criminal
status.

Response II at 16.

The United States then addresses Young's remaining arguments.  See Response II at 17.
The United States explains that Young argues that his attempted robbery conviction should not
qualify as a crime of violence, because it does not receive criminal history points in the PSR.  See
Response II at 17 (citing Objections II at 2).  The United States contends that "the fact that the
sentence does not result in criminal history points is . . . irrelevant to whether it qualifies as a crime
of violence."  Response II at 17.  Next, the United States discusses Young's argument that New
Mexico robbery is not a crime of violence, because of the amount of force required, see Objections
II at 9, and responds that Young's argument contradicts Tenth Circuit precedent, see Response II at
18 (citing United States v. Garcia, 877 F.3d at 956).  Subsequently, the United States explores
Young's contention that New Mexico robbery does not qualify as generic robbery.  See Response
II at 18.  The United States argues that "Young's description of New Mexico robbery as narrower
than robbery in most states actually makes a strong argument for it qualifying as a violent crime
under the enumerated clause."  Response II at 18.  The United States also discusses Young's
argument that "New Mexico attempt does not match generic attempt."  Response II at 18-19.  The
United States reiterates that the Tenth Circuit has concluded that New Mexico attempted robbery
should be "treated the same as New Mexico robbery for purposes of classification under the
elements clause."  United States v. Dean, 724 F. App'x at 682.  Finally, the United States examines
Young's argument that, because nine months of his eighteen-month attempted robbery sentence
were suspended, his attempted robbery conviction does not qualify as a crime of violence.  See

Response II at 19 (citing Objections II at 24).

The United States explains that a "majority of Young's arguments focus on his Oklahoma convictions."  Response II at 19-20.  The United States avers that the Tenth Circuit has held "that Oklahoma robbery with a weapon is categorically a violent felony without the need to apply the modified categorical approach."  Response II at 20 (citing United States v. Byers, 739 F. App'x 925, 928 (10th Cir. 2018)).  The United States also critiques the cases upon which Young relies, arguing that they "deal[] with completely different statutes in completely different contexts" and are "entirely unhelpful."  Response II at 20.  The United States discusses Young's argument that "'the bar patrons jumped the male with the shotgun and the gun was discharged . . . , clearly a negligence factor,'" which Young contends is not "'violent intentional force which is the sine-qua-non of a crime of violence.'"  Response II at 21 (quoting Objections II at 17).  The United States discounts this argument, because it argues that Young's crimes are categorically crimes of violence, and consequently insists that the Court should not examine the specific circumstances of Young's crime.  See Response II at 21.

Next, the United States explores Young's argument that, even if his Oklahoma convictions are crimes of violence, they should count only as one offense under the ACCA.  See Response II at 22 (citing Objections II at 14).  The United States notes that the Tenth Circuit allows courts to examine the PSR to determine whether two crimes are separate occurrences.  See Response II at 22 (citing United States v. Harris, 447 F.3d 1300 (10th Cir. 2006)).  Here, the United States asserts, the PSR demonstrates that Young's Oklahoma convictions constitute three separate occurrences.  See Response II at 22-23.  The United States insists that Young cannot contest the PSR's facts. "because they are an accurate reflection of his conduct, and are consistent with the charging document and judgments in his Oklahoma case. These three episodes took place at different times,

in different locations, and with different victims."  Response II at 23 (citing <u>United States v. Tisdale</u>, 921 F.2d 1095, 1099 (10th Cir. 1990)).

Next, the United States addresses Young's contention that the Supreme Court's ruling in <u>Johnson II</u>, 576 U.S. at 597, undermines the Tenth Circuit's holding in <u>United States v. Michel</u>, 446 F.3d at 1135,  because <u>Johnson II</u> ruled that the residual clause is unconstitutional.  Response II at 24 (citing Objections II at 20).  The United States explains that, "[w]hile it appears that few litigants have pursued this radical position, the Fourth Circuit has agreed with *Michel* after *Johnson II* was decided."  Response II at 24 (citing <u>United States v. Smith</u>, 703 F. App'x 174, 177-78 (4th Cir. 2017)).  The United States also notes that the Tenth Circuit thus far has declined to extend <u>Johnson II</u> to strike down other portions of § 924(e)(1).  <u>See</u> Response II at 24 (citing <u>United States v. Schubert</u>, 694 F. App'x 641, 648 (10th Cir. 2017)).  Moreover, the United States argues that Young does not explain how the residual clause relates to the different occasions clause.  <u>See</u> Response II at 25.  Relatedly, the United States posits that the different occasions clause is "fundamentally tied to knowable facts in a way that the residual clause was not."  Response II at 25.

The United States avers that Young merits a criminal history category of VI.  <u>See</u> Response II at 26.  The United States explains that the USPO, Young, and the United States have all calculated differently Young's criminal history score, because they disagree regarding U.S.S.G. § 4A1.1(e)'s interpretation:

> The United States believes it applies to Young's Oklahoma convictions, and results in him receiving three criminal history points.  Probation believes it does not apply to Young's Oklahoma convictions, because Probation considers those convictions to actually only count as a single conviction and thus only one prior sentence. Young appears to argue that subsection (e) should not apply because he thinks his convictions are not crimes of violence.

Response II at 26-27.  The United States notes that the USPO "is treating the six Oklahoma

convictions as a single conviction and a single prior sentence," but argues that "[t]here is no authority to support this position."  Response II at 29.  The United States contends that "it is clear that each count is its own conviction with its own sentence" under U.S.S.G. § 4A1.1(e).  Response II at 30.  In support of this contention, the United States maintains that Application Note 5 "provides a helpful example that exactly mirrors Young's Oklahoma convictions."  Response II at 30.  Accordingly, the United States concludes that Young's criminal history score is 15, and, therefore, his criminal history category is VI.  See Response II at 31.

**12.    The October 29, 2020, Minute Order.**

The Court directed the United States to respond to all of Young's pro se filings.  See Minute Order as to Apache Young by District Judge James O. Browning, entered October 29, 2020 (Doc. 244).

**13.    Young's Third Set of Objections.**

On November 16, 2020, Young filed, pro se, his third set of objections to the PSR.  See Objections III at 1.  The Court acknowledges that Young filed the Objections III pro se, and this section will take the most charitable view possible in summarizing each of Young's arguments. In his Objections III, Young: (i) objects to the ACCA application based on Rehaif v. United States, 139 S. Ct. 2191 (2019); (ii) argues that his conviction is invalid, because he was not advised his past nolo contendere pleas would not be used against him were he to testify in his defense; (iii) argues that the United States committed selective prosecution and prosecutorial misconduct; (iv) argues that the admission of one of Young's jail calls amounts to vicarious or indirect entrapment; (v) contends that his sentence is procedurally unreasonable; and (vi) alleges the Court's ruling on Young's motion to suppress was incorrect.  See Objections III at 1-11.

First, Young states that Rehaif v. United States held that, to convict a defendant of violating

18 U.S.C § 922(g), the United States must prove the accused knew he had a criminal history status making his possession of a firearm unlawful.  See Objections III at 1.  Young argues that the Court should extend the scope of the ruling and read a "scienter requirement for enhancement under 18 U.S.C § 924(e)."  Objections III at 1.  Young contends that the United States must prove Young knew that he had at least three prior convictions categorized as violent felonies to be subject to the ACCA sentencing provisions.  See Objections III at 1-2.

Second, Young states that his conviction is invalid, because the Court and the United States did not advise him that his nolo contendere pleas would not be used against him were he to testify in his own defense at trial.  See Objections III at 2-3.  Young argues that the Court and the United States had a duty to inform him that his nolo contendere pleas would not be admissible.  See Objections III at 3.  Young explains that, had the Court advised him that his nolo pleas would not be used against him, Young would have "gone forth to take the witness stand in his own defense." Objections III at 3.  Young concludes by asking "that the Court seek  a remedy for their actions, and their prejudice, and to rule in favor of setting aside his guilty verdict, until proper channels are remedied for a new trial based on the plain error of the presiding Court."  Objections III at 3.

Third, Young alleges that the United States engaged in prosecutorial misconduct and selective prosecution.  See Objections III at 4.  Young argues "that the government engaged in misconduct when the prosecutor told the jury that it would not be at this trial if Mr. Young was in fact not guilty of being a felon in possession of a firearm," and when the prosecutor told the jury Young is "a smart individual as he's explaining to his girlfriend over a recorded line as to how to beat his case."  Objections III at 4-5.  Young states that the "prosecutor engaged in misconduct by committing improper vouching and by impugning the integrity of the defense counsel." Objections III at 4-5.  Young concludes by asking the Court to determine whether the prosecutor's

improper statements should result in reversal of his conviction.  See Objections III at 5.

Fourth, Young implores the Court to "look into vicarious or indirect entrapment." Objections III at 5.  Young argues "that due to admittance of a phone call that a motion to dismiss should have been called for, and granted on indirect or vicarious entrapment grounds, and that his trial counsel was ineffective for failing to seek an entrapment jury instruction."  Objections III at 5.  Young argues that the Court should grant a new trial and exchange his lead counsel, Mr. Knoblauch, for second chair counsel, Ms. Jennifer Wernersbach.  See Objections III at 6.

Fifth, Young alleges that his sentencing range is procedurally unreasonable.  See Objections III at 6.  Young argues that his sentencing range is procedurally unreasonable because "the District Court, the United States, and Probation office[] have all failed to consider a sentencing manipulation argument and because the District Court did not adequately discuss or apply the 18 U.S.C. § 3553(a) factors."  Objections III at 6.  Young states that the United States and the USPO both "erred in calculation and in seeking to place a burden unwarranted on Mr. Young for the Armed Career Criminal Act."  Objections III at 6.

Finally, Young argues that the Court's ruling, denying his Motion to Suppress, was incorrect.  See Objections III at 10.  See also United States v. Young, 347 F. Supp. 3d at 753. Young states that APD "officers were acting outside of their jurisdiction and were not authorized by Tribal law, or Congressional law, to perform law-enforcement functions."  Objections III at 10. Young alleges that, when a "police officer effectuates a seizure, or warrant-less arrest, upon an individual outside the officers' state jurisdiction, he violates the Fourth Amendment."  Objections III at 10.  Young states that his seizure by APD officers operating outside their jurisdiction violated his Fourth Amendment rights, regardless of how reasonable the seizure may have been.  See Objections III at 7.  Young concludes by asking the Court "to quit its prejudice against him along

with its biasness and move to further vacate the sentence or dismiss the proceedings to avoid review into court conduct." Objections III at 11.

14.    **The United States' Response to Young's November 16, 2020, Pro Se Filing.**

On November 30, 2020, the United States filed its Response to Defendant's Pro Se Filing of November 16, 2020.  <u>See</u> Response to Defendant's Pro Se Filing of November 16, 2020, filed November 30, 2020 (Doc. 252)("Response III").  The United States argues that the Court should reject Young's Objections III, because it is "procedurally deficient in numerous ways.  Various requests for relief included in the filing are untimely, unripe, and have been previously litigated." Response III at 1.  The United States explains that its brief focuses on the procedural deficiencies in the Objections III.  <u>See</u> Response III at 1.  The United States argues that "further delay for the purposes of entertaining Young's baseless and untimely pro se filings is not warranted."  Response III at 2-3 (citing Fed. R. Crim. P. 32(b)(1)).

The United States notes that, under rule 32(f)(1), Young's Objections III are not timely. <u>See</u> Response III at 3-4.  The United States next addresses Young's argument that "his conviction is invalid because the Court and the Government did not advise him that his nolo contendere pleas would not be used against him were he to testify in his own defense."  Response III at 4 (citing Objections III at 2-3).  The United States indicates that it is unsure whether Young's arguments are a motion for judgment of acquittal, <u>see</u> Fed. R. Crim. P. 29(c)(1), or a motion for a new trial not based on newly discovered evidence, <u>see</u> Fed. R. Crim P. 33(b)(2).  <u>See</u> <u>also</u> Response III at 5.  Examining the relevant rules of Criminal Procedure, the United States maintains that Young's motion is "untimely and should be denied on that basis."  Response III at 5.  The United States also states that Young's selective prosecution claims are not timely, because he should have raised them before trial.  <u>See</u> Response III at 5 (citing Fed. R. Crim. P. 12(b)(3)(A)(iv)).  Regarding

prosecutorial misconduct, the United States alleges that Young's filing violates rules 51(b), 29(c)(1), and 33(b)(2) of the Federal Rules of Criminal Procedure.  See Response III at 5.  The United States also insists that Young's arguments related to "ineffective assistance of counsel because counsel did not seek an entrapment instruction," are untimely under rule 33(b)(2). Response III at 6 (citing Objections III at 6).  The United States next explains that Young's argument that his sentence is "procedurally unreasonable is . . . premature" and "unripe" because "Young has not yet been sentenced."  Response III at 6.  The United States then notes that Young's argument that his prior felonies do not qualify as predicate offenses under the ACCA mirrors his arguments in the Objections II, which the United States addressed previously in the Response II. See Response III at 6-7 (averring that Young's argument is "both untimely and redundant").  Last, the United States explains that the Court has ruled already on Young's motion to suppress, and "there is no cause to revisit that ruling now.  Young's motion for acquittal based on a previously litigated suppression issue is untimely and should be denied."  Response III at 7.  The United States concludes by clarifying its request:

> that the Court deny Young's various motions based on the procedural deficiencies of his filing.  The Court can and should hold Young to the local rules and rules of criminal procedure.  Young has had his chance to file motions and objections.  That time has passed.  Young seems intent on taking advantage of the Court's accommodations to level frivolous accusations at the Court and the Government. Further indulging Young's pro se filings is not in the interests of justice or judicial economy.

Response III at 7.

### 15.   __The Third PSR__.

The USPO filed the third PSR on December 10, 2020.  See PSR at 1.  First, the PSR summarizes the case's procedural history.  See PSR at 1-2.  The USPO then analyzes Young's Tulsa, Oklahoma, convictions.  See PSR at 2.  The USPO explains that it now "concurs with the

government that USPO incorrectly removed the criminal history points pursuant USSG § 4A1.1(e) from the Second PSR." PSR at 2. The USPO continues that "[t]hree additional criminal history points should have been assessed pursuant to U.S.S.G. § 4A1.1(e) to that case because three of the convictions of crimes of violence . . . did not receive any criminal history points . . . because such sentences were treated as a single sentence." PSR at 2. Consequently, the USPO explains that "because Count 1 received points under 4A1.1(a), and the remaining three counts did not contribute to the number of criminal history points assigned for the prior crimes of violence treated as a single sentence, the latter three are each assigned a point under 4A1.1(e)." PSR at 2. The USPO also adjusted its position regarding Young's conviction "in case no. D-608-CR-2005-00143 should not receive any criminal history points pursuant to USSG § 4A1.1(e) because Counts 2 and 3 were suspended and therefore no custody sentence was imposed." PSR at 3. Accordingly, the USPO concludes that Young's "criminal history score is 15, resulting in a criminal history category of VI rather than V. Therefore, based upon a total offense level of 33 and a criminal history category of VI, the guideline imprisonment range is 235 to 293 months." PSR at 3.

### 16.   The United States' Response to Young's Second Pro Se Objections to the PSR.

On December 12, 2020, the United States filed the United States' Response to Defendant's Second Pro Se Objections to the PSR. See United States' Response to Defendant's Second Pro Se Objections[6] to the PSR, filed December 12, 2020 (Doc. 260)("Response IV"). The United States notes that Young's Objections III was "extremely untimely, coming not just after the fourteen days prescribed by Fed. R. Crim. P. 32(f)(1), but also after Young had filed one set of objections through counsel and one set of objections pro se." Response IV at 1. The United States insists that one of

---

[6]Of Young's three sets of Objections, Young's counsel, Mr. Knoblauch, filed the Objections I, and Young filed the Objections II and the Objections III pro se.

Young's objections in the Objections III "was redundant with Young's first pro se filing, and had been comprehensively addressed on the merits in the Governments response" and that the "other rested on a baseless and unprecedented legal argument."  Response IV at 1.

First, the United States addresses Young's argument that, under Rehaif v United States, 139 S. Ct. 2191, the PSR designates Young incorrectly as an Armed Career Criminal, because Young lacked notice that his prior felony convictions "'would be deemed violent felonies.'" Response IV at 2 (quoting Objections III at 1).  The United States notes that Rehaif v. United States interprets 18 U.S.C. § 922(g), rather than the ACCA.  See Response IV at 2.  The United States argues that "Young's proposed extension of Rehaif is unwarranted and nonsensical." Response IV at 3.  The United States insists that, unlike 18 U.S.C. § 922(g), the ACCA contains no mens rea requirement, but rather acts as "a straightforward sentencing enhancement."  Response IV at 3.  The United States maintains that the ACCA "says nothing that could be taken to imply that a defendant needs to know his status as a thrice-convicted violent felon to be subject to the statute."  Response IV at 4.  The United States contends that "[i]n the context of the ACCA, the concept of mens rea hardly makes sense. There is no real actus reus for defendants in the ACCA." Response IV at 5.  The United States also explains that, in McFadden, 576 U.S. at 192, the Supreme Court upheld a sentencing enhancement contained in the Controlled Substances Act, 21 U.S.C. § 841 ("CSA"), without requiring a mens rea component.  See Response IV at 6.  The United States continues that, although McFadden predates Rehaif v. United States, "there is no reason to think that Rehaif abrogates it in the least."  Response IV at 6.  The United States also asserts that Young's proposed ACCA interpretation would generate absurd results, because under Young's interpretation "no defendant would ever be subject to the ACA's sentencing enhancement." Response IV (citing Objections III at 1).  The United States argues:

> Whether or not a given conviction is a violent felony under the ACCA depends on the results of a court's application of the modified categorical approach. This includes parsing the language of state statutes, and state court and Supreme Court cases. Young contends that it was Congress's intention that the ACCA apply to a defendant only if he had done all of this . . ., understood it, and then possessed a firearm in violation of 18 U.S.C. § 922(g). This is unbelievable.

Response IV at 7.

Second, the United States discusses Young's argument that his prior crimes do not count as violent felonies under the ACCA. See Response IV at 8. The United States emphasizes that Young raised previously this objection in the Objections II, and notes that it "addressed this at length" in the Response II. See Response IV at 8. The United States continues:

> As described in the Government's response to Young's first pro se objections, all of Young's violent felonies qualify as such under the ACCA's elements clause. Some of them also likely qualify under the enumerated clause, but even if Young is correct that they do not because the state crimes are broader than the generic versions, Young still has at least five violent felonies to his name.

Response IV at 9. The United States argues that Young's crimes qualify as predicate offenses under the categorical approach. See Response IV at 9 (citing Objections III at 6-7). In conclusion, the United States summarizes its arguments, but argues that the Court should "rule on procedural grounds because that is all the process Young is due regarding these second untimely pro se objections, and because doing so will promote judicial economy and discourage further frivolous and redundant objections." Response IV at 10.

## LAW REGARDING MOTIONS TO RECONSIDER

Except where the Federal Rules of Civil Procedure specify, motions to reconsider fall into three categories:

> (i)     a motion to reconsider filed within [twenty-eight] days of the entry of judgment is treated as a motion to alter or amend the judgment under rule 59(e);
>
> (ii)    a motion to reconsider filed more than [twenty-eight] days after judgment is considered a motion for relief from judgment under rule 60(b); and (iii) a motion to reconsider any order that is not final is a

general motion directed at the Court's inherent power to reopen any interlocutory matter in its discretion.

Pedroza v. Lomas Auto Mall, Inc., 258 F.R.D. 453, 462 (D.N.M. 2009)(Browning, J.).  See Price v. Philpot, 420 F.3d at 1167; Computerized Thermal Imaging, Inc. v. Bloomberg. L.P., 312 F.3d 1292, 1296 (10th Cir. 2002).

### 1.    Motions for Reconsideration Under Rules 59(e) and 60(b).

Courts may treat motions for reconsideration as a rule 59(e) motion when the movant files within twenty-eight days of a court's entry of judgment.   See Price v. Philpot, 420 F.3d at 1167 n.9.  If the movant files outside that time period, courts should treat the motion as seeking relief from judgment under rule 60(b).   See Price v. Philpot, 420 F.3d at 1167 n.9.   "[A] motion for reconsideration of the district court's judgment, filed within [rule 59's filing deadline], postpones the notice of appeal's effect until the motion is resolved."   Jones v. United States,  355 F. App'x 117, 121 (10th Cir. 2009)(unpublished).  The time limit in rule 59(e) is now twenty-eight days from the entry of a judgment.  See Fed. R. Civ. P. 59(e).

Whether a motion for reconsideration should be considered a motion under rule 59 or rule 60 is not only a question of timing, but also "depends on the reasons expressed by the movant." Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc., 680 F.3d 1194, 1200 (10th Cir. 2011). Where the motion "involves 'reconsideration of matters properly encompassed in a decision on the merits,'" a court considers the motion under rule 59(e).  Phelps v. Hamilton,  122  F.3d 1309, 1323-24 (10th Cir. 1997)(quoting Martinez v. Sullivan, 874 F.2d 751, 753 (10th Cir. 1989)).   In other words, if the reconsideration motion seeks to alter the district court's substantive ruling, then it should be considered a rule 59 motion and  be  subject  to rule 59's constraints.  See Phelps v. Hamilton, 122 F.3d at 1324.  In contrast, under rule 60,

[o]n  motion  and  just  terms,  the  court  may  relieve  a  party  or  its  legal

representatives from a final judgment, order, or proceeding for the following reasons:

(1)     mistake, inadvertence, surprise, or excusable neglect;

(2)     newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3)     fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4)     the judgment is void;

(5)     the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6)     any other reason that justifies relief.

Fed. R. Civ. P. 60(b).   Neither a rule 59 nor a rule 60 motion for reconsideration

are appropriate vehicles to reargue an issue previously addressed by the court when the motion merely advances new arguments, or supporting facts which were available at the time of the original motion . . . . Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice.

Servants of the Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir. 2000).     "[A]     motion

for reconsideration is appropriate where the court has misapprehended the facts, a party's position,

or the controlling law."   Servants of the Paraclete v. Does, 204 F.3d at 1012.   A district court

has considerable discretion in ruling on a motion to reconsider.   See Phelps v. Hamilton, 122

F.3d at 1324.

A court cannot enlarge the time for filing a rule 59(e) motion.   See Brock v. Citizens Bank

of Clovis, 841 F.2d 344, 347 (10th Cir. 1988)(holding that district courts lack jurisdiction over

untimely rule 59(e) motions); Plant Oil Powered Diesel Fuel Sys., Inc. v. ExxonMobil Corp., No.

11-0103, 2012 WL 869000, at *2 (D.N.M. Mar. 8, 2012)(Browning, J.)("The Court may not extend

the time period for timely filing motions under Rule 59(e). . . ."). "A motion under rule 59 that is

filed more than 28 days after entry of judgment may be treated as a Rule 60(b) motion for relief

from judgment." 12 James Wm. Moore Et. al., Moore's Federal Practice § 59.11[4][b], at 59-32

(3d ed. 2012)(citations omitted). Nevertheless, a court will not generally treat an untimely rule

59(e) motion as a rule 60(b) motion when the party is seeking "'reconsideration of matters properly

encompassed in a decision on the merits' contemplated by Rule 59(e).'" Jennings v. Rivers, 394

F.3d 850, 854 (10th Cir. 2005)(quoting Osterneck v. Ernst & Whinney, 489 U.S. 169, 174 (1989).

Under some circumstances, parties can rely on rule 60(b)(1) for a mistake by their attorney

or when their attorney acted without their authority. See Yapp v. Excel Corp., 186 F.3d 1222,

1231 (10th Cir. 1999)("Rule 60(b)(1) motions premised upon mistake are intended to provide

relief to a party . . . when the party has made an excusable litigation mistake or an attorney has

acted without authority"). Mistakes in this context entail either acting without the client's consent

or making a litigation mistake, such as failing to file or to comply with deadlines. See Yapp v.

Excel Corp., 186 F.3d at 1231. If the alleged incident entails a mistake, then it must be

excusable, meaning that the party was not at fault. See Pioneer Inv. Servs. v. Brunswick Assocs.

LP, 507 U.S. 380, 394 (1993); Cashner v. Freedom Stores, Inc., 98 F.3d 572, 577 (10th Cir.

1996)("If the mistake alleged is a party's litigation mistake, we have declined to grant relief under

Rule 60(b)(1) when the mistake was the result of a deliberate and counseled decision by the

party."); Pelican Prod. Corp. v. Marino, 893 F.2d 1143, 1146 (10th Cir. 1990)(holding that

attorney carelessness is not a basis for relief under rule 60(b)(1)).

Courts will not grant relief when the mistake of which the movant complains is the result

of an attorney's deliberate tactics. See Cashner v. Freedom Stores, Inc., 98 F.3d at 577. This rule

exists because a party

> voluntarily chose [the] attorney as his representative in the action, and he cannot
> now avoid the consequences of the acts or omissions of this freely selected agent.
> Any other notion would be wholly inconsistent with our system of representative
> litigation, in which each party is deemed bound by the acts of his lawyer agent and
> is considered to have notice of all facts, notice of which can be charged upon the
> attorney.

Pioneer Inv. Servs. v. Brunswick Assocs. LP, 507 U.S. at 397 (quoting Link v. Wabash R.R. Co.,

370 U.S. 626, 633-34 (1962))(internal quotation marks omitted).   The Tenth Circuit has held

that there is nothing "novel" about "the harshness of penalizing [a client] for his attorney's

conduct" and has noted that those "who act through agents are customarily bound," even though,

when "an attorney is poorly prepared to cross-examine an expert witness, the client suffers the

consequences." Gripe v. City of Enid, Okla., 312 F.3d 1184, 1189 (10th Cir. 2002).

Rule 60(b)(6) is a "grand reservoir of equitable power to do justice in a particular case."

Van Skiver v. United States, 952 F.2d 1241, 1244 (10th Cir. 1991)(internal quotation marks

omitted). "If the reasons offered for relief from judgment could be considered under one of the

more specific clauses of Rule 60(b)(1)-(5), those reasons will not justify relief under Rule

60(b)(6)." 12 Moore's Federal Practice § 60.48[2], at 60-182, (3d ed. 1999). Accord Liljeberg

v. Health Servs. Acquisition Corp., 486 U.S. 847, 863 n.11 (1988)("This logic, of course,

extends beyond clause (1) and suggests that clause (6) and clauses (1) through (5) are mutually

exclusive."). "The Rule does not particularize the factors that justify relief, but we have previously

noted that it provides courts with authority 'adequate to enable them to vacate judgments whenever

such action is appropriate to accomplish justice,'" Liljeberg v. Health Servs. Acquisition Corp.,

486 U.S. at 863-64 (quoting Klapprott v. United States, 335 U.S. 601, 614-15 (1949)), "while also

cautioning that it should only be applied in 'extraordinary circumstances,'" Liljeberg v. Health

Servs. Acquisition Corp., 486 U.S. at 864 (quoting Ackermann v. United States, 340 U.S. 193, 193

(1950)).

Generally, the situation must be one beyond the control of the party requesting relief under rule 60(b)(6) to warrant relief. See Ackermann v. United States, 340 U.S. 193, 202 (1950)("The comparison [of prior precedent] strikingly points up the difference between no choice and choice; imprisonment and freedom of action; no trial and trial; no counsel and counsel; no chance for negligence and inexcusable negligence.   Subsection 6 of Rule 60(b) has no application to the situation of petitioner."). Legal error that provides a basis for relief under rule 60(b)(6) must be extraordinary, as the Tenth Circuit discussed in Van Skiver v. United States:

> The kind of legal error that provides the extraordinary circumstances justifying relief under Rule 60(b)(6) is illustrated by Pierce [v. Cook & Co., 518 F.2d 720, 722 (10th Cir. 1975)(en banc)].  In that case, this court granted relief under 60(b)(6) when there had been a post-judgment change in the law "arising out of the same accident as that in which the plaintiffs . . . were injured."  Pierce v. Cook & Co., 518 F.2d at 723. However, when the post-judgment change in the law did not arise in a related case, we have held that "[a] change in the law or in the judicial view of an established rule of law" does not justify relief under Rule 60(b)(6).  Collins v. City of Wichita, 254 F.2d 837, 839 (10th Cir. 1958).

Van Skiver v. United States, 952 F.2d at 1244-45.

## 2.      Motions to Reconsider Interlocutory Orders.

Considerable confusion exists regarding the proper standard for a district court to apply when ruling on a motion to reconsider one of its prior "interlocutory" or "interim" orders, i.e., an order that a district court issues while the case is ongoing, as distinguished from a final judgment. This confusion originates from the fact that the Federal Rules of Civil Procedure do not mention motions to reconsider, let alone set forth a specific procedure for filing them or a standard for analyzing them.  A loose conflation in terminology in Servants of the Paraclete v. Does, which refers to rule 59(e) motions -- "motion[s] to alter or amend a judgment" -- as "motions to

reconsider,"[7] compounds that baseline confusion.  Fed. R. Civ. P. 59(e)(emphasis added), <u>Servants of the Paraclete v. Does</u>, 204 F.3d at 1005.

Final judgments are different from interlocutory orders.  <u>See</u> Fed. R. Civ. P. 54(a)("'Judgment' as used in these rules includes a decree and any order <u>from which an appeal lies</u>.")(emphasis added).   In addition to ripening the case for appeal, <u>see</u> 28 U.S.C. § 1291 ("The courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts"), the entry of final judgment narrows the district court's formerly plenary jurisdiction over the case in three ways.  First, for the first twenty-eight days after the entry of judgment, when the court can entertain motions under rules 50(b), 52(b), 59, and 60, the district court's jurisdiction trumps that of the Court of Appeals.  <u>See</u> Fed. R. App. P. 4(a)(4)(B).  Even if a party files a notice of appeal, the Court of Appeals will wait until after the district court has ruled on the post-judgment motion to touch the case.  <u>See</u> Fed. R. App. P. 4(a)(4)(B).  Second, after twenty-eight days, when

---

[7]The Honorable Paul J. Kelly, Jr., United States Circuit Judge for the United States Court of Appeals for the Tenth Circuit, who authored <u>Servants of the Paraclete v. Does</u>, refers to rule 59(e) motions as "motions to reconsider" several times throughout the opinion.  <u>See</u>, <u>e.g.</u>, 204 F.3d at 1005. He uses the term "motion to reconsider" as an umbrella term that can encompass three distinct motions: (i) motions to reconsider an interlocutory order, which no set standard governs, save that the district court must decide them "before the entry of . . . judgment," Fed. R. Civ. P. 54(b); (ii) motions to reconsider a judgment made within twenty-eight days  of the entry of judgment, which the <u>Servants of the Paraclete v. Does</u> standard governs; and motions to reconsider a judgment made more than twenty-eight days after the entry of judgment, which rule 60(b) governs.  There is arguably a fourth standard for motions to reconsider filed more than a year after the entry of judgment, as three of the rule 60(b) grounds for relief expire at that point.

Much confusion could be avoided by using the term "motion to reconsider" exclusively to refer to the first category, "motion to amend or alter the judgment" exclusively to refer to the second category, and "motion for relief from judgment" exclusively to refer to the third category (and arguable fourth category).  These are the terms that the Federal Rules of Civil Procedure -- and other Courts of Appeals -- use to describe (ii) and (iii).  The Court agrees with Judge  Kelly-- and all he likely meant by using motion to reconsider as an umbrella term is -- that, if a party submits a motion captioned as a "motion to reconsider" after an entry of final judgment, the court should evaluate it under rule 59(e) or 60(b), as appropriate,  rather  than  rejecting it as  untimely or inappropriate.

the court may consider motions under rule 60, if a party has filed a notice of appeal, the Court of Appeals' jurisdiction trumps the district court's jurisdiction, and the district court needs the court of appeals' permission even to grant a rule 60 motion.  See Fed. R. App. P. 4(a)(4)(B).  Third, after twenty-eight days, if no party has filed a notice of appeal, district courts may consider motions under rule 60.  See Fed. R. App. P. 4(a)(4)(B).

Final judgments implicate two important concerns militating against giving district courts free reign to reconsider their judgments. When a case is not appealed, there is an interest in finality. The parties and the lawyers expect to go home, quit obsessing about the dispute, and  put the case behind them, and the final judgment -- especially once the twenty-eight day window of robust district court review and the thirty-day window of appeal have both closed -- is the disposition upon which they are entitled to rely.  Second, when a case is appealed, there is the need for a clean jurisdictional handoff from the district court to the Court of Appeals.  "[A] federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously," as doing so produces a "danger [that] a district court and a court of appeals w[ill] be simultaneously analyzing the same judgment."  Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58-59 (1982).

The Court of Appeals needs a fixed record on which to base its decisions -- especially given the collaborative nature of appellate decision making -- and working with a fixed record requires getting some elbow room from the district court's continued interference with the case. The "touchstone document" for this jurisdictional handoff is the notice of appeal, and not the final judgment.  Griggs v. Provident Consumer Discount Co., 459 U.S. at 58 ("The filing of a notice of appeal is an event of jurisdictional significance -- it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."

(citations omitted)); <u>Garcia v. Burlington R.R. Co.</u>, 818 F.2d 713, 721 (10th Cir. 1987)("Filing a timely notice of appeal pursuant to Fed. R. App. P. 3 transfers the matter from the district court to the court of appeals.  The district court is thus divested of jurisdiction.  Any subsequent action by it is null and void." (citations omitted)); <u>Kirtland v. J. Ray McDermott & Co.</u>, 568 F.2d  1166, 1170 (5th Cir. 1978)("[I]t is the filing of the appeal, not the entering of a final judgment, that divests the district court of jurisdiction." (citations omitted)).  Because the final judgment starts the parties' thirty-day clock for filing a timely notice of appeal, however, the Federal Rules and the Tenth Circuit have chosen to curtail the district court's jurisdiction over the case in the roughly month-long  period  of  potentially  overlapping  trial-  and  appellate-court  jurisdiction  that immediately follows the entry of final judgment.  <u>See</u> <u>Servants of the Paraclete v. Does</u>, 204 F.3d at 1009 (noting that post-final judgment motions at the district court level are "not intended to be a substitute for direct appeal").

Basically, rather than suddenly divesting the district court of all jurisdiction over the case -- potentially resulting in the district court being unable to rectify easily fixable problems with the final judgment before the case goes to the Tenth Circuit or even requiring appeal of a case that might otherwise not need to be appealed -- the Federal Rules set forth a jurisdiction phased de-escalation process, wherein the district court goes from pre-final judgment plenary jurisdiction, to limited review for the first twenty-eight days post-final judgment, and, finally, to solely rule 60 review after twenty-eight days.  In defining the "limited review" that rule 59(e) allows a district court to conduct in the twenty-eight-day flux period, the Tenth Circuit, in <u>Servants of the Paraclete v. Does</u>, incorporated traditional law-of-the-case grounds -- the same grounds that inform whether a court should depart from an appellate court's prior decision in the same case -- into rule 59(e). <u>See</u> <u>United States  v. Alvarez</u>, 142  F.3d 1243,  1247 (10th Cir. 1998)(departing from the  law-of-

the-case doctrine in three exceptionally narrow circumstances: "(1) when the evidence in a subsequent trial is substantially different; (2) when controlling authority has subsequently made a contrary decision of the law applicable to such issues; or (3) when the decision was clearly erroneous and would work a manifest injustice")(citation omitted); Servants of the Paraclete v. Does, 204 F.3d at 1012 (incorporating those three grounds into rule 59(e)).

　　　Neither of these concerns -- finality nor jurisdictional overlap -- is implicated when a district court reconsiders one of its own interlocutory orders.  The Federal Rules do not mention specifically motions to reconsider interlocutory orders, but rule 54(b) makes the following open-ended proclamation about their mutability:

> When an action presents more than one claim for relief -- whether as a claim, counterclaim, crossclaim, or third-party claim -- or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.  Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b).  Rule 54(b) thus (i) provides that a district court can freely reconsider its prior rulings; and (ii) puts no limit or governing standard on the district court's ability to do so, other than that it must do so "before the entry of judgment."  Fed. R. Civ. P.  54(b).

　　　The Tenth Circuit has not cabined district courts' discretion beyond what rule 54(b) provides: "[D]istrict courts generally remain free to reconsider their earlier interlocutory orders." Been v. O.K. Indus., 495 F.3d at 1225.   In the Tenth Circuit, "law of the case doctrine has no bearing on the revisiting of interlocutory orders, even when a case has been reassigned from one judge to another."   Rimbert v. Eli Lilly & Co., 647 F.3d 1247, 1252 (10th Cir. 2011)(emphasis added)(citing Been v. O.K. Indus., Inc., 495 F.3d at 1225).   In this context, "the doctrine is merely

a 'presumption, one whose strength varies with the circumstances.'"   Been v. O.K. Indus., Inc.,
495 F.3d at 1225 (quoting Avitia v. Metro. Club of Chi., Inc., 49 F.3d 1219, 1227 (7th Cir.
1995)(Posner, J.)).   In short, a district court can select the standard of review for a motion to
reconsider an interlocutory order.   It can: (i) review the earlier ruling de novo and essentially
reanalyze the earlier motion from scratch; (ii) review the ruling de novo but limit its review; (iii)
require parties to establish one of the law-of-the-case grounds; or (iv) refuse to entertain motions
to reconsider altogether.

The best approach, in the Court's eyes, is to analyze motions to reconsider differently
depending on three factors.   Cf. Been v. O.K. Indus., Inc., 495 F.3d at 1225 ("[T]he doctrine is
merely a 'presumption, one whose strength varies with the circumstances.'")(quoting Avitia v.
Metro. Club of Chicago, Inc., 49 F.3d at 1227).   First, the Court should restrict its review of a
motion to reconsider a prior ruling in proportion to how thoroughly the earlier ruling addressed
the specific findings or conclusions that the motion to reconsider challenges.   How thoroughly the
Court addressed a point depends both on the amount of time and energy the Court spent on it, and
on the amount of time and energy the parties spent on it -- in briefing and orally arguing the issue,
but especially if they developed evidence on the issue. A movant for reconsideration thus faces a
steeper uphill challenge when the prior ruling was on a criminal suppression motion, class
certification motion, or preliminary injunction,[8] than when the prior ruling is, e.g., a short

---

[8]The Court typically makes findings of fact and conclusions of law in ruling on these
motions. At first glance, it appears that the Federal Rules of Civil Procedure set forth additional
standards -- beyond that which applies to other interlocutory orders -- for amending findings of
fact and conclusions of law: "Amended or Additional Findings. On a party's motion filed no later
than 28 days after the entry of judgment, the court may amend its findings -- or make additional
findings -- and may amend the judgment accordingly.   The motion may accompany a motion for
a new trial under Rule 59." Fed. R. Civ. P. 52(b).   This rule appears to limit motions to reconsider
orders with findings of fact and conclusions of law to twenty-eight days.   The rule's use of the

discovery ruling.  The Court should also look, not to the prior ruling's overall thoroughness, but to the thoroughness with which the court addressed the exact point or points that the motion to reconsider challenges.  A movant for reconsideration thus faces an easier task when he or she files a targeted, narrow-in-scope motion asking the Court to reconsider a small, discrete portion of its prior ruling than when he or she files a broad motion to reconsider that rehashes the same arguments from the first motion, and essentially asks the Court to grant the movant a mulligan on its earlier failure to present persuasive argument and evidence.  Second, the Court should consider the case's overall progress and posture, the motion for reconsideration's timeliness relative to the ruling that it challenges, and any direct evidence the parties may produce, and use those factors to assess the degree of reasonable reliance that the opposing party has placed in the court's prior ruling.  See 18B Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, Vikram David Amar, Richard D. Freer, Helen Hershkoff, Joan E. Steinman & Catherine T. Struve, Federal Practice & Procedure § 4478.1, at 695-96 (2d ed. 2002)("Stability becomes increasingly important as the proceeding nears  final  disposition.  Reopening should be permitted, however, only on terms that protect against reliance on the earlier ruling.").  For example, if a defendant (i) spends tens of  thousands  of dollars removing legacy computer hardware from long-term storage; then (ii) obtains a protective order in which the court decides that the defendant need not produce the hardware in discovery; then (iii) returns the hardware to long-term storage, sustaining thousands more in expenses;  and several months pass, then the plaintiffs should face a higher burden in

---

term "entry of judgment," its reference to rule 59, and its adoption of the same time period that applies to motions to alter or amend a judgment, all lead the Court to conclude, however, that rule 52(b) -- and its twenty-eight-day time limit -- does not apply to interlocutory orders.  The time limit applies only to findings of fact and conclusions of law supporting a case-ending judgment -- such as those entered after a bench trial -- and to those giving rise to an interlocutory appeal that, if filed, divests the district court of its jurisdiction -- such as those entered in support of a preliminary injunction.

moving the Court to reconsider its prior ruling that they faced in fighting the motion for protective order the first time.  Third, the Court should consider the <u>Servants of the Paraclete v. Does</u> grounds. <u>See</u>  <u>Servants of the Paraclete v. Does</u>, 204 F.3d at 1012.  The Court should be more inclined to grant motions for reconsideration if the movant presents (i) new controlling authority -- especially if the new authority overrules prior law or sets forth an entirely new analytical framework; (ii) new evidence -- especially if the movant has a good reason why the evidence was not presented the first time around; or (iii) a clear indication -- one that manifests itself without the need for in-depth analysis or review of the facts -- that the court erred.

These three factors should influence the degree to which the Court restricts its review of a prior ruling, but they do not mean necessarily that the Court should always apply a deferential standard of review. The Court should pause before applying a standard of review to its own interlocutory orders that is more deferential than the standard that the Court of Appeals will apply to it unless the Court concludes that the alleged error in the prior ruling was harmless, or the party moving for reconsideration waived the right to appeal the alleged error by not raising the appropriate argument. <u>See</u> <u>Lopez v. Delta Int'l Mach. Corp.</u>, 312 F. Supp. 3d 1115, 1142 (D.N.M. 2018)(Browning, J.), <u>aff'd sub nom.</u> <u>Lopez v. Stanley Black & Decker, Inc.</u>, 764 F. App'x 703 (10th Cir. 2019).  Even in circumstances where the Court concludes that it is insulated from reversal on appeal, there are principled reasons for applying a de novo standard. After all, if the Court was wrong in its earlier decision, then, generally speaking, it is unjust to maintain that result -- although the Court should weigh this injustice against any injustice that would result from upending the parties' reliance on the earlier ruling, which is the balancing test that the three factors above represent.

What the Court means by "restricting its review" is less about applying a deferential

standard of review -- although that may be appropriate in some circumstances -- and more about reducing (i) the depth of the Court's analysis the second time around -- thus conserving judicial resources; and (ii) the impositions that relitigation of the prior ruling will impose on the party opposing the motion for reconsideration.  The Court should consider the time and expense that the party opposing reconsideration spent in winning the earlier ruling, and should try to prevent that party from having to bear the same impositions again.  Basically, even if the Court ultimately analyzes a motion to reconsider under the same standard that it analyzed the motion that produced the earlier ruling, it should analyze the motion in a different way -- one focused on reducing the litigation burdens of the party opposing reconsideration.  For example, when a party moves the court for a preliminary injunction, standard practice is that the Court holds an evidentiary hearing as a matter of course, regardless whether it looks as if the party has a good chance of prevailing.  If the party loses and the Court denies the injunction, however, and the party moves for reconsideration, the party should not be entitled to the presumption of an evidentiary hearing merely because he or she received that presumption the first time that the Court considered the motion.

In light of these statements, it is perhaps better to characterize the increased burden that a movant for reconsideration faces as one of production and not of persuasion.  The Court analyzes motions to reconsider by picking up where it left off in the prior ruling -- not by starting anew. Parties opposing reconsideration can do the same, and they may stand on whatever evidence and argument they used to win the earlier ruling.  Movants for reconsideration, on the other hand, carry the full burden of production: they must persuade the Court, using only the evidence and argument they put before it, that it should change its prior ruling; they must do all of the legwork, and not rely on the Court to do any supplemental fact-finding or legal research; and they must convincingly

refute both the counterarguments and evidence that the opposing party used to win the prior ruling and any new arguments and evidence that the opposing party produces while opposing the motion to reconsider.  Unlike the motion that produced the prior ruling, a motion to reconsider is not -- and is not supposed to be -- a fair fight procedurally.  The deck is stacked against a movant for reconsideration, and if such a movant hopes to prevail, he or she must have not only a winning legal position, but the work ethic and tenacity to single-handedly lead the court to his or her way of thinking.

## LAW REGARDING PRO SE LITIGANTS

When a party proceeds pro se, a court construes his or her pleadings liberally and holds them "to a less stringent standard than formal pleadings drafted by lawyers."  Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).  "[I]f the Court can reasonably read the pleadings to state a valid claim on which [the petitioner] could prevail, it should do so despite [his] failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements."  Hall v. Bellmon, 935 F.2d at 1110.  The Court will not, however, "assume the role of advocate for the pro se litigant."  Hall v. Bellmon, 935 F.2d at 1110.  "[P]ro se status does not excuse the obligation of any litigant to comply with the fundamental requirements of the Federal Rules of Civil and Appellate Procedure."  Ogden v. San Juan Cty., 32 F.3d 452, 455 (10th Cir. 1994).

## LAW REGARDING THE GUIDELINES

In United States v. Booker, 543 U.S. 220 (2005), the Supreme Court of the United States of America severed the mandatory provisions from the Sentencing Reform Act, Pub. L. No. 98-473, 98 Stat. 1976, thus making Guidelines sentencing ranges effectively advisory.  543 U.S. at 261.  In excising the two sections, the Supreme Court left the remainder of the Sentencing

Reform Act intact, including 18 U.S.C. § 3553: "Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing.  Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable."  United States v. Booker, 543 U.S. at 261.

Congress has directed sentencing courts to impose a sentence "sufficient, but not greater than necessary" to comply with four statutorily defined purposes enumerated in 18 U.S.C. § 3553(a)(2):

> (A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B)     to afford adequate deterrence to criminal conduct;
>
> (C)     to protect the public from further crimes of the defendant; and
>
> (D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

18 U.S.C. § 3553(a)(2)(A)-(D).

> [A] defendant who has been found guilty of an offense described in any Federal statute . . . shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case.

18 U.S.C. § 3551.  To achieve these purposes, § 3553(a) directs sentencing courts to consider: (i) the Guidelines; (ii) the nature of the offense and of the defendant's character; (iii) the available sentences; (iv) the policy favoring uniformity in sentences for defendants who commit similar crimes; (v) the need to provide restitution to victims; and (vi) any pertinent United States Sentencing Commission policy statements in effect on the date of sentencing.  See 18 U.S.C. § 3553(a)(1), (3)-(7).

Although the Guidelines are no longer mandatory, both the Supreme Court and the United

States Court of Appeals for the Tenth Circuit have clarified that, while the Guidelines are one of several factors which § 3553(a) enumerates, they are entitled to careful consideration.  See Rita v. United States, 551 U.S. 338, 349 (2007)("The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill [its] statutory mandate."); United States v. Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than "just one factor among many").  They are significant, because "the Guidelines are an expression of popular political will about sentencing that is entitled to due consideration . . . ."   United States v. Cage, 451 F.3d at 593 (internal quotation marks omitted)(quoting United States v. Terrell, 445 F.3d 1261, 1265 (10th Cir. 2006)).  A reasonable sentence is one that also "avoid[s] unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a).  See United States v. Booker, 543 U.S. at 261-62.

The Tenth Circuit has "joined a number of other circuits in holding that a sentence within the applicable Guidelines range is presumptively reasonable."  United States v. Terrell, 445 F.3d 1261, 1264 (10th Cir. 2006), overruled on other grounds by Rita v. United States, 551 U.S. at 349, as recognized in United States v. Zamora-Solorzano, 528 F.3d 1247, 1251 n.3 (10th Cir. 2008). This presumption, however, is an appellate presumption, and not one that the trial court can or should apply.  See Gall v. United States, 552 U.S. 38, 46-47 (2007); Kimbrough v. United States, 552 U.S. 85, 90-91 (2007); Rita v. United States, 551 U.S. at 351.  Instead, the trial court must undertake the § 3553(a) balancing of factors without any presumption in favor of the advisory[9]

---

[9]Attorneys and courts often say that the Guidelines are advisory, but it appears more appropriate to say that the resulting Guidelines ranges are advisory.  See Gall v. United States, 552

U.S. at 46 ("As a result of our decision [in <u>United States v. Booker</u>], the Guidelines are now advisory . . . ."); <u>United States v. Leroy</u>, 298 F. App'x 711, 712 (10th Cir. 2008)(unpublished)("[T]he Guidelines are advisory, not mandatory."); <u>United States v. Sells</u>, 541 F.3d 1227, 1237 (10th Cir. 2008)("[T]he sentence ultimately imposed by the district court was based on a correctly calculated Guidelines range, a stated consideration of the § 3553(a) factors, and an understanding that the Guidelines are advisory."). The Court must consider the Guidelines, <u>see</u> <u>Gall v. United States</u>, 552 U.S. at 46 ("It is . . . clear that a district judge must give serious consideration to the extent of any departure from the Guidelines . . . ."), and must accurately calculate the Guidelines range, <u>see</u> <u>Gall v. United States</u>, 552 U.S. at 49 ("[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range."). The Court is not mandated, however, to apply a sentence within the calculated Guidelines range. <u>See</u> <u>United States v. Sierra-Castillo</u>, 405 F.3d 932, 936 n.2 (10th Cir. 2005)("[D]istrict courts post-<u>Booker</u> have discretion to assign sentences outside of the Guidelines-authorized range . . . ."). <u>Accord</u> <u>United States v. Chavez-Rodarte</u>, No. CR 08-2499 JB, 2010 WL 3075285, at *2-3 (D.N.M. July 16, 2010)(Browning, J.).

> The Court must adhere to the following three-step sequence when sentencing a criminal defendant: first, determining the appropriate sentencing range on the basis of Guidelines' chapters 2 through 4; next, applying Guidelines-contemplated departures based on parts 5H and 5K; and, only then, varying from the Guidelines framework on the basis of the § 3553(a) factors taken as a whole. The Court must follow this sequence, because: (i) the Guidelines expressly provide for it, and courts must still consult the Guidelines, even if they will subsequently vary from them in the third step of the sequence; and (ii) adherence to this sequence is the only way to give effect to 18 U.S.C. § 3553(e).

> . . . .

> The Supreme Court held in <u>United States v. Booker</u> that "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing," 543 U.S. at 264, but further expounded in <u>Kimbrough v. United States</u>, 552 U.S. 85 (2007), that "courts may vary [from the Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines," 552 U.S. at 101 (alteration in original)(internal quotation marks omitted). In theory, this freedom could mean that a district court may excise individual portions of the Guidelines along the way as it performs an otherwise by-the-book Guidelines analysis, end up with a sentence with built-in variances, and never even know what sentence a true, rigid Guidelines application would yield. In practice, however, appellate courts expect district courts to first obtain the true Guidelines' sentence range and circumscribe their <u>United States v. Booker</u>-granted authority to post-Guidelines analysis "variances." <u>Irizarry v. United States</u>, 553 U.S. 708, 710-16 (2008). A district court that attempts to vary from U.S.S.G. § 1B1.1's basic sequence most likely acts procedurally unreasonably. <u>See</u> <u>Gall v. United States</u>, 552 U.S. 38, 51 (2007)(holding that a sentence is procedurally reasonable if "the district court committed no significant procedural error, <u>such as</u>

Guidelines sentence.  See Rita v. United States, 551 U.S. at 351; Gall v. United States, 552 U.S. at 46-47; Kimbrough v. United States, 552 U.S. at 90-91.

> While the Supreme Court's decision in United States v. Booker has given the sentencing court discretion that it did not have earlier, the sentencing court's first task remains to accurately and correctly determine the advisory-guideline sentence.  Thus, before the sentencing court takes up a defendant's Booker arguments, the sentencing court must first determine whether the defendant is entitled to downward departures.  The sentencing court may, however, also use these same departure factors in the Booker calculus, even if the court does not grant a downward departure.

United States v. Apodaca-Leyva, No. CR 07-1479 JB, 2008 WL 2229550, at *6 (D.N.M. Feb. 13, 2008)(Browning, J.).  The Supreme Court has recognized, however, that sentencing judges are "in a superior position to find facts and judge their import under § 3553(a) in each particular case." Kimbrough v. United States, 552 U.S. at 89.  Applying § 3553(a)'s factors, the Court has concluded that, in an illegal re-entry case, the defendant who re-entered the United States to provide for his two children and two siblings was not materially different from other re-entry cases, and, thus, no variance from the Guidelines sentence was warranted.  See United States v. Almendares-Soto, No. CR 10-1922 JB, 2010 WL 5476767, at *12 (D.N.M. Dec. 14, 2010)(Browning, J.).

**LAW REGARDING 18 U.S.C. § 924**

Section 924 of Title 18 of the United States Code provides penalties for crimes of violence involving firearms.  Section 924(c)(1)(A) states:

> Except to the extent that a greater minimum sentence is otherwise provided

---

failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence" (emphasis added)).

United States v. Nolf, 30 F. Supp. 3d 1200, 1222-24, (D.N.M. June 20, 2014)(Browning, J.)(emphasis in original).

by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime --

(i)     be sentenced to a term of imprisonment of not less than 5 years;

(ii)    if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and

(iii)   if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.

18 U.S.C. § 924(c)(1)(A).  The statute provides the definition for "crime of violence":

(3)     For purposes of this subsection the term "crime of violence" means an offense that is a felony and --

(A)     has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B)     that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3).  Courts have titled the first clause, 18 U.S.C. § 924(c)(3)(A), the "elements clause," and the second clause, 18 U.S.C. § 924(c)(3)(B), the "residual clause."  E.g., United States v. Davis, 139 S. Ct. at 2325.  Because the residual clause is "almost identical" to clauses in related statutes, United States v. Davis, 139 S. Ct. at 2325 (discussing the similarity between the residual clauses in the Armed Career Criminal Act and the Immigration and Nationality Act), courts have interpreted these clauses in a consistent manner, see United States v. Davis, 139 S. Ct. at 2329 (stating that "the same language in related statutes carries a consistent meaning").  The key similar features are "an ordinary-case requirement and an ill-defined risk threshold -- combined in the same constitutionally problematic way."  Sessions v. Dimaya, 138 S. Ct. 1204, 1207 (2018).  The

- 53 -

Tenth Circuit generally uses the "categorical approach"[10] when deciding whether a predicate

---

[10]The categorical approach is not without critics. The approach's focus on statutory convictions rather than on actual conduct has led some judges to characterize it as a "judicial charade," Ovalles v. United States, 905 F.3d 1231, 1253 (11th Cir. 2018)(Pryor, J., concurring), and note that the categorical approach "require[s] that judges ignore the real world," United States v. Chapman, 866 F.3d 129, 136 (3d Cir. 2017)(Jordan, J., concurring). Justice Thomas recently called the approach "an absurdity." Quarles v. United States, 139 S. Ct. 1872, 1880 (2019)(Thomas, J., concurring). The Honorable J. Harvie Wilkinson, United States Circuit Judge for the United States Court of Appeals for the Fourth Circuit, described the categorical approach as "a protracted ruse for paradoxically finding even the worst and most violent offenses not to constitute crimes of violence," United States v. Doctor, 842 F.3d 306, 313 (4th Cir. 2016)(Wilkinson, J., concurring), and pleads: "Heaven help us," United States v. McCollum, 885 F.3d 300, 314 (4th Cir. 2018)(Wilkinson, J., dissenting).

Although Justice Alito has described the categorical approach as a recent judicial invention, see Chambers v. United States, 555 U.S. 122, 132 (2009)(Alito, J., concurring)("[O]nly Congress can rescue the federal courts from the mire into which . . . [United States v. Taylor, 495 U.S. 575 (1990)]'s 'categorical approach' have pushed us."), the interpretive canon dates at least to 1891, when Congress provided that noncitizens were removable on the basis of criminal conviction involving moral turpitude, see Act of Mar. 3, 1891, ch. 551, § 1, 26 Stat. 1084, 1084. Courts interpreted this provision as requiring examination not of an offense's facts, but rather of the statute of conviction. See, e.g., United States ex rel. Guarino v. Uhl, 107 F.2d 399, 400 (2d Cir. 1939)("[D]eporting officials may not consider the particular conduct for which the [noncitizen] has been convicted."); United States ex rel. Mylius v. Uhl, 210 F. 860, 863 (2d Cir. 1914)(explaining that whether a crime involves moral turpitude "must be determined from the judgment of conviction and not from the testimony adduced at the trial"); Alina Das, The Immigration Penalties of Criminal Convictions: Resurrecting Categorical Analysis in Immigration Law, 86 N.Y.U. L. Rev. 1669, 1689 (2011). Further, the categorical approach's proponents note that Congress typically requires the categorical approach in relevant statutes. See United States v. Davis, 139 S. Ct. at 2328 ("It's not even close; the statutory text commands the categorical approach."); Mathis v. United States, 136 S. Ct. at 2552; Taylor v. United States, 495 U.S. at 600-01. Finally, the Supreme Court says that the categorical approach avoids practical challenges in reviewing, as is the case here, decades-old conviction records. See Moncrieffe v. Holder, 569 U.S. 184, 200-01 (2013).

> The factual approach . . . would transform the sentencing hearing into a series of mini-trials in which the defendant rehashes his version of the events that led to his predicate convictions and the prosecution searches for stale evidence to prove an element that was necessarily proved or admitted at the prior proceeding.

United States v. Wilson, 951 F.2d 586, 590 (4th Cir. 1991). Similarly, two defendants with identical conduct could face very different sentencing results depending on the detail that each's sentencing record provides.

offense qualifies as a crime of violence under 18 U.S.C. § 924(c)(3)(b), as long as the statute of conviction is indivisible.  United States v. Melgar-Cabrera, 892 F.3d at 1061.  See United States v. Bowen, 936 F.3d at 1102.  When the court uses the categorical approach to determine whether the predicate act is a crime of violence, the court looks "'only to the fact of conviction and the statutory definition of the prior offense, and do not generally consider the particular facts disclosed by the record of conviction.'"  United States v. Bowen, 936 F.3d at 1102 (quoting United States v. Serafin, 562 F.3d 1105, 1107-08 (10th Cir. 2009))(quotations omitted in original).  The Supreme Court has described elements as that which the prosecution must necessarily prove at trial or to which the defendant must plead "'to sustain a conviction.'"  Mathis v. United States, 136 S. Ct. at

_____

The Supreme Court has also held that the categorical approach safeguards constitutional interests: the Sixth Amendment to the Constitution of the United States of America generally prohibits the sentencing judge from determining facts underlying a prior conviction to determine a sentencing enhancement's applicability, because "only a jury, and not a judge, may find facts that increase a maximum penalty, except for the simple fact of a prior conviction."  Mathis v. United States, 136 S. Ct. at 2252.  The categorical approach thus requires that prior-conviction enhancements rest on legally defined predicate convictions.  See Mathis v. United States, 136 S. Ct. at 2252.  The Supreme Court has also noted that the approach safeguards rights to fair notice that the Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution guarantee, see Mathis v. United States, 136 S. Ct. at 2253, because, "at the time that a defendant decides to plead guilty to a [predicate] crime, the defendant would likely have no real notice of the potentially severe federal consequences of a decision not to challenge the [government's] characterization of the defendant's underlying conduct," United States v. Faust, 853 F.3d 39, 64 (1st Cir. 2017)(Barron, J., concurring).  Accordingly, the categorical approach may, in some instances, yield absurd results, but the Supreme Court has concluded that those results are the cost of achieving the best systemic outcome.

Nonetheless, it is evident that the categorical approach subverts Congressional intent to enhance sentences for repeat, violent offenders, even where it is clear that a defendant's predicate conviction factually rests on a violent crime.  The categorical approach invites post hoc counterfactuals that allow judges to vacate sentences that are clearly based on violent crimes.  "The upshot of this 'counterintuitive' exercise, see Mathis, 136 S. Ct. at 2251, is that the categorical approach can serve as a protracted ruse for paradoxically finding even the worst and most violent offenses not to constitute crimes of violence."  United States v. Doctor, 842 F.3d at 313 (Wilkinson, J., concurring).

2248 (quoting Black's Law Dictionary at 634 (10th ed. 2014)).  Alternatively, the Supreme Court has described facts, in the categorical context, as "mere real-world things -- extraneous to the crime's legal requirements . . . .  They are 'circumstance[s]' or 'event[s]' having no 'legal effect [or] consequence'" that "need neither be found by a jury nor admitted by a defendant."  Mathis v. United States, 136 S. Ct. at 2248 (quoting Black's Law Dictionary at 709))(alterations in Mathis v. United States).  Using the categorical approach, the court compares the "scope of conduct covered by the elements of the crime" with the statute's "'definition of crime of violence.'"  United States v. O'Connor, 874 F.3d at 1151 (quoting U.S.S.G. § 4B1.2(a)).

"Some statutes, however, have a more complicated (sometimes called 'divisible') structure, making the comparison of elements harder. . . .  A single statute may list elements in the alternative, and thereby define multiple crimes."  Mathis v. United States, 136 S. Ct. at 2249.  The court must modify the categorical approach "in a narrow range of cases where the statute of conviction is divisible" -- meaning that the statute's subparts describe alternative crimes as opposed to different ways of committing the same offense.  United States v. Pam, 867 F.3d 1191, 1203 (10th Cir. 2017)(citing Descamps v. United States, 133 S. Ct. at 2281).  If the statute is divisible, this "modified categorical approach" allows the court to "consult record documents from the defendant's prior case for the limited purpose of identifying which of the statute's alternative [crimes] formed the basis of the prior conviction."  United States v. Titties, 852 F.3d at 1266.  Once identified, the Court "compares those elements" of the alternative crime to the statute's definition of "crime of violence" as it would under the categorical approach.  United States v. Titties, 852 F.3d at 1266 (quoting Descamps v. United States, 133 S. Ct. at 2281).  See United States v. Henry, No. CR 11-2660 JB, 2017 WL 6729963, at *4 (D.N.M. Dec. 31, 2017)(Browning, J.).

The reviewing court must decide the statutory provision on which the sentencing court

relied for conviction.  See United States v. Driscoll, 892 F.3d at 1135.  The Tenth Circuit has stated

that the movant carries the burden at the merits stage of the movant's first § 2255 challenge to

prove that it is "'more likely than not'" that the sentencing court used the residual clause as the

basis of sentencing.  See United States v. Driscoll, 892 F.3d at 1135 (quoting from and adopting

the test of Beeman v. United States, 871 F.3d 1215, 1221-22 (11th Cir. 2017)).

## LAW REGARDING 28 U.S.C. § 2255

Section 2255 provides:

> A prisoner in custody under a sentence of a court established by Act of
> Congress claiming the right to be released upon the ground that the sentence was
> imposed in violation of the Constitution or laws of the United States, or that the
> court was without jurisdiction to impose such sentence, or that the sentence was in
> excess of the maximum authorized by law, or is otherwise subject to collateral
> attack, may move the court which imposed the sentence to vacate, set aside or
> correct the sentence.

28 U.S.C. § 2255(a).  The defendant is to file the initial motion under 28 U.S.C. § 2255 with the

court that imposed the sentence for that court's consideration.  See Browning v. United States, 241

F.3d 1262, 1264 (10th Cir. 2001).  Rule 4(b) of the Rules Governing Section 2255 Proceedings

states:

> The judge who receives the motion must promptly examine it.  If it plainly
> appears from the motion, any attached exhibits, and the record of prior proceedings
> that the moving party is not entitled to relief, the judge must dismiss the motion and
> direct the clerk to notify the moving party.

Rules Governing Habeas Proceedings 4(b).  Section 2255 provides that a United States Court of

Appeals panel must certify a second or successive motion in accordance with § 2244 to contain:

(i) newly discovered evidence that would be sufficient to establish by clear-and-convincing

evidence that no reasonable factfinder would have found the movant guilty of the offense; or (ii) a

new rule of constitutional law that was previously unavailable and the Supreme Court made

retroactive to cases on collateral review.  See 28 U.S.C. § 2255(h).  Section 2244 requires that,

before a second or successive application is filed in the district court, the applicant shall move the

appropriate court of appeals for an order authorizing the district court to consider the application.

See 28 U.S.C. § 2244(b)(3)(A).   A district court lacks jurisdiction to consider a second or

successive motion absent the requisite authorization.

## LAW REGARDING RESIDUAL CLAUSES

In Johnson, the Supreme Court considered whether § 924(e)(2)(B)(ii), the ACCA's

residual clause, violates the Due Process Clause of the Constitution of the United States

of America.  See Johnson, 135 S. Ct. at 2557.  In general, the maximum term of imprisonment for

a defendant convicted of being a felon in possession of a firearm is ten years.

See 18 U.S.C. § 924(a)(2).  "But if the violator has three or more earlier convictions for a 'serious

drug offense' or a 'violent felony,' the Armed Career Criminal Act increases his prison term to a

minimum of 15 years and a maximum of life."   Johnson, 135 S. Ct. at 2555 (quoting 18

U.S.C. § 924(e)(1)). The ACCA defines a "violent felony" as

> any crime punishable by imprisonment for a term exceeding one year . . . that --
>
> (i)     has an element the use, attempted use, or threatened use of physical
>         force against the person of another, or
>
> (ii)    is burglary, arson, or extortion, involves use of explosives, or
>         otherwise involves conduct that presents a serious potential risk of
>         physical injury to another;

18 U.S.C. § 924(e)(2)(B).  The Supreme Court held that § 924(e)(2)(B)(ii) "denies fair notice to

defendants and invites arbitrary enforcement by judges."  Johnson, 135 S. Ct. at 2557.  The

Supreme Court explained that "imposing an increased sentence under the residual clause of

the Armed Career Criminal Act violates the Constitution's guarantee of due process."  Johnson,

135 S. Ct. at 2563.  The Supreme Court clarified that its "decision does not call into question

application of the Act to the four enumerated offenses [burglary, arson, extortion, or the use of

explosives], or the remainder of the Act's definition of a violent felony."  Johnson, 135 S. Ct. at

2563.  In United States v. Madrid, 805 F.3d 1204, 1210 (10th Cir. 2015), the Tenth Circuit held

that the Supreme Court's decision in Johnson applied to the residual clause definition of a "crime

of violence" in the "career offender" provision of the United States Sentencing Guidelines

§ 4B1.1.     U.S.S.G. § 4B1.2(a)(2)(defining a "crime of violence," in relevant part, as a

crime that "otherwise involves conduct that presents a serious potential risk of physical injury to

another.")   The Tenth Circuit stated that "[t]he concerns about judicial inconsistency that

motivated the Court in Johnson, lead us to conclude that the residual clause of the Guidelines is

also unconstitutionally vague.  If one iteration of the clause is unconstitutionally vague, so too is

the other."  United States v. Madrid, 805 F.3d at 1210.  The § 4B1.2(a)(2) cited uses the same

language that the Tenth Circuit considered in United States v. Madrid.  See United States v.

Madrid, 805 F.3d at 1207.  Following Johnson and United States v. Madrid, the Court deemed

§ 924(c)(3)(B) sufficiently different from § 924(e)(2)(B)(ii)'s and U.S.S.G. § 4B1.2(a)(2)'s

language to treat § 924(c)(3)(B) as constitutional.   See United States v. Francia, No. CR 12-

3025 JB, 2017 WL 2266852, at *3-5 (D.N.M. Feb. 28, 2017)(Browning, J.).   The Court stated

that "Johnson's reasoning should not extend to § 924(c)(3)(B)'s residual clause."  United States v.

Francia, 2017 WL 2266852, at *3 (quoting United States v. Taylor, 814 F.3d 340, 376-77 (6th Cir.

2016)).  Nevertheless, since the Court's decision, the Supreme Court, in Sessions v. Dimaya, 138

S. Ct. 1204 (2018), concluded that Johnson controls whether the language in 18 U.S.C. § 16(b) --

"substantial risk that physical force against the person or property of another may be used in the

course of committing the offense" -- was unconstitutionally vague and, accordingly, declared

unconstitutional 18 U.S.C. § 16(b).  See Sessions v. Dimaya, 138 S. Ct. 1204 at 1213-16.  Section

16 provides the federal criminal code's definition of crime of violence, which the Immigration and

Nationality Act, 8 U.S.C. §§ 1186b, 1252b, 1254a, 1288, 1304, 1324c; 29 U.S.C. § 3293,

incorporates, see Sessions v. Dimaya, 138 S. Ct. at 1211, and states:

> The term "crime of violence" means --
>
> (a)    an offense that has as an element the use, attempted use, or threatened use
> of physical force against the person or property of another, or
>
> (b)    any other offense that is a felony and that, by its nature, involves a
> substantial risk that physical force against the person or property of another
> may be used in the course of committing the offense.

18 U.S.C. § 16.  In determining § 16(b)'s constitutionality in an immigration appeal, the Supreme

Court reasoned that § 16(b) raises the same problems as § 924(e)(2)(B)(ii): (i) "§ 16(b) also calls

for a court to identify a crime's 'ordinary case' in order to measure the crime's risk," Sessions v.

Dimaya, 138 S. Ct. at 1215; and (ii) "uncertainty about the level of risk that makes a crime

violent.  In ACCA, that threshold was 'serious potential risk'; in § 16(b), it is 'substantial risk.'"

Sessions v. Dimaya, 138 S. Ct. at 1215 (quoting 18 U.S.C. § 16(b), § 924(e)(2)(B)(ii)).

    In Sessions v. Dimaya's aftermath, § 16(b)'s similarities to § 924(c)(3)(B) persuaded the

Tenth Circuit to deem § 924(c)(3)(B) likewise unconstitutionally vague.  See United States

v. Salas, 889 F.3d at 686.  The Tenth Circuit noted that it had previously "held that 'cases

interpreting [§ 16(b)] inform our analysis' when interpreting § 924(c)(3)(B)," United States v.

Salas, 889 F.3d at 685 (alteration in original)(quoting United States v. Serafin, 562 F.3d 1105,

1108 & n.4 (10th Cir. 2009)), and concluded that "§ 924(c)(3)(B) possesses the same features

as  the ACCA's residual clause and § 16(b) that combine to produce 'more unpredictability and

arbitrariness than the Due Process Clause tolerates,' and Dimaya's reasoning for invalidating

§ 16(b) applies equally to § 924(c)(3)(B)," United States v. Salas, 889 F.3d at 686 (quoting

Sessions v. Dimaya, 138 S. Ct. at 1215 at 1223).   The Tenth Circuit rejected the United

States' argument that, because § 924(c)(3)(B) applies only to crimes involving firearms,

§ 924(c)(3)(B)  differs  from  § 16(b), because "this firearm requirement simply means that the statute will apply in fewer instances, not that it is any less vague." United States v. Salas, 889 F.3d at 685.

## LAW REGARDING CRIMES OF VIOLENCE

To determine whether an offense is a crime of violence, the Court employs a "categorical approach." United States v. Serafin, 562 F.3d at 1107 (quoting United States v. Munro, 394 F.3d 865, 870 (2005)).

> Under the categorical approach, we look "only to the fact of conviction and the statutory definition of the prior offense, and do not generally consider the particular facts disclosed by the record of conviction.  That is, we consider whether  the elements of the offense are of the type that would justify its inclusion . . . [as a crime of violence], without inquiring into the specific conduct of this particular offender."

United States v. Serafin, 562 F.3d at 1107-08 (alteration in original)(quoting United States v. West, 550 F.3d 952, 957 (10th Cir. 2008)).  "The modified categorical approach applies when the statute is 'divisible'; that is, when it 'lists multiple, alternative elements, and so effectively creates several different crimes.'" United States v. Taylor, 843 F.3d 1215, 1220 (10th Cir. 2016)(quoting United States v. Madrid, 805 F.3d at 1207)).  When applying the modified categorical approach, a court may "consult a limited class of documents, such as indictments and jury instructions, to determine which alternative [elements] formed the basis of the defendant's . . . conviction."  Descamps v. United States, 133 S. Ct. at 2281 (alterations added).  A court then "compare[s] those elements to the crime of violence categories, still focus[ing] only on the elements, rather than the facts, of a crime to determine whether it is categorically a crime of violence under all circumstances." United States v. Mitchell, 653 F. App'x 639, 643 (10th Cir. 2016)(unpublished)(first alteration

added)(citations and internal quotation marks omitted).[11]

> The Supreme Court said that the proper use of the modified categorical approach "preserves the categorical approach's basic method: comparing those elements with the generic offense's. All the modified approach adds is a mechanism for making that comparison when a statute lists multiple, alternative elements, and so effectively creates several different crimes."

United States v. Miera, No. CR 12-3111 JB, 2013 WL 6504297, at *6 (D.N.M. Nov. 22, 2013)(Browning, J.)(quoting Descamps v. United States, 133 S. Ct. at 2285).

## LAW REGARDING APPRENDI V. NEW JERSEY AND ALLEYNE V. UNITED STATES

In Apprendi v. New Jersey, 530 U.S. 466, (2000)("Apprendi"), the Supreme Court cautioned that the Sixth Amendment to the Constitution of the United States requires that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 490. The Supreme Court, however, reaffirmed the principle that it is permissible for sentencing judges "to exercise discretion -- taking into consideration various factors relating both to offense and offender -- in imposing judgment within

---

[11]United States v. Mitchell is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A). Unpublished decisions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . [a]nd we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005). The Court concludes that United States v. Mitchell, and the other unpublished opinion cited herein, United States v. Pacheco, 730 F. App'x 604 (10th Cir. 2018), have persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion.

the range prescribed by statute." 530 U.S. at 481. In <u>Blakely v. Washington</u>, 542 U.S. 296 (2004), the Supreme Court elaborated on its holding in <u>Apprendi</u>, stating that the "statutory maximum for <u>Apprendi</u> purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." 542 U.S. at 303 (emphasis omitted)(internal quotation marks omitted). The Supreme Court has held that the requirements in <u>Apprendi</u> apply to facts that increase a defendant's mandatory minimum sentence. See <u>Alleyne v. United States</u>, 570 U.S. at 102.

## <u>ANALYSIS</u>

Young's counsel, Mr. Knoblauch, filed one set of objections to the PSR. See Objections I, at 1. Young filed, pro se, two additional sets of objections. See Objections II at 1; Objections III at 1. The Court sustains one of Young's objections regarding his December, 2000 DUI arrest, and overrules the remaining objections. See Objections I; Objections II; and Objections III.

## I.   YOUNG'S OBJECTION REGARDING THE DECEMBER, 2000, DUI ARREST IS SUSTAINED, AND THE REMAINING OBJECTIONS YOUNG'S COUNSEL FILED ARE OVERRULED.

The Court cannot conclude soundly, by a preponderance of the evidence, that Young was arrested on December 5, 2000, in Las Vegas, Nevada. See PSR ¶ 49, at 17. Young's other objections in Objections I fail, however. Young and the USPO both agree that Young informed Officer Harvey that he had no weapons on him, and, therefore, there is no need to change the PSR. An offense level enhancement is appropriate under U.S.S.G. § 2K2.1(b)(4) because Young need not have known the gun at issue was stolen. See <u>United States v. Sanders</u>, 990 F.2d 582, 584 (10th Cir. 1993), <u>overruled on other grounds</u>, <u>United States v. Gomez-Arellano</u>, 5 F.3d 464, 466-67 (10th Cir. 1993). Accordingly, with the exception of Young's objection to PSR ¶ 49, at 17, the Court overrules the objections stated in the Objections I, and Young's offense level and criminal history

score remain unchanged.

### A. YOUNG AND THE USPO DO NOT DISAGREE WHETHER YOUNG TOLD OFFICER HARVEY THAT HE DID NOT HAVE ANY WEAPONS ON HIM.

Young argues that "Paragraph 6 of the PSR needs to be corrected.  Officer Harvey asked Mr. Young if he had any weapons on him and Mr. Young truthfully answered he had none." Objections I at 1.  Likewise, the PSR states that, during Young's arrest for the present offense, "[w]hen one of the officers asked if Young had any weapons, he denied having any."  PSR ¶ 7, at 7.  The only material distinction between these statements is that Young would like the PSR to include the word "truthfully."  See Objections I at 1.  The Court declines to add the word "truthfully," and this portion of the PSR will remain unchanged, because Young had weapons in his vehicle, including "a pistol in plain" view.  PSR ¶ 7, at 7.

### B. YOUNG'S POSSESSION OF A STOLEN FIREARM ADDS 2 OFFENSE LEVELS PURSUANT TO U.S.S.G. § 2K2.1(b)(4).

U.S.S.G. § 2K2.1(b)(4) mandates that "if any firearm was stolen, increase by 2 levels." Young argues that "the PSR mistakenly increases the calculation by 2 levels under 2K2.1(b)(4) as a stolen firearm," because Young did not know that the firearm was stolen.  Objections I ¶ 4, at 2. The Court disagrees with Young's contention.  The text of U.S.S.G. § 2K2.1(b)(4) does not contain a scienter requirement.  See U.S.S.G. § 2K2.1(b)(4).  Moreover, Application Note 8 states that "Subsection (b)(4) applies regardless of whether the defendant knew or had reason to believe that the firearm was stolen . . . ."  U.S.S.G. § 2K2.1 n.8.  Likewise, the Tenth Circuit has held that "[t]he government is not obliged to show that defendant knew the firearm was stolen for the enhancement to apply."  United States v. Sanders, 990 at 584.  See United States v. Johnson, 189 F.3d 479 (10th Cir. 1999)(affirming a district court, where the "district court held that knowledge was not required and applied the enhancement" under U.S.S.G § 2K2.1(b)(4)).  The United States

Courts of Appeals for the Second, Third, Fifth, Eighth, Ninth, and Eleventh Circuits have concluded uniformly that the enhancement applies "unambiguously apply regardless of the defendant's state of mind in respect of the firearm's provenance."  United States v. Thomas, 628 F.3d 64, 68 (2d Cir. 2010).  See United States v. Williams, 365 F.3d 399, 408 (5th Cir. 2004)(explaining that "because the upward adjustment occurs during sentencing, when the district court's discretionary authority is especially broad, this adjustment" under U.S.S.G. § 2K2.1(b)(4) "does not offend due process"); United States v. Holden, 61 F.3d 858, 860 (11th Cir. 1995)(holding that "knowledge that such a device is stolen property is not a prerequisite to the application of § 2K2.1(b)(4)"); United States v. Goodell, 990 F.2d 497, 499 (9th Cir. 1993)(concluding that "[t]he strict liability enhancement for possession of a stolen firearm is rationally related to the legitimate governmental goal of crime prevention: § 2K2.1(b)(2) was promulgated on the premise that stolen firearms are used disproportionately in the commission of crimes"); United States v. Goodell, 990 F.2d 497, 499 (9th Cir. 1993)("The omission of a *mens rea* requirement for the stolen gun sentencing enhancement under § 2K2.1(b)(2) does not violate due process."); United States v. Hernandez, 972 F.2d 885, 888 (8th Cir. 1992)("We have repeatedly held that Section 2K2.1(b)(2) does not require that the defendant know the firearm was stolen."); United States v. Mobley, 956 F.2d 450, 459 (3d Cir. 1992)(determining that "U.S.S.G. § 2K2.1(b)(2) does not have an implied scienter element" and "that the enhancement does not violate the Due Process Clause of the Fifth Amendment").  Likewise, the Court has explained that, under U.S.S.G. § 2K2.1(b)(4), whether a defendant "knew that the firearms were stolen is irrelevant" because "enhancement does not hinge upon knowledge."  United States v. Dye, No. CR 19-1819 JB, 2020 WL 32993, at *7 (D.N.M. Jan. 2, 2020)(Browning, J.).  Accordingly, the Court concludes that it is not relevant whether Young knew the firearm was stolen, and, therefore, the U.S.S.G. § 2K2.1(b)(4) enhancement applies.

C.    **THE CURRENT PSR AND THE PSR ADDENDUM GIVE YOUNG NOTICE REGARDING WHICH OF HIS PRIOR CONVICTIONS QUALIFY HIM FOR ARMED CAREER CRIMINAL STATUS.**

Young argues that the PSR is incorrect in classifying him as an Armed Career Criminal under 18 U.S.C. § 924(e).  See Objections I ¶ 5, at 2.  Specifically, Young insists that the PSR does not "giv[e] him notice of which of his prior convictions or how he qualifies for this status under them."  Objections I ¶ 5, at 2.  The USPO avers that it gives Young notice in the PSR that his Armed Career Criminal designation is based upon three prior violent felony convictions.  See PSR Addendum at 2.  The present PSR states, in relevant part:

> Young was convicted of the following violent felonies, the first two of which were in the Sixth Judicial District Court of Grant County in Silver City, New Mexico: (1) Attempted Robbery, Docket No: D-608-CR-2004-00145; (2) and (3) Attempted Robbery with a Weapon; two counts of Assault and Battery with a Deadly Weapon, Robbery with a Weapon, and Attempted Robbery with a Firearm in the 14th Judicial District Court of Tulsa County in Tulsa, Oklahoma, Docket No: CR-2009-02263.  Consequently, Young is an armed career criminal, pursuant to 18 U.S.C. § 924(e)(1). It should also be noted convictions 2 and 3 received criminal history points and, therefore, are crimes of violence that will be used to establish the base offense level in accordance with U.S.S.G. § 2K2.1(a)(2); §2 K2.1, Application Note 10; and §4B1.1(a).

PSR ¶ 10, at 8.  PSR ¶ 31, 32, 34, at 11-14, describes these convictions.  The Court, therefore, concludes that the USPO explains sufficiently to Young upon which charges it relies to designate Young as an Armed Career Criminal.  See PSR Addendum at 2.

D.    **YOUNG IS NOT ELIGIBLE FOR AN ACCEPTANCE OF RESPONSIBILITY REDUCTION, BECAUSE HE DENIED AT TRIAL THAT HE COMMITTED THE OFFENSE AT ISSUE HERE, AND HE SUBSEQUENTLY INDICATED THAT HE DID NOT BELIEVE HE HAD DONE ANYTHING WRONG.**

Next, Young also avers that he should receive "credit for acceptance of responsibility subtracting 2 levels" because he "conceded at trial that he possessed firearms."  Objections I ¶ 6, at 2 (citing United States v. McKittrick, 142 F.3d 1170 (9th Cir. 1998).  The USPO insists that,

because Young "proceeded to trial," he "did not accept responsibility."  PSR Addendum I, at 2.
The United States also argues that Young contested whether he "knowingly possess[ed] a firearm."
U.S. Sentencing Memo at 13-14.  The United States further avers that Young's "jail calls make
clear that Young did not accept responsibility."  U.S. Sentencing Memo at 13-14.

The Court declines to grant Young credit for acceptance of responsibility, because he has
not demonstrated clearly by a preponderance of the evidence that he accepts responsibility for his
offense.  See U.S.S.G. § 3E1.1(a);  United States v. March, 999 F.2d 456, 463 (10th Cir. 1993);
United States v. Villaba, 86 F. Supp. 3d 1252, 1262 (D.N.M. 2015)(Browning, J.)(stating that a
"defendant has the burden of proving by a preponderance of the evidence that he or she is entitled
to a reduction for acceptance of responsibility under U.S.S.G. § 3E1.1").  U.S.S.G. § 3E1.1(a)
instructs that "if the defendant clearly demonstrates acceptance of responsibility for his offense,
decrease the offense level by **2** levels."  Application Note 2 states that

> This adjustment is not intended to apply to a defendant who puts the
> government to its burden of proof at trial by denying the essential factual elements
> of guilt, is convicted, and only then admits guilt and expresses remorse.  Conviction
> by trial, however, does not automatically preclude a defendant from consideration
> for such a reduction.  In rare situations a defendant may clearly demonstrate an
> acceptance of responsibility for his criminal conduct even though he exercises his
> constitutional right to a trial.  This may occur, for example, where a defendant goes
> to trial to assert and preserve issues that do not relate to factual guilt (e.g., to make
> a constitutional challenge to a statute or a challenge to the applicability of a statute
> to his conduct). In each such instance, however, a determination that a defendant
> has accepted responsibility will be based primarily upon pre-trial statements and
> conduct.

U.S.S.G. § 3E1.1.  Evaluating Application Note 2, the Court disagrees with the USPO's contention
that Young's decision to go to trial makes him per se ineligible for an acceptance of responsibility
credit, see PSR Addendum I, at 2, because "a defendant may clearly demonstrate an acceptance of
responsibility for his criminal conduct even though he exercises his constitutional right to a trial,"
U.S.S.G. 3E1.1. n.2.  Put another way, "the decision to go to trial, in and of itself, does not foreclose

his eligibility for the reduction."  United States v. March, 999 F.2d at 463.

Nevertheless, "the burden is on the defendant to prove, by a preponderance of the evidence, his entitlement to the sentence reduction."  United States v. March, 999 F.2d at 463.  See United States v. Meyers, 95 F.3d 1475, 1486 (10th Cir. 1996);  United States v. McMahon, 91 F.3d 1394, 1396-97 (10th Cir. 1996).  Young argues that "[i]t was conceded at trial that he was in possession of firearms, the issue at trial was whether there was intent on his part. Further, at a juncture in trial, while the jury was out, Mr. Young addressed the Court and did not deny that he was in possession of the firearms at issue."  Objections I ¶ 6, at 2.  Young provides no citation to when this alleged concession took place during his three-day trial.  See Objections I ¶ 6, at 2.  In fact, Young denied at the outset of trial "that he possessed the guns."  Trial Tr. at 25:12-14 (Wernersbach); id. at 28:1 (arguing that "that doesn't mean he possessed" the guns); id. at 29:1 (contending that the United States "cannot show that he possessed these guns").   Likewise, in his closing argument, Young asked the jury to examine

Instruction No. 14,[12] which is the definition of possession.  And in here, in this, we

---

[12]Jury Instruction 14 states:

The law recognizes two kinds of possession: actual possession and constructive possession. A person who knowingly has direct physical control over an object or thing, at a given time, is then in actual possession of it.

A person who, although not in actual possession, knowingly has the power and intent at a given time to exercise dominion or control over an object, either directly or through another person or persons, is then in constructive possession of it.

In the situation where the object is found in a place (such as a room or car) occupied by more than one person, you may not infer power and intent to exercise control over the object based solely on joint occupancy.  Mere control over the place in which the object is found is not sufficient to establish constructive possession. Instead, in this situation, the government must prove some connection between Mr. Young and the object demonstrating the power and intent to exercise

have intent, intent, intent. The Government has to show intent here.  Have they
shown intent?  Have they shown Apache had the intent? No, they did not. Not at
all.

Trial Tr. at 394:4-9 (Knoblauch).  Accordingly, the Court concludes that Young did not "clearly
demonstrate[] acceptance of responsibility for his offense," possession of firearms, at trial.
U.S.S.G. § 3E1.1.

Likewise, Young's recorded prison phone calls, in which he argues that "I didn't do nothin'
this time," indicate that he does not accept responsibility for his crimes.  Various Telephone Calls
at 18, filed March 15, 2019 (Doc. 190-2).  During these calls, Young referred repeatedly to the
Court's opinions as "some bullshit."  Various Telephone Calls at 2-3.  Young continued that "all
he, all he did is throw all kinds of stupid ass case laws and this and that and whatever.  If that's
your justification, hey, fuck you too, y'know?"  Various Telephone Calls at 3.  Discussing
appearing in court, Young stated that if things did not turn out well "I'm gonna be the biggest dick
that they've ever seen and [t]hey'll never forget it, y'know? Shit. I'll make 'em
suffer . . . y'know?" Various Telephone Calls at 11.  Young continued that "I'm not gonna change
my ways when I get out, y'know what I mean? And I'm gonna, I'm  traumatize these people,
y'know? I'm good on this shit, I'm not gonna let them do that to me and get away with it, y'know?"
Various Telephone Calls at 18.  These comments indicate that Young does not feel remorse for
the offense at issue here, and that he does not consider it a serious crime.  See Various Telephone
Calls at 11-18.  In sum, the comments undermine seriously Young's argument that he accepts

---

control over the object.

Court's Final Jury Instructions (Trial 2) at 16, filed December 10, 2018 (Doc. 172)(citing 10th Cir.
Pattern Jury Instructions (2011) § 1.31, at 26 (ACTUAL OR CONSTRUCTIVE
POSSESSION)(adapted)).

responsibility for his crime.  See U.S.S.G. § 3E1.1.  The Court, therefore, concludes that Young is

not eligible for an offense level reduction under U.S.S.G. § 3E1.1(a).

### E.   THE COURT CANNOT CONCLUDE SOUNDLY, BY A PREPONDERANCE OF THE EVIDENCE, THAT YOUNG WAS ARRESTED ON DECEMBER 5, 2000, IN LAS VEGAS, NEVADA.

Young contends that he was never arrested for a DUI in Las Vegas, Nevada on December

5, 2000.  See Objections I ¶ 7, at 3.  The PSR states that Young was arrested for evading a police

officer and for driving under the influence of drugs or alcohol on December 5, 2000.  See

PSR ¶¶ 49-50, at 17-18.  Although "the defendant was arrested under his true name . . . court

records were filed under the name Daniel Padilla."  PSR ¶¶ 49-50, at 17-18.  Young insists,

however, that this "was not an incident involving Mr. Young.  The name of Daniel Padilla seems

to be the person who did, indeed, commit the acts and the[ir] stolen identity appears to be the cause

of the confusion."  Objections I ¶ 7, at 3.

The Court cannot conclude soundly, by a preponderance of the evidence, that Young was

arrested for a DUI in Las Vegas, Nevada on December 5, 2000.  See Arrest Reports as to Apache

Young, filed January 28, 2021 (Doc. 265)("Arrest Reports").  First, the records that the Court has

received from the USPO are missing important information from the applicable court records.  See

Arrest Reports at 3 (stating that "'[d]ocket containing entries on papers filed, court actions,

judgments, etc. in criminal cases' have a retention period of 10 years after the case is

closed'")(quoting Nev. Rev. Stat. § 239.110(7)[13]).  This missing information weighs heavily

---

[13]The statute provides, in relevant part:

The Supreme Court may provide by rule for the destruction, without prior microfilming, of such other documents of the several courts of this State as are held in the offices of the clerks but which:

    (a)    No longer serve any legal, financial or administrative

against concluding that Young was arrested for the offense.  See Arrest Reports at 3.  Second, the name in the "Criminal Case Records Search Results" regarding this offense is "Padilla, Daniel." Arrest Reports at 1.  Third, the "Register of Actions: Case No. PC00F20692X" also lists "Padilla, Daniel," with a birth date of "06/03/1978" as the defendant.  Arrest Reports at 2.  Young's birth date, according to the PSR, is December 12, 1981.  See PSR at 6 (no paragraph numbering).  The arrest documents associated with this offense, by contrast, list Young as the arrestee.  See, e.g., Arrest Reports at 9.  Fourth, the Arrest Reports contain inconsistencies.  See Arrest Reports at 9. Notably, Young's identification number is listed initially as "01605262" on all of the arrest documents, but this number has been crossed out in pen or marker, and replaced with "1680784." E.g., Arrest Reports at 4, 5, 6, 7, 9.  The PSR also states that, on January 1, 2006, Young, "who used the alias Danial Padilla, was mistaken as the real Daniel Padilla and was arrested in Las Vegas, Nevada on a bench warrant issued for Mr. Padilla.  He was released on January 6, 2006 after the mistake was discovered."  PSR ¶ 42, at 16.  This demonstrates a recurring issue with Young being confused for Daniel Padilla.  See PSR ¶ 42, at 16.  Moreover, the Court concludes that it is more likely that the initial information collected during the December 5, 2000, arrest -- which involved an intoxicated, combative individual -- was incorrect, and that the court evaluating the December 5, 2000, charges then realized that the defendant had been misidentified, and updated its records accordingly.  Arrest Reports at 1-9.  The converse, which the USPO suggests, does not make logical sense, because it seems less likely that a belligerent, intoxicated individual gave initially correct information followed by a repeated error from court employees.  See PSR

---

purpose; and

     (b)     Do not have any historical value.

Nev. Rev. Stat. § 239.110(7).

¶¶ 49-50, at 17-18.   Accordingly, based upon the inconsistences in the Arrest Reports, missing information, Young's recurring confusion with Daniel Padilla, and application of logical reasoning, the Court concludes that it is more likely than not that Young was not arrested on December 5, 2000.  See Arrest Reports at 1-9.  The Court thus sustains Young's objection to this arrest and will omit PSR ¶¶ 49-50, at 17-18, in the PSR record.

## II.    THE COURT OVERRULES ALL OF YOUNG'S PRO SE OBJECTIONS.

Young has been convicted of five violent felonies under 18 U.S.C. § 924(E) and "crime of violence" under U.S.S.G. § 4B1.4.  Young, therefore, is an Armed Career Criminal, and is, subject to a sentencing enhancement under U.S.S.G. § 4B1.4, as well as a fifteen-year mandatory minimum under 18 U.S.C. § 924(E).  The Court cannot consider Young's argument about his sentence's reasonableness, because this claim is not yet ripe.  The Court declines to reconsider its pretrial suppression ruling.  Young's other arguments, which do not object directly to the PSR but rather criticize the Court, the United States, and Young's counsel, suffer from fatal procedural deficiencies and are likewise unsuccessful on the merits.  Consequently, the Court concludes that all of the arguments Young makes in the Objections II and Objections III are unavailing.

### A.    YOUNG IS AN ARMED CAREER CRIMINAL, BECAUSE HE HAS COMMITTED AT LEAST THREE VIOLENT FELONIES.

Young contends that he is not an Armed Career Criminal, because he has not committed three "crimes of violence" under U.S.S.G. § 4B1.4.  U.S.S.G. § 4B1.4.  See Objections II, at 1. The Court concludes that Young is an Armed Career Criminal, and is, therefore, subject to a sentencing enhancement under U.S.S.G. § 4B1.4, as well as a fifteen-year mandatory  minimum

under 18 U.S.C. § 924(E).[14]  Section 924(e) of Title 18 of the United States Code instructs:

> **(e)(1)**   In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g).
>
> **(2)**     As used in this subsection --
>
> . . . .
>
> > **(B)**    the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that --
> >
> > > **(i)**    has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> > >
> > > **(ii)**   is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another; and

18 U.S.C. § 924(E)(bold in original).  U.S.S.G. § 4B1.4 instructs that any "defendant who is subject to an enhanced sentence under the provision of 18 U.S.C. § 924(e) is an armed career criminal."  U.S.S.G. § 4B1.4(a).

Young has five convictions that qualify as violent felonies and crimes of violence.  See PSR at ¶¶ 31-34, at 7-10.  A crime qualifies as a violent felony under the statute if it either: (i)

---

[14]The definitions of "violent felony" under 18 U.S.C. § 924(E) and "crime of violence" under U.S.S.G. § 4B1.4 are not identical, but Young's five relevant convictions fall under both definitions.

includes physical force as an element, as 18 U.S.C. § 924(e)(2)(B)(i) states; or (ii) is one of the crimes 18 U.S.C. § 924(e)(2)(B)(i)(ii) lists.  See Johnson v. United States, 576 U.S. 591, 597 (2015)("Johnson II").  U.S.S.G. § 4B1.2 defines "crime of violence" in part as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that . . . has as an element the use, attempted use, or threatened use of physical force against the person of another."  U.S.S.G. § 4B1.2(a)(1).  "We refer to this portion of the definition as the 'elements clause.'" United States v. Ash, 917 F.3d 1238, 1240 (10th Cir. 2019)(quoting United States v. Taylor, 848 F.3d 1215, 1220 (10th Cir. 2016)).  The Guidelines also enumerate a list of several crimes that can constitute crimes of violence, which include: "murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c)."  U.S.S.G. § 4B1.2(a)(2).  This clause is known as the enumerated offense clause. See United States v. Buck, 717 F. App'x 773, 776 (10th Cir. 2017).  The Court has explained that "[a]n offense . . . qualifies as a crime of violence under § 4B1.2 only if (i) it meets the elements clause; or (ii) it is listed in the enumerated-offense clause."  United States v. Folse, 301 F. Supp. 3d 1037, 1062 (D.N.M. 2017)(Browning, J.).

Young's September 7, 2004, attempted robbery qualifies as a crime of violence and as a violent felony.  See PSR at ¶¶ 31, at 7-8.  In New Mexico, robbery qualifies as "theft of anything of value from the person of another or from the immediate control of another, by use or threatened use of force or violence."  N.M.S.A. § 30-16-2.  The Tenth Circuit has held repeatedly that a New Mexico robbery conviction under N.M.S.A. § 30-16-2 is a violent felony under the ACCA.  See, e.g., United States v. Garcia, 877 F.3d 944, 956 (10th Cir. 2017); United States v. Lujan, 9 F.3d 890, 892 (10th Cir. 1993).  Moreover, the Court agrees that New Mexico "robbery constitutes a

crime of violence." United States v. Barela, No. CR 15-3550 JB, 2016 WL 5395275, at *3 (D.N.M. Sept. 16, 2016)(Browning, J.).  First, robbery is listed in the enumerated offense clause.  See U.S.S.G. § 4B1.2(a)(2); United States v. Folse, 301 F. Supp. 3d at 1062.  Second, New Mexico's robbery statute conforms to the prevailing robbery definition, and, therefore, "categorically qualifies as the enumerated offense of robbery."  United States v. Barela, 2016 WL 5395275, at *2.  Further, U.S.S.G. § 4B1.2 Application Note 1 explains that a crime of violence "include[s] the offenses of aiding and abetting, conspiring, and attempting to commit such offenses."  U.S.S.G. 4B1.2 n.1.  See United States v. Johnson, No. CR 18-0220 JB, 2021 WL 53338, at *22 (D.N.M. Jan. 6, 2021)(Browning, J.)(explaining that the Court "interpret[s] the Guideline in the light of the authoritative interpretation in Application Note 1").  The Court concludes, therefore, that Young's September 7, 2004, attempted robbery is a crime of violence and a violent felony.

Young argues that his "conviction for attempted robbery/attempted armed robbery does not qualify as a crime of violence."  Objections II at 2.  The Supreme Court has held that a "prior crime qualifies as an ACCA predicate if, but only if, its elements are the same as, or narrower than, those of the generic offense."  Mathis v. United States, 136 S. Ct 2243, 2247 (2016).  Young insists, correctly, that New Mexico's robbery does not match exactly the generic robbery definition.  See Objections II at 2-7.  The Tenth Circuit has held, however, that New Mexico's robbery definition is narrower than the generic robbery definition.  See United States v. Garcia-Caraveo, 586 F.3d 1230, 1235 (10th Cir. 2009)(explaining that "only five states -- Georgia, Kansas, Mississippi, New Mexico, and Tennessee -- clearly maintain the rule that, in order to commit robbery, the perpetrator must use force before or during the taking itself").

Young also argues that that his attempted robbery conviction "should not be used as a prior 'crime of violence,'" because Young's sentence was suspended to nine months.  Objections II, at

23-24 (quoting U.S.S.G. § 4B1.2(a)).  The Court disagrees, because Young's conviction was punishable by eighteen months imprisonment.  See N.M.S.A. § 31-18-15.  Young quotes U.S.S.G. § 4A1.2(b), which states: "**(1)** The term 'sentence of imprisonment' means a sentence of incarceration and refers to the maximum sentence imposed.  **(2)** If part of a sentence of imprisonment was suspended, 'sentence of imprisonment' refers only to the portion that was not suspended." U.S.S.G. § 4A1.2(b)(bold in original). See Objections II, at 24.  A crime of violence, however, need only be "punishable by imprisonment for a term exceeding one year . . . ." U.S.S.G. § 4B1.2(a).  Young's sentence itself, therefore, is not relevant when determining whether attempted robbery is a crime of violence.  See U.S.S.G. § 4B1.2(a).  Under New Mexico law, "[w]hoever commits robbery is guilty of a third-degree felony," N.M.S.A. § 30-16-2, and where "the crime attempted is a third-degree felony, the person committing such attempt is guilty of a fourth-degree felony," N.M.S.A. § 30-16-2(D).  The "basic sentence of imprisonment is . . . eighteen months imprisonment" "for a fourth-degree felony."  N.M.S.A. § 31-18-15.  Consequently, Young's attempted robbery crime was "punishable by imprisonment for a term" of eighteen months.  U.S.S.G. § 4B1.2(a).  See N.M.S.A. § 31-18-15.  Accordingly, the Court concludes that Young's attempted robbery conviction satisfies this element of U.S.S.G. § 4B1.2's violent crime definition.

Young's September 22, 2005, aggravated battery offenses also qualify as a violent felony and crime of violence.  See  U.S.S.G. § 4B1.2.  Young was convicted under N.M.S.A § 30-3-5. See PSR ¶ 32, at 12-13.   New Mexico's aggravated battery offense is not listed in U.S.S.G. § 4B1.2(a)(2)'s enumerated offense clause.  Compare N.M.S.A. § 30-3-5, with U.S.S.G. § 4B1.2(a)(2)(listing "murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a

firearm . . . or explosive material" as enumerated crimes of violence).  The Court, therefore, must

determine whether Young's aggravated battery conviction satisfies U.S.S.G. § 4B1.2's elements

clause.  See U.S.S.G. § 4B1.2(a)(1).

Under the elements clause, aggravated battery is a violent felony if it "has as an element

the use, attempted use, or threatened use of physical force against the person of another."  U.S.S.G.

§ 4B1.2(a)(1).  "In this context, physical force means '*violent* force -- that is, force capable of

causing physical pain or injury to another person.'"  United States v. Maldonado-Palma, 838 F.3d

1244, 1248 (10th Cir. 2016)(emphasis in original)(quoting Curtis Johnson v. United States, 559

U.S. 133, 140 (2010)).  New Mexico's aggravated battery statute provides:

> A.  Aggravated battery consists of the unlawful touching or application of force
> to the person of another with intent to injure that person or another.
>
> B.  Whoever commits aggravated battery, inflicting an injury to the person
> which is not likely to cause death or great bodily harm, but does cause
> painful temporary disfigurement or temporary loss or impairment of the
> functions of any member or organ of the body, is guilty of a misdemeanor.
>
> C.  Whoever commits aggravated battery inflicting great bodily harm or does
> so with a deadly weapon or does so in any manner whereby great bodily
> harm or death can be inflicted is guilty of a third-degree felony.

N.M.S.A. § 30-3-5.[15]  This statute is divisible, because it sets forth alternative elements for

aggravated battery that "carry different punishments."  Mathis v. United States, 136 S. Ct. at 2256

("If statutory alternatives carry different punishments, then under Apprendi [v. New Jersey, 530

U.S. 466 (2000)], they must be elements.").  See United States v. Garcia, No. CR 15-4268 JB,

2019 WL 4670218, at *2 (D.N.M. May 10, 2019)(Browning, J.)(concluding that N.M.S.A. § 30-

3-5 is divisible).  See also United States v. Maldonado-Palma, 838 F.3d at 1247 (holding that New

---

[15]In New Mexico, a misdemeanor is punishable by up to one year in jail, see N.M.S.A.
§ 30-19-1, while a third-degree felony is punishable by three years imprisonment, see N.M.S.A.
§ 30-18-15.

Mexico's aggravated assault statute, N.M.S.A. § 30-3-2, is "a divisible statute because it sets out alternative elements for aggravated assault in three subsections"); United States v. Pacheco, 730 F. App'x 604, at 605-06 (10th Cir. 2018)(holding that New Mexico's aggravated battery against a household member statute, N.M.S.A. § 30-3-16, is a violent felony). Additionally, "§ 30-3-5(C) is divisible as it has 'two alternate elements in subsection (C), depending on whether the defendant used a deadly weapon . . . .'" United States v. Garcia, 2019 WL 4670218, at *2 (quoting United States v. Pacheco, 730 F. App'x at 608). The Court, therefore, examines the statute under the modified categorical approach. See Descamps v. United States, 570 U.S. at 13-15; United States v. Taylor, 843 F.3d at 1220 ("The modified categorical approach applies when the statute is divisible; that is, when it lists multiple alternative elements, and so effectively creates several different crimes").

Young was convicted under § 30-3-5(C)'s deadly weapon element. See PSR ¶ 32, at 12-13. A "deadly weapon" in New Mexico's Criminal Code includes "any firearm . . . ." N.M.S.A § 30-1-12(B). During Young's aggravated battery offense, while he

> began following some of the victims through Silver City, New Mexico, the defendant then pointed a gun at the victims. He stopped following them when they arrived at the police department to report the incident. Later that evening, the group and others, including a 10-month-old baby, were at a residence in Bayard, New Mexico when the defendant began fir[ing] several shots in their direction. The baby, his mother, and two other adults were struck by pellets from the defendant's shotgun-type weapon and were transported to the hospital for treatment of their injuries.

PSR ¶ 32, at 12. The Court, therefore, must assess whether "unlawful touching or application of force to the person of another with intent to injure that person or another . . . with a deadly weapon . . ." satisfies the elements clause. N.M.S.A. § 30-3-5. The Court concludes that it does, because it involves "force capable of causing physical pain or injury to another person." Curtis Johnson v. United States, 559 U.S. at 140. Empirical studies in the United States demonstrate this

conclusion; over "32,000 persons die and over 67,000 persons are injured by firearms each year." Katherine A. Fowler, Linda L. Dahlberg, Tadesse Haileyesus, and Joseph L. Annest, Firearm Injuries in the United States, 75 Preventive Medicine 5, 6 (2015), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4700838/.   Moreover, the Court has addressed this issue on several occasions and has concluded consistently that § 30-3-5(C) is a violent felony. See United States v. Garcia, 2019 WL 4670218, at *3;   United States v. Folse, 301 F. Supp. 3d at 1065-1073;   United States v. Mohammed, 2017 WL 4402405, at *7 (D.N.M. September 30, 2017(Browning, J.).   In addition, "[a]ll the other judges in the United States District Court for the District of New Mexico who have addressed whether § 30-3-5(C) Aggravated Battery is a violent crime for § 4B1.2 have reached the same conclusion as the Court -- that § 30-3-5(C) is a violent crime." United States v. Garcia, 2019 WL 4670218, at *4 (collecting over twenty cases).   In sum, as the Tenth Circuit has explained, "[p]hysical contact with a deadly weapon . . . will always constitute either actual or threatened use of physical force." United States v. Treto-Martinez, 421 F.3d 1156, 1160 (10th Cir. 2005).   Young's September 22, 2005, aggravated battery offenses, therefore, qualify as a violent felony and a crime of violence.

Last, Young's March 11, 2010, convictions for (i) "attempted robbery with a weapon"; (ii) two counts of "assault and battery with a  deadly weapon"; (iii) two counts of "robbery with a weapon"; and (iv) "attempted robbery with a firearm" (the "Oklahoma convictions"), constitute three violent felonies or crimes of violence.   PSR ¶ 34, at 9-10.   The Court notes, however, that even if, as Young suggests, his March 11,  2010 convictions should be viewed as one crime of violence or violent felony, he remains an Armed Career Criminal.   In sum, Young and another individual, Moises Ruben Garcia, "committed . . . three robberies at three different locations in

Tulsa, Oklahoma on April 18, 2009." PSR ¶ 34, at 9.[16]  First, because the robberies were distinct in time and place, and involved different victims, the Court concludes that they were separate incidents, rather than "single continuous spree," as Young argues.  Objections II at 14.  See United States v. Delossantos, 680 F.3d at 1219; United States v. Michel, 446 F.3d at 1133-34 (concluding that, where a defendant (i) pointed a gun at a police officer during a traffic stop; (ii) led the officer on a car chase and then attempted to rob a convenience store; and (iii) fled the scene and hit a police officer with his car, he had committed three violent felonies); United States v. Tisdale, 921 F.2d at 1095 (rejecting a defendant's argument that the three mall burglaries should be treated as one criminal episode because the events happened on the same night and at the same general location, and reasoning that the separate offenses were 'distinct in time,' and that after the defendant had successfully burglarized one business, he was free to leave the mall and cease his criminal activity).

Young's convictions under OK Stat. § 21-801 qualify a violent felony and a crime of violence under the ACCA and the Guidelines.  See Oklahoma Convictions Record at 3, filed November 11, 2020 (Doc. 245-3); PSR ¶ 34, at 13-14.  The statute provides:

> Any person or persons who, with the use of any firearms or any other dangerous weapons, whether the firearm is loaded or not, or who uses a blank or imitation firearm capable of raising in the mind of the one threatened with such device a fear that it is a real firearm, attempts to rob or robs any person or persons, or who robs or attempts to rob any place of business, residence or banking institution or any other place inhabited or attended by any person or persons at any time, either day or night, shall be guilty of a felony and, upon conviction therefor, shall suffer punishment by imprisonment for life in the State Penitentiary, or for a period of time of not less than five (5) years, at the discretion of the court, or the jury trying the same. . . .

OK Stat. § 21-801.  Oklahoma law defines robbery as "a wrongful taking of personal property in

---

[16]Young was also convicted of obstructing an officer on this occasion.  See PSR ¶ 34, at 9.

the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear."  OK Stat. § 21-791.  The Court need not inquire into the circumstances of Young's conviction, because the statute is indivisible.  Young's Oklahoma conviction falls under the elements clauses of the ACCA and the Guidelines, because it involves "the use, attempted use, or threatened use of physical force against the person of another."  United States v. Gilbert, 25 F.3d 1058 (10th Cir. 1994).  See United States v. Godlock, 794 F. App'x 725 (10th Cir. 2019).

Assault and battery with a deadly weapon under Oklahoma law also qualifies as a violent felony and a crime of violence under the ACCA and the Guidelines.  Oklahoma law provides:

> Any person who commits any assault and battery upon another . . . by means of any deadly weapon, or by such other means or force as is likely to produce death, or in any manner attempts to kill another . . . or in resisting the execution of any legal process, shall upon conviction be guilty of a felony punishable by imprisonment in the State Penitentiary not exceeding life.

21 OK Stat. § 652(c).  Because this statute is divisible, the modified categorical approach applies. See United States v. Burtons, 696 F. App'x 372, 379 (10th Cir. 2017)(concluding that assault and battery with a deadly weapon categorically constitutes a violent felony).  Here, Young was convicted of two counts of assault and battery with a deadly weapon because: (i) Young, at Cy's Bar, "stabbed one of the witnesses in the leg"; and (ii) Young, at Par T Lounge, "racked the shotgun's slide and demanded the patrons' property.  When two patrons jumped on the defendant, Garcia intervened.  During the struggle, the shotgun went off, and two patrons were injured."  PSR ¶ 34, at 13-14.  Accordingly, the Court concludes that Young's convictions under 21 OK Stat. § 652(c) were crimes of violence.  In sum: (i) at Cy's Bar, Young violated both OK Stat. § 21-801 and 21 OK Stat. § 652(c); (ii) at Buccaneer Bar, Young violated OK Stat. § 21-801; and (iii) at Par

T Lounge, Young violated 21 OK Stat. § 652(c) and OK Stat. § 21-801.[17]  See PSR ¶ 34, at 13-14;

Oklahoma Conviction Records at 50.  Because, as discussed above, the crimes occurred on three

separate occasions, the Court concludes that Young committed three crimes of violence under the

Guidelines -- which also qualify as violent felonies under the ACCA -- on May 4, 2009.  See PSR

¶ 34, at 13-14; Oklahoma Conviction Records at 50.

**B.  YOUNG'S CONTENTION THAT HE DID NOT KNOW THAT HIS PRIOR FELONIES WOULD BE CONSIDERED VIOLENT FELONIES UNDER THE ACCA IS NOT RELEVANT, BECAUSE 18 U.S.C. § 924(E) DOES NOT INCLUDE A MENS REA REQUIREMENT.**

Young contends that he is not subject to a sentencing enhancement under the ACCA,

because he "was not aware that his prior felony convictions would be deemed 'violent felonies.'"

Objections III at 1 (quoting 18 U.S.C. § 924(e)).  He emphasizes that he "was never charged with

knowing, and . . . the government has never established that Mr. Young knew, that he had at least

three prior convictions that would be categorized as violent felonies."  Objections III at 1.  Young

insists that, under Rehaif, 139 S. Ct. at 2194, the United States must prove that Young knew that

"his prior felony convictions were violent felonies."   Objections III at 1.

Young's arguments are unsuccessful for three reasons; (i) the statute's text does not support

Young's argument; (ii) Rehaif does not support Young's argument; and (iii) sentencing

enhancements based on prior convictions need not contain a mens rea requirement.   First, and

most notably, 18 U.S.C. § 924(e)'s text contains no mens rea requirement.  See 18 U.S.C. § 924(e).

Young argues that scienter is necessarily implied, see Objections III at 3, but the Court is

---

[17]Both OK Stat. § 21-801 convictions at Buccaneer Bar were attempt convictions, but they remain violent felonies.  See United States v. Hernandez, 743 F. App'x 156, 161 (10th Cir. 2018) (an attempt to violate § 801 qualified as a violent felony); United States v. Herron, 432 F.3d 1127, 1137 (10th Cir. 2005)("The actual use of force is not necessary to make a crime a violent felony; all that is required is the threat of such force against another's person.").

particularly reluctant to imply a mens rea requirement where, as here, other portions of the relevant statute include explicit mens rea requirements, see, e.g., 18 U.S.C. § 924(a)(1)(imposing a fine upon persons who "knowingly" or "willfully" commit certain acts); Objections III at 3.  This demonstrates that Congress excluded deliberately a mens rea requirement in 18 U.S.C. § 924(e). See United States v. Nava-Sotelo, 354 F.3d 1202, 1204 (10th Cir. 2003)(declining to imply a mens rea element to 18 U.S.C. § 924(c)).  Second, Young's Rehaif  arguments are unavailing, because Rehaif involves a different statute than the one at issue here.  See Rehaif, 139 S. Ct. at 2194 (considering the application of 18 U.S.C. § 922(g); 924(a)(2)).  Specifically, § 924(e)does not create a criminal offense, but instead creates a sentencing enhancement based on prior convictions. Cf. Staples v. United States, 511 U.S. 600, 614-15 (1993)(imputing a knowledge requirement into a statute making unlawful possession of an unregistered machine gun a crime, because, otherwise, the statute would criminalize "entirely innocent" behavior).  Additionally, unlike the statute at issue in Rehaif, the word "knowingly" appears nowhere in § 924(e)(1).  Moreover, Young mischaracterizes Rehaif, stating that it "acknowledges that federal law should only harshly increase the sentence of a person who was made aware of their relevant status; here it asks whether Mr. Young could have known he was a violent felon based on prior state proceedings where the concept was never discussed."  Objections III at 2.  As the Court explained in United States v. Young, this situation is not analogous to what the Supreme Court discussed in Rehaif v. United States, "where a felon lacks knowledge of his status, because he was 'convicted of a prior crime but sentenced only to probation, [and therefore] does not know that the crime is *punishable* by imprisonment for a term exceeding one year.'" United States v. Young, No. CR 17-0694 JB, 2020 WL 33086, at *14 (D.N.M. Jan. 2, 2020)(Browning, J.)(quoting Rehaif, 139 S. Ct. at 2198)(emphasis in original).  Third, as the Tenth Circuit has noted, the Supreme Court in Apprendi,

530 U.S. at 466, explained that sentencing enhancements based on prior convictions need not include a mens rea requirement.  See United States v. Dorris, 236 F.3d 582, 588 (10th Cir. 2000)(citing Apprendi, 530 U.S. at 490 ("[O]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be . . . proved beyond a reasonable doubt.")).   Instead, "use of a prior conviction to increase a defendant's sentence does not implicate the same concerns as other sentencing enhancements because the defendant's previous conviction was accompanied by all the procedural safeguards required in a criminal prosecution."  United States v. Dorris, 236 F.3d at 588.  Accordingly, because the provision here is "sentencing enhancement rather than an element of the offense and, therefore, a separate mens rea . . . need not be proven."  United States v. Nava-Sotelo, 354 F.3d 1202, 1206 (10th Cir. 2003).  See also McFadden v. United States, 576 U.S. 186, 191-92 (holding that the CSA's mens rea requirements do not extend to its sentencing portions).

### C.     THE COURT WILL NOT RECONSIDER ITS SUPPRESSION RULING.

Young argues that the Court ruled incorrectly on his Motion to Suppress, filed May 10, 2018 (Doc. 43)("Motion to Suppress").  See Objections III at 7-10.  The Court denied Young's suppression motion on August 31, 2018.  See United States v. Young, 347 F. Supp. 3d 747, 753-54 (D.N.M. 2018)(Browning, J.).  Here, Young appears to assert that the evidence at issue should be suppressed under the New Mexico Constitution.  See Objections III at 7.  Young, however, did not mention the New Mexico Constitution in his Motion to Suppress.  See Motion to Suppress at 1-15.

As the Court has explained, "a district court can use whatever standard it wants to review an earlier interlocutory order."  Jones v. Azar, No. CIV 19-0477 JB\JHR, 2020 WL 4569442, at *4 (D.N.M. Aug. 8, 2020)(Browning, J.).  In the Court's view, the "best approach . . . is to analyze

motions to reconsider depending on three factors." Jones v. Azar, 2020 WL 4569442, at *4. The Court considers, in turn: (i) "how thoroughly the earlier ruling addressed the specific findings or conclusions that the motion to reconsider challenges"; (ii) "the degree of reasonable reliance which the opposing party has placed in the Court's prior ruling" based upon "the case's overall progress and posture, the motion for reconsideration's timeliness relative to the ruling it challenges, and any direct evidence that the parties may produce"; and (iii) "the factors from Servants of the Paraclete v. Does" 204 F.3d at 1005, including whether (a) the movant presents "new controlling authority -- especially if the new authority overrules prior law or sets forth an entirely new analytical framework," (b) "new evidence -- especially if the movant has a good reason why the evidence was not presented the first time around," or (c) "a clear indication -- one that manifests itself without the need for in-depth analysis or review of the facts -- that the Court erred." Jones v. Azar, 2020 WL 4569442, at *4-5 (citing Servants of the Paraclete, 204 F.3d at 1005).

These three factors counsel against reconsidering the Court's earlier ruling. See United States v. Young, 347 F. Supp. 3d at 753. First, the Court addressed thoroughly Young's Motion to Suppress in a sixty-nine-page opinion. See United States v. Young, 347 F. Supp. 3d at 753. Moreover, as the Court has noted, "[a] movant for reconsideration faces a steeper uphill challenge when the prior ruling was on a criminal suppression motion . . . ." Jones v. Azar, 2020 WL 4569442, at *4. Second, Young raises this issue more than two years after he filed his initial suppression motion. See Motion to Suppress at 15; Objections III at 1. This case is now at the sentencing phase, and Young was convicted more two years ago. See Jury Verdict as to Apache Young, filed December 10, 2018 (Doc. 175). Further, Young produces no "direct evidence" related to his argument, but instead reiterates many of the arguments he made in the initial Motion to Suppress. Jones v. Azar, 2020 WL 4569442, at *4. See Objections III at 7-10. Accordingly,

the United States relied reasonably on the Court's ruling in <u>United States v. Young</u> at trial.  <u>See</u> <u>Jones v. Azar</u>, 2020 WL 4569442, at *4.  Third, the <u>Servants of Paraclete v. Does</u> factors are not in Young's favor.  Young cites to no controlling authority issued subsequent to <u>United States v. Young</u>.  <u>See</u> Objections III at 7-10; <u>Servants of the Paraclete</u>, 204 F.3d at 1005 (considering whether a movant presents "new controlling authority -- especially if the new authority overrules prior law or sets forth an entirely new analytical framework").  Young's new emphasis on the New Mexico Constitution does not satisfy this factor, because the New Mexico Constitution is not new, it was adopted on January 21, 1911.  <u>See</u> <u>Constitution of the State of New Mexico</u> at 1, New Mexico Compilation Commission (2019), https://www.sos.state.nm.us/about-new-mexico/publications/nm-constitution/#.  Young also cites some state and federal case law that he did not include in his Motion to Suppress, but none of these cases were published in the last decade.  <u>See</u> Objections III at 7-10.  Further, Young provides no explanation for why he did not "present[]" this authority "the first time around."  <u>Jones v. Azar</u>, 2020 WL 4569442, at *4.  <u>See</u> Objections III at 7-10.  Last, there is no "clear indication" that "the Court erred" in <u>United States v. Young</u>.  <u>Jones v. Azar</u>, 2020 WL 4569442, at *4.  Accordingly, the Court declines to reconsider its ruling in <u>United States v. Young</u>, 347 F. Supp. 3d at 753.

> **D.    THE COURT HAD NO DUTY TO ADVISE YOUNG REGARDING HIS NOLO CONTENDERE PLEAS' ADMISSIBILITY AT TRIAL UNDER RULE 410(A) OF THE FEDERAL RULES OF EVIDENCE, AND THE COURT SPENT SIGNIFICANT TIME AT TRIAL DISCUSSING PERSONALLY WITH YOUNG HIS RIGHT TO TESTIFY.**

Young argues that the Court "failed . . . by not advising him about that shall Mr. Young <u>decide</u> to take the witness stand on his own behalf, the court will put on the record that the jury will not, know or here mention, defendant's prior convictions to which he pleaded (Nolo-Contendere)."  Objections III at 3.  Rule 410(a) of the Federal Rules of Evidence provides: "In a

civil or criminal case, evidence of the following is not admissible against the defendant who made

the plea or participated in the plea discussions . . . a nolo contendere plea . . . ."  Fed. R. Evid.

410(a).  Young is correct, therefore, that his nolo contendere pleas might not have been admissible

against him at trial.  See Fed. R. Evid. 410(a).  Nevertheless, there are exceptions to rule 410.  See

Fed. R. Evid. 410(b).  For example, "[a] statement that would otherwise be excluded if other

evidence of pleas or plea discussions is introduced and the statement should in fairness be

considered together with the evidence that has been introduced."  Stephen A. Saltzburg, Michael

M. Martin, & Daniel J. Capra, 2 Federal Rules of Evidence Manual § 410-5 (Matthew Bender 10th

ed. 2011).  Another exception is "a statement made under oath, on the record, and in the presence

of counsel may be introduced in a subsequent perjury-type prosecution."  Saltzburg, Federal Rules

of Evidence Manual § 410-5.  Moreover, in United States v. Mezzanatto, 513 U.S. 196 (1995), the

Supreme Court held that, "absent some affirmative indication that the agreement was entered into

unknowingly or involuntarily, an agreement to waive the exclusionary provisions of the plea-

statement Rules is valid and enforceable."  United States v. Mezzanatto, 513 U.S. at 210.  The

Tenth Circuit also admitted a plaintiff's nolo contendere plea in a wrongful discharge action where

the plaintiff's former employer sought to introduce the plea as evidence of the basis for its

termination decision.  See Rose v. Uniroyal Goodrich Tire Co., 219 F.3d 1216, 1220 (10th Cir.

2000).  See also United States v. Adedoyin, 369 F.3d 337, 344 (3d Cir. 2004)(holding that, while

rule 410 excludes nolo contendere pleas, it does not preclude admission of the conviction resulting

from that plea, because "a plea of nolo contendere has the same legal consequences as a plea of

guilty and results in a conviction"); Myers v. Sec'y of Health and Human Servs., 893 F.2d 840,

843-45 (6th Cir. 1990)(admitting a nolo contendere plea that the defendant had engaged in

Medicare fraud, in an administrative decision regarding his Medicare benefits).  Consequently,

although, under the general rule, Young's nolo contendere pleas would not have been admissible

at trial, the Court declines to speculate after the fact whether they might have been admissible

under an exception, because it does not know for what purpose the United States might have sought

to introduce the pleas.

Young insists, however, "that had the [C]ourt advised him" that his nolo contendere pleas

were inadmissible at trial "Mr. Young would have went forth to take the witness stand in his own

defense." Objections III at 3. Young maintains that, consequently, the Court should "rule in favor

of setting aside his guilty verdict, until proper channels are remedied for a new trial based on the

plain error of the presiding court." Objections III at 3. As the Court explained before trial:

> The names of Young's convictions -- involving as they do violent offenses committed with deadly weapons, including at least one offense committed with a firearm -- are heavy with prejudice. The prior conviction evidence tends to portray Young as a dangerous criminal perhaps always armed with a firearm. The risk that the jury would convict Young, not on the merits of this case but on the merits of his past cases, is substantial. Hence, although rule 609 recognizes the admission of prior crimes evidence to show character for truthfulness, the Court is not convinced that Young's prior convictions' names and sentences have sufficient probative value to overcome their prejudice to Young. The conviction names and sentences, however, are highly prejudicial to Young. The Court will therefore allow the United States, if Young testifies, to cross-examine Young about his seven felony convictions for the limited purpose of impeaching Young's character for truthfulness; however, the Court will permit the United States to introduce only that Young has seven felony convictions; it may not introduce the name, sentences, or details of the crimes. See United States v. Commanche, 577 F.3d 1261, 1270-71 (10th Cir. 2009)("Care should be taken to protect the accused as far as possible from being convicted because of past conduct and not the crime for which he is being tried." (quoting United States v. Wolf, 561 F.2d 1376, 1381 (10th Cir. 1977)).

United States v. Young, No. CR 17-0694 JB, 2019 WL 133268, at *24 (D.N.M. Jan. 8,

2019)(Browning, J.). Young, therefore, knew before trial that, if he chose to testify, the Court

would have allowed the United States to introduce "only that Young has seven felony

convictions;" but not "the name, sentences, or details of the crimes." United States v. Young, 2019

WL 133268, at *24. The Court also provided flexibility on this issue, explaining that "Young may

also introduce evidence of the felonies' names and sentences if he decides, in his opinion and for

his own strategic reasons, that it is better for the jury to know these details than for it to guess or

speculate about the details."  United States v. Young, 2019 WL 133268, at *24 n.11.  Moreover,

Young made clear to the Court at trial that he had decided not to testify, after multiple consultations

with counsel:

> THE COURT:  All right. Well, I do think that at this stage of the proceedings I have
> to -- Mr. Young, do you want to speak?
>
> . . . .
>
> THE COURT:  I'm sure your counsel have talked to you about this, and I'll tell you
> now, you know you have the right, and it's your decision whether to take the stand
> this afternoon.
>
> THE DEFENDANT:  I'm being threatened to have everything I've ever done in
> my life thrown at me.
>
> THE COURT:  Well, I've issued an order that they're going to know that you were
> a felon, and they're going to know the number of felonies, but they're not going to
> know what felonies you committed.
>
> THE DEFENDANT:  Well, from my understanding --
>
> THE COURT:  They're not going to know everything.
>
> THE DEFENDANT:  I won't be able to say what I did from --
>
> (The defendant conferred with counsel.)
>
> THE COURT:  Now, I've told them that they've got to keep the names of the
> felonies out.  But they do get to say that you're a felon; they get to tell the jury how
> many times you were a felon.  Because the law is that that goes to your credibility.
> Once you take that stand, your credibility is at issue like it is, with any other witness,
> and you can be impeached.  So they can impeach you with those felonies.
>
> THE DEFENDANT:  I understand, you know what I mean?  I don't mean to
> disrespect. My life is on the line and --
>
> THE COURT:  This is an important decision for you. You've always treated me
> with respect; you don't have to apologize.

- 89 -

THE DEFENDANT:  Now, a lot of this stuff -- pictures, explain the phone calls, or the information how I knew, the phone calls prior to that, then they wouldn't have had a case with it, you know what I mean?  They defeat each other.

THE COURT:  How would you like to proceed, Mr. Knoblauch? Do you have a defense you want to present?  Do you have witnesses and evidence you want to present on behalf of, Mr. Young?

MR. KNOBLAUCH:  Let me talk to Mr. Young for a second here.

(The defendant conferred with counsel.)

(The Court stood in recess.)

THE COURT:  All right. We'll go back on the record.  Mr. Knoblauch, are y'all prepared to indicate to the Court whether you wish to present any witnesses or evidence?

MR. KNOBLAUCH:  I'm --

THE COURT:  If you need a little bit more time, go ahead.

MR. KNOBLAUCH:  Yes, Your Honor.

THE COURT:  Sure, go ahead, just tell me when you're ready.

(The defendant conferred with counsel.)

MR. KNOBLAUCH: Your Honor, I believe Mr. Young has decided not to testify.

THE COURT: Do you have any other witnesses or evidence to present?

MR. KNOBLAUCH: No, Your Honor.

Dec. 7 Trial Tr. at 320:17-328:12 (Court, Knoblauch, Young).

The Court went to great lengths to exclude lots of evidence about Young's prior felonies, and he likely knew that the details -- such as whether he pled, took a nolo contendere plea, or was otherwise convicted -- would not be admitted into the trial, even if he took the stand.  Moreover, the Court went to great effort to make sure that Young had plenty of time to decide whether to testify and was comfortable with his decision not to testify, when the jury had to hear that he was

a felon.   In any event, the Court had no duty to discuss the admissibility of Young's nolo contendere pleas with Young at trial.   See Martinez v. Court of Appeal of California, Fourth Appellate Dist., 528 U.S. 152, 162 (2000); McKaskle v. Wiggins, 465 U.S. 168, 183 (1984)("A defendant does not have a constitutional right to receive personal instruction from the trial judge on courtroom procedure.").   "[T]he trial judge is under no duty to provide personal instruction on courtroom procedure or to perform any legal 'chores' for the defendant that counsel would normally carry out."   Martinez v. Court of Appeal of California, Fourth Appellate Dist., 528 U.S. at 162 (quoting McKaskle v. Wiggins, 465 U.S. at 184).   Seasoned counsel represented Young at trial, and the same counsel represents Young presently.   See Objections I at 3.   It is unclear, therefore, why Young seeks to impose a duty upon the Court to advise him regarding the Federal Rules of Evidence.   See Objections III at 3.   Even when dealing with pro se litigants, the Court does not "believe it is the proper function of the district court to assume the role of advocate . . . ." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).   Accord Northington v. Jackson, 973 F.2d 1518, 1521 (10th Cir. 1992)(same); Smith v. Brown, 336 F.R.D. 290, 292 (D.N.M. 2020)(Browning, J.)(same).   The Court will not do so particularly where, as here, counsel represents the defendant. See Objections I, at 3 (indicating that Young's counsel, Mr. Knoblauch, filed the Objections I).   See also Mulford v. Altria Grp., Inc., No. CV 05-659 MV/RHS, 2009 WL 10701953, at *1 (D.N.M. March 30, 2009)(Vazquez, J.)("The Court is not obligated to comb the record in order to make any party's arguments for them.   Doing so would not only consume an inordinate amount of time, but would result in the Court abandoning its neutrality and becoming an advocate in the adversarial process.").   Moreover, the issue of the admissibility of his nolo contendere pleas never arose at trial.   Further, the cases to which Young cites confirm only that nolo contendere pleas are often inadmissible; they do not impose a duty upon a court to explain

this evidentiary rule to criminal defendants.  See United States v. Cartwright, 678 F.3d 907, 915

(10th Cir. 2012)(concluding that, at sentencing, a defendant's Oklahoma nolo contendere plea

"constitutes a predicate offense" under the ACCA); Rose v. Uniroyal Goodrich Tire Co., 219 F.3d

at 1220 (admitting evidence of a defendant's nolo contendere plea, because "the nolo contendere

plea is not being admitted 'against the defendant'")(no citation for quotation); Kipnis v. Jusbasche,

2017-NMSC-006, ¶ 16, 388 P.3d 654, 658 (recognizing "narrow, judicially created exceptions,"

but explaining the general rule which "specifically prohibits" a nolo contendere plea's "evidentiary

use in any further proceedings"); Objections III at 3 (relying on the foregoing cases).  Accordingly,

the Court concludes that Young's nolo contendere arguments are ineffective, because the Court

has no duty to explain evidentiary rules relating to issues that do not arise at trial to criminal

defendants whom counsel represents.  See Hall v. Bellmon, 935 F.2d at 1110.  Moreover, the Court

kept out the details of Young's convictions, so nolo contendere pleas likely would not have come

into the trial.  Furthermore, the Court talked personally to Young about testifying, and told Young

that details of his convictions were not coming into the trial.

    **E.**    **YOUNG'S MOTION FOR ACQUITTAL OR A NEW TRIAL BASED ON SELECTIVE PROSECUTION OR PROSECUTORIAL MISCONDUCT ARE DENIED, BECAUSE OF THE TIMELINESS REQUIREMENTS SET FORTH IN THE FEDERAL RULES OF CRIMINAL PROCEDURE, AND BECAUSE YOUNG'S ARGUMENTS LACK A SOUND BASIS IN THE APPLICABLE LAW OR THE CASE'S FACTS.**

Young contends that he should be granted a new trial because the United States "proceeded

with a selective prosecution and engaged in prosecutorial misconduct."  Objections III at 4.  Young

argues that the United States' error in "failure to exclude the nolo contendere pleas against the

defendant in a criminal proceeding" led the United States "to proceed with a selective

prosecution."  Objections III at 4.  Young also states that "the Government engaged in misconduct

when the prosecutor told the jury that it would not be at this trial if Mr. Young was in fact not

guilty of being a felon in possession of a firearm." Objections III at 4. Additionally, Young

alleges the United States committed prosecutorial misconduct when the prosecutor told the jury

that Young is "a smart individual as he's explaining to his girlfriend over a recorde[d] line as to

how to beat his case." Objections III at 4. Young concludes that the United States "engaged in

misconduct by committing improper vouching and by impugning the integrity of the defense

counsel, respectively." Objections III at 4-5.

The Federal Rules of Criminal Procedure provide that a "selective or vindictive

prosecution" motion "must be raised by pretrial motion if the basis for the motion is then

reasonably available and the motion can be determined without a trial on the merits." Fed. R.

Crim. P. 12 (b)(3)(A)(iv). Furthermore, to preserve a claim of error, the defendant must inform

the Court, at the time the issue arises, "of the action the party wishes the court to take, or the party's

objection to the court action and the grounds for that objection." Fed R. Crim P. 51 (b).

Additionally, a defendant may move for a judgment of acquittal within fourteen days after a guilty

verdict, see Fed. R. Crim. P. 29 (c)(1), and "any motion for a new trial grounded on any reason

other than newly discovered evidence must be filed within 14 days after the verdict or finding of

guilty," Fed. R. Crim. P. 33 (b)(2). Here, Young raises his selective prosecution objection and

vindictive prosecution objection on November 16, 2020, see Objections III at 4-5, nearly two years

after Young's trial concluded on December 10, 2018, and, because Young does not show cause

for his untimeliness, this Court does not have to review Young's objections. See United States v.

Bowline, 917 F.3d 1227 (10th Cir. 2019)(stating that an untimely argument subject to rule 12 is

not reviewable either in district court or in any subsequent proceedings absent a showing of an

excuse for being untimely), cert. denied, 140 S. Ct. 1129 (2020). Additionally, the Supreme Court

has held that the district court does not have jurisdiction to consider an untimely motion for a

judgment of acquittal.  See Carlisle v. United States, 517 U.S. 416, 431 (1996)(reversing a district court's order granting the defendant's motion for a judgment of acquittal because the motion was filed several months after the filing deadline imposed by rule 29(c)).  Consequently, the Court concludes that, because Young does not state a timely objection to the United States' statements at trial, it need not review the United States' arguments made at trial for prosecutorial misconduct. See Edwards v. Patterson, 249 F. Supp. 311, 314 (D. Colo. 1965)(Arraj, C.J.)(concluding that "a timely objection is a condition precedent to a review of improper arguments by counsel for the government").

Moreover, "when evaluating claims of prosecutorial misconduct, we examine whether the conduct, first, was improper and, second, warrants reversal."  United States v. Perry, 25 F. App'x 713, 726 (10th Cir. 2001).  The Court discusses exclusion of Young's nolo contendere pleas in § II(D), supra, and the recorded phone calls in § II(F), infra, and concludes that no prosecutorial misconduct occurred with respect to this evidence.  Young appears to argue that, by telling the jury that Young is "a smart guy" although Young did not testify, the prosecution committed "improper vouching."  Objections III at 4-5.  "It is error for the prosecution to personally vouch for the credibility of a witness."  United States v. Harlow, 444 F.3d 1255, 1262 (10th Cir. 2006). Here, however, the prosecutor was not personally vouching for nor personally attacking Young's credibility when he stated that Young was smart.  See United States v. Carleo, 576 F.2d 846, 852 (10th Cir. 1978).  During closing arguments, the prosecution is permitted to characterize the defendant.  Relatedly, the Court agrees that Young is smart -- he did extensive legal research and filed lengthy objections despite never receiving formal legal training.  See Objections II; Objections III.  The prosecution's statement was not improper and, even if it was, the remarks fall short of requiring reversal.

**F.    THE COURT WILL DENY YOUNG'S MOTION FOR A NEW TRIAL BASED ON INEFFECTIVE ASSISTANCE OF COUNSEL, BECAUSE YOUNG DID NOT FILE THE MOTION WITHIN THE TIMELINE SET FORTH IN RULE 33(b)(2).**

Young argues that the Court should "look into vicarious or indirect entrapment." Objections III at 5. Young states "that due to admittance of a phone call that a motion to dismiss should have been called for, and granted on indirect or vicarious entrapment grounds, and that his trial counsel was ineffective for failing to seek an entrapment jury instruction." Objections III at 5. Young argues that the Court should grant a new trial and exchange his lead counsel, Mr. Knoblauch, for second chair counsel, Mrs. Wernersbach. See Objections III at 6.

The Federal Rules of Criminal Procedure set forth that any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within fourteen days after the verdict or finding of guilty. See Fed. R. Crim. P. 33(b)(2). To prevail on a claim of ineffective assistance of counsel, the defendant must show that counsel's performance was deficient, and that the deficient performance prejudiced the defendant. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The Tenth Circuit defines deficient performance as "falling below an objective standard of reasonableness." Byrd v. Workman, 645 F.3d 1159, 1167 (10th Cir. 2011). Specifically, Young must demonstrate "that his counsel's performance was so prejudicial that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." United States v. Ruth, 100 F.3d 111, 113 (10th Cir. 1996). Here, the Court finds that because the jury found Young guilty on December 10, 2018, and because Young did not file his objections with the Court until November 16, 2020, Young did not meet the Rule 33(b)(2)'s timeliness requirement. See Fed. R. Crim. P. 33(b)(2). Because it is too late for Young to move for a new trial based on rule 33, Young may either raise this issue on direct appeal, or file a motion under § 2255 after exhausting his appellate remedies. See United States v. Robinson, 8

F.3d at 406.

Young's argument is also unsuccessful on the merits.  See Objections III at 5.   Young's prison phone calls fall under the "prior consent" exception to the Wiretap Act, 18 U.S.C. § 2511(2)(c) which allows "a person acting under color of law to intercept a wire, oral, or electronic communication, where . . . one of the parties to the communication has given prior consent to such interception."  Young's consent "can be implied from his decision to use the prison telephone despite adequate warnings that doing so would subject his communications to monitoring."  United States v. Verdin-Garcia, 516 F.3d 884, 894 (10th Cir. 2008).  The recorded calls do not constitute entrapment,[18] and, therefore, Young's counsel's choice not to request an

---

[18]Entrapment does not apply to Young's case, because a government agent did not persuade him to commit the present offense, possessing a firearm, and the phone calls were recorded after he committed the offense at issue.  The Tenth Circuit entrapment instruction states:

ENTRAPMENT

As a defense to the crimes charged in the indictment, the defendant has asserted that he was entrapped.

The defendant was entrapped if

- the idea for committing the crime(s) originated with government agents, and

- the government agents then persuaded or talked the defendant into committing the crime(s), and

- the defendant was not already willing to commit the crime(s).

When a person has no previous intent or purpose to violate the law, but is induced or persuaded by officers or agents to commit a crime, he is entrapped and the law, as a matter of policy, forbids his conviction in such a case.  On the other hand, when a person already has the readiness and willingness to violate the law, and the officers or agents merely provide him with an opportunity to commit the crime and do so even by disguise or ruse, there is no entrapment.

entrapment jury instruction did not fall below an objective standard of reasonableness.  See United States v. Robinson, 8 F.3d at 406 ("Section 2255 motions, involving ineffective assistance of counsel claims, are subject to the same general rule as all other § 2255 motions; they are not to be entertained by the district court unless extraordinary circumstances are present."; United States v. Pinkney, 543 F.2d 908, 915-17 (D.C. Cir. 1976)(stating a motion for a new trial charging ineffective assistance of counsel must set forth evidence upon which elements of a constitutionally deficient performance might properly be made).

### G.   YOUNG'S ARGUMENTS ABOUT THE REASONABLENESS OF HIS SENTENCE ARE PREMATURE, BECAUSE THE COURT HAS NOT YET SENTENCED YOUNG.

Young argues that "his sentencing range is procedurally unreasonable because the District Court, Government, and Probation officers have all failed to consider . . . (Mr. Young seeks plain error and remedy before sentencing) a sentencing manipulation argument and because the District Court did not adequately discuss or apply the 18 U.S.C. § 3553(a) factors."  Objections III at 6. The Court agrees with Young that a "sentence is procedurally unreasonable if the district court 'fail[ed] to calculate (or improperly calculate[ed]) the Guidelines range, treat[ed] the Guidelines as mandatory, fail[ed] to consider the § 3553(a) factors . . . or fail[ed] to adequately explain the chossen sentence.'"  United States v. Burgess, 576 F.3d 1078, 1101 (10th Cir. 2009)(alternations in original)(quoting Gall v. United States, 552 U.S. 38, 51 (2007)).  Here, however, the Court has not yet imposed a sentence on Young.  See Minute Order as to Apache Young, filed January 15, 2021 (Doc. 262)(setting Young's sentencing hearing for February 12, 2021).  The Court concludes

---

In order to return a verdict of guilty as to [the defendant] for the crime(s) of [name crime or crimes charged], you must find beyond a reasonable doubt that the defendant was not entrapped.

Tenth Circuit Pattern Jury Instruction § 1.27, at 57 (ENTRAPMENT).

that the issue of the reasonableness of Young's sentence is not yet ripe because; (i) Young has not yet been sentenced; and (ii) Young will not experience hardship if he must wait to raise these arguments at his sentencing.  See Skull Valley Band of Goshute Indians v. Neilson, 373 F.3d 1223, 1237 (10th Cir. 2004)(explaining the test for ripeness).  The Court, therefore,  cannot yet consider Young's arguments on the reasonableness of his sentence.

### III.    YOUNG'S GUIDELINE SENTENCING RANGE IS 235-293 MONTHS.

Young's offense level is 33, and his criminal history category is VI.  See U.S.S.G. Ch. 5, Pt. A (Sentencing Table).  Young's Guideline sentencing range, therefore, is 235-293 months.  See U.S.S.G. Ch. 5, Pt. A.  Additionally, because Young is an armed career criminal, he is subject to a mandatory minimum sentence of fifteen years.  See 18 U.S.C. § 924(e)(1).

Young violated 18 U.S.C. § 922(g)(1), which has a base offense level of 24.  See U.S.S.G. § 2K2.1(a)(2)(prescribing an offense level of 24 in cases involving "unlawful receipt, possession, or transportation of firearms" where "the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense"); 18 U.S.C. § 922(g)(making it "unlawful for any person who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce").  Young's offense involves three firearms, increasing the offense level from 24 to 26. See U.S.S.G. § 2K2.1(b)(1)(increasing the offense level where an offense involves three or more firearms); PSR ¶ 9, at 7-8.  The offense also involved stolen firearms, increasing the offense level from 26 to 28.  See U.S.S.G. § 2K2.1(b)(4)(A); PSR ¶ 91, at 23.  Next, because Young "is subject to an enhanced sentence under the provisions of 18 U.S.C. 924(e)," he is an "armed career criminal" under U.S.S.G. § 4B1.4.  U.S.S.G. § 4B1.4(a).  Young's offense level is therefore "the

greatest of": (i) "the offense level applicable from Chapters Two and Three" of the U.S.S.G.; (ii) "the offense level from § 4B1.1 (Career Offender) if applicable"; (iii) "34, if the defendant used or possessed the firearm or ammunition in connection with either a crime of violence, as defined in § 4B1.2(a), or a controlled substance offense, as defined in § 4B1.2(b), or if the firearm possessed by the defendant was of a type described in 26 U.S.C. § 5845(a)"[19]; or (iv) "33, otherwise." U.S.S.G. § 4B1.4(b). Young's offense level from Chapters Two and Three of the U.S.S.G. was 28. The career offender offense level does not apply here, because "the instant offense of conviction" is not "either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1. Young's offense level is not 34, because he did not "use[] or possess [] the firearm" in connection with a crime of violence or a controlled substance offense. See U.S.S.G. § 4B1.4(b). Further, none of the firearms Young possessed were "of a type described in 26 U.S.C. § 5845(a)."[20] Young's offense level, therefore, is 33, because 33 is greater than the other

---

[19]26 U.S.C. § 5845(a) defines a firearm as

(1) a shotgun having a barrel or barrels of less than 18 inches in length; (2) a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length; (3) a rifle having a barrel or barrels of less than 16 inches in length; (4) a weapon made from a rifle if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 16 inches in length; (5) any other weapon, as defined in subsection (e); (6) a machinegun; (7) any silencer (as defined in section 921 of title 18, United States Code); and (8) a destructive device. The term "firearm" shall not include an antique firearm or any device (other than a machinegun or destructive device) which, although designed as a weapon, the Secretary finds by reason of the date of its manufacture, value, design, and other characteristics is primarily a collector's item and is not likely to be used as a weapon.

26 U.S.C. § 5845(a).

[20]Young's weapons in this offense for which the Court is sentencing him are: (i) "a HI-Point, model JHP, .45 ACP caliber, semiautomatic pistol"; (ii) "a Remington, model 721, .30-06 caliber bolt-action rifle"; and (iii) "a Remington, model 870, 12-gauge pump-action." PSR ¶ 9, at 7-8.

calculated offense level of 28.  See U.S.S.G. § 4B1.4(b).

Young's criminal history category is VI.  Young's February 16, 2002, offense receives 3 criminal history points.  See U.S.S.G. 4A1.1(a); PSR ¶ 29, at 6-7.  Likewise, his September 22, 2005, aggravated battery offense receives 3 criminal history points.  See U.S.S.G. 4A1.1(a); PSR ¶ 32, at 12.  His May 4, 2009, robbery spree adds 6 points.  See U.S.S.G. 4A1.1(e); PSR ¶ 34, at 13-14.  Young's November 7, 2015, driving while intoxicated offense receives 1 criminal history point.  See U.S.S.G. 4A1.1(c); PSR ¶ 35, at 14.  Young's January 2, 2016, driving while intoxicated offense receives also 1 criminal history point.  See U.S.S.G. 4A1.1(c); PSR ¶ 36, at 15.  Likewise, Young's June 19, 2016, driving while intoxicated offense receives 1 criminal history point.  See U.S.S.G. 4A1.1(c); PSR ¶ 35, at 15.  Young's total criminal history score, therefore, is 15.  A criminal history score of 13 or more places a defendant in criminal history Category VI.  See U.S.S.G. Ch. 5, Pt. A.  Moreover, because Young is an armed career criminal, U.S.S.G. § 4B1.4(c) applies.  See U.S.S.G. § 4B1.4(c)(describing how to calculate "the criminal history category for an armed career criminal").  U.S.S.G. § 4B1.4(c)(1) confirms that Young's criminal history category is VI.  See U.S.S.G. § 4B1.4(c)(1).  Because Young's offense level is 33 and his criminal history category is VI, Young's Guideline imprisonment range is 235-293 months.  See U.S.S.G. Ch. 5, Pt. A (Sentencing Table).  Additionally, because Young is an armed career criminal, he is subject to a mandatory minimum sentence of fifteen years.  See 18 U.S.C. § 924(e)(1).

**IT IS ORDERED** that: (i) the Defendant's Objections in (a) the Defendant's Objections and Corrections to the Presentence Report, filed February 27, 2020 (Doc. 183)("Objections I"); (b) the Defendant's Objections to the Presentencing Report, filed June 21, 2019 (Doc. 204)("Objections II"); and (c) the Defendant's Memorandum, Opinion, and Request for Sentence Relief, filed November 16, 2020 (Doc. 247)("Objections III"); (ii) the objection to PSR ¶ 49, at

17; (iii) all other objections are overruled; (iv) the Young's offense level is 33 and his criminal history category is VI; and (v) Young's Guideline imprisonment range is 235-293 months.


_____
UNITED STATES DISTRICT JUDGE


*Counsel:*

Fred J. Federici
  Acting United States Attorney
Paul H. Spiers
Kristopher N. Houghton
Paul Edward Schied
  Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

     *Attorneys for the Plaintiff United States of America*

Jennifer J. Wernersbach
Law Offices of Jennifer J. Wernersbach, P.C.
Albuquerque, New Mexico

--and--

Charles E. Knoblauch
Charles E. Knoblauch Attorney at Law
Albuquerque, New Mexico

     *Attorneys for the Defendant Apache Young*